PETER C. ANDERSON
UNITED STATES TRUSTEE
JILL M. STURTEVANT, State Bar No. 089395
ASSISTANT UNITED STATES TRUSTEE
RON MAROKO, State Bar No. 124770
TRIAL ATTORNEY
OFFICE OF THE UNITED STATES TRUSTEE
915 Wilshire Boulevard, Suite 1850
Los Angeles, California 90017
(213) 894-4520 telephone; (213) 894-2603 facsimile
Email: ron.maroko@usdoj.gov

**FILED & ENTERED**

**SEP 12 2019**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** sumlin    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - Los Angeles Division

| | |
|---|---|
| In re:<br><br>**ASHLEY SUSAN AARONS,**<br><br>Debtor(s). | Case No.: 2:19-bk-18316-NB<br>Chapter 11<br><br>ORDER DENYING EMPLOYMENT APPLICATION OF THE TUROCI FIRM AS GENERAL BANKRUPTCY COUNSEL <u>DUE TO INDIRECT LENDING RELATIONSHIP</u><br><br>DATE:    September 10, 2019<br>TIME:    1:00 pm<br>CTRM:    1545 |

  The Court heard The Turoci Firm's application to be employed as general bankruptcy counsel ("Application"; docket #23) and the United States Trustee's opposition (docket #30) to said Application at the above date and time.  The Court issued a tentative ruling prior to the hearing, The tentative ruling was adopted as the final ruling, and is attached hereto and incorporated herein as though set out in full.

  Based upon the record, the aforementioned tentative ruling, and **GOOD CAUSE** appearing,

//

1

1    **IT IS HEREBY ORDERED** that the Application to Employ The Turoci Firm as Debtor's
2    general bankruptcy counsel is **DENIED**.
3                                                                                                    ###

Date: September 12, 2019

Neil W. Bason
United States Bankruptcy Judge

2

# United States Bankruptcy Court
# Central District of California
Los Angeles
Judge Neil Bason, Presiding
Courtroom 1545 Calendar

**Tuesday, September 10, 2019**　　　　　　　　　　　　　　　　　　　　　　　　**Hearing Room　1545**

**1:00 PM**
**2:19-18316**　　**Ashley Susan Aarons**　　　　　　　　　　　　　　　　　　　　　　　**Chapter 11**

#4.00　　Hrg re: Motion in Individual Ch 11 Case for
　　　　　Order Employing Professional (LBR 2014-1):
　　　　　The Turoci Firm as General Bankruptcy Counsel

　　　　　　　　　　　　　　Docket　　23

**Tentative Ruling:**

Deny the motion, under both subsections "(a)" and "(e)" of 11 U.S.C. 327. <u>Appearances required</u>.

<u>Analysis</u>

　　　　Debtor's motion (dkt. 23) and supplement (dkt. 28) seek employment of The Turoci Firm. The United States Trustee has filed an opposition (dkt. 30), and Debtor has filed a reply (dkt. 38).
　　　　The Bankruptcy Code requires that general bankruptcy counsel be "disinterested" (11 U.S.C. 327(a)), which means a person who is "not a creditor" (among other things). 11 U.S.C. 101(14)(A). In other words, the statute prohibits general bankruptcy counsel from holding <u>any</u> claim, not just a secured claim.
　　　　Debtor cites authority from other jurisdictions that a security interest in favor of proposed bankruptcy counsel is not necessarily disqualifying. *See* Reply (dkt. 51). But those out-of-circuit decisions are not binding; the authority in the Ninth Circuit appears to disfavor security interests (except in cash retainers); and the tentative ruling is that employment is not permitted in the circumstances of this case.
　　　　Debtor cites *In re Martin,* 817 F.2d 175 (1st Cir. 1987) (security interest in debtor's property does not *per se* disqualify proposed counsel), and *In re Watson,* 94 B.R. 111 (Bankr. S.D. Ohio 1988) (following *Martin*). But in this circuit the Bankruptcy Appellate Panel (the "BAP") has held that "a professional with a claim secured by the debtor's property [is] <u>not disinterested as a matter of law</u>." *In re CIC Inv. Corp.,* 175 B.R. 52, 53 (9th Cir. BAP 1994) ( (emphasis added), *but cf. id.* at 56 n.4 (distinguishing *Martin*). *See also, e.g., In re Escalera,* 171 B.R. 107 (Bankr. E.D. Wash. 1994) (declining to follow *Martin*, and distinguishing retainers from security interests in other estate property).

