| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael R. Totaro     102229<br>Totaro & Shanahan<br>P.O. Box 789<br>Pacific Palisades, CA 90272<br>(310) 573-0276 (v)<br>(310) 496-1260 (f)<br>ocbkatty@aol.com<br><br><br>☐ *Respondent appearing without attorney*<br>☒ *Attorney for Respondent:* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Ashley Susan Aarons,<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:19-bk-18316-NB<br>CHAPTER: 11                SUPPLEMENTAL<br><br>**RESPONSE TO MOTION REGARDING THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT**<br><br>DATE: 09/24/2019<br>TIME: 2:00 pm<br>COURTROOM: 1545<br>PLACE: 255 E. Temple St.<br>          Los Angeles, CA 90012 |

**Movant:** Alliance Portfolio Private Equity Finance, Inc.

**Respondent:**  ☒ Debtor  ☐ trustee  ☐ other:

> NOTE REGARDING FILING AND SERVICE OF RESPONSE, EXHIBITS AND DECLARATIONS:
>
> A copy of the Response, exhibit(s) and declaration(s) must be served upon:
>
> (1) Movant's attorney (or Movant, if Movant does not have an attorney);
> (2) the trustee; and
> (3) the judge who presides over this bankruptcy case.
>
> Then the document must be filed with the court.

1.  ☐ **NONOPPOSITION**
    The Respondent does not oppose the granting of the Motion.

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

2.  ☐  **LIMITED OPPOSITION**

a.  ☐  Respondent opposes the Motion only to the extent that it seeks immediate relief from stay.  Respondent requests that no lock out, foreclosure, or repossession take place before (*date*): _____ and the reason for this request is (*specify*):

b.  ☐  As set forth in the attached declaration of the Respondent or the Debtor, the motion is opposed only to the extent that it seeks a specific finding that the Debtor was involved in a scheme to hinder, delay or defraud creditors.

The Debtor:
(1)  ☐  has no knowledge of the Property.
(2)  ☐  has no interest in the Property.
(3)  ☐  has no actual possession of the Property.
(4)  ☐  was not involved in the transfer of the Property.

c.  ☐  Respondent opposes the Motion and will request a continuance of the hearing since there is an application for a loan modification under consideration at this time.  Evidence of a pending loan modification is attached as Exhibit _____.

3.  ☒  **OPPOSITION:**  The Respondent opposes granting of the Motion for the reasons set forth below.

a.  ☐  The Motion was not properly served (*specify*):

(1)  ☐  Not all of the required parties were served.
(2)  ☐  There was insufficient notice of the hearing.
(3)  ☐  An incorrect address for service of the Motion was used for (*specify*):

b.  ☒  Respondent disputes the allegations/evidence contained in the Motion and contends as follows:

(1)  ☒  The value of the Property is $ _2,500,000.00_____, based upon (*specify*):
Appraisal dated 9/10/2019 attached as Exhibit A and incorporated herein by reference.

(2)  ☒  Total amount of debt (loans) on the Property is $ _2,197,804.00_ *_____.

(3)  ☐  More payments have been made to Movant than the Motion accounts for.  True and correct copies of canceled checks proving the payments that have been made are attached as Exhibit _____.

(4)  ☐  There is a loan modification agreement in effect that lowered the amount of the monthly payments.  A true and correct copy of the loan modification agreement is attached as Exhibit _____.

(5)  ☒  The Property is necessary for an effective reorganization.  Respondent filed or intends to file a plan of reorganization that requires use of the Property.  A true and correct copy of the plan is attached as Exhibit _____.  No Plan filed as yet.

(6)  ☐  The Property is fully provided for in the chapter 13 plan and all postpetition plan payments are current.  A true and correct copy of the chapter 13 plan is attached as Exhibit _____ and proof that the plan payments are current through the chapter 13 trustee is attached as Exhibit _____.

(7)  ☐  The Property is insured.  Evidence of current insurance is attached as Exhibit _____.

*The amount is not an exact amount as it cannot be completely determined until claims are filed and Debtor has an opportunity to object particularly as to Movant's interest claim which apparently includes  default interest of %19.9 %, 10% more than the contract amount and possibly excessive fees

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(8) ☐ Movant's description of the status of the unlawful detainer proceeding is not accurate.

(9) ☐ Respondent denies that this bankruptcy case was filed in bad faith.

(10) ☐ The Debtor will be prejudiced if the Nonbankruptcy Action is allowed to continue the nonbankruptcy forum.

(11) ☐ Other (*specify*):

c. ☐ Respondent asserts the following as shown in the declaration(s) filed with this Response:

(1) ☐ The bankruptcy case was converted from chapter ____ to chapter ____.

(2) ☐ All postpetition arrearages will be cured by the hearing date on this motion.

(3) ☐ The Property is fully provided for in the chapter 13 plan and all postpetition plan payments
☐ are current, or ☐ will be cured by the hearing date on this motion.

(4) ☒ The Debtor has equity in the Property in the amount of $ __302,196.00__ ** _____.

(5) ☒ Movant has an equity cushion of $ ____575,310.00__*** _____ or __23____ % which is sufficient to provide adequate protection.

(6) ☒ The Property is necessary for an effective reorganization because (*specify*):
The house is being marketed for sale at the actual fair market value which should pay off all creditors and provide funds for the estate.

(7) ☒ The motion should be denied because (*specify*):
Debtor is also in the process of obtaining refinancing which will provide an adequate protection payment to Movant of $50,000.00 to cure post-petition default anf allow Debtor 90 days to sell the property.

(8) ☒ An optional memorandum of points and authorities is attached in support of this Response.

4. **EVIDENCE TO AUTHENTICATE EXHIBITS AND TO SUPPORT FACTS INSERTED IN THE RESPONSE:**

Attached are the following documents in support of this Response:

☒ Declaration by the Debtor                    ☒ Declaration by the Debtor's attorney
☐ Declaration by trustee                        ☐ Declaration by trustee's attorney
☐ Declaration by appraiser                      ☐ Other (*specify*):

** This amount may change based on actual allowed claims

*** This amount may change somewhat based on allowed claims

Date: __09/21/2019____

Totaro & Shanahan
_____
Printed name of law firm for Respondent (if applicable)

Michael R. Totaro
_____
Printed name of individual Respondent or attorney for Respondent


/s/ Michael R. Totaro
_____
Signature of individual Respondent or attorney for Respondent

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                           Page 3                    **F 4001-1.RFS.RESPONSE**

## REQUEST TO ACCEPT LATE FILED BRIEF

At the outset, Debtor respectfully requests the Court accept this late filed brief. As set forth in the Declaration of Michael R. Totaro ("Totaro Dec.") a number of factors led to the late filing, including counsel recently being retained and reviewing numerous document information as to various secured creditors and liens and a focus on Debtor obtaining refinancing, a full schedule of hearings and loss of time due to medical procedures.

FRBP 9006(b) provides the Court with the discretion to enlarge a time period within which an act is to be performed. Specifically the relevant potions of the rule state:

> When an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for cause shown, may at any time in its' discretion (1) . . . or (2) on motion made after the expiration of the specified period permit the act to be done when the failure of the act was the result of excusable neglect.

The Totaro Declaration provides evidence of excusable neglect justifying the requested relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

The instant bankruptcy case was commenced on July 17, 2019 (the "Petition Date") with Debtor filing a chapter 11 bankruptcy petition. No creditors' committee has been appointed.

Debtor is the owner of 2 parcels of real property, a single family residence located at 336 N. Sweetzer Ave, Los Angeles, CA 90048 (the "Property") and a single family residence located at 948 Bel Air Rd., Los Angeles, CA 90077 ("Bel Air Property"). The Property is the subject to this Motion for Relief from Stay.

The Property is currently listed for sale at $2,499,000 and being aggressively marketed after a change in real estate agents due to a conflict of interest in the initial agents. Debtor Dec. The property was appraised at $2,630,000.00 sometime before debtor filed the Chapter 13 case. Id. However prior agents persuaded Debtor list the

1  Property for sale at $2,199,000.00 in order to sell quickly and being advised this would

2  create a bidding war and would not be the final sales price. Debtor Dec.

3      The first deed of trust held by Alliance Portfolio Private Equity Finance, Inc.

4  ("Movant") has a principal amount owed of $1,600,000.00. The Motion for Relief from

5  Stay ("Motion") lists a total amount owed by Debtor on the First Lien in the amount of

6  $1,882,500.24. This is includes among other charges a total of $213,548.40 in default

7  interest, $10,656.00 in late charges and $55,532.52 in attorney's fees, of which

8  $43,633.77 is for post-petition fees, for the one month prior to Movant's filing the

9  Motion Debtor disputes the amount claimed because the claimed interest is 10% more

10  than the contract price (default interest) and an unenforceable penalty which is also

11  unconscionable.    Debtor also believes the amount of attorney's fees claimed,

12  particularly post-petition fees of $43,633.77 in the brief one-month period between the

13  time the case was filed and the Motion was filed are not reasonable.

14      All of this will be subject to a Motion to Disallow a portion of Movant's claim

15  once one is filed if they persist in adding more than double the interest as well as a 10%

16  late charge each month. At this time Debtor is submitting only a brief discussion of

17  these issues as it impacts the amount owed to Movant and its equity cushion which

18  provides adequate protection.

19      Debtor's calculation of the amount owed is based on an estimation of the actual

20  contract interest rate and has not yet reduced attorney's fees. In addition,  the amounts

21  of some of the junior liens are disputed and may also be subject to claim objections as

22  well.

23      After Movant filed the Motion, prior counsel advised Debtor and the agents she

24  would hve to sell the Property in a week or she would lose it. Debtor Dec. Debtor did

25  receive an offer but they were not able to agree on a final price.  Prior Counsel was not

26  approved as counsel due to a conflict of interests and prior real estate agents also had a

27  conflict. New agents have been employed and Debtor had the Appraisal recertified to

28

assure the Property was properly marketed at the current value. The September 2019 appraisal, Exhibit A, opines a current value of $2,500,000.00. The Property is currently listed with new agents and is being aggressively marketed with a listing price of $2,499,000.00. Debtor Dec.

Debtor and new counsel are working with various lenders and determining the best options for refinancing going forward and to develop a viable plan for reorganization Totaro De., Debtor Dec.

Debtor submits this supplemental response in place of the almost non existent opposition filed by prior counsel. The only value to the opposition is the listing of the various liens in order of priority.