# United States Bankruptcy Court
# Central District of California
Los Angeles
Judge Neil Bason, Presiding
Courtroom 1545 Calendar

**Tuesday, September 10, 2019**     **Hearing Room**    **1545**

**1:00 PM**
**CONT...**     **Ashley Susan Aarons**     **Chapter 11**

      More generally, the BAP has stated: "We have previously acknowledged that '[t]he courts do not agree on whether counsel with a prepetition <u>claim</u> [*i.e.,* either a secured claim or an unsecured claim] against the debtor is absolutely barred from representing the trustee or debtor in possession as general counsel,' but we have come down firmly on the side of the courts barring such representation." *In re Triple Star Welding, Inc.,* 324 B.R. 778, 791 n.17 (9th Cir. BAP 2005) (emphasis added, citations omitted). *Compare In re Dick Cepek, Inc.,* 339 B.R. 730 (9th Cir. BAP 2006) (2-1 decision) (professional holding <u>security retainer</u> would not be required to disgorge it if it had been adequately disclosed, despite lack of equal distribution among administrative claims), *on appeal after further proceedings,* 300 Fed.Appx. 497 (9th Cir. 2008) (disgorgement required because asserted security interest had not been adequately disclosed).

      The analysis is somewhat different when the proposed professional does not <u>directly</u> hold a claim. In that instance the question is whether the professional "does not have an interest <u>materially adverse</u> to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct <u>or indirect</u> relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. 101(14)(C) (emphasis added). *Cf. In re AFI Holding, Inc.,* 530 F.2d 832, 844-49 (9th Cir. 2008) (noting, in case involving removal of trustee, that 11 U.S.C. 101(14)(C), unlike (14)(A), requires "materially" adverse interest).

      The tentative ruling is that (1) a secured loan that came directly from proposed bankruptcy counsel for a debtor would create an inherent lack of disinterestedness; (2) that lack of disinterestedness cannot be resolved by arranging the secured loan through a lending business owned by the firm's principal; and (3) the lack of disinterestedness also cannot be resolved by subsequently transferring the loan and security interest to an independent third party.

(1) <u>A secured loan directly from proposed counsel would create an inherent lack of disinterestedness</u>

      Some courts (such as *Martin*) point out that, as soon as a lawyer performs any services, that lawyer is owed a debt by the debtor/estate, and on that basis those courts decline to read the statute literally. But this Court must apply the plain meaning of the statute, unless that would produce absurd results.

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Neil Bason, Presiding
Courtroom 1545 Calendar

**Tuesday, September 10, 2019**　　　　　　　　　　　　　　　　　　　　**Hearing Room　1545**

**1:00 PM**
**CONT...**　　　**Ashley Susan Aarons**　　　　　　　　　　　　　　　　　　　　**Chapter 11**

　　　　Congress chose to draw a bright line between prepetition claims, which disqualify counsel under 11 U.S.C. 101(14)(A) and 327(a), and postpetition administrative expenses, which do not disqualify counsel.  That bright line is not absurd.

　　　　Congress rationally could conclude that prepetition claims present the risk of skewing a professional's economic incentives for or against other classes of creditors.  Conversely, Congress rationally could conclude, there is substantially less risk for postpetition administrative expenses, because those expenses must be based on "necessary services" and are scrutinized to see if they "were necessary to the administration of, or beneficial ... toward completion of," the bankruptcy case.  11 U.S.C. 330(a)(1)(A) & (3)(C).

　　　　The rational basis for this distinction is reinforced by an examination of the economic incentives of secured and unsecured creditors, which generally are in opposition to one another.  That can be illustrated with a hypothetical example.

　　　　Suppose that a hypothetical debtor in possession (the "DIP") has parcels of real estate without much equity, but enough to secure a loan from the law firm that seeks to be retained as general bankruptcy counsel.  Like any DIP, this debtor will have to make choices on all sorts of issues, such as whether to adopt a risky but potentially lucrative business plan for using the property as an Airbnb.

　　　　The economic incentive usually is for unsecured creditors to favor any risky strategy, because even a risky gambit is better than the certainty of little or no dividend at all.  Conversely, the economic incentive for secured creditors usually is to minimize risk: any risk generally poses only a "down-side" exposure, with no possibility of any "up-side" because secured claims generally are capped at the value of the collateral (under 11 U.S.C. 506(b)).