**I.    MOVANT HAS NOT SHOWN SUFFICIENT "CAUSE" FOR IMMEDIATE RELIEF FROM THE AUTOMATIC STAY AND THE GRANTING OF RELIEF WOULD INTERFERE WITH THE EFFICIENT ADMINISTRATION OF THE DEBTOR'S BANKRUPTCY ESTATE.**

In order to establish a basis for relief from the automatic stay, the moving party must first establish a prima facie case that "cause" exists. *Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re  Plumberex Specialty Products, Inc.)*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004). After a prima facie case is established, the debtor must show that relief is unwarranted. *Id*. There is no clear definition of "cause" instead it should be determined on a case-by-case basis. *Tuscon Estates*, 912 F.3d at 1166. Consequently, courts will differ in determining whether relief from stay for "cause" is warranted. *See Peterson v. Cundy (In re Peterson),* 116 B.R. 247, 249 (D.Colo. 1990).

One of the primary purposes of granting relief from the stay to permit claim liquidation is to economize judicial resources. *Peterson,* 116 B.R. at 250. In a chapter 11 bankruptcy case, courts recognize that a debtor's ability to act responsively in its bankruptcy case can be hindered by the debtor's attention to litigation and expenses in multiple judicial forums.  *Peterson*, 116 B.R. at 250, n 3. Should litigation interfere with

3

1  the administration of a bankruptcy estate, even to a slight degree, this would be enough to

2  preclude relief from stay. *In re United States Brass Corp*., 173 B.R. 1000, 1005 (Bankr.

3  E.D. Texas 1994) [citing *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)].

4      In the early stages of a bankruptcy case, a Chapter 11 debtor must devote full time

5  and attention to reviewing its financials, dealing with creditors, concentrating on

6  reorganization and paying claims. *In re Leonard*, 51 B.R. 53, 54 (Bankr. D.C.

7  1985)(finding that there is no need for a claim to be liquidated in the early stage of a

8  Chapter 11 proceeding, especially since the estate is short on cash); *United States Brass*,

9  173 B.R. at 1006 (stating that "the Court believes that Debtors efforts should be

10 concentrated on the reorganization at this early stage.") *In re Johns-Manville Corp*., 26

11 B.R. 405, 418-419 (Bankr. S.D.N.Y. 1983).

12      In *In re Conejo Enterprises,* 96 F.3d 346 (9th Cir. 1996) the Ninth Circuit noted

13 that given the policies favoring reorganization of debtors, the bankruptcy court's efforts

14 to preserve a level playing field for all parties is to negotiate a plan was a rational basis

15 for denying relief from the automatic stay. *In re Bonner Mall Partnership*, 2 F.3d 899,

16 915 (9th Cir. 1993) confirmed the two major objectives of chapter 11 are to permit the

17 successful rehabilitation of debtors and to maximize the value of the estate. This cannot

18 be accomplished if Debtor is faced with immediate efforts to seek relief from stay

19 without allowing any time to focus on its reasons for filing and its intentions in the

20 bankruptcy.

21      In this case, Movant filed its MFRS on August 20, 2019, only 34 days after Debtor

22 filed her petition. In the first month Debtor had to file a Motion to Extend the Stay  based

23 on her prior filing of a Chapter 13 case in pro per which was dismissed because she did

24 was over the debt limit for a Chapter 13 case.  Debtor was busy since the case was filed

25 trying to keep up with her compliance requirements with the Office of the United States

26 Trustee ('OUST"), getting set up for the required reporting, preparing motions to employ

27 counsel, real estate agents and a budget motion. Debtor attended the IDI and 341 meeting

28

4

1   of creditors as well. No claims bar date has been set or deadlines relevant to

2   reorganization plans. Debtor however was hampered by inability to communicate with

3   prior counsel, who through no fault of hers, was never approved by the Court to represent

4   her. She is now trying too catch up with compliance and establish she understands her

5   obligations as Debtor in Possession.

6       There was absolutely no need for Movant to rush to seek relief without giving Debtor

7   some brief breathing spell necessary for attending to her bankruptcy case without such a

8   distraction. This alone is grounds for denying relief from stay. *In re United States Brass Corp*.,

9   173 B.R. at 1005 (Bankr. E.D. Texas 1994). A better plan would have been to contact Debtor's

10  counsel and engage in a discussion of the parties' claims and resolve any concerns and possible

11  means for adequate protection payments.  Debtor's new counsel is working on arrangements to

12  make payments to Movant to give Debtor a little time to sell the Property and pay creditors.

13
14          **II**.    **MOVANT HAS NOT ESTABLISHED CAUSE FOR
                    RELIEF UNDER   11 U.S.C. §362(d)(1) AS ITS'
                    INTERESTS IN THE PROPERTY ARE FULLY
15                  SECURED, THERE IS NO CLAIM OF DECLINING
                    VALUE SUCH THAT ITS' INTERESTS ARE
16                  ADEQUATELY PROTECTED.**

17      The first ground raised by Movant for its requested relief is under 11 U.S.C.

18  §362(d)(1) that its interest in the Property is not adequately protected.

19      Section 362(d)(1) states:

20          On the request of a party in interest and after notice and a
            hearing, the court shall grant relief from the stay provided
21          under subsection (a) of this section, such as by terminating,
            annulling, modifying or conditioning such stay –
22

23          (1) for cause, including the lack of adequate protection of an
            interest in property of such party in interest.
24

25      The key to relief under this section is a lack of adequate protection of the

26  creditor's interest. Debtor asserts that cause under this section is not established as

27  Movant's interests in the Property are in fact fully secured and have an equity cushion of

28

5

1  approximately 31%. Thus, Movant's claim is adequately protected.

2      A claim of lack of adequate protection under this section pertains only to the

3  claimant's own interests in the collateral without concern for other liens on the property.

4  Specifically the section only applies to a lack of adequate protection for the parties'

5  interest. *Id*.

6      In this case, Movant claims an interest in the Property based on a First Note and

7  Deed of Trust in the property in the amount of $1,600,000.00 signed by Debtor with

8  Movant on May 9, 2017. Motion, Ex. 1.-2. Debtor's recent appraisal establishes a value

9  of the Property as $2,500,00.00.  Ex. A. While Movant claims $213,548.40 in accrued

10  interest owed in addition to the principal of $1,600,000.00 that interest is based on the

11  default interest rate of 19.9%, which is 10% over the contract interest rate of 9.9%. As

12  noted this is over double the amount of the regular interest and Debtor will challenge the

13  addition of such interest as an unenforceable penalty which is also unconscionable and

14  impermissible. This would significantly reduce the amount owed to Movant and along

15  with an actual appraisal on the value show an increase in Movant's equity cushion.

16      Movant is entitled to adequate protection only of its own interest in the property,

17  not the full value of the property.  *In re George Rugglere Chrysler-Plymouth Inc.*, 727

18  F.2d 1017 (11 Cir. 1984). A debtor's lack of equity in the estate on its own is not

19  sufficient to grant relief from stay under Section 362(d)(1). *In re Mellor*, 734 F.2d 1396

20  (9th Cir. 1984).  *In Mellor* the debtor argued the sellers were protected by an equity

21  cushion. The Ninth Circuit ultimately agreed, refusing to include any junior liens in

22  determining whether a creditor was adequately protected by an equity cushion. *Id*. at

23  1401-1402. Thus, as pertains to Movant, the court should not consider the junior liens

24  referenced herein. In addition there is no evidence that the value of the Property is

25  declining.

26      Under the totality of the circumstances of this case, the current appraised value of

27  the property as set forth in the attached certified appraisal is $2,500,000.00. Under the

28

6

1  amount Debtor believes should actually be owed if default interest is unenforceable,

2  Movant would have approximately $575,310.00 (which includes a deduction for costs of

3  sale of 8% & property taxes) as an equity cushion which is a 23% cushion.  If Movant's

4  figures are considered in light of the actual appraised value, it's equity cushion   is

5  $398,809.76 or a 16 % equity cushion.

6      There are varied opinions of what percentage of an equity cushion is adequate.

7  Thus, Courts approved amounts between 8.5%, *In re Palmer River Realty, Inc*., 26 B.R.

8  138 (Bankr. D.R.I. 1983) and 20%.  *In re Mellor*, 734 F.2d at 1401. In this case the

9  figures are within the range of what is considered adequate particularly since Debtor is

10  working to sell the Property as quickly as possible for fair market value rather than the

11  undervalued amount fostered by prior counsel and  agents.

12      Thus, there is insufficient evidence of the cause required for relief from stay under

13  Section 362(d)(1). The Motion should be denied as it asserts relief under that section.

14 / 15
**III.    THE PROPERTY IS NECESSARY FOR AN EFFECTIVE REORGANIZATION REQUIRING DENIAL OF RELIEF FROM STAY.**

16      The second grounds submitted by Movant for its MFRS is pursuant to 11 U.S.C.

17  §362(d)(2) (A) & (B), that Debtor has no equity in the Property **and** it is not necessary

18  for an effective reorganization. Under this section both requirements must be met for

19  relief from stay to be granted.

20      While Movant maintains a secured position, there are additional loans and liens on

21  the property which given the actual appraised value are secured such that Debtor does

22  have equity in the Property. In addition, the Property is necessary for reorganization as it

23  will be sold at market value, and all valid encumbrances, not just Movant be paid. Two of

24  the junior liens are cross collateralized with the Bel Air Property so they are protected

25  even without the liens on the Property.

26      Under Section 362(d)(2), a Debtor can defeat a motion for relief from stay by

27  establishing the property is necessary for an effective reorganization that is in prospect. In

28  this respect, Debtor must show that there is a reasonable possibility of an effective

7

1    reorganization within a reasonable period of time. *United Savings Assn. v. Timber Of*

2    *Inwood Forest Assoc., Ltd.*, 484 U.S. at 376. "Courts usually require the debtor to do

3    more than manifest unsubstantiated hopes for a successful reorganization." *In re Sun*

4    *Valley Newspapers, Inc.*, 171 B.R. 71, 75 (9th Cir. BAP 1994). This requires a showing

5    by the debtor that "a proposed or contemplated plan is not patently unconfirmable and

6    has a realistic chance of being confirmed." *Id.*

7        This case is in its infancy and Debtor is working to overcome early deficiencies

8    from when she had little guidance and was reacting not actually responding. Although

9    current counsel has only been in the case for about a week, in addition to trying to get a

10   good handle on the problems and issues in the case, they have been in negotiations with

11   various creditors and seeking alternate financing as well as getting the Property

12   aggressively marketed by real estate agents without a conflict.