　　　　Like anyone in charge of a business with conflicting constituencies, a DIP must strive not to be biased against any class of creditors, and instead take whatever course of action will have the best overall chance of maximizing the value of the estate.  *See generally In re AWTR Liquidation, Inc.,* 548 B.R. 300, 327-30  (Bankr. C.D. Cal. 2016); *and see Credit Lyonnais Bank Nederland N.V. v. Pathe Communications Corp.,* 1991 WL 277613 at n.55 (Del. Ch. Dec. 30, 1991) (illustrating concept of maximizing value, despite conflicting constituencies, using a hypothetical discounted present value analysis to assess different courses of action).

　　　　For these reasons, any proposed general bankruptcy counsel who

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Neil Bason, Presiding
Courtroom 1545 Calendar

**Tuesday, September 10, 2019**                                                                 **Hearing Room**    **1545**

<u>1:00 PM</u>
**CONT...**         **Ashley Susan Aarons**                                                                         **Chapter 11**

holds a secured claim against the bankruptcy estate has economic incentives that may be adverse to unsecured claims (or other classes of secured claims).  In fact, holding <u>any</u> claim - secured or unsecured - places such counsel at risk of being adverse to other classes of creditors.

Of course, the interests of secured creditors and unsecured creditors sometimes allign.  But the problem is that it is impossible to know in advance when the interests will be alligned, and meanwhile the proposed professional who holds a claim (secured or unsecured) has an economic <u>incentive</u> that may be adverse to at least some creditors.

In sum, Congress chose to draw a bright line barring professionals who hold claims from employment under 11 U.S.C. 327(a).  That bright line is not absurd, so this Court must apply the plain meaning of the statute.

Therefore, if The Turoci Firm held a claim (secured or unsecured) as of the petition date, it would be disqualified.  The next question is whether the outcome is different because the lending relationship was indirect.

(2) <u>The lack of disinterestedness cannot be resolved by arranging the secured loan through an entity owned by the firm's principal</u>

The requirement to be "disinterested" encompasses not just a bar on being a "creditor" directly but also a requirement that proposed counsel "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct <u>or indirect</u> relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. 101(14)(C) (emphasis added).  The tentative ruling is that, when Congress chose to draw a bright line prohibiting proposed professionals from holding any "claim," it would not be consonant with Congressional intent to permit the professional to hold a claim indirectly.

From a practical standpoint, there is no difference.  If Mr. Turoci's lending business holds a claim, his and his law firm's economic incentives are the same as if his law firm held the claim directly.  That was the situation in which The Turoci Firm found itself at the inception of this case.  *See* Supplement to Motion (dkt.28).

(3) <u>The lack of disinterestedness cannot be resolved by subsequently transferring the loan and security interest to an independent third party</u>

Based on the foregoing analysis, The Turoci Firm was disqualified at the inception of this case because of its indirect claim against the bankruptcy

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Neil Bason, Presiding
Courtroom 1545 Calendar

**Tuesday, September 10, 2019**                                                                                       **Hearing Room    1545**

<u>1:00 PM</u>
**CONT...        Ashley Susan Aarons                                                                                            Chapter 11**

estate (through the firm's principal's lending business).  The question is whether, by transferring the loan and security interest, the disqualification can be cured.

The tentative ruling is that it cannot.  First, selling the loan does not retroactively change The Turoci Firm's economic incentives during the prior times when it rendered services.

Second, the very process of selling the loan may have been tainted by The Turoci Firm's economic incentives.  Any buyer of that loan had an interest in assessing how risky the loan might be, which gets back to how much risk will be taken by the debtor - advised by its general bankruptcy counsel.  If the risk is high then the prospective purchaser of the $25,000 loan might be able to buy the loan for a substantial discount.  So Mr. Turoci had an incentive to <u>minimize</u> whatever risks exist, so that his lending business would be paid as close to $25,000 as possible.

But, from the standpoint of the bankruptcy estate's future negotiations with the new holder of that claim, it might be best to <u>maximize</u> whatever risks exist.  A purchaser of the loan who buys it for $10,000, and thinks of the loan as a risky venture, might be much more willing to accept a chapter 11 plan that will pay $10,000 over time than a purchaser who buys the loan for $25,000.