13       Further, reorganization will be possible once Debtor is able to obtain the insurance

14   proceeds needed to repair damage to the BelAir Property which she will be able to rent

15   on AirBnB.  Once Debtor is able to devote time to something other than trying to keep

16   the properties afloat, she can concentrate on working to increase her income as well

17   which will also support reorganization.

18       However, debtor notes that by filing this Motion so quickly, indeed on the heels of

19   its commencement, Debtor's showing of a likelihood of reorganization was lessened. The

20   Supreme Court noted in *Timbers Assoc.*, 484 U.S. at 362,  "the bankruptcy courts demand

21   less detailed showings during the first four months in which the debtor is given the

22   exclusive right to put together a plan." In this case the MFRS was filed just over a month

23   after the commencement of the case such that while debtor has a overall general plan in

24   mind as set forth herein, a claims bar date has not yet been set and with new counsel she

25   is working to correct compliance issues for the OUST. There has been barely time to

26   think and formulate a viable plan, but Debtor is working toward this as quickly as

27   possible and exploring all possibilities to reorganize.

28

8

## IV.  MOVANT'S CALCULATIONS AS TO ACCURED INTEREST ARE BASED ON A DEFAULT INTEREST PROVISION THAT IS A PENALTY UNDER CALIFORNIA CIVIL CODE SEFITON 1671(b) WHICH IS UNENFORCEABLE UNDER THE CIRCUMSTANCES AND ALTERS THE ANALYSIS OF MOVANT'S EQUITY CUSHION.

A secured creditor may only collect default interest or other predetermined contractual amounts in a bankruptcy if the provision is enforceable under applicable nonbankruptcy law. *General Electric Capital Corp.  v. Future Media Productions, Inc*, 547 F.3d 956, 961 (9th Cir. 2008).  Under California law, the enforceability of default interest provisions in a commercial, nonconsumer contract liquidating the damages for the breach of contract is analyzed under Code of Civil Procedure Section 1671(b), which provides that "a provision in a contract liquidating the damages for the breach of contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

A provision is unreasonable "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from the breach." *Ridgley v. Topa Thrift & loan Assn.*, 17 Cal 4th 970, 977; see also *Weber, Lipshie & Co. v. Christian,* 52 Cal.App.4th 645, 654-655 (1997) ("Weber"); *Poseidon Development, Inc. v. Woodland Lane Estates*, *LLC,* 152 Cal App.4th 1106, 1115 (2007).  In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.'" *Ridgley*, 17 Cal.4th at 977. See also *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1314 (2005).

The burden of proof that the default provisions were not reasonable based on circumstances existing at the time of the contract is on the party seeking to invalidate the provisions. Valid liquidated damage "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.*, 9 Cal.3d 731, 739 (1973) (superseded by statute on other grounds).

9

1    A provision is "unreasonable" and is accordingly invalid if it (1) "is measured

2  against the unpaid balance of the loan" (Ridgley, at p. 978), or (2) it works in conjunction

3  with "an enhanced interest rate on the event a payment is not made on time" (*Poseidon*

4  *Development*, at p. 1115.)  Although the most recent payoff demands do not indicate the

5  amount of the default interest, this is an extra amount, in addition to late fees, and the

6  15% maturity penalty. The default interest is both measured against the principal balance

7  of the loan: and accompanied by an enhanced interest rate."

8    The Courts have found that "an amount disproportionate to the anticipated

9  damages is termed a "penalty." A contractual provision imposing a 'penalty' is

10 ineffective, and the wronged party can only collect the actual damages sustained." *Perdue*

11 *v. Crocker Nat'l Bank*, 38 Cal.3d 913, 931 (1985); see also *Ridgley, supra*, 17 Cal.4th at

12 977-78 "[A]ny provision by which money or property would be forfeited without regard

13 to the actual damage suffered would be an unenforceable penalty." [citations omitted]).

14    In *Poseidon*, the Court noted that at the time of the contract in that case, it was

15 reasonable to assume the parties contemplated a late payment in Poseidon's loss of use of

16 the amount due. But the contract also contained a provision granting Poseidon an

17 enhanced interest rate in the event a payment is not made on time which would

18 compensate would more than compensate Poseidon for the loss of use of the money.  The

19 purpose of the late charge was to compensate Poseidon for administrative expenses.  The

20 Court found that a late charge provision covering administrative expenses amounting to

21 $614,67 for one late payment and $77,614.67 for the final late payment was not a

22 reasonable attempt to estimate administrative costs incurred. The Court concluded

23 Poseidon was not entitled to late charge as an element of damages.

24    According to Blacks's law Dictionary 1247 (9th ed. 2009) a penalty is "an extra

25 charge against a party who violates a contractual provision." "A penalty is a sum which a

26 party . . . agrees to pay or forfeit in the event of a breach, but which is designed to prevent

27

28

10

the breach, or as *security,* where the sum is deposited or the covenant to pay is joined in

by one or more sureties, to insure that the person injured shall collect his actual damages.

According to the California Supreme Court "[a] penalty provision operates to compel performance of an act [citation and usually becomes effectively only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. *Ridgley, supra,* 17 Cal.4th at p. 977.

In *Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern California, Inc*., 135 Cal.App.4th 1023, 1036 (2006), the court stated "If the amount charged is designed to greatly exceed the lender's damages, then its primary purpose is to compel prompt payment by the threat of charges that bear little or no relationship to the lender's actual loss. As a result, it is a penalty."  Thus, if the late penalty is so harsh that no reasonable person would pay late if given the choice, the provision's purpose is "to hold over . . . the larger liability as a threat to induce prompt payment of the lesser sum" and it is "unenforceable as a penalty." *Sybron v. Clark Hosp. Supply Corp*, 76 Cal.App.3d 896, 901 (1978).

This Court referenced *East West Bank v. Altadena Lincoln Crossing, LLC,* 598 B.R. 633 (C.D.Cal. 2019) a recent decision by the United States District Court Central District of California where the Court reversed a bankruptcy order disallowing default interest in a commercial loan after the loan matured. Interpreting California law the District Court found Civil Code Section 1671(b) did not apply relying on an 1894 California Supreme Court decision in *Thompson v. Gorner*, 104 Cal.168, 37 P. 900 (1894) reaffirmed in *Garrett, supra*, 9 Cal.3d at 737. Thompson and Garret on this matter are distinguishable as those cases involved situation where the loans had matured and the borrower did not satisfy their obligation. The California Courts found no enforceable

11

penalty but rather the agreement provided for alternative performance in that instance which was not subject to Section 1671(b) analysis. *Id*., *East West Bank*, 598 B.R. at 640.

This case involved a default interest provision in a loan funding a residential property, where Debtor was more than 30 days late on her interest only payments. The note provided for both a late charge of 10% of the $13,320.00 monthly payment or a $1,320.00 late charge. The interest rate on the Note was 9.8%, however the Special Requirements Rider to Note also provided for default interest of an additional 10% over the contract rate if the payment was more than 30 days late. Motion, Ex. 1.p. 32.

Debtor intends to challenge this doubling of interest on default, particularly in conjunction with a 10% late charge on the monthly payment as an impermissible penalty under Cal. Civil Code §1671(b). In addition, under the circumstances, Debtor also believes there is a substantial basis for challenging this default interest as an unconscionable clause in the contract under Cal. Civil Code §1670.5. See e.g. *Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App. 4th 846 (2001), *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, (Cal. 2012) 55 Cal. 4th 223, 246-247 (2012).

The issue of the validity of the default interest provision in this case is relevant to the Motion before the Court as it would reduce the amount of Movant's claim and increase its equity cushion and the questions as to whether Movant's interests are adequately protected. 11 U.S.C. § 362(d)(1).

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court deny the Motion and at least afford Debtor a reasonable time to sell the Property.

Dated:  September 21, 2019                          Totaro & Shanahan


                                                   By  /s/ Michael R. Totaro
                                                   Michael R. Totaro
                                                   Attorneys for Debtor

# DECLARATION OF MICHAEL R. TOTARO

I, Michael R. Totaro, declare:

1.       I am an attorney at law duly licensed to practice before this Court and as partner in the law firm of Totaro & Shanahan, proposed new attorney for Debtor and Debtor in Possession in the above entitled chapter 11 bankruptcy case filed on July 17, 2019. I have personal knowledge of the following facts including my personal review of relevant documents and if called as a witness, I could and would testify competently thereto.

2.       At the outset, I am requesting that the Court accept this Supplemental Response to The Motion For Relief from Stay (the "Motion") filed by Movant Alliance which is being filed late. I have been involved in the case for about ten days and there has been a lot of work to do to get up to speed as well as correct some issues and analyze the situation and move forward.

3.       I did not initially realize that prior counsel basically did not file any real opposition to the Motion until I was able to completely review the documents filed. I am still reviewing some documents but discovered prior counsel did not even address the issues raised in the Motion. I felt that in order to represent Debtor properly the supplemental response should include Debtor's position.

4.       I had a very busy week being in court almost every day and then having to focus on this case along with other matter. I was in court all morning last Thursday for a chapter 13 confirmation hearng and when I left court early in the afternoon I had to file a status report in this case because I was not available all day on Friday due to medical procedures. While I started this response to the Motion, I was unable to complete this on Thursday evening.  I asked my partner to finish this a response however she was working on finishing a response on another motion due Thursday.

13

5.     Since we were not able to get this completed yesterday, we worked together today to complete this Supplemental Response.  I believe debtor was hampered by the lack of a response to the issues raised.

6.     Based on the foregoing I am respectfully requesting the Court accept this late filed document.

7.     In reviewing the Motion and the Promissory Note and Deed of Trust, related to the Debtor's property located at 336 Sweetzer Ave., Los Angeles, CA 90048 (the "Property") I believe there is a valid challenge to the addition of 10 % default interest as well as a 10% late charge on any late interest payment on Movant's loan.

8.     While the validity of such default interest as a penalty will be subject to a Motion to Disallow once Alliance files a proof of claim it also has an impact on the amount Debtor owes Alliance and its equity cushion and puts Movant in the range of matters where the equity cushion is a basis for adequate protection. The Response addresses this and includes a brief discussion of the law pertaining to default interest relative to this case.