Third, it is impossible to know what ongoing consequences the conflicts of interest might have had, beyond the time when the loan was sold.  For example, suppose that during the first weeks of this case The Turoci Firm advised Debtor in ways that favored a sale of the real estate rather than attempting to start an Airbnb business.  It is impossible to know if that advice might have been tainted by an awareness of the possible effects on the secured claim that was then held by Mr. Turoci's lending business.  Now, after the loan has been sold, it may be too late to adopt a different strategy or tactics.

Of course, the above discussion includes only some hypothetical illustrations of how the economic incentives <u>might</u> cause problems.  In actuality there might be different issues that <u>arise</u>, or it might be that there were not any adverse effects.  The point is only that, once The Turoci Firm held a claim against property of the estate, that created a lack of disinterestedness that <u>could</u> have had adverse effects, prior to, during, and after the time the loan was sold.

<u>Caveat</u>:  This Court wishes to emphasize that there is no evidence in

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Neil Bason, Presiding
Courtroom 1545 Calendar

**Tuesday, September 10, 2019**              **Hearing Room**    **1545**

<u>1:00 PM</u>
**CONT...**      **Ashley Susan Aarons**                                                          **Chapter 11**

the record that Mr. Turoci or The Turoci Firm has <u>actually</u> taken any act, or omitted to do any act, that would have an <u>actual</u> adverse effect on the bankruptcy estate. To the contrary, so far as this Court is aware, Mr. Turoci and The Turoci Firm have <u>attempted</u> to help Debtor obtain the benefits of that law firm's services, which in turn appears to be an attempt to help Debtor fulfill the duties of a DIP for the benefit of creditors and all parties in interest.

    The point is only that the statute requires disqualification of general bankruptcy counsel based not only on <u>actual</u> conflicts but also for a lack of "disinterestedness." 11 U.S.C. 327(a). The tentative ruling is that the lending relationship, through Mr. Turoci's lending business, inherently creates a lack of disinterestedness that cannot be cured by subsequently selling the loan.

(4) <u>Section 327(e) does not provide an "end run" around the foregoing limitations</u>

    The Reply suggests that, if employment cannot be authorized under subsection "(a)" of section 327, perhaps it can be authorized under subsection "(e)," "for the limited purposes of initiating the case and sheparding Debtor through the first few months." Reply (dkt. 51), p.3:10-14. The tentative ruling is that this solution, while creative, is not workable.

    True, Section 327(e) provides does not include the "disinterestedness" requirement. But it provides that the DIP, acting as a trustee for the benefit of creditors under 11 U.S.C. 1101(1) and 1107), may employ "for a specified special purpose, <u>other than to represent the [DIP] in conducting the case</u>," an attorney who previously represented the debtor, if that is in the best interest of the estate and if such attorney "<u>does not</u> represent or <u>hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed</u>." (Emphasis added.)

    The problem is that (a) The Turoci Firm has been representing Debtor "in conducting the case" and, alternatively, (b) The Turoci Firm has, at least while its principal held a claim against the estate (through his lending business), held an "interest adverse to ... the estate" with respect to the general representation of the bankruptcy estate in conducting the case. Therefore, the tentative ruling is that The Turoci Firm's employment cannot be authorized under 11 U.S.C. 327(e).

(5) <u>Conclusion</u>

    This Court is empathetic to debtors who lack the funds to hire

# United States Bankruptcy Court
# Central District of California
Los Angeles
**Judge Neil Bason, Presiding**
**Courtroom 1545 Calendar**

**Tuesday, September 10, 2019**                                                                 Hearing Room    **1545**

<u>1:00 PM</u>
**CONT...        Ashley Susan Aarons**                                                                                    **Chapter 11**

bankruptcy counsel, and is also empathetic to proposed bankruptcy counsel who attempt to solve that problem by arranging for loans.  Unfortunately for those parties, the tentative ruling is that the arrangements in this case disqualify The Turoci Firm from employment.

<u>Caveat</u>: This issue has not been extensively briefed by the parties; the decisions appear to be sparse; and the law in this area appears to be somewhat unclear.  This Court is very much aware of the substantial consequences of the foregoing tentative ruling on The Turoci Firm, Debtor, the bankruptcy estate, and other parties in interest.  The parties should be prepared to address whether they will seek further briefing.

|  Party Information  |
|---|

**Debtor(s):**

   Ashley Susan Aarons                                Represented By
      Todd L Turoci

**Movant(s):**

   Ashley Susan Aarons                                Represented By
      Todd L Turoci
      Todd L Turoci