9.     In completing the Court Form Response to the Motion, the figures used  as to what is owed are not exact but I believe they are a close approximation of the actual amounts owed.

10.     In the time since the last hearing, I hve spent a lot of time discussing the case with various lenders attempting to find the best options for Debtor for refinancing After discovering a conflict with Debtor's real estate agents, new agents have been retained and employment applications filed with the intention of aggressively marketing the Property at its actual value.

11.     We also discovered that documents Debtor provided to prior counsel were not forwarded to the United States Trustee, leading to compliance issues.

12.     We have arranged for Debtor to obtain $50,000 for Alliance to cure the post petition default and provide adequate protection while the Property is being

14

1  marketed for sale which should give her 90 days to sell the Property. This is all

2  explained in the Status Report filed on September 18, 2019 as Docket No. 69.

3      13.    Other efforts to move the case forward are also listed in the Status Report

4  and are not specifically to the Motion.

5      I declare under penalty of perjury that the foregoing is true and correct. Executed

6  on September 21, 2019 at Los Angeles, CA .

7

8                                          /s/ Michael R. Totaro

9                                          Michael R. Totaro

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          15

# <u>DECLARATION OF ASHLEY S. AARONS</u>

I, Ashely S. Aarons, declare:

1.      I am the debtor and Debtor in Possession in this Chapter 11 bankruptcy case which was filed on July 17, 2019. I have personal knowledge of the following facts and if called to testify I would and could competently testify thereto.

2.      Unfortunately I have had minimal contact with my prior attorney and was not prepared for all the requirements of a Debtor in Possession.

3.      In the petition the value of the Property was listed as $2,600,000, however my prior attorney and real estate agents who I now understand had a conflict of interest, persuaded me to sign a listing agreement to sell my real property located at 336 Sweetzer Ave., Los Angeles, CA 90048 (the "Property") for $2,190,000.00. I was consistently advised I would never get an offer at the value I believed was accurate.

4.      Before the hearing on the Motion for Relief from Stay ("Motion") filed by Alliance Portfolio Private Equity Finance, Inc. ("Alliance"), I was provided the declaration attached and basically told I needed to sign. This related to an offer to buy the Property, however that offer was $2,050,000.00 and we did not enter into an agreement as it was way below market value. I learned the prospective purchaser was a close relative of a creditor of mine.

5.      After my prior attorney's employment was not approved I retained Michael R. Totaro and Totaro & Shanahan as new counsel. This was just prior to the hearing on September 10, 2019 on the Alliance motion

6.      I obtained an appraisal of the Property from a certified appraiser, Jed. L. Wiltchik, the owner of Wiltchik Appraisals, Inc. dated September 10, 2019. Mr. Wiltchik provided me with a copy of his appraisal which determined the market value of the Property as $2,500,000.00 which is more in line with the value, I believed to be accurate based on my personal knowledge of home values in the area and the value listed in the

16

schedules. A true and correct copy of the appraisal I received with the appraiser's opinion of value is attached hereto as Exhibit A and incorporated herein by reference.

7.    Since new counsel was retained we have been working together and counsel has been negotiating with various parties to find a means to refinance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 21 2019 at Costa Mesa, CA.

_____

Ashely S. Aarons

17

**Cover Letter - Page 1**



September 9, 2019

Ashley S Aarons 2015 Trust
984 Bel Air Road
Los Angeles, CA. 990077

    RE:    Appraisal of a 2,560± SF DETACHED SINGLE-STORY RESIDENTIAL PROPERTY
             336 N Sweetzer Avenue (APN# 5514-009-034)
             Los Angeles, Los Angeles County, California, 90048-2602

At your request and authorization, Wiltchik Appraisal Inc. (WA) has prepared a full residential appraisal summary report of the fair market value of the Fee Simple interest in the above-referenced real property "As Is". The subject property is more fully described, legally and physically, within the enclosed report.

Data, information, and calculations leading to the value conclusion are incorporated in the report following this letter. The report, in its entirety, including all assumptions and limiting conditions, is an integral part of and inseparable from this letter.

Based on the foregoing analysis, it is concluded that the "As Is" market value of the Fee Simple interest in the subject property as of September 8, 2019 is:

**TWO MILLION FIVE HUNDRED THOUSAND DOLLARS**
**($2,500,000 or $976.56/sf)**

Form SCNLTR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Case 2:19-bk-18316-NB    Doc 72    Filed 09/21/19    Entered 09/21/19 15:01:23    Desc
Main Document    Page 22 of 55
Cover Letter - Page 2

Main File No. 09SEPT2019AARONS  Page #2



**WILTCHIK APPRAISAL INC.**

**Pg. 2**

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value.  The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, our interpretation of the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute, and The Financial Institution Reform, Recovery, and Enforcement Act of 1989 (FIRREA) and Title XI Regulations.

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if WA can be of further service, please do not hesitate to contact us.

Respectfully Submitted,

**WILTCHIK APPRAISAL INC.**

by:

Jed L. Wiltchik, CREA, CGBP, CCAC
Owner/Chief Appraiser
Certified Green Building Professional
Wiltchik Appraisals Inc.
CA State Certification No. AR032751
EXP 02/21/2020

Form SCNLTR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

| Borrower/Client | ASHLEY AARONS | | | File No. 09SEPT2019AARONS |
| Property Address | 336 N Sweetzer Ave | | | |
| City | Los Angeles | County Los Angeles | State CA | Zip Code 90048 |
| Lender | Private Use Report | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This Report is one of the following types:**

☒ **Appraisal Report** (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Restricted Appraisal Report** (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
— Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided any significant real property appraisal assistance in the form of property inspection and comparable sales research to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Reasonable Exposure Time
(USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
**My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:**
**Estimated to be between one (3) three to six (6) months. The "exposure time" and "marketing time" for the subject property are estimated to be the same.**

## Comments on Appraisal and Report Identification
**Note any USPAP-related issues requiring disclosure and any state mandated requirements:**
**DIGITAL SIGNATURES**: This report may contain digitally-reproduced signatures, which are approved by FNMA,GNMA, FHA, and HUD. The WINTOTAL appraisal software program allows an appraiser to attach a digitally-reproduced signature by entering a secret password known only to the signing appraiser. Furthermore, after the report is digitally signed, it is locked and cannot be altered by anyone but the signing appraisers. The appraisers accept full responsibility for this appraisal report.

**DIGITAL PHOTOGRAPHS**: This report may contain digitally-reproduced photographs, which are approved by FNMA, GNMA,FHA, and HUD. The photos have not been altered or enhanced in anyway that would misrepresent the property or mislead the intended user of this report. The appraisers and Jed Wiltchik accept full responsibility for this appraisal report.

**APPRAISER:** | **SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:
Name:  JED L. WILTCHIK
CERTIFIED REAL ESTATE APPRAISER
State Certification #:  AR032751
or State License #:
State:  CA    Expiration Date of Certification or License:  02/21/2020
Date of Signature and Report:  09/10/2019
Effective Date of Appraisal:  09/09/2019
Inspection of Subject: ☐ None ☒ Interior and Exterior ☐ Exterior-Only
Date of Inspection (if applicable):  09/09/2019

Signature:
Name:
State Certification #:
or State License #:
State:    Expiration Date of Certification or License:
Date of Signature:
Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only
Date of Inspection (if applicable):

MILTCHIK APPRAISALS (949) 378-8624   Main File No. 09SEPT2019AARONS   Page #4

336 N SWEETZER AVE
File # 09SEPT2019AARONS

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address  336 N Sweetzer Ave | City  Los Angeles | State  CA | Zip Code  90048 |

Borrower  ASHLEY AARONS   Owner of Public Record  ASHLEY AARONS S 2015 TRUST   County  Los Angeles

Legal Description  TRACT # 4353 LOT 7

Assessor's Parcel #  5514-009-034   Tax Year  2018   R.E. Taxes $  17,891

Neighborhood Name  Beverly Hills Flats   Map Reference   Census Tract  1945.00

Occupant ☐ Owner ☐ Tenant ☒ Vacant   Special Assessments $  286   ☐ PUD   HOA $ 0   ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  ASCERTAIN CURRENT FAIR MARKET VALUE

Lender/Client  Private Use Report   Address

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s).  DOM 59;THE SUBJECT IS A CURRENT LISTING WITH AN MLS#19488532 AND A LIST

PRICE OF $2,199,000. MLS/REALIST/ AIRDS/INSPECTION.

I ☐ did ☒ did not analyze the contract for sale or why the analysis was not performed.

**CONTRACT**

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE | AGE | One-Unit | 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 1,400 Low | 1 | Multi-Family | 5 % |
| Neighborhood Boundaries  (N) SANTA MONICA BLVD. ,(S) WILSHIRE BLVD. ,(E) N LA BREA AVE, | | | | | | 4,000 High | 97 | Commercial | 10 % |
| (W) N LA CIENEGA BLVD. | | | | | | 2,248 Pred. | 65 | Other | 5 % |

Neighborhood Description  SEE ATTACHED SUPPLEMENTAL ADDENDUM.

Market Conditions (including support for the above conclusions)  SEE ATTACHED SUPPLEMENTAL ADDENDUM.

**SITE**

Dimensions  SEE ATTACHED PLAT MAP   Area  6,503 sf   Shape  RECTAGULAR   View  N;Res;

Specific Zoning Classification  LAR1   Zoning Description  SINGLE FAMILY RESIDENTIAL (LOW DENSITY)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street  ASPHALT | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley  NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone  X   FEMA Map #  06037C1605F   FEMA Map Date  09/26/2008

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

NO ADVERSE OR APPARENT EASEMENTS WERE NOTED DURING THE TIME OF INSPECTION.

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | RAISED/AVE+ | Floors | Hd Wood/Tile/Good |
| # of Stories  1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | STUCCO/AVE+ | Walls | DRYWALL/GOOD |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area  0  sq.ft. | | Roof Surface | COMP/GOOD | Trim/Finish | WD/PAINT/GOOD |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish  0  % | | Gutters & Downspouts | VINYL/AVE+ | Bath Floor | TILE/STN/GOOD |
| Design (Style)  Traditional | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | DUAL PANE /AVE+ | Bath Wainscot | TILE/STN/GOOD |
| Year Built  1966 | | Evidence of ☐ Dampness ☒ Settlement | N | Storm Sash/Insulated | NONE | Car Storage | None |
| Effective Age (Yrs)  25 YEARS | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Screens | YES/AVERAGE+ | ☒ Driveway  # of Cars  3 |
| Attic ☐ None | | ☐ Other   Fuel | | Amenities ☐ Woodstove(s) # 0 | | Driveway Surface  Paver |
| ☐ Drop Stair ☐ Stairs | | Cooling ☒ Central Air Conditioning | | ☒ Fireplace(s) #  1 ☒ Fence  Wood | | ☐ Garage  # of Cars  2 |
| ☐ Floor ☐ Scuttle | | ☐ Individual ☒ Other  C. FAN | | ☒ Patio/Deck  Trav. ☒ Porch  Travertine | | ☐ Carport  # of Cars  0 |
| ☐ Finished ☐ Heated | | | | Pool  NONE  ☐ Other | | ☐ Att. ☐ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:  7 Rooms  4 Bedrooms  3.0 Bath(s)  2,560 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  DUAL PANE WINDOWS, CEILING FANS AND ENERGY EFFICIENT APPLIANCES NOTED AT TIME OF INSPECTION.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  C2;Kitchen-updated-one to five years ago;Bathrooms-updated-one to five years ago;PROPERTY APPEARS TO BE IN OVERALL GOOD CONDITION. THERE WAS MINIMAL DEFERRED MAINTENANCE NOTED BY THE APPRAISER AT THE TIME OF THE PHYSICAL INTERIOR AND EXTERIOR  INSPECTION.

*ESTIMATED REMAINING ECONOMIC LIFE OF THE SUBJECT IS 55 YEARS WITH AN EFFECTIVE AGE OF 25 YEARS. SEE ADDITIONAL COMMENTS IN ADDENDUM.*

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

336 N SWEETZER AVE
File # 09SEPT2019AARONS

# Uniform Residential Appraisal Report

| There are | 14 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,595,000 to $ 3,100,000 . |
| There are | 33 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,400,000 to $ 4,000,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 336 N Sweetzer Ave | 366 N Kilkea Dr | | 428 N Laurel Ave | | 114 S Kilkea Dr | |
| | Los Angeles, CA 90048 | Los Angeles, CA 90048 | | Los Angeles, CA 90048 | | Los Angeles, CA 90048 | |
| Proximity to Subject | | 0.19 miles E | | 0.33 miles NE | | 0.30 miles SE | |
| Sale Price | $ | | $ 2,372,500 | | $ 2,400,000 | | $ 2,750,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 977.14 sq.ft. | | $ 1065.72 sq.ft. | | $ 1023.45 sq.ft. | |
| Data Source(s) | | MLS#19480336;DOM 5 | | MLS#19431714;DOM 88 | | MLS#19430638;DOM 22 | |
| Verification Source(s) | | INSPECTION/REALQUEST | | INSPECTION/REALQUEST | | INSPECTION/REALQUEST | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | Cash;0 | | Cash;0 | |
| Date of Sale/Time | | s07/19;c06/19 | 0 | s05/19;c05/19 | 0 | s04/19;c02/19 | 0 |
| Location | N;Mid-Block; | N;Mid-Block; | | N;Mid-Block; | | N;Mid-Block; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,503 sf | 6,293 sf | 0 | 6,540 sf | 0 | 6,295 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Traditional | DT1;Traditional | | DT1;Traditional | | DT1;Traditional | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 53 | 93 | 0 | 94 | 0 | 88 | 0 |
| Condition | C2 | C2 | -50,000 | C2 | -30,000 | C2 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7  4  3.0 | 7  3  3.0 | +10,000 | 8  4  4.0 | -10,000 | 8  3  3.1 | +5,000 |
| Gross Living Area | 2,560 sq.ft. | 2,428 sq.ft. | +16,500 | 2,252 sq.ft. | +38,500 | 2,687 sq.ft. | -15,875 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | Fau/Cac/Fans | Fau/Cac/Fans | | Fau/Cac/Fans | | Fau/Cac/Fans | |
| Energy Efficient Items | Updated Wind. | Updated Windw | | Updated Windw | | Updated Windw | |
| Garage/Carport | 2ga3dw | 2ga3dw | | 2ga3dw | | 3dw | |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | Patio/Porch | |
| Fireplace(s) | 1 FIREPLACE | NONE | +5,000 | 2 FIREPLACES | -5,000 | 1 FIREPLACE | |
| POOL/SPA/CABANA/BBQ | No/No/No/No | No/No/No/No | | Yes/Yes/Yes/No | -100,000 | Yes/Yes/Yes/No | -100,000 |
| ASSESSOR PARCEL NUMBER# | 5514-009-034 | 5514-007-001 | 0 | 5527-033-008 | 0 | 5511-021-004 | 0 |
| Net Adjustment (Total) | | + ☐ - ☒ | $ -18,500 | + ☐ - ☒ | $ -106,500 | + ☐ - ☒ | $ -110,875 |
| Adjusted Sale Price | | Net Adj. 0.8 % | | Net Adj. 4.4 % | | Net Adj. 4.0 % | |
| of Comparables | | Gross Adj. 3.4 % $ | 2,354,000 | Gross Adj. 7.6 % $ | 2,293,500 | Gross Adj. 4.4 % $ | 2,639,125 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain **THE LAST RECORDED MARKET**

**TRANSFER WAS AN ARMS LENGTH TRANSACTION RECORDED ON 03/09/2017 WITH A GRANT DEED DOCUMENT #522171 AND A PURCHASE PRICE OF $1,240,000. THE SUBJECT HAS NOT BEEN SOLD WITHIN THE PAST THREE YEARS.**

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)   PUBLIC RECORDS/CRMLS/REALQUEST/LAWYERS TITLE

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)   PUBLIC RECORDS/CRMLS/REALQUEST/LAWYERS TITLE

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | MLS/RQ/LAWYERS TITLE | MLS/RQ/LAWYERS TITLE | MLS/RQ/LAWYERS TITLE | MLS/RQ/LAWYERS TITLE |
| Effective Date of Data Source(s) | 09/09/2019 | 04/23/2019 | 04/23/2019 | 04/23/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales   **THE LAST RECORDED MARKET TRANSFER WAS AN ARMS LENGTH TRANSACTION RECORDED ON 03/09/2007 WITH A GRANT DEED DOCUMENT #522171 AND A PURCHASE PRICE OF $1,240,000. THE SUBJECT HAS NOT BEEN SOLD WITHIN THE PAST THREE YEARS. COMPARABLE SALES #1-4 DID NOT HAVE ANY RECORDED OR REPORTED PRIOR SALES TRANSACTIONS WITHIN THE LAST 12 MONTHS.**

Summary of Sales Comparison Approach   **THE COMPARABLE SALES WERE SELECTED BY THE FOLLOWING SPECIFIC SEARCH PARAMETERS:  ALL COMPARABLES UTILIZED ARE RECORDED CLOSED/SETTLED SALES WITHIN SIX MONTHS PRIOR TO THE EFFECTIVE DATE OF THIS APPRAISAL REPORT.  THEY ARE ALL LOCATED WITHIN THE SUBJECT'S IMMEDIATE LOS ANGELES NEIGHBORHOOD/MARKET AREA WITHIN A TWO MILE RADIUS FROM THE SUBJECT'S LOCATION.  THEY ALL BRACKET THE SUBJECT'S AMENITIES, TOTAL GROSS LIVING AREA AND ROOM COUNTS. SEE ATTACHED SUPPLEMENTAL ADDENDUM FOR ALL APPLIED ADJUSTMENT DETAILS.**

Indicated Value by Sales Comparison Approach $   2,630,000

| Indicated Value by: Sales Comparison Approach $ 2,630,000 | Cost Approach (if developed) $ 2,500,156 | Income Approach (if developed) $ 2,485,000 |

**The Sales Comparison Approach has an adjusted sales price of comparable sales ranging from $2,293,500 - $2,632,625. The "As-is" fair market value of $2,500,000 falls within this range.**

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   NONE MADE.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 2,500,000 , as of 09/09/2019 , which is the date of inspection and the effective date of this appraisal.

336 N SWEETZER AVE
File # 09SEPT2019AARONS

# Uniform Residential Appraisal Report

**CONDITIONS AND REQUIREMENTS OF APPRAISAL:**

There are no conditions or requirements made to this report.  The subject is valued on an "as-is" basis.  A preliminary title report was not provided for review.  It is an assumption of this appraisal that the owner of the subject property has clear and marketable title.

The appraiser's inspection of the property was limited to what was readily observable without moving carpets and furniture.  The appraiser did attempt to view all attic and crawl spaces where applicable.  Unless otherwise stated, the appraiser did not view any other areas that would involve the use of special equipment.  The appraiser's viewing of the property was limited to surface areas only and can often be compromised by landscaping or even weather conditions.  Most importantly, the appraiser's inspection of the property is far different from and much less intensive than the type of inspection performed to discover property defects.  The appraiser is not a home inspector, building contractor, pest control specialist or structural engineer.  An appraisal is not a substitute for a home inspection or an inspection by a qualified expert in determining issues such as, but not limited to, foundation settlement or stability, moisture problems, wood destroying(or other) insects, rodents or pests, radon gas or lead-based paint.  The client is invited and encouraged to employ the services of the appropriate experts to address any area of concern.

**ADDITIONAL COMMENTS**

Use of Cost Approach for Insurance Purposes:

Replacement cost figures used in developing the cost approach are for valuation purposes only.  No one, client or third party, should rely on these figures for insurance purposes.  The definition of "market value" on page four of this form is not consistent with definitions of "insurable value".  Actual reconstruction  costs can easily exceed the replacement cost figures used in this appraisal.
**\*\*\*\*COST FIGURES NOT DEEMED APPROPRIATE FOR  INSURANCE PURPOSES. CLIENT SHOULD ENGAGE INSURANCE SPECIALIST FOR ACCURATE QUOTE ON COVERAGE\*\*\*\***

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   THE FOLLOWING REPLACEMENT COST ESTIMATE IS PROVIDED BY MARSHALL & SWIFT COST VALUATION AND LOCAL BUILDERS ESTIMATES.  SITE VALUE IS ESTIMATED BY THE ABSTRACTION/ALLOCATION METHOD.

**COST APPROACH**

| | | |
|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE .............................=$ | 1,820,000 |
| Source of cost data   MVS COST DATA SECTION 12 / PAGE 27 | DWELLING     2,560  Sq.Ft. @ $     240.00     =$ | 614,400 |
| Quality rating from cost service   GOOD    Effective date of cost data  CURRENT | 0  Sq.Ft. @ $     =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Upgrade's & Finishes     =$ | 275,000 |
| The high demand for sites in the Los Angeles County area, coupled with | Garage/Carport     430  Sq.Ft. @ $     70.00     =$ | 30,100 |
| the diminished supply of vacant land has resulted in site values exceeding | Total Estimate of Cost-New     =$ | 919,500 |
| normal percentages of the total property value and does not adversely | Depreciation     287,344 | Physical | Functional | External |     =$( | 287,344) |
| effect marketability.  Physical age is determined by the age/life method. | | | | |
| \*\*\*\*COST FIGURES NOT DEEMED APPROPRIATE FOR | Depreciated Cost of Improvements     =$ | 632,156 |
| INSURANCE PURPOSES. CLIENT SHOULD ENGAGE INSURANCE | "As-is" Value of Site Improvements     =$ | 48,000 |
| SPECIALIST FOR ACCURATE QUOTE ON COVERAGE\*\*\*\* | | |
| Estimated Remaining Economic Life (HUD and VA only)    55 Years | INDICATED VALUE BY COST APPROACH .............................=$ | 2,500,156 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

**INCOME**

| | | | | | |
|---|---|---|---|---|---|
| Estimated Monthly Market Rent $    7000 | X Gross Rent Multiplier     355 | = $     2,485,000 | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)     SUBJECT IS CURRENTLY RENTED FOR $7,500/MONTH. THE SUBJECT'S MARKET RENTAL RATES RANGE FROM $4900 TO $12500 WITH A MEDIAN RENT OF $7,000 IN THE SUBJECT'S AREAS.

## PROJECT INFORMATION for PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?     ☐ Yes  ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?     ☐ Yes   ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?     ☐ Yes   ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?     ☐ Yes   ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?     ☐ Yes   ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Main File No. 09SEPT2019AARONS  Page #7

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Main File No. 09SEPT2019AARONS   Page #8

## Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:**   The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

336 N SWEETZER AVE
File # 09SEPT2019AARONS

## Uniform Residential Appraisal Report

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report  was  prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   JED L. WILTCHIK | Name |
| Company Name   WILTCHIK APPRAISAL INC. | Company Name |
| Company Address   6 PRESTON | Company Address |
| IRVINE, CA 92618 | |
| Telephone Number   (949) 378-8834 | Telephone Number |
| Email Address   WILTCHIKAPPRAISALS@GMAIL.COM | Email Address |
| Date of Signature and Report   09/10/2019 | Date of Signature |
| Effective Date of Appraisal   09/09/2019 | State Certification # |
| State Certification #   AR032751 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License   02/21/2020 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 336 N Sweetzer Ave | Date of Inspection |
| Los Angeles, CA 90048 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   2,500,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name  No AMC | **COMPARABLE SALES** |
| Company Name   Private Use Report | |
| Company Address | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Main File No. 09SEPT2019AARONS | Page #10

# Uniform Residential Appraisal Report

336 N SWEETZER AVE
File # 09SEPT2019AARONS

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 336 N Sweetzer Ave Los Angeles, CA 90048 | 439 N Laurel Ave Los Angeles, CA 90048 | | 459 N Crescent Heights Blvd Los Angeles, CA 90048 | | | |
| Proximity to Subject | | 0.30 miles NE | | 0.27 miles NE | | | |
| Sale Price | $ | $ | 2,670,000 | $ | 2,735,000 | $ | |
| Sale Price/Gross Liv. Area | $          sq.ft. | $  1004.14  sq.ft. | | $  1028.20  sq.ft. | | $          sq.ft. | |
| Data Source(s) | | MLS#19437268;DOM 22 | | MLS#NP19128985;DOM 97 | | | |
| Verification Source(s) | | INSPECTION/REALQUEST | | INSPECTION/REALQUEST | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | Listing | | | |
| Concessions | | Cash;0 | | | | | |
| Date of Sale/Time | | s04/19;c03/19 | 0 | Active | -82,050 | | |
| Location | N;Mid-Block; | N;Mid-Block; | | N;Mid-Block; | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 6,503 sf | 6,554 sf | 0 | 6,223 sf | 0 | | |
| View | N;Res; | N;Res; | | N;Res; | | | |
| Design (Style) | DT1;Traditional | DT1;Spanish | | DT1;Spanish | | | |
| Quality of Construction | Q3 | Q3 | | Q3 | | | |
| Actual Age | 53 | 85 | 0 | 91 | 0 | | |
| Condition | C2 | C2 | -35,000 | C2 | -65,000 | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | | Total | Bdrms. | Baths |
| Room Count | 7 | 4 | 3.0 | 7 | 3 | 3.0 | +10,000 | 8 | 4 | 3.0 | | | | | |
| Gross Living Area | 2,560 sq.ft. | 2,659 sq.ft. | -12,375 | 2,660 sq.ft. | -12,500 | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | 0sf | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Good | Good | | Good | | | |
| Heating/Cooling | Fau/Cac/Fans | Fau/Cac/Fans | | Fau/Cac/Fans | | | |
| Energy Efficient Items | Updated Wind. | Updated Windw | | SKYLIGHTS | -20,000 | | |
| Garage/Carport | 2ga3dw | 2gd3dw | | 2gd4dw | -2,500 | | |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | | |
| Fireplace | 1 FIREPLACE | 1 FIREPLACE | | 1 FIREPLACE | | | |
| POOL/SPA/CABANA/BBQ | No/No/No/No | No/No/No/No | | No/No/No/No | | | |
| ASSESSOR PARCEL NUMBER# | 5514-009-034 | 5514-006-045 | 0 | 5514-006-015 | 0 | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $  -37,375 | ☐ + ☒ - | $  -182,050 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj.      1.4 % | | Net Adj.      6.7 % | | Net Adj.      % | |
| of Comparables | | Gross Adj.   2.1 % | $  2,632,625 | Gross Adj.   6.7 % | $  2,552,950 | Gross Adj.   % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | | MLS/RQ/LAWYERS TITLE | MLS/RQ/LAWYERS TITLE | MLS/RQ/LAWYERS TITLE |
| Effective Date of Data Source(s) | | 09/09/2019 | 04/23/2019 | 09/09/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales    **THE LAST RECORDED MARKET TRANSFER WAS AN ARMS LENGTH TRANSACTION RECORDED ON 03/09/2007 WITH A GRANT DEED DOCUMENT #522171 AND A PURCHASE PRICE OF $1,240,000. THE SUBJECT HAS NOT BEEN SOLD WITHIN THE PAST THREE YEARS. COMPARABLE SALES #1-4 DID NOT HAVE ANY RECORDED OR REPORTED PRIOR SALES TRANSACTIONS WITHIN THE LAST 12 MONTHS.**

Analysis/Comments    **THE COMPARABLE SALES WERE SELECTED BY THE FOLLOWING SPECIFIC SEARCH PARAMETERS: ALL COMPARABLES UTILIZED ARE RECORDED CLOSED/SETTLED SALES WITHIN THE LAST SIX MONTHS WITH AT LEAST ONE WITHIN THE LAST 90 DAYS; THEY ARE ALL LOCATED WITHIN THE SUBJECT'S IMMEDIATE LOS ANGELES NEIGHBORHOODS AND SURROUNDING MARKET AREA, WITHIN A TWO MILE SEARCH RADIUS. THE COMPARABLE SALES 1-5 ARE ALL SIMILAR TO THE SUBJECT WITH REGARDS TO SIMILAR QUALITY OF CONSTRUCTION AND THEY BRACKET THE SUBJECT'S TOTAL ROOM COUNT AND GLA SIZE AND WILL ONLY VARY IN GLA BY 25% MAX. COMPARABLE SALE #5 IS A CURRENT ACTIVE LISTING AND WAS ADJUSTED DOWNWARDS BY 3% FOR LISTING STATUS. ALL OF THE COMPARABLE SALES ARE DEEMED THE BEST AVAILABLE AT THE TIME OF INSPECTION AND ARE DEEMED COMPARABLE TO THE SUBJECT AFTER ALL APPROPRIATE ADJUSTMENTS HAVE BEEN MADE. ALL OTHER COMMENTS AND ADJUSTMENT DETAILS ARE ADDRESSED IN THE ATTACHED ADDENDA SECTION OF THIS REPORT.**

Freddie Mac Form 70 March 2005                    UAD Version 9/2011                    Fannie Mae Form 1004 March 2005

Main File No. 09SEPT2019AARONS  Page #11

336 N SWEETZER AVE
File No.    09SEPT2019AARONS

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

**Condition Ratings and Definitions**

**C1**

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

*Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

**Quality Ratings and Definitions**

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Main File No. 893EP12019AKRONS   Page #12

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

### Quality Ratings and Definitions (continued)

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated**

**Little or no updating or modernization. This description includes, but is not limited to, new homes.**

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated**

**The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.**

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**

**Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.**

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

**Example:**
3.2 indicates three full baths and two half baths.

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

**Abbreviations Used in Data Standardization Text**

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

UAD Version 9/2011 (Updated 1/2014)

Main File No. 09SEPT2019AARONS    Page #14

**Supplemental Addendum**

File No. 09SEPT2019AARONS

| Borrower/Client | ASHLEY AARONS | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | | |
| City | Los Angeles | | County | Los Angeles | State | CA | Zip Code 90048 |
| Lender | Private Use Report | | | | | | |

**Neighborhood Description**

The subject is located in the City of Los Angeles, in Los Angeles County, California. This area is mainly comprised of detached single family residences of varying ages and architectural styles located on 5,000+ square foot lots. The properties in the neighborhood are generally above average to good condition with good market appeal and acceptance. Overall, the area has generally good access to schools, shopping, and all supporting services. Employment is available in Los Angeles and regionally; typical commutes range from 5 to 60 minutes. Commercial land uses tend to be located along major thoroughfares and are for support facilities; there is no adverse impact on the subject's marketability or market value.

**Neighborhood Market Conditions**

Per the multiple listing services (MLS), values for the market area appear to be stable as noted on page 1 of this report. Per Dataquick News this area has a year-over-year increase of 2.95%. Marketing times are typically 0-180 days, with many properties selling at or above the list price.

**Adverse Site Conditions**

The subject is located on a 6,503 square foot or 0.1493 acres residential mid-block located lot with one curb cut for parking and gated driveway access. There were no apparent adverse easements, encroachments or other adverse conditions noted at the time of the inspection or revealed through appraiser research. The subject is considered to be a legal conforming use and the subject's current use as a single family residence is its highest and best use. The subject is located in an X FEMA Flood Zone. Existing houses in special flood zones such as zones 'A' and 'V' require flood insurance. Flood zone information is for reference only and not for deciding whether flood insurance is needed. Please refer to local authority for definitive flood zone information.

**Additional Features**

The subject is located within the City of Los Angeles. The subject has a total of 2,560 square feet which consists of a one-story detached traditional style single family residential property. The subject features a front covered travertine porch entry, ceiling fans throughout, updated flooring throughout, updated bathrooms, updated chef's kitchen with high end appliances and custom buit-in's, recessed lights throughout, updated windows, a side ramp entry into kitchen french doors, a gated paver driveway with 3-car capacity in addition to the two-car attached driveway. The subject features a total of four bedrooms and three full bathrooms. At the time of inspection the subject property was not under any known purchase contracts. The subject property is considered to be of above average overall quality(Q3) and in good overall condition (C2).

**Comments on the Sales Comparison Approach**

*THE COMPARABLE SALES WERE SELECTED BY THE FOLLOWING SPECIFIC SEARCH PARAMETERS: ALL COMPARABLES UTILIZED ARE RECORDED CLOSED/SETTLED SALES WITHIN THE LAST SIX MONTHS WITH AT LEAST ONE WITHIN THE LAST 90 DAYS; THEY ARE ALL LOCATED WITHIN THE SUBJECT'S IMMEDIATE LOS ANGELES NEIGHBORHOODS AND SURROUNDING MARKET AREA, WITHIN A TWO MILE MILE SEARCH RADIUS. THE COMPARABLE SALES 1-4 ARE ALL SIMILAR TO THE SUBJECT WITH REGARDS TO SIMILAR QUALITY OF CONSTRUCTION AND THEY BRACKET THE SUBJECT'S TOTAL ROOM COUNT AND GLA SIZE AND WILL ONLY VARY IN GLA BY 25% MAX. COMPARABLE SALE #4 IS A CURRENT ACTIVE LISTING AND WAS ADJUSTED DOWNWARDS BY 5% FOR LISTING STATUS. ALL OF THE COMPARABLE SALES ARE DEEMED THE BEST AVAILABLE AT THE TIME OF INSPECTION AND ARE DEEMED COMPARABLE TO THE SUBJECT AFTER ALL APPROPRIATE ADJUSTMENTS HAVE BEEN MADE. ALL OTHER COMMENTS AND ADJUSTMENT DETAILS ARE ADDRESSED BELOW.*

### *Adjustment Factors*

CONDITION: Comparable Sale #2 featured superior overall condition and upgrades and was adjusted by $35,000 accordingly. Appraiser utilized information obtained through broker interview in addition to published data to calculate this nominal adjustment value.

GROSS LIVING AREA: Differences in gross living area greater than 30 square feet, relative to the subject, were adjusted at $125 per square foot. Room count adjustments were set at $10,000 per bedroom and bathroom.

POOL/SPA, CABANA/GUEST HOUSE, GARAGE/DRIVEWAY, SKYLIGHTS, FIREPLACES, ETC.:
Comparable Sales #1, 3 & 4 were all adjusted accordingly for differences in the above listed amenites. The adjustments are as follows:
In-ground swimming pool & Spa adjustment was set at $50,000.
Guest Suite/Cabana amenities adjustment was set at $40,000.
Differences in parking capacities were set at $5,000/garage space and $2,500/driveway space differences.
Differences in fireplace counts were set at $5,000/amenity difference and adjusted accordingly.
Differences in skylights/energy efficient amenities was set at $10,000 and adjusted accordingly.
**Appraiser utilized information obtained via broker interviews, published market data and Marshall & Swift Residential Cost Guidelines in calculating these adjustment values.**

**Final Reconciliation**

The Sales Comparison Approach was given the most weight in determining the final value estimate, as it best represents the actions of typical buyers and sellers in the market. The Cost Approach was not considered applicable due to the inability to accurately calculate the extent of the physical depreciation of the subject property, poor availability of accurate construction costs within the subject's market, and the lack of relevant land sales of similar sites.

**Additional Information**

PERSONAL PROPERTY: Personal property includes such items as furnishings, artwork, antiques, machinery and equipment. No personal property was included in the valuation of the subject property.

### Supplemental Addendum

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | |

FEMA FLOOD DATA: Readers/users of this appraisal must note that the FEMA flood hazard information noted herein (in regards to the subject) can not be guaranteed by the appraisers. The appraisers are not qualified experts in the determination of flood hazards and make no representation as to the FEMA flood zones or the necessity of flood insurance for the subject. The reader/user is advised to obtain a separate independent Flood Certification for the subject, if so desired. The appraisers have not examined the FIRM maps as published by FEMA, unless otherwise noted or included herein as an exhibit. Flood information noted in this appraisal was obtained from FARES services.

ZONING DATA: Zoning information was derived from Zimas & The City of Los Angeles building and zoning department and/or other sources deemed reliable. However the accuracy of the data can not be guaranteed.

COMPETENCY STATEMENT: The appraisers and Jed Wiltchik, have analyzed/appraised the subject's property type before. The appraisers and Jed Wiltchik possess the necessary knowledge and experience to complete this report in conformity with the competency provision of USPAP. The appraisers accept full and complete responsibility for the appraisal report.

**PURPOSE OF THE REPORT: The purpose of this report is to estimate the fair market "as-is" value of the subject property with an effective date of September 9, 2019 for private use purposes.**

FUNCTION (INTENDED USE) OF REPORT: The function of this report is for estate planning purposes. Any liability for any unauthorized use of this report is limited to the amount of the appraisal fee paid. Furthermore, the noted client, as indicated on the top of the appraisal form, may only use this report. This report may not be given to and may not be utilized by any third party. The appraisers and appraisal firm will have no obligation to reissue this report to any other party, other than stated above.

SCOPE OF WORK:
Jed Wiltchik maintains and utilizes many sources of real estate and economic information. Typical information sources for most markets includes the following - public records, MLS, appraisal files, internal data stores, U.S. Census data, Office of Federal Housing Enterprise market trend reports, National Association of Realtors Economic Indicators, construction cost handbooks, flood maps, lists and phone numbers of local realtors, as well as a variety of online tools such as realtor.com and loopnet.com.

The sources and data utilized in this report are considered reliable, however, cannot be guaranteed. When conflicting information is provided by multiple data sources, every reasonable attempt is made to reconcile conflicting information through additional research, including interviews with realtors active in market and/or one or more parties to the transaction. When possible all comparables have been verified as closed through at least two data sources. Please refer to the form for further discussion of the sources of data utilized. Comparables provided in the appraisal were considered the best available at the time of the appraisal. Pending sales and listing activity in the market is commonly reviewed, depending on the availability of recently closed transactions. The supply of inventory and the demand for properties in a given market as indicated by the number of closed sales is considered when the data is readily available and considered relevant to the level of risk. Property characteristics such as gross living area (GLA), bedroom/bathroom count, lot size, age, condition, quality, location, design/appeal, updating/remodeling, and market trends are taken into consideration in the valuation process. The most recent and relevant sales (best efforts are made to find sales that have closed within six months or more recently) are researched and presented in the appraisal report. Whenever sales have closed more than six months prior to the date of valuation and/or the sales are further away than is typical for many urban markets, a complete and thorough discussion is presented in the appraisal describing the comparable selection methodology.

REAL PROPERTY INTEREST DEFINED: A Fee Simple interest is defined as "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." [The Dictionary of Real Estate Appraisal, 3rd

DIGITAL SIGNATURES: This report may contain digitally-reproduced signatures, which are approved by FNMA,GNMA, FHA, and HUD. The Wintotal appraisal software program allows an appraiser to attach a digitally-reproduced signature by entering a secret password known only to the signing appraiser. Furthermore, after the report is digitally signed, it is locked and cannot be altered by anyone but the signing appraisers. The appraisers accept full responsibility for this appraisal report.

EXTRAORDINARY ASSUMPTION/HYPOTHETICAL CONDITION: It is assumed that permits are available for all structures (unless otherwise noted). It is assumed that the indicated zoning and type of utilities, are stated in the body of this report. It is assumed that this property has no unknown adverse geological issues. The physical characteristics of the comparables were either verified by county/city records, multiple listing service, Realquest, or by homeowner verification. The comparable sales used in this report are assumed to have no sales concessions (unless otherwise noted). The estimated cost to cure is assumed to be as stated. If any of these items are found to be not true and correct, I reserve the right to change my appraisal.

Main File No. 09SEPT2019AARONS  Page #16

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | |



### Subject Front View

| | |
|---|---|
| 336 N Sweetzer Ave | |
| Sales Price | |
| Gross Living Area | 2,560 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | N;Mid-Block; |
| View | N;Res; |
| Site | 6,503 sf |
| Quality | Q3 |
| Age | 53 |



### Rear View



### Subject's Street Scene

Main File No. 33SEPT2019AARONS  Page #17

## Photograph Addendum

| Borrower/Client | ASHLEY AARONS | | | | |
|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | |



**Alternate Front View of Subject**

Side View of Subject



**Exterior View of Subject**

View of Front Covered Porch



**View of Foyer**



**View of Dining Room**

Exhibit A
37

Form PIC6_LT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. 09SEPT2019AARONS    Page #18

## Photograph Addendum

| | | |
|---|---|---|
| Borrower/Client | ASHLEY AARONS | |
| Property Address | 336 N Sweetzer Ave | |
| City | Los Angeles    County  Los Angeles    State  CA    Zip Code  90048 |
| Lender | Private Use Report | |



**View of Kitchen**



**Alt View of Kitchen**



**View of Living Room**



**View of Dining**



**Full Bathroom**



**Bedroom 2**

Exhibit A

38

## Photograph Addendum

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | |



**View of Main Hallway**



**Bedroom 3**



**Bathroom in Bedroom 3**



**Master Bedroom**



**Master Bathroom**



**Rear View of Subject**

Exhibit A

Form PIC6_LT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

### Photograph Addendum

| | | | | |
|---|---|---|---|---|
| Borrower/Client | ASHLEY AARONS | | | |
| Property Address | 336 N Sweetzer Ave | | | |
| City | Los Angeles | County  Los Angeles | State  CA | Zip Code  90048 |
| Lender | Private Use Report | | | |



Subject's Central Air Compressor



Subject's Electric Meter



Subject's 2-Car Attached Garage



View of Gated Paver Driveway Facing Street



View of Front Yard



Gated Front Entry

Exhibit A

40

Main File No. 08SEPT2019AKRONS    Page #21

## Comparable Photo Page

| Borrower/Client | ASHLEY AARONS | | | | |
|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | |
| City | Los Angeles | County Los Angeles | | State CA | Zip Code 90048 |
| Lender | Private Use Report | | | | |



### Comparable 1

| | |
|---|---|
| 366 N Kilkea Dr | |
| Prox. to Subject | 0.19 miles E |
| Sales Price | 2,372,500 |
| Gross Living Area | 2,428 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | N;Mid-Block; |
| View | N;Res; |
| Site | 6,293 sf |
| Quality | Q3 |
| Age | 93 |



### Comparable 2

| | |
|---|---|
| 428 N Laurel Ave | |
| Prox. to Subject | 0.33 miles NE |
| Sales Price | 2,400,000 |
| Gross Living Area | 2,252 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.0 |
| Location | N;Mid-Block; |
| View | N;Res; |
| Site | 6,540 sf |
| Quality | Q3 |
| Age | 94 |



### Comparable 3

| | |
|---|---|
| 114 S Kilkea Dr | |
| Prox. to Subject | 0.30 miles SE |
| Sales Price | 2,750,000 |
| Gross Living Area | 2,687 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.1 |
| Location | N;Mid-Block; |
| View | N;Res; |
| Site | 6,295 sf |
| Quality | Q3 |
| Age | 88 |

| Borrower/Client | ASHLEY AARONS | | | | |
|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | |



### Comparable 4

| | |
|---|---|
| 439 N Laurel Ave | |
| Prox. to Subject | 0.30 miles NE |
| Sales Price | 2,670,000 |
| Gross Living Area | 2,659 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | N;Mid-Block; |
| View | N;Res; |
| Site | 6,554 sf |
| Quality | Q3 |
| Age | 85 |



| | |
|---|---|
| 459 N Crescent Heights Blvd | |
| | 0.27 miles NE |
| | 2,735,000 |
| | 2,660 |
| | 8 |
| | 4 |
| | 3.0 |
| | N;Mid-Block; |
| | N;Res; |
| | 6,223 sf |
| | Q3 |
| | 91 |

**Building Sketch**

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | |



TOTAL Sketch by a la mode, inc.

### Area Calculations Summary

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 2560 Sq ft | 18 × 24 = 432 | |
| | | 18 × 13 = 234 | |
| | | 42 × 41 = 1722 | |
| | | 21.5 × 8 = 172 | |
| **Total Living Area (Rounded):** | **2560 Sq ft** | | |
| Non-living Area | | | |
| 2 Car Attached Garage | 430 Sq ft | 21.5 × 20 = 430 | |
| Front Covered Porch | 164 Sq ft | 8 × 20.5 = 164 | |

Main File No. 69SEPT2019AARONS   Page #24

## Location Map

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code 90048 |
| Lender | Private Use Report | | | | | |



**Aerial Near**

| Borrower/Client | ASHLEY AARONS | | | | |
|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | |
| City | Los Angeles | County  Los Angeles | | State  CA | Zip Code  90048 |
| Lender | Private Use Report | | | | |



Main File No. 03SEPT2019AARONS  Page #26

**Aerial Far**

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | |



Main File No. 899SEPT2019AARONS  Page #27

## Assessor Parcel Map

| Borrower/Client | ASHLEY AARONS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | |



**Wiltchik Appraisal Services**



## WILTCHIK APPRAISAL INC.

**Wiltchik Appraisals is a full service valuation firm established in 2004 and is comprised of State Certified Appraisers that specialize in appraisal reports for mortgage lending and non-lending purposes. Our services encompass, but are not limited to the following assignment types:**

*- Single Family Residences & Condominiums (URAR 1004/1073)*
*- 2-4 Units (URAR 1025)*
*- Multi-Family Units (71-A & 71-B Forms & Narrative Reports)*
*- Vacant land Valuations (Residential & Commercial)*
*- Industrial/Office/Multi-Tenant Building Valuations in both (Form or Narrative Reporting formats)*
*- Prospective Value/ARV(After Rehab/Remodel Valuation) specialist.*
*- 706 IRS Valuation /Estate Planning/Private Use Valuations*
*- Partial (Undivided) Interest Valuation Specialist*
*- Detrimental Conditions Valuations (i.e. Diminished Property Value Reports)*
*- Marshall & Swift Certified Cost Approach/Replacement Cost Specialist*
*- IRS Gift tax valuations and Tax assessment valuations*
*- Complex Valuations Specialist (Airports/Marinas/Mixed-use Developments)*

**\*\*\*Jed Wiltchik is a Certified Green Building Professional (CGBP), a Certified Green Point Rater (CGPR), is Marshall & Swift Commercial Cost Approach Certified (CCAC) and is part of the Appraisal Institute Professional Development Appraiser Program for the Valuation of Sustainable Buildings and is on their Residential Registry\*\*\***

**\*\*\*Wiltchik Appraisals covers the Counties of Kern, Orange, Los Angeles, Riverside, San Bernardino, San Diego, Santa Barbara, San Luis Obispo, Ventura, Central Valley and the Bay Areas. Other Counties for assignments by request/engagement only\*\*\***

**FEE QUOTES & REPORT SAMPLES BY REQUEST ONLY. (949-378-8834)**



### JED L. WILTCHIK, CREA
PRESIDENT/SENIOR APPRAISER          Phone: 949-378-8834          Email: wiltchikappraisals@gmail.com

**Certified State License**

| Borrower/Client | ASHLEY AARONS | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | | |



Business, Consumer Services & Housing Agency

**BUREAU OF REAL ESTATE APPRAISERS**
**REAL ESTATE APPRAISER LICENSE**

**Jed L. Wiltchik**

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:    AR 032751

Effective Date:      February 22, 2018
Date Expires:       February 21, 2020

Jim Martin, Bureau Chief, BREA

3039348

### Green Building Professional Certification



Main File No. 03SEPT2019AARONS    Page #31

### Green Point Rater Certification

| Borrower/Client | ASHLEY AARONS | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | | |



**Commercial Cost Approach Certification**

| Borrower/Client | ASHLEY AARONS | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 336 N Sweetzer Ave | | | | | | |
| City | Los Angeles | | County | Los Angeles | State | CA | Zip Code | 90048 |
| Lender | Private Use Report | | | | | | |

## Certificate of Completion

This is to certify that

**Jed Wiltchik**

Successfully completed the in-person training and online course exam for the following:

## Marshall & Swift
## Commercial Cost Approach Certification

June 9, 2018
Date Completed

15 hours AQB
Course Duration w/Exam

**PASSED**

Al Negron, Education Specialist

Edward Martinez, Education Manager

**MARSHALL & SWIFT®**
Now Part of CoreLogic®

777 South Figueroa St, 12th Floor • Los Angeles, California 90017 • education@marshallswift.com

Main File No. 69 SEPT 2019 AARONS    Page #33

**E & O Insurance**



**GREAT AMERICAN.**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED**
**AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below:  (A capital stock corporation)

☒   Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:   **RAP4115454-19**                    Renewal of:   **RAP4115454-18**

Program Administrator:       **Herbert H. Landy Insurance Agency Inc.**
**75 Second Ave Suite 410  Needham, MA 02494-2876**

Item 1. **Named Insured**:       **Jed L. Wiltchik**

Item 2. **Address**:       **6 Preston**

City, State, Zip Code:       **Irvine, CA 92618**

Item 3. **Policy Period**: From   **01/24/2019**   To   **01/24/2020**
*(Month, Day, Year)*       *(Month, Day, Year)*
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability**:

A. $   **1,000,000**     **Damages** Limit of Liability – Each **Claim**

B. $   **1,000,000**     **Claim Expenses** Limit of Liability – Each **Claim**

C. $   **1,000,000**     **Damages** Limit of Liability – Policy Aggregate

D. $   **1,000,000**     **Claim Expenses** Limit of Liability – Policy Aggregate

Item 5. **Deductible** (Inclusive of **Claim Expenses**):

A. $   **500**     Each **Claim**

B. $   **1,000**     Aggregate

Item 6. **Premium**: $   **850.00**

Item 7. **Retroactive Date** (if applicable):   **01/24/2013**

Item 8. **Forms, Notices and Endorsements attached**:

**D42100 (03/15)  D42300 CA (10/13)  IL7324 (08/12)**
**D42413 (06/17)  D42412 (03/17)  D42408 (05/13)  D42402 (05/13)**

Betsy A. Ferguson
Authorized Representative

D42101  (03/15)                                Page 1 of 1

Form SCNLTR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

P.O. Bo 789, Pacific Palisades, CA 90272

SUPPLEMENTAL

A true and correct copy of the foregoing document entitled: **RESPONSE TO MOTION REGARDING THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 9/21/2019    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 9/21/2019    , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adver proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, an addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 ho after the document is filed.

Ashley Susan Aarons, 984 Bel Air Rd., Los Angeles, CA 90077

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

9/21/2019    Michael R. Totaro _____    /s/ Michael R. Totaro _____
*Date*          *Printed Name*                          *Signature*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. By Nef

- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com
- **Dare Law**    dare.law@usdoj.gov, ron.maroko@usdoj.gov;Alvin.mar@usdoj.gov
- **Alvin Mar**    alvin.mar@usdoj.gov
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Susan I Montgomery**    susan@simontgomerylaw.com,
  assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com;montgomerysr7
  1631@notify.bestcase.com
- **Donna T Parkinson**    donna@parkinsonphinney.com
- **Eric Ridley**    ridley.eric@gmail.com, r41626@notify.bestcase.com
- **Karel G Rocha**    krocha@pnbd.com, srichards@pnbd.com
- **Joshua L Scheer**    jscheer@scheerlawgroup.com
- **Valerie Smith**    claims@recoverycorp.com
- **Michael R Totaro**    Ocbkatty@aol.com
- **Todd L Turoci**    mail@theturocifirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com
- **Reilly D Wilkinson**    rwilkinson@scheerlawgroup.com