| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| James C. Bastian, Jr. - Bar No. 175415<br>Rika M. Kido - Bar No. 273780<br>**SHULMAN BASTIAN FRIEDMAN & BUI LLP**<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: JBastian@shulmanbastian.com<br>        RKido@shulmanbastian.com<br><br>☐ Individual *appearing without an attorney*<br>☒ *Attorney for:* Ashley Susan Aarons, Debtor in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| *In re:*<br><br>ASHLEY SUSAN AARONS<br>dba Coffee Dog Entertainment,<br><br><br><br><br><br><br>Debtor(s) | CASE NO.: 2:19-bk-18316-NB<br><br>CHAPTER: 11<br><br>**CHAPTER 11 DISCLOSURE STATEMENT DATED August 7, 2020**<br><br>Hearing/Status Conference<br>Date:         September 29, 2020<br>Time:        2:00 p.m.<br>Courtroom:  1545<br>Address:    255 E. Temple Street<br>                 Los Angeles, CA 90012 |

This Chapter 11 Disclosure Statement (Disclosure Statement) relates to the accompanying Chapter 11 Plan (Plan). The Plan proposes to restructure the financial affairs of the above-named Debtor. You may be entitled to vote on the Plan.

The voting rules are explained below, along with a summary of the Plan and other relevant information. This Disclosure Statement is explanatory only. The Plan will be the binding document, if it is confirmed by the court.

*Your rights may be affected. Read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one.)* Definitions and rules of construction are as set forth below and in the Plan.

### PART 1.  SUMMARY OF PLAN

**Article I of the Plan** divides creditors and interest holders into the following groups. The precise treatment proposed for each group is specified in Exhibit A to the Plan. What follows is only a summary. Please review the Plan carefully.

- **Unclassified claims**, such as costs of administering this bankruptcy case, generally are entitled to be paid in full on the Plan's Effective Date, which is defined in the Plan and should be a short time after the Plan is confirmed.

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2014*                                    Page 1                          **F 3017-1.CH11.DISCLSR.STMT**

- **Classes 1 and 2 – Secured Claims** (divided into subclasses 1A, 1B, 2A, 2B, etc.) consist of claims secured by Collateral (such as a mortgage/deed of trust secured by a house, a car loan secured by the car, or any other claim secured by a lien on property of the bankruptcy estate), which generally are entitled to be paid in full, over time, with interest.  Class 1 is reserved for claims secured *only* by real estate that is an individual Debtor's principal residence.  Class 2 contains all other secured claims.
- **Class 3 – Priority Claims** (divided into subclasses 3A, 3B, etc.) consists of "priority" unsecured claims (for example, wages due to employees that were earned, but unpaid, within 180 days before the bankruptcy petition was filed).
- **Class 4 – General Unsecured Claims** consists of "general" unsecured claims (claims that are not entitled to "priority" under the Bankruptcy Code and that are not secured by Collateral), which will receive, over time, the following estimated percentage of their claims (or fixed percentage, if the Plan so provides): <u>20%-100%</u>[1].  *Exception:* the Plan may designate a subclass of small "convenience class" claims which will be paid in full on the Effective Date, and in rare situations the Plan may designate additional unsecured subclasses.
- **Class 5 – "Interests":** if Debtor is an organization then "interests" means ownership interests – such as corporate stock, or a partner's interest in a partnership – and if Debtor is an individual, then Debtor is the interest holder.  This class will remain unchanged unless otherwise stated in the exhibits to the Plan or this Disclosure Statement.

**Article II of the Plan** governs "executory" contracts and unexpired leases (a contract is generally defined as executory when both Debtor and the other party to the contract have not yet fully performed their obligations, and the unperformed obligations of both parties are significant enough that either party's breach would excuse the other party from performing).  <u>Exhibit B</u> to the Plan specifies whether, on the Effective Date, each such contract or lease (a) will be "assumed" as an obligation of the reorganized Debtor (generally meaning that defaults will be cured and the agreement will be reinstated), or (b) will be assumed and then instantaneously assigned to a specified person, or (c) will be "rejected" (meaning that Debtor will no longer perform under the agreement, and the other party can file a claim for damages resulting from that rejection (§ 502(g)).

**Article III of the Plan** explains how Debtor will implement the Plan, and exhibits to this Disclosure Statement describe whether payments under the Plan will be made out of cash on hand, future income, sale(s) of property(ies), or other sources of funding, including supporting calculations.  If Debtor is an individual, and if any holder of an allowed unsecured claim objects, then the value of property to be distributed under the Plan must be not less than Debtor's projected disposable income for 5 years (60 months) from the first Plan payment, or for the total payment period under the Plan, whichever is longer (§ 1129(a)(15)).

**Article IV of the Plan** provides that Debtor will be discharged from existing debts as provided in § 1141(d).  Generally this means that (1) if Debtor is *not an individual* then the discharge occurs when the Plan is confirmed (except for a liquidating Plan), and (2) if Debtor *is an individual* then (a) the discharge will not occur unless and until Debtor completes all payments under the Plan (all payments for the Plan Term, as specified in <u>Exhibit A</u> to the Plan), unless the court orders otherwise in certain situations, and (b) Debtor will not be discharged from debts that are nondischargeable under § 523.  Article IV of the Plan also specifies certain

---

[1] In addition to receiving at least 20% from the Debtor's income stream, Class 4 general unsecured claims will also receive (1) 100% of any net recovery on the Alliance Litigation (defined in Exhibit H attached to this Disclosure Statement).  and (2) any funds remaining from monetary recoveries received from claims against the insurance carriers, including the Bad Faith Litigation (defined below), that are in excess of the costs needed to compensate the Debtor for out of pocket repairs, costs for repairs (as required by the lenders and all code requirements), attorneys' fees or fees to the Debtor's claims adjuster, and payments on any liens of secured creditors (collectively, "Litigation Funds").  Therefore, Class 4 general unsecured creditors may receive as much as 100% depending on the outcome of the Alliance Litigation.  Class 4 general unsecured creditors will be paid pro rata from the Litigation Funds, with a credit applied first for each creditor's 20% payment of their allowed claims and any additional amounts over the 20% payment and up to a 100% payment providing an additional payment and benefit to Class 4 general unsecured creditors.

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

effects of confirmation, including that creditors are prevented from attempting to collect preconfirmation obligations except in specific circumstances or in accordance with the terms of the Plan.

**Article V of the Plan** includes General Provisions, such as how the Plan can be modified, and a provision that if the Plan complies with certain technical rules then it can be confirmed even if one or more classes of creditors or interest holders vote to reject the Plan (§ 1129(b)).

## PART 2.  VOTING ON PLAN, AND OBJECTIONS

**A. Who may vote:**  You are entitled to vote on the Plan <u>unless</u>: (1) your claim or interest is Disputed (as defined in the Plan); (2) your class is to receive no distribution (presumed to reject the Plan); (3) your class is "unimpaired" (presumed to accept the Plan – see <u>Exhibit A</u> to the Plan for the proponent's designation of which classes are "impaired") (§ 1124); or (4) your claim is unclassified (and thus is required by law to be paid in full) (§§ 1123(a)(1) & 1129(a)(9)(A) & (C)).  If your claim or interest is Disputed then you must file a motion to have it allowed for voting purposes (you must do that soon, so that your motion can be heard before votes are counted) (Rule 3018(a)).

**B. Who may vote in more than one class:**  If your claim has been allowed in part as a secured claim and in part as an unsecured claim, or if you otherwise hold claims or interests in more than one class, you are entitled to accept or reject the Plan in each capacity and you should return one ballot for each claim or interest.

**C. How to vote:**  Fill out and return the attached ballot (if you are entitled to vote) so that it is ***received by the deadline*** and according to the other instructions in the enclosed order or court-approved notice regarding voting and procedures.

**D. Effect of vote:**  The Plan will be confirmed only if (1) it is accepted by each impaired class, or (2) it is accepted by at least one impaired class (without counting the votes of "insiders," as defined in § 101(31)) and the court determines that the Plan is "fair and equitable" (as defined by § 1129(b)) to all rejecting classes of creditors, and (3) it meets all of the other legal requirements for confirmation.  A class of creditors accepts the Plan if a majority in number and at least two-thirds in dollar amount of the claims in that class are timely voted in favor of the Plan (§ 1126(c)).  A class of interests accepts the Plan if at least two-thirds of those interests are timely voted in favor of the Plan (§ 1126(d)).

**E. Solicitation of votes:**  Nobody is permitted to solicit your vote to accept or reject any plan during the bankruptcy case unless, at or before the time of the solicitation, you have been provided with the plan or a summary of the plan and a written disclosure statement that has been approved by the court as containing adequate information for you to make an informed judgment about the plan.  Then any person may solicit your vote for or against the Plan.

**F. Who may object:** Even if you are not entitled to vote, you can object to confirmation of the Plan if you believe that the requirements for confirmation are not met (and if you are a party in interest in this bankruptcy case).  For the deadlines and procedures, see the enclosed order or court-approved notice.

## PART 3.  OTHER INFORMATION

**A. Background/Risk Factors.**  Attached as an exhibit to this Disclosure Statement is a brief description of: (1) Debtor's history: the events leading to the chapter 11 bankruptcy, and any other relevant history of Debtor's business and financial affairs; (2) significant events during the bankruptcy case; and (3) exit strategy: steps taken or planned to fix the problems that led to bankruptcy, and the principal risk factors in future.

**B. Litigation.  Debtor might sue you if, for example, you received a transfer of funds or any other property from Debtor that is avoidable under the Bankruptcy Code.**  Other types of claims also may be made, and the Plan proponent has not completed investigations, but the anticipated and pending legal proceedings by or against Debtor are listed in an exhibit to this Disclosure Statement.

 **C. Feasibility:**  The Plan cannot be confirmed unless the court finds it feasible.  A Plan is feasible if confirmation of the Plan is not likely to be followed by Debtor's liquidation or need for further financial reorganization, unless such liquidation or reorganization is proposed in the Plan (§ 1129(a)(11)).  The Plan proponent believes it is feasible because, both on the Effective Date and for the duration of the Plan, the

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2014                                    Page 3                            **F 3017-1.CH11.DISCLSR.STMT**

proponent estimates that Debtor will have sufficient cash to make all distributions.  Projected revenues, expenses, and proposed payments to creditors during the Plan Term are specified in Exhibit C to this Disclosure Statement.

**D. Tax consequences of the Plan:**  (1) Tax consequences to the debtor:  The tax consequences to Debtor of the Plan's implementation, including but not limited to tax attribute reduction and the recognition of gain or loss on any sale of Debtor's assets (and the projected tax thereon), have been taken into account and are properly reflected in the financial projections attached to this Disclosure Statement and Exhibits A and B to the Plan.

(2) Tax consequences to holders of claims and interests:  You should consult your own accountant, attorney and/or advisors as to the tax effect to you of Plan transactions.

*[Note:  Pursuant to § 1125(a)(1), the court may require a more detailed description of the tax consequences of the Plan to the debtor and other interested parties, including holders of claims and interests, if the court determines that such information is required in view of the Plan's complexity, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information].*

**E. Liquidation analysis:**  The Plan cannot be confirmed unless the court finds that, for each impaired class of claims or interests that has not accepted the Plan, the class will receive or retain no less than if Debtor's bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code.  A liquidation analysis is attached as an exhibit to this Disclosure Statement.

**F. Special procedures:**  This Disclosure Statement and the accompanying Plan, with exhibits, are the principal documents for Debtor's proposed financial restructuring, but the court may authorize more lengthy documents to be filed separately (a Plan supplement), or may authorize shorter documents to be served on some classes.  Streamlined procedures are encouraged, both to save costs and because that may provide creditors and other parties in interest with more meaningful disclosure.  For example, the court may consider: (1) whether, instead of receiving the full Plan and Disclosure Statement, some classes should receive a "court-approved summary" such as a brief table showing the proposed treatment of each class, with prominent instructions on how to request a copy of the full documents and/or review them online (see § 1125(b) & (c) and Rule 3017(d)(1)); (2) whether to establish special procedures for transmitting documents and information "to beneficial holders of stock, bonds, debentures, notes, and other securities" (see Rule 3017(e)), (3) whether to adjust any deadlines (see Rule 9006(c)), and (4) whether to adopt any other special procedures.

| | |
|---|---|
| I declare under penalty of perjury under the laws of the United States that the foregoing and the factual assertions in the attached exhibits are true and correct.<br><br>Signature: _Ashley Susan Aarons_<br>Debtor or other Plan proponent<br><br>Date: August 7, 2020 | Printed name of signer:<br><br>Ashley Susan Aarons<br><br>Organization (if applicable):<br><br>Title (e.g., President): |
| Signature: _/s/ James C. Bastian, Jr._<br>Attorney (if any) for Plan proponent<br>Date: August 7, 2020 | Printed name of signer:<br><br>James C. Bastian, Jr.<br><br>Law firm:<br><br>Shulman Bastian Friedman & Bui LLP |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2014                                    Page 4                        F 3017-1.CH11.DISCLSR.STMT

**Attorney Certification** (subject to what the judge may permit/require, this form is not mandatory, but if it is used then it and its exhibits must not be altered without disclosure/authorization as provided below):

I, the undersigned, am legal counsel for the above-referenced Plan proponent, and I hereby certify the following:  (1) the foregoing Disclosure Statement and attached exhibits are true and correct copies of the latest versions of the local forms of disclosure statement and exhibits approved for use by the United States Bankruptcy Court for the Central District of California; (2) modifications have been made as directed or permitted by written order (docket no.      ) (or, if the presiding judge permits, by other authorization such as oral approval by the court on the record – specify: Status Conference held on August 4, 2020 at 2:00 p.m.); and (3) no other alterations or modifications to any provision of such form have been made except as shown by the "redlined" versions of this Disclosure Statement (docket nos. 253, 282, and 310 ) and as follows:

**Exhibit I (Condensed List of All Creditors/Claims) was added to further assist creditors in determining the adequacy of the Disclosure Statement.**

**Exhibit J (Summary of Key Provisions of Modification and Release Agreement)**

**Exhibit K (Modification and Release Agreement)**

**Exhibit L (J. Michael Issa Resume and Terms of Engagement)**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: August 7, 2020  Signature: /s/ James C. Bastian, Jr., Print name: James C. Bastian, Jr.

| Exhibits to Plan | Description | Exhibits to Disclosure Statement | Description |
|---|---|---|---|
| A | Treatment of Claims and Interests | C | Projected Revenues and Expenses |
| B | Treatment of Executory Contracts and Unexpired Leases | D | Recent Financial History |
| *Additional Enclosures* | *Description* | E | Secured Claims, and any § 1111(b) Analysis |
|  | Ballot | F | General Unsecured Claims (Class 4) |
|  | Order or Notice Regarding Deadlines and Procedures | G | Liquidation Analysis |
|  |  | H | Endnotes/Continuation Sheets |
|  |  | I | Condensed List of All Creditors/Claims |
|  |  | J | Summary of Key Provisions of Modification and Release Agreement |
|  |  | K | Modification and Release Agreement |
|  |  | L | J. Michael Issa Resume and Terms of Engagement |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2014    Page 5    **F 3017-1.CH11.DISCLSR.STMT**

# Exhibit C

| Ashley Susan Aarons | | **EXHIBIT C: Cash Flow Projections** | | | | | | 2:19-bk-18316-NB |
|---|---|---|---|---|---|---|---|---|

Supporting documents must be attached, unless the judge orders otherwise

| | Endnotes (Ex.H) | $ On Effective Date (projected 09/01/20) | Period A: $/mo. for 1 Months | Period B: $/mo., next 3 mos. (to mo. 4) | Period C: $/mo., next 4 mos. (to mo. 8) | Period D: $/mo., next 38 mos. (to mo. 46) | Period E: $/mo., next 14 mos. (to mo. 60) | Period F: $/mo., next 4 mos. (to mo. 64) | Totals |
|---|---|---|---|---|---|---|---|---|---|
| 1.Bank balance at start of period | | $ 25,000.00 | $ 124,350.00 | $ 131,467.17 | $ 141,888.70 | $ 142,989.65 | $ 1,321,694.76 | $ 1,756,718.63 | |
| **One-time events** (bank withdrawals, asset sales, capital contributions, etc.): these are not monthly events so the Period at top of column should be only 1 month long. | | | | | | | | | |
| 2a.Funds drawn from bank account | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 2b.Family contribution (one-time) | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 2c.Asset sale | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 2d.Other:  Refi Bel Air Prop | | $ 70,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ 70,000.00 |
| 2e.Other:  Bel Air Ins Proceeds | | $ 30,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ 30,000.00 |
| 3.Total one-time $ (ln.2a to 2e) | | $ 100,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ 100,000.00 |
| **Monthly** net income:  **Ln.5**=Quick Version: any changes explained in "hard copies" (Sched. I&J, etc.) or Ex.H; **ln.7**=Detailed Version: any changes shown on Ex.C1, C2 etc. | | | | | | | | | |
| 4. $/mo. From Prior Period | | | | $ 10,185.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | |
| 5.Quick Version-docs attached/dkt.# | | | ↓**Changes** to net income: e.g., if tax was $2000 & will be $1500, net income is +$500 not -$500 | | | | | | |
| 5a.Gross inc. | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 5b.Expenses | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 6.Net income/mo. (ln.5a+5b) | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 7a. Spreadsheet Ex.C1 (if any) | | | $ 10,185.44 | $ 24,600.00 | $ - | $ - | $ - | $ - | |
| 7b. Spreadsheet Ex.C2 (if any) | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 7c. Spreadsheet Ex.C3 (if any) | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 8. Any UST fees after Effective Date | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 9.Total monthly income (ln.4,6,7,8) | | | $ 10,185.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 2,201,668.16 |
| 10.$ for Plan (ln.3+9) | | $ 100,000.00 | $ 10,185.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | |
| 11a.Minus Plan payments in Ex.A | | $ (650.00) | $ (201.67) | $ (201.67) | $ (201.67) | $ (201.67) | $ (201.67) | $ (201.67) | |
| 11b.Minus Plan paymt. (Ex.A1, if any) | | | $ (2,866.61) | $ (31,109.93) | $ (34,308.54) | $ (3,565.22) | $ (3,510.64) | $ (3,198.61) | |
| 12.=Ending $/mo. (ln.10+11a+11b) | | $ 99,350.00 | $ 7,117.17 | $ 3,473.85 | $ 275.24 | $ 31,018.56 | $ 31,073.13 | $ 31,385.16 | |
| 13. x Duration, in months | | | 1 | 3 | 4 | 38 | 14 | 4 | 64 |
| 14. = Unspent $ (ln.12 x 13) | | $ 99,350.00 | $ 7,117.17 | $ 10,421.54 | $ 1,100.94 | $ 1,178,705.12 | $ 435,023.87 | $ 125,540.65 | |
| 15.Bank balance (ln.1 -2a +14) | | $ 124,350.00 | $ 131,467.17 | $ 141,888.70 | $ 142,989.65 | $ 1,321,694.76 | $ 1,756,718.63 | $ 1,882,259.28 | |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

| Ashley Susan Aarons | | | **EXHIBIT C: Cash Flow Projections** | | | | | | | 2:19-bk-18316-NB |
|---|---|---|---|---|---|---|---|---|---|---|
| Supporting documents must be attached, unless the judge orders otherwise | | | Endnotes (Ex.H) | $ On Effective Date (projected 09/01/20) | Period A: $/mo., for 1 Months | Period B: $/mo., next 3 mos. (to mo. 4) | Period C: $/mo., next 4 mos. (to mo. 8) | Period D: $/mo., next 38 mos. (to mo. 46) | Period E: $/mo., next 14 mos. (to mo. 60) | Period F: $/mo., next 4 mos. (to mo. 64) | Totals |
| **Exhibit C1** | Individuals' Income | | Debtors' occupations →→ | | Self-employed with income from marketing work, copyrights, royalties and rent | | | | | | |
| 1a.*Historical* gross inc., this source | | C1 | $ 12,263.44 | ←Individual(s)' gross income/mo. (e.g., ln.12 of latest bankr. Sched. I) attached/at docket #→ | | | | | | 232 |
| 1b.*Historical* expenses, this source | | | $ (3,362.00) | ←Individual(s)' expenses/mo. (e.g., ln.23b of latest bankr. Schedule J) attached/at docket #→ | | | | | | 232 |
| 2.*Historical* net income (ln.1a+1b) | | | $ 8,901.44 | ←Individual(s)' net income/mo. (e.g., ln.23c of latest bankr. Schedule J) attached/at docket #→ | | | | | | 232 |
| 3.Adjustments: | 3a. | C2 | $ (1,066.00) | *Minus* any duplicate income (explain in Ex.H: *e.g.,* if business/rental income is on both Sched.I ln.8a & elsewhere) | | | | | | |
| (no double- | 3b. | | | *Plus* any duplicate expenses (explain in Ex.H: *e.g.*, if business/rental exp. are on both Sch. J ln.20 *and* elsewhere) | | | | | | |
| counting) | 3c. | | $ - | Other adjustments *to avoid double-counting* (explain in Ex.H) | | | | | | |
| 4.Adjusted *historical* inc. (ln.2+ln.3) | | | $ 7,835.44 | | | | | | | |
| 5.Start: net income from prior period | | | | $ 7,835.44 | $ 10,185.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | |
| 6. Changes (by line #/item) | | | | ↓*Changes* to net income : e.g., if tax was $2000 & will be $1500, net income is +$500 *not* -$500 | | | | | | |
| J4.Principal residence rent/1st mortg. | | C3 | | $ 2,350.00 | $ 7,600.00 | $ - | $ - | $ - | $ - | |
| I2.Gross wages/salary/commission | | C4 | | $ - | $ 17,000.00 | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | $ - | $ - | $ - | $ - | $ - | $ - | |
| 7. Total *changes* (total from ln.6) | | | | $ 2,350.00 | $ 24,600.00 | $ - | $ - | $ - | $ - | |
| 8. Net income/mo. (ln.5 + ln.7) | | | | $ 10,185.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 34,785.44 | $ 2,201,668.16 |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

# Exhibit D

| Ashley Susan Aarons | | | | | | **Exhibit D: Recent Financial History** (*e.g.,* last 6 or 12 months, or as directed by judge) | | | | | | | | 2:19-bk-18316-NB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month Ending: | 12/31/19 | 01/31/20 | 02/29/20 | 03/31/20 | 04/30/20 | 05/31/20 | _/_/_ | _/_/_ | _/_/_ | _/_/_ | _/_/_ | _/_/_ |
| MOR dkt.#/Source | 266 | 149 | 216 | 214 | 229 | 246 | | | | | | |
| **Cash Accounting: General Account** (from 1st page of Monthly Operating Reports (MORs), or closest equivalent for prepetition periods-*e.g.,* QuickBooks™) | | | | | | | | | | | | |
| Beginning Balance | $ 53 | $ 20 | $ 735 | $ 60 | $ 26 | $ 2,062 | $ - | $ - | $ - | $ - | $ - |
| Total receipts | $ 5,860 | $ 9,073 | $ 9,617 | $ 6,842 | $ 3,705 | $ 4,440 | $ - | $ - | $ - | $ - | $ - |
| Transfers to accts. | $ - | $ - | $ (5,825) | $ (2,305) | $ (179) | $ (20) | $ - | $ - | $ - | $ - | $ - |
| Disbursements | $ (5,893) | $ (8,358) | $ (4,467) | $ (4,571) | $ (1,490) | $ (3,393) | $ - | $ - | $ - | $ - | $ - |
| Total disbursements | $ (5,893) | $ (8,358) | $ (10,292) | $ (6,876) | $ (1,669) | $ (3,413) | $ - | $ - | $ - | $ - | $ - |
| Ending Balance | $ 20 | $ 735 | $ 60 | $ 26 | $ 2,062 | $ 3,089 | $ - | $ - | $ - | $ - | $ - |
| Other accts-itemize | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Remaining Cash** | $ 20 | $ 735 | $ 60 | $ 26 | $ 2,062 | $ 3,089 | $ - | $ - | $ - | $ - | $ - |
| Adjustments | *If past amounts include non-recurring expenses, such as costs of bankruptcy, adjustments might be appropriate to compare with future projections* | | | | | | | | | | | |
| BK Prof'l Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other (explain) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Cumulative adjust. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | |
| **Business** Profit & Loss (if applicable): **Accrual Accounting** (from part IX of MORs, or closest equivalent for prepetition periods-*e.g.,* QuickBooks™) | | | | | | | | | | | | |
| Gross Profit | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other operating inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Operating expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gain(loss)-op's | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Non-op. income | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Non-op. expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total inc. (loss)** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Adjustments | *If past amounts includes non-recurring expenses, such as costs of bankruptcy, adjustments might be appropriate to compare with future projections* | | | | | | | | | | | |
| BK Prof'l Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other (explain) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Cumulative adjust. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Instructions to Plan proponent:** Leave inapplicable cells blank. | | | | **Start of Bankruptcy Case** (Order For Relief): | | 07/17/19 | | Endnotes (Ex.H): | | | |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

# Exhibit E

| Ashley Susan Aarons | | | | **EXHIBIT E:  Secured Claims, § 1111(b)** | | | Periodic Amounts [*e.g.*, every mo. x 60 mo.] | | | | | 2:19-bk-18316-NB |

| Class | Impaired? Y/N | Short Description | Endnotes (Ex.H) | Estimated Claim/ Collateral Value | Claim % to be Paid | $ On Effective Date (projected 09/01/20) | Every  month(s) | Term (e.g., 60 mos.) | Interest Rate | Amortizing Payments | Equivalent $ on Monthly Basis | $ at End of Term (Balloon Payment) | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | POL | 2A | Longer Description: | | Patch of Land Lending, LLC, as servicing agent for the current beneficiary, Wilmington, et al. | | | | | | | |
| | | Claim *without* bifurcation | | $   3,428,582.53 | | Source (*e.g.*, proof of claim): | Modification Agreement, attached as Exhibit J | | | | | | |
| | | Collateral net value | | $   5,500,000.00 | | (after any senior liens) | Source: | Debtor's Amended Schedules A/B filed on 6/2/20 [dkt 232] | | | | | |
| 2A | Y | Secured Claim-Bifurcated | | $   3,428,582.53 | 100.0% | $              - | 1 | | % | see Ex.A1 | see Ex.A1 | $   3,278,582.05 | $   3,428,582.53 |
| | | +Deficiency, in Class 4A | | $              - | 20.0% | $              - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $   3,278,582.05 | $              - |
| | | =Totals Under Plan | | $   3,428,582.53 | | $              - | | months at this amount: | | variable | $   3,278,582.05 | $   3,428,582.53 |
| | | § 1111(b) election? | | The cells below may be empty unless the judge *requires* a statement of "§ 1111(b)" terms (see Plan Art.I.B.) | | | | | | | | | |
| | | at least present value | | $   3,428,582.53 | | $              - | 1 | | % | $              - | $              - | $              - | $              - |
| | | at least full amount | | $   3,428,582.53 | 100.0% | $              - | 1 | | % | $              - | $              - | $              - | $              - |
| | | § 1111(b) Totals | | $   3,428,582.53 | 100.0% | $              - | 1 | | % | $              - | $              - | $              - | $              - |

**Note to Creditors: Bifurcation.** As explained in the Plan (§ I.B., "Class 2", "(a)") secured claims generally are bifurcated (§ 506(a)) into a secured claim up to the value of the Collateral (after any senior liens) and an unsecured claim for any balance.  If you wish to dispute the bifurcation/valuation then you should file a timely objection to confirmation of the Plan (but the Plan proponent should resolve all valuation issues *before* soliciting votes on the Plan).

**Note to Creditors: § 1111(b) Election.** (1) Applicability.  The § 1111(b) analysis **may be left blank**, unless the judge requires that it be completed.
(2) Deadline.  The election must be made before conclusion of the disclosure statement hearing, or such later deadline as the court may fix (Rule 3014).  Only creditors who request in writing a copy of proposed disclosure statements are entitled to a copy *before* it is approved at the disclosure statement hearing and mailed to all creditors (Rule 3017(a)), so creditors who are not proactive may miss the deadline to demand the § 1111(b) analysis and make the § 1111(b) election.
(3) Complexity.  The § 1111(b) election is complex - most creditors do not make it, and before doing so you are strongly encouraged to consult an attorney.  Briefly, the election generally results in *no increase in present value* of the payment stream under the Plan (§ 1129(b)(2)(A)(i)(II), Plan § 1.B.).  Instead the Plan proponent usually proposes a substantially *longer term*, resulting in *smaller payments*.  In addition, if you make the election you will *lose any unsecured "deficiency" claim* (with its voting rights and distributions, if any).  The benefit of making the election is that your claim is not bifurcated (*i.e.*, you retain the full dollar amount of your lien), which means that if the Collateral increases in value then probably you will share in that increase if either (a) the Collateral is sold or refinanced (and the security documents contain due on sale/refinance provisions that you can enforce) or (b) Debtor defaults and you are able to foreclose.
(4) Imputed & actual interest rates.  (a) Plan proponents typically seek long repayment periods because shorter periods increase the *imputed* interest rate (*e.g.*, if a claim of $400,000 is secured by collateral worth $300,000, and Debtor pays $400,000 in 1 year, then the imputed interest rate is approximately 33% ($300,000 x 1.33 = $399,000)!  (b) Unless otherwise stated in the Plan, the *actual* interest rate on any late payments or additional indebtedness will be the interest rate used for the "present value" calculation.

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*                                                                                    **F 3018-1.CH11.PLAN-DS.EXHIBITS**

| Ashley Susan Aarons | | | EXHIBIT E:  Secured Claims, § 1111(b) | | | | Periodic Amounts [e.g., every mo. x 60 mo.] | | | | | | 2:19-bk-18316-NB |

| Class | Impaired? Y/N | Short Description | Endnotes (Ex.H) | Estimated Claim/ Collateral Value | Claim % to be Paid | $ On Effective Date (projected 09/01/20) | Every month(s) | Term (e.g., 60 mos.) | Interest Rate | Amortizing Payments | Equivalent $ on Monthly Basis | $ at End of Term (Balloon Payment) | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | James Haycock | 2B | Longer Description: | | James Haycock, individually and as Trustee of a separate Trust | | | | | | | |
| | | Claim *without* bifurcation | $ 173,367.36 | | Source (e.g., proof of claim): | Proof of Claim, Claim 17, filed on 9/26/20 | | | | | | | |
| | | Collateral net value | $ 2,071,417.47 | | (after any senior liens) | Source: | Debtor's Amended Schedules A/B filed on 6/2/20 [dkt 232] | | | | | | |
| 2B | Y | **Secured Claim**-Bifurcated | $ 173,367.36 | 100.0% | $ - | 1 | | % | see Ex.A1 | see Ex.A1 | $ 163,254.25 | $ 173,367.36 |
| | | +Deficiency, in Class 4A | $ - | 20.0% | $ - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $ - | $ - |
| | | =Totals Under Plan | $ 173,367.36 | | $ - | | months at this amount: | | variable | $ 163,254.25 | $ 173,367.36 |
| | | **§ 1111(b) election?** | If this class makes the § 1111(b) election, then the following terms apply instead of above. | | | | | | | | | |
| | | at least present value | $ 173,367.36 | | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | at least full amount | $ 173,367.36 | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | § 1111(b) Totals | $ 173,367.36 | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | M. Lamorie | 2C | Longer Description: | | M. Lamorie | | | | | | | |
| | | Claim *without* bifurcation | $ 170,000.00 | | Source (e.g., proof of claim): | Proof of Claim, Claim 21, filed on 11/15/19 | | | | | | | |
| | | Collateral net value | $ 1,898,050.11 | | (after any senior liens) | Source: | Debtor's Amended Schedules A/B filed on 6/2/20 [dkt 232] | | | | | | |
| 2C | Y | **Secured Claim**-Bifurcated | $ 170,000.00 | 100.0% | $ - | 1 | | % | see Ex.A1 | see Ex.A1 | $ 155,486.69 | $ 170,000.00 |
| | | +Deficiency, in Class 4A | $ - | 20.0% | $ - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $ - | $ - |
| | | =Totals Under Plan | $ 170,000.00 | | $ - | | months at this amount: | | variable | $ 155,486.69 | $ 170,000.00 |
| | | **§ 1111(b) election?** | If this class makes the § 1111(b) election, then the following terms apply instead of above. | | | | | | | | | |
| | | at least present value | $ 170,000.00 | | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | at least full amount | $ 170,000.00 | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | § 1111(b) Totals | $ 170,000.00 | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

| Ashley Susan Aarons | **EXHIBIT E: Secured Claims, § 1111(b)** | Periodic Amounts [*e.g.*, every mo. x 60 mo.] | 2:19-bk-18316-NB |
|---|---|---|---|

| Class | Impaired? Y/N | Short Description | Endnotes (Ex.H) | Estimated Claim/ Collateral Value | Claim % to be Paid | $ On Effective Date (projected 09/01/20) | Every month(s) | Term (e.g., 60 mos.) | Interest Rate | Amortizing Payments | Equivalent $ on Monthly Basis | $ at End of Term (Balloon Payment) | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | CBSG | 2D | Longer Description: | | Complete Business Solutions Group, Inc. | | | | | | | |
| | | Claim *without* bifurcation | $ | 395,594.07 | | Source (*e.g.*, proof of claim): | Proof of Claim, Claim 3, filed on 7/26/19 | | | | | | |
| | | Collateral net value | $ | 1,728,050.11 | (after any senior liens) | Source: | Debtor's Amended Schedules A/B filed on 6/2/20 [dkt 232] | | | | | | |
| 2D | Y | **Secured Claim**-Bifurcated | $ | 395,594.07 | 100.0% | $ - | 1 | | % | see Ex.A1 | see Ex.A1 | $ 372,517.73 | $ 395,594.07 |
| | | +Deficiency, in Class 4A | $ | - | % | $ - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $ - | $ - |
| | | =Totals Under Plan | $ | 395,594.07 | | $ - | | months at this amount: | | variable | $ 372,517.73 | $ 395,594.07 |
| | | **§ 1111(b) election?** | If this class makes the § 1111(b) election, then the following totals apply instead of above. | | | | | | | | | | |
| | | at least present value | $ | 395,594.07 | | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | at least full amount | $ | 395,594.07 | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | § 1111(b) Totals | $ | 395,594.07 | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | WSF | 2E | Longer Description: | | Western Star Financial | | | | | | | |
| | | Claim *without* bifurcation | $ | - | | Source (*e.g.*, proof of claim): | Deed of Trust recorded 7/16/19, Doc. # 20190690920 | | | | | | |
| | | Collateral net value | $ | 1,332,456.04 | (after any senior liens) | Source: | Debtor's Amended Schedules A/B filed on 6/2/20 [dkt 232] | | | | | | |
| 2E | Y | **Secured Claim**-Bifurcated | $ | - | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | +Deficiency, in Class 4A | $ | - | % | $ - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $ - | $ - |
| | | =Totals Under Plan | $ | - | | $ - | | months at this amount: | | variable | $ - | $ - |
| | | **§ 1111(b) election?** | If this class makes the § 1111(b) election, then the following totals apply instead of above. | | | | | | | | | | |
| | | at least present value | $ | - | | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | at least full amount | $ | - | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |
| | | § 1111(b) Totals | $ | - | 100.0% | $ - | 1 | | % | $ - | $ - | $ - | $ - |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

| Ashley Susan Aarons | | | | **EXHIBIT E: Secured Claims, § 1111(b)** | | Periodic Amounts [e.g., every mo. x 60 mo.] | | | | | 2:19-bk-18316-NB |

| Class | Impaired? Y/N | Short Description | Endnotes (Ex.H) | Estimated Claim/ Collateral Value | Claim % to be Paid | $ On Effective Date (projected 09/01/20) | Every month(s) | Term (e.g., 60 mos.) | Interest Rate | Amortizing Payments | Equivalent $ on Monthly Basis | $ at End of Term (Balloon Payment) | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Westlake Financial | 2F | Longer Description: | | Westlake Financial Services LLC | | | | | | | |
| | | Claim *without* bifurcation | $ 16,788.49 | | | Source (e.g., proof of claim): | Motion for Relief from Stay filed 6/17/20 [dkt 249] | | | | | | |
| | | Collateral net value | $ 14,475.00 | (after any senior liens) | | Source: | Motion for Relief from Stay filed 6/17/20 [dkt 249] | | | | | | |
| 2F | | **Secured Claim**-Bifurcated | $ 14,475.00 | 100.0% | $ - | 1 | | | see Ex.A1 | see Ex.A1 | $ - | $ 18,721.80 | |
| | | +Deficiency, in Class 4A | $ 2,313.49 | % | $ - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $ - | $ 461.58 | |
| | | =Totals Under Plan | $ 16,788.49 | | $ - | | months at this amount: | variable | | $ - | $ 19,183.38 | | |
| | | **§ 1111(b) election?** | If this class makes the § 1111(b) election, then the following totals apply instead of above. | | | | | | | | | | |
| | | at least present value | $ 14,475.00 | | $ - | 1 | % | $ - | $ - | $ - | $ - | | |
| | | at least full amount | $ 16,788.49 | 100.0% | $ - | 1 | % | $ - | $ - | $ - | $ - | | |
| | | § 1111(b) Totals | $ 16,788.49 | 100.0% | $ - | 1 | % | $ - | $ - | $ - | $ - | | |
| | | Farmer's New World | 2G | Longer Description: | | Farmer's New World Universal Life Insurance Co. | | | | | | | |
| | | Claim *without* bifurcation | $ 1,714.71 | | | Source (e.g., proof of claim): | Debtor's Schedule D filed on 7/17/19 [dkt 1] | | | | | | |
| | | Collateral net value | $ 2,474.92 | (after any senior liens) | | Source: | Debtor's Schedule A/B filed on 7/17//19 [dkt 1] | | | | | | |
| 2G | | **Secured Claim**-Bifurcated | $ 1,714.71 | 100.0% | $ - | 1 | | % | see Ex.A1 | see Ex.A1 | $ - | $ 2,300.00 | |
| | | +Deficiency, in Class 4A | $ - | % | $ - | 1 | 64 | % | see Ex.A1 | see Ex.A1 | $ - | $ - | |
| | | =Totals Under Plan | $ 1,714.71 | | $ - | | months at this amount: | variable | | $ - | $ 2,300.00 | | |
| | | **§ 1111(b) election?** | If this class makes the § 1111(b) election, then the following totals apply instead of above. | | | | | | | | | | |
| | | at least present value | $ 1,714.71 | | $ - | 1 | % | $ - | $ - | $ - | $ - | | |
| | | at least full amount | $ 1,714.71 | 100.0% | $ - | 1 | % | $ - | $ - | $ - | $ - | | |
| | | § 1111(b) Totals | $ 1,714.71 | 100.0% | $ - | 1 | % | $ - | $ - | $ - | $ - | | |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

# Exhibit F

| Ashley Susan Aarons | | Exhibit F: General Unsecured Claims, in Class 4A or 4B | | | | | | | 2:19-bk-18316-NB | |
| *Claim Information:* | Insider | *Scheduled Claims* | | *Filed Claims* | | Obj. | *Presumed Amt.* | Order | *Adjusted Amt.* | Dividend (from |
| Name / Description / Endnotes | Y? | Amount | D/C/U | POC# | Amount | Dkt.# | §502(a)/1111(a) | Dkt.# | (if any) | Ex.A) | 20.0% |
| 1.***Manual Option:*** total from bankr. Sched. F→ | | $      959,583.60 | | Copy attached/at docket no.→ | | 232 | | | | |
| 2.Minus any claims manually reduced/deleted→ | | $                - | | | | | | | | |
| 3.Plus any claims manually increased/added→ | | $                - | | | | | | | | Plan Payments: |
| 4.Subtotal, *manually* estimated claims (ln.1 to 3): | | $      959,583.60 | | | | | $      959,583.60 | | | $      191,455.02 |
| 5.***Electronic Option:*** *in addition, or in the alternative, some or all claims may be listed individually below* | | | | | | | | | | |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| | | $                - | | | $                - | | $                - | | $                - | $                - |
| 6.Estimated "rejection" claims (see Ex.B)↓ (If there are more rejection claims than the two rows below, then use any blank row for more claims) | | | | | | | | | | |
| | | | | | $                - | | $                - | | $                - | $                - |
| | | | | | $                - | | $                - | | $                - | $                - |
| 7a.Deficiency class 2A (estimated in Ex.E) | | | | | | | $                - | | $                - | $                - |
| 7b.Deficiency class 2B (estimated in Ex.E) | | | | | | | $                - | | $                - | $                - |
| 7c.Deficiency class 2C (estimated in Ex.E) | | | | | | | $                - | | $                - | $                - |
| 8.Ex.F-Continuation Sheet (if any) | | $                - | | | $                - | | $      2,313.49 | | $                - | $      461.58 |
| 9.**Totals** (ln.4 to 8) | | $      959,583.60 | | | $                - | | $      961,897.09 | + | $                - | |
| 10.**Grand Total** | | | | Presumed Amounts + any Adjusted Amounts→ | | | $      961,897.09 | | $      191,916.60 |

**Instructions to Plan Proponent:**
(1) Quick start: Enter an estimated *rough total* in the first row (manual option). Later on you can revise the amount and break it down by individual claim (if required).
(2) Data entry: If using the electronic option, copy data from (a) bankruptcy Schedule F and (b) the court's claims register. The spreadsheet will automatically calculate the "Presumed Amt." (if any) and you can override that with an "Adjusted Amt." if appropriate (*e.g.,* if the court has reduced or disallowed the claim).

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June, 2014*                                                                                                F 3018-1.CH11.PLAN-DS.EXHIBITS

| Ashley Susan Aarons | | Exhibit F: General Unsecured Claims, in Class 4A or 4B | | | | | | | | 2:19-bk-18316-NB | |
| Claim Information: | Insider | Scheduled Claims | | | Filed Claims | | Obj. | Presumed Amt. | Order | Adjusted Amt. | Dividend (from | |
| Name / Description / Endnotes | Y? | Amount | D/C/U | POC# | Amount | | Dkt.# | §502(a)/1111(a) | Dkt.# | (if any) | Ex.A) | 20.0% |
| **EX.F-CONTINUATION SHEET** | | Additional Rows (if needed) | | | | | | | | | | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| | | $            - | | | $            - | | | $            - | | $            - | $            - | |
| 7d.Deficiency class 2D (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |
| 7e.Deficiency class 2E (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |
| 7f.Deficiency class 2F (estimated in Ex.E) | | | | | | | | $    2,313.49 | | $            - | $    461.58 | |
| 7g.Deficiency class 2G (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |
| 7h.Deficiency class 2H (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |
| 7i.Deficiency class 2I (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |
| 7j.Deficiency class 2J (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |
| 7k.Deficiency class 2K (estimated in Ex.E) | | | | | | | | $            - | | $            - | $            - | |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# Exhibit G

| Ashley Susan Aarons | | **Exhibit G: Liquidation Analysis** | | | 2:19-bk-18316-NB | |
|---|---|---|---|---|---|---|
| Itemized below are any *changes* to the most recent bankruptcy Schedules A&B, attached/at docket # →→→ | | | | dkt 232 | Endnotes (Ex.H): | G1 |
| **1. Total from bankruptcy Schedule A:** | $ 5,500,000.00 | B.24. Customer lists/personal info. | $ - | | **Partnerships:** If Debtor is a partnership, then general partners are liable for any deficiency of estate property to pay all allowed claims (§ 723(a)) so their financial condition must be disclosed. | |
| | $ - | B.25. Vehicles & accessories | $ - | | | |
| | $ - | B.26. Boats, motors, accessories | $ - | | | |
| | $ - | B.27. Aircraft and accessories | $ - | | | |
| | $ - | B.28. Office equip., furnishings, supplies | $ - | | | |
| | | B.29. Machinery, fixtures, equip., supplies | $ - | | | |
| **2.Adjusted total, Schedule A property** | $ 5,500,000.00 | B.30. Inventory | $ - | | **Note on valuation:** Subject to any court order or attached continuation sheet: | |
| **3. Total from bankruptcy Schedule B** | $ 1,816,644.00 | B.31. Animals | $ - | | (1) Real estate valuation may assume 8% costs of sale. | |
| B.1. Cash on hand | $ - | B.32. Crops - growing or harvested | $ - | | (2) Accounts receivable may be discounted up to 50% of face value (to account for lack of collectibility in orderly liquidation). | |
| B.2. Bank accounts, or equivalent | $ 50.00 | B.33. Farming equipment/implements | $ - | | | |
| B.3. Security deposits | $ - | B.34. Farm supplies, chemicals, feed | $ - | | | |
| B.4. Household goods and furnishings | $ 5,100.00 | B.35. Other (itemize in Ex.H) | $ - | | (3) Any appraisals or other support for valuations are available upon request. | |
| B.5. Books, art, antiques, collectibles | $ 28,500.00 | **4.Adjusted total, Sch. B property** | $ 1,886,040.21 | | | |
| B.6. Wearing apparel | $ 500.00 | **5. Other (e.g., avoidance actions-itemize)** | $ - | | | |
| B.7. Furs and jewelry | $ 2,200.00 | **6. Total Assets (ln.2+4+5)** | $ 7,386,040.21 | | | |
| B.8. Hobby equipment | $ 200.00 | **7. Claims Senior to General Unsecured Claims** | | | Hypothetical chapter 7 trustee fees | |
| B.9. Insurance policies | $ 2,846.21 | 7a. Secured claims (after bifurcation) | $ 3,946,966.00 | $ 7,386,040.21 | Total disbursements | |
| B.10. Annuities | $ - | 7b. Chapter 7: trustee fees (from sidebar) | $ 241,936.21 | $ (96,499.92) | Minus exemptions | |
| B.11. Tuition accounts | $ - | 7c. Chapter 7: other costs of administration | $ - | $ - | Minus adjustments* | |
| B.12. IRAs or other pension/profit sharing | $ - | 7d. Chapter 11: unpaid professionals' fees | $ 100,000.00 | $ 7,289,540.29 | = Net disbursements | |
| B.13. Stock/interests in businesses | $ 30,000.00 | 7e. Chapter 11: other administrative costs | $ - | | § 326 calculations | |
| B.14. Partnerships or joint ventures | $ - | 7f. Priority claims (bankruptcy Schedule E) | $ - | $ 5,000.00 | X 25%= | $ 1,250.00 |
| B.15. Bonds & instruments | $ - | 7g. Debtor's exemptions (bankr. Sch.C) | $ 96,499.92 | $ 45,000.00 | X 10%= | $ 4,500.00 |
| B.16. Accounts receivable | $ - | 7h. Other/adjustments (describe in Ex.H) | $ 3,363,041.60 | $ 950,000.00 | X 5%= | $ 47,500.00 |
| B.17. Domestic support/property division | $ - | **8. Total Senior Claims (ln. 7a to 7h)** | $ 7,748,443.73 | $ 6,289,540.29 | X 3%= | $ 188,686.21 |
| B.18. Tax refunds & other liquidated $ | $ - | **9. Net available for unsecured (ln.6-ln.8)** | $ - | $ 7,289,540.29 | Totals | $ 241,936.21 |
| B.19. Equitable interests, life estates, etc. | $ - | 10a.Gen. unsecured claims from Ex.F | $ 961,897.09 | Adjustment (if any) | | $ - |
| B.20. Inheritances, death benefits, etc. | $ - | 10b.Other gen. unsecured claims (if any) | $ - | Trustee Fee | | $ 241,936.21 |
| B.21. Other contingent/unliquidated claims | $ - | **11.Total gen. unsecured (ln.10a+10b)** | $ 961,897.09 | *Adjustments would include, *e.g.,* estimated refunds, and non-estate funds/ assets returned to third parties. | | |
| B.22. Patents, copyrights, other IP | $ - | **12. Ch. 7 Estimated Dividend (ln.9/ln.11)** | None | | | |
| B.23. Licenses, franchises, intangibles | $ - | **13. Plan Est. Dividend (Ex.A Class 4A)** | 19.95% | | | |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# Exhibit H

| Ashley Susan Aarons | **EXHIBIT H: Endnotes / Continuation Sheets** | 2:19-bk-18316-NB |
|---|---|---|

| **(1) Endnote#** *Example: "1B: Creditor has agreed to loan modification"* | |
|---|---|
| HI | Debtor estimates that her current Chapter 11 counsel will have an administrative claim of $150,000.00 on the Effective Date.  The Debtor's prior counsel, Totaro & Shanahan, asserts that it has an administrative claim of approximately $100,000.00 in addition to the interim fees it was already awarded on December 13, 2019 [dkt 134] in the amount of $54,010.00.  The Debtor will pay her administrative claims in full through her refinance of the Bel Air Property, on or before April 1, 2021, and make monthly payments of $2,500.00, to be shared pro-rata among the professionals in accordance with their allowed claims, commencing on the Effective Date.  The professional fees are subject to court approval and the Debtor reserves the right to review and object to the claims of all professionals. |
| 2A - 2E | The secured claims in question are not traditional mortgages and their treatment under the Plan is more appropriately addressed under Class 2. |
| 2B - 2E | Pursuant to the Modification Agreement, the second, third, fourth and fifth lienholders on the Bel Air Property shall be subordinated to the first lienholder in order to ensure that POL's (defined below) first position lien on the Bel Air Property is not altered or modified in any way by the modification. |
| 2A | Debtor and Ashley S. Aarons 2015 Trust Dated May 15, 2015, for which the Debtor is the Trustee, has reached a settlement with the first priority lienholder on the Bel Air Property, Patch of Land Lending, LLC, as servicing agent for the current beneficiary, Wilmington Savings Fund Society, FSB, Not in its Individual Capacity But Solely as Trustee for Invictus Residential Pooler Trust 3A, its successors and/or assigns (collectively "POL") pursuant to a certain Modification and Release Agreement ("Modification Agreement"), a copy which is attached to the Disclosure Statement as Exhibit K.  The Modification Agreement provides for a new principal balance of $3,428,592.53 (estimated claim provided for on Exhibit A) with a new maturity date of April 1, 2021, which may also be extended to October 1, 2021 under certain conditions.  The Debtor agrees to make interest only payments in the amount of $21,428.64, commencing July 1, 2020.  Reserve funds of $73,000.00 shall be credited and applied to the first three installment payments, to taxes and outstanding legal fees.  Accordingly, the Debtor will need to make her first monthly installment payment on October 1, 2020 as reflected in Exhibit A-1.  Exhibit A provides for a balloon payment on April 1, 2021, consistent with the new maturity date.  The Modification provides for an extension of this date for up to six (6) months if certain terms of met, which is described in more detail in Exhibit J (Summary of Key Provisions of Modification Agreement) and the Exhibit K (Modification Agreement). |
| 2B | Commencing September 1, 2020, the second lienholder on the Bel Air Property, James Haycock as Trustee of a Separate Trust ("Haycock"), will receive a monthly interest only payment at 10% per annum based on Haycock's allowed claim amount.  All outstanding principal and interest due on the allowed claim amount will be paid in one installment payment to be made on or before April 1, 2021 in an amount to be approved by Haycock or further Court order.  The maturity date of April 1, 2021 may be extended for up to six (6) months should the Debtor meet the conditions for an extension under the Modification Agreement. |
| 2B | The estimated claim is the amount of Claim 17 filed by Haycock. |
| 2B | The Court granted Haycock relief from the automatic stay at the hearing on June 30, 2020.  If the Debtor defaults on her payments to POL or Haycock, Haycock may enforce its remedies to foreclose upon and obtain possession of the Bel Air Property in accordance with applicable nonbankruptcy law as further detailed in the order granting Haycock relief from stay. |
| 2C | Commencing October 1, 2020, the third lienholder on the Bel Air Property, M. Lamorie ("Lamorie"), will receive a monthly interest only payment at 10% per annum based on Lamorie's allowed claim amount.  All outstanding principal and interest due on the allowed claim amount will be paid in one installment payment to be made on or before April 1, 2021 in an amount to be approved by Lamorie or further Court order. The maturity date of April 1, 2021 may be extended for up to six (6) months should the Debtor meet the conditions for an extension under the Modification Agreement. |

| | |
|---|---|
| 2C | The estimated claim is the amount of Claim 21 filed by Lamorie on November 15, 2019, which includes amounts related to cross-collateralized liens against the Bel Air Property and Sweetzer Property.  Claim 21 asserts a secured claim in the amount of $170,000.00 and a general unsecured claim in the amount of $78.800.00.  Debtor asserts that Lamorie only has a secured claim for $66,472.00. |
| 2C | The Debtor disputes the claim amount asserted by Lamorie and believes the total amount of this claim is overstated and that the claim may be unenforceable in the amount stated.  As such, the Debtor intends to object to this claim before the Effective Date of the Plan. |
| 2D | Commencing October 1, 2020, the fourth lienholder on the Bel Air Property, Complete Business Solutions Group, Inc. ("CBSG") will receive a monthly interest only payment at 10% per annum based on CBSG's allowed claim amount.  All outstanding principal and interest due on the allowed claim amount will be paid in one installment payment to be made on or before April 1, 2021 in an amount to be approved by CBSG or further Court order. |
| 2D | The estimated claim is the amount of Claim 3 filed by CBSG.  Claim 3 asserts a claim of $395,594.07 as of the Petition Date, however the Debtor believes that the amount owed is less.  Claim 3 includes a secured claim against the Debtor's personal property as the result of a filed UCC-1, but given that Claim 3 will be paid in full through the refinance of the Bel Air Property, Claim 3 is listed as a secured claim against the Debtor's residence for purposes of the Plan. |
| 2D | The Debtor disputes the claim amount asserted by CBSG and believes the claim is an unsecured claim based on the recording of the deed of trust within 90 days of the Petition Date, and that the total amount of this claim is overstated and that the claim may be unenforceable in the amount stated.  Further, the personal property is worth significantly less than the amount of the claim.  As such, the Debtor intends to object to this claim before the Effective Date of the Plan. |
| 2E | The Debtor disputes the claim of the fifth lienholder on the Bel Air Property, Western Star Financial ("WSF"), which was assigned Post-Petition on August 12, 2019 to Forward Horizons, Inc. ("Forward Horizons").  No proof of claim was filed by WSF.  The Debtor understands and believes that this claim represents a loan by WSF for a "retainer" for legal services to be rendered by her original bankruptcy counsel, Todd Turoci (President of WSF), whose employment was not approved by the Court.  As such, the Debtor intends to object to this secured claim, which should be disallowed in its entirety, any deed of trust or other encumbrance of any property, including the Bel Air Property shall be revoked, reconveyed and rescinded and claimant shall receive no distribution under the Plan. |
| 2F | Debtor will continue to make monthly payments in the amount of $312.03 as provided for under her Retail Installment Sale Contract (last payment is due April 1, 2025), attached to Claim 19 filed by Westlake Financial Services ("Westlake") on November 11, 2019.  The claim will not be bifurcated, as provided for in Exhibit E.  All arrearages have been paid in full as of July 1, 2020 and the Debtor enteredinto an Adequate Protection Order, which provides the Debtor with 2 opportunities to cure a default before Westlake may file a declaration and upload an order for relief from stay. |
| 2G | Debtor will pay $50 per month to pay down the loan she took out against the cash value of the Farmer's New World Flexible Universal Life Insurance Policy No. 00540-75-7OU in addition to the $100 monthly payment she currently pays for that policy. |
| 4A | Attached as Exhibit I is a condensed list of all creditors/claims. |
| 4A | Alliance Portfolio Private Equity Finance, Inc., a California Corporation ("Alliance") foreclosed on the Sweetzer Property on December 2, 2019, at which time all of the junior liens on the Sweetzer Property were extinguished.  As such, claims for Shiv Raj Gupta (Claim 199; see also order entered April 10, 2020, dkt 199), Deanna D'Egidio (Claim 31; also see order entered April 10, 2020, dkt 198), Axos Bank (no claim filed) and Amir Abraham Milani (no claim filed) shall be treated as a Class 4A general unsecured claim and shall be paid on the same terms as all other Class 4A general unsecured claims as set forth in the Plan. |

| | |
|---|---|
| 4A | In addition to receiving at least 20% from the Debtor's income stream, Class 4A general unsecured claims will also receive (1) 100% of any net recovery on the Alliance Litigation (defined below) and (2) any funds remaining from monetary recoveries received from claims against the insurance carriers, including the Bad Faith Litigation (defined below), that are in excess of the costs needed to compensate the Debtor for out of pocket repairs, costs for repairs (as required by the lenders and all code requirements), attorneys' fees or fees to the Debtor's claims adjuster, and payments on any liens of secured creditors (collectively, "Litigation Funds").  Therefore, Class 4A general unsecured creditors may receive as much as 100% depending on the outcome of the Alliance Litigation and Bad Faith Litigation.  Class 4A general unsecured creditors will be paid pro rata from the Litigation Funds, with a credit applied first for each creditor's 20% payment of their allowed claims and any additional amounts over the 20% payment and up to a 100% payment providing an additional payment and benefit to Class 4 general unsecured creditors. |
| B1 | Majestic Ventures LLC dba Vacation Homes365.com - Debtor is rejecting the marketing agreement with Airbnb related to the real property located at 336 N Sweetzer Avenue, Los Angeles, CA 90048, dated on or about 4/12/2019. Right to cancel on 30 days notice. |
| C1 | The Debtor's historical gross income includes the Debtor's receipt of monthly royalties totaling $1,420.92.  Attachment 8h to the Debtor's Amended Schedule I lists that the Debtor receives $1,420.92 monthly from royalties for (1) Welk Group royalties; (2) Noble Oil royalties; (3) Apache Corporation Oil royalties; and (4) Aimco Properties LP.  These royalties are assets of the Ashley S. Aarons 2015 Trust and were described in detail at No. 19 of Amended Schedule A/B [dkt 232]. |
| C2 | Schedule I includes payments for the car payments (17a), which are included as payments for Class 2 claims on Exhibit A. |
| C2 | Schedule I includes monthly net income from Coffee Dog Entertainment totaling $1,320.00, which included estimated rent received from the rental of the design studio.  The design studio is located on the Bel Air Property, so the monthly rental income from the design studio is included instead in the additional monthly rental income listed in C2 below. |
| C3 | In addition to the rents listed on Schedule I for the Bel Air Property, the Debtor receives additional rents in the amount of $1,150 as follows: (1) the Debtor began renting the upstairs guest room in June 2020 for $900 per month (originally listed on Attachment 8a as $1,500); (2) the Debtor will begin renting the downstairs guest room for $1,000 per month starting August 1, 2020; and (3) rent from the design studio of $750 per month. Starting July 1, 2020, the Debtor will start receiving $1,200 per month for the Master Bedroom #1.   From and after the Effective Date, the Debtor expects to receive additional rental income of approximately $7,000.00 after she converts her existing garage and exterior office space to a 2 bedroom and 1.5 bath guest house with an over the counter owner-building permit under the newly enacted Accessory Dwelling Unit ("ADU") laws ("ADU Renovation").  Additionally, the Debtor expects to raise rents on the rooms being rented out as she makes some repairs to the Bel Air Property, which should generate another $500 to $600 in monthly income. |
| C3 | Due to the damage to the Bel Air Property, the Debtor has not been able to rent out the Bel Air Property as a vacation rental through AirBnB as she previously intended.  Rather, the Debtor has entered into short term leases which allow her to rent various rooms and parking spaces at the Bel Air Property while completing the ADU Renovations.  The rent is discounted due the inconvenience to the tenants in living where there is on-going construction and workers coming in and out to mitigate water damage and pursue insurance claims.  Half of the tenants do not live at the Bel Air Property. |

| | |
|---|---|
| C4 | The Debtor anticipates securing additional marketing and bookkeeping income in the amount of approximately $17,000.00 prior to October 1, 2020.  Given the Debtor's experience in the mortgage industry, the Debtor expects to make $11,000.00 per month consulting/assisting a loan broker (she will receive half of the commission, which would be around $2,200.00 per loan and can process approximately five loans per month) within 60-90 days.<br><br>The Debtor receives $1,000.00 per month from her bookkeeping clients (restaurant and film business), but this income has been impacted by the pandemic.<br><br>The Debtor has received recent requests to provide marketing for several clients.  For one inquiry, the Debtor anticipates she would receive 10-20% of a $18,000.00 contract, but she has not committed to doing the work yet given the potential client is hospitalized.  For another inquiry, the Debtor was quoted a monthly salary of $5,000.00 per month.<br><br>The Debtor has considerable contacts after a 20+ career as a loan officer and music producer, which will allow her to generate additional marketing/consulting income.  The Debtor has also been approached by several contractors to form a ADU business given her knowledge of the recent updates to ADU law.  Finally, the Debtor has received recent inquiries regarding her music, songwriting, and scriptwriting which she intends to more actively market.<br><br>The Debtor expects a $12,000.00 insurance reimbursement from AIG separate and apart from any recovery that may be obtained from the AIG Claims. |
| G1 | Pursuant to Schedules A/B, Number 25, title to the Bel Air Property is held by the Ashley S. Aarons 2015 Trust ("Trust").  The Debtor is the settlor and trustee of the Trust, which is a revocable trust.  The Trust's assets include: (1) all household goods and furnishings, (2) electronics; (3) all model engines; (4) all jewelry, coins, and other personal effects; (5) royalties and residuals from the Lawrence Welk TV show; (6) the Noble royalties (defined below); (7) the Aimco royalties (defined below); and (8) Coffee Dog Entertainment dba Coffee Dog Productions, including all business interests and assets. |

| | |
|---|---|
| G1 | The Bel Air Property suffered significant water damage on January 10, 2017 during a wind and rainstorm. There damage included damage to the ceiling, windows, sliding doors, floors, subfloors, and drywall in the two master bedrooms and the upstairs guestroom.  There was also damage to the living room ceiling and side walls downstairs.  Finally, the master bedroom balcony suffered significant damage, including cracks to the foundation, rot to the floor, and damage to the stucco adjacent to the balcony.  The Debtor filed a claim with AIG ("Claim 1").  The collapsed balcony is not included in Claim 1 because AIG asserted the condition of the balcony was due to lack of maintenance instead of water damage. The Debtor filed a second claim for the damage to the balcony and for the removal of the radiant heating when the second floor water damaged ceilings and walls were removed. ("Claim 2").  Since the date of the loss, the Debtor has focused on mitigating damages by dong the following: (1) emergency water damage remediation and abatement; (2) demolition of water damaged ceilings and walls; (4) removal of the contents of the Bel Air Property to a storage unit; (5) brush fire and tree removal as required by the fire department; (6) removal of leaves and branches from the roof; (7) maintenance of the roof; (8) removal of leaves and debris from gutters; (9) removal of a beehive; and (10) drywall repairs with sheet rock and insulation.<br><br>The Debtor has an owner building permit dated December 5, 2017 that her assigned inspector and senior inspector have confirmed is still open such that a contract may substitute into the permit.  In addition to the delay caused by AIG's dispute of the scope of the repairs and thus payment to the Debtor so that she can complete the repairs, all of the 10 contractors that have provided bids to the Debtor for the repairs needed have indicated they will not complete the work piecemeal due in part to liability concerns regarding taking over the building permit.  The contractors estimate that the costs to complete the Claim 1 repairs is between $300,000 to $570,000.  For Claim 2, the costs to complete the repairs are estimated at $250,000. |
| G1 | B.5 Books, art, antiques, collectibles - Pursuant to a verbal updated valuation from an engine appraiser, the Debtor is informed and believes that the airplane engines are worth approximately $20,000.  The prior valuation was based on an appraisal from 2013-2014.  Including the coins and miscellaneous antiques, the total value of the collectibles is $28,500. |
| G1 | B.13 Stocks/interest in businesses - As provided for in the Debtor's Schedule A/B, Number 19, the Debtor's interest in "Non-Publicly Traded Stock and Interest in Incorporated and Unincorporated Businesses, Including an Interest in an LLC, Partnership and Joint Venture include: (1) 100% ownership of Ashley Aarons Productions LLC; (2) 0.00483052% interest in Noble Royalties, Inc. ("Noble"); (3) 0.0012% ownership interest in Aimco Properties L.P. Partnership Common Units-17 ("Aimco"); and (4) 0.00012076% ownership interest in Apache Corp. Oil Royalty Texas/Winkler ("Apache").  The only asset of value is the Debtor's interest in Noble.  Debtor believes that the current liquidation value of her interest in Noble Royalties, Inc./Compass Royalty Management (.00483052% interest) is estimated to be $30,000,00, rather than $100,000.00 listed on her Amended Schedules A/B.  Last month, the Debtor received royalties from Noble that were half of what she received within the past year.<br><br>The Debtor's interest in Aimco is 0.0012%, so she receives around $6 a quarter from Aimco.  It would cost more than the Debtor receives yearly to determine the value.  The Debtor believes the value of her interest in Aimco is minimal.  The Debtor's interest in Apache is 0.00012076%, so she receives around $40 a quarter from Apache.  Again, it would cost more than the Debtor receives yearly to determine the value.  The Debtor believes the value of her interest in Aimco is minimal. |

| G1 | 7.8 Other/adjustments - This includes estimated costs of sale (8%) for the sale of the Bel Air Property in the amount of $440,000.00, capital gains taxes for the sale of the Bel Air Property in the amount of approximately $1.2 million, liquidation of the non-litigation claims at 70% of the Scheduled value (or $57,177.05) and only 10% recovery on Litigation Claims (see (6) below).  The Litigation Claims are highly speculative.  Most of the recovery from the AIG claims would be used to repair the significant water damage to the Bel Air Property.  Additionally, the AIG claims are assigned to POL pursuant to a security agreement.  Were the Debtor to file the Bad Faith Claims, there may be funds recovered in excess of the funds needs to compensate the Debtor for out of pocket repairs, costs for repairs (as required by the lenders and all code requirements), attorney's fees or fees to the Debtor's claims adjuster, and payment on any liens of secured creditors.  However, the Bad Faith Litigation has not been filed yet and it is difficult to tell how much in excess funds would be available.  For the Alliance Litigation, the Debtor's mother is funding the litigation and has agreed to be paid back after unsecured creditors are paid, so any recovery would provide benefit to the estate.  However, there is risk to litigation and conservatively, there may be around a 10% recovery.  For the remaining claims, while the Debtor is going to try to pursue the claims, they are risky and after deducting attorneys' fees and expenses, it seems unlikely the Estate will receive a significant benefit which will provide for additional funds being available to unsecured creditors.  It is possible, but seems unlikely that a Chapter 7 trustee would pursue these claims. |
|---|---|
| G1 | B.22 Patents, copyrights, other IP - As provided for in the Debtor's Schedule A/B, Number 26, the Debtor has numerous writing and publishing copyrights in a variety of songs and a musical score (some co-owned).  The Debtor provided a complete list of her song catalog and her musical on an attachment to Schedule A/B [dkt 232].  As of today, the Debtor is not earning any royalties from the song catalog or musical.  She has not had the time and opportunity to actively market of her song catalog and the musical.  Since she does not know if there is an interest in her music, she is unable to assign a value to her music catalog and her musical. |
| G1 | B.23 Licenses, franchises, intangibles - As provided for in the Debtor's Schedule A/B, Number 27, the Debtor has the following licenses and other general intangibles: (1) ASCAP Writing membership Ashley Aarons Writer No 1709729; (2) ASCAP Publishing membership Coffee Dog Publishing No. 120429; and (3) LADBS - Owner/Builder Permit No. 17016000019785.  The value for these licenses and intangibles is unknown and likely $0.00. |

| | |
|---|---|
| G1 | The Debtor does business as Coffee Dog Entertainment, as reflected on her Petition. Coffee Dog Entertainment was a California General Partnership between the Debtor and her late husband's trust. Pursuant to the terms of her late husband's trust, the asset was distributed to the Trust after he died. A final partnership tax return was filed in 2016. On November 4, 2016, the Debtor filed a Fictitious Business Name Statement with the State of California for Coffee Dog Entertainment, after which the Debtor began using Coffee Dog Entertainment as a dba. As provided above, Coffee Dog Entertainment dba Coffee Dog Productions and all of its assets are assets of the Trust. Coffee Dog Entertainment may have an interest in the music catalog and musical listed under No. 26 of Amended Schedule B.<br><br>In 2003, the Debtor started Coffee Dog Records, which was a solo label to write, produce, and perform music. She developed a song catalog for herself as an artist. She received some recognition from Billboard in songwriting, but she was professionally earning income in the mortgage industry. The same year, the Debtor incorporated her song copyrights and publishing and licensing rights into Coffee Dog Entertainment.<br><br>The Debtor included all income from Coffee Dog Entertainment in her Amended Schedule I, estimated at $1,747.00. This was a projection based on previous income she had received through the sale of decorative furnishings, including actual office furniture used by Coffee Dog Entertainment. Specifically, she sold filing cabinets, bookshelves, extra printers, an old RCA TV, lighting tools, etc. The total cash deposited into her trust from these individual sales was $3,665 in January 2020.<br><br>Debtor also rents Coffee Dog Entertainment equipment and planned to convert the garage at her Bel Air property into a studio. However, since the studio is located in her Bel Air property, any studio rental is included in rental income from the Bel Air Property as provided for in Endnote C3. |
| | |
| | |
| | |

**(2) Debtor's history:**  *including events leading to bankruptcy and, unless Debtor is an individual, the identity of Debtor's principals, management, and relevant affiliates*

| | |
|---|---|
| __/__/__ | Debtor owns the Bel Air Property which had suffered significant water damage which caused a loss of rental income. Debtor fell behind on her payments to the lenders on the Bel Air Property and the Sweetzer Property and the senior lender on the Sweetzer Property had scheduled a foreclosure sale. |
| __/__/__ | |
| __/__/__ | |
| __/__/__ | |

**(3) Significant events during the bankruptcy case:**  *including any borrowing/cash collateral orders, sales of assets out of the ordinary course of business, the*

| | |
|---|---|
| 07/17/19 | Debtor filed her Schedules and Statement of Financial Affairs. |
| 08/06/19 | Chapter 11 Status Conference Report filed [dkt 11]. |

| | |
|---|---|
| 10/07/19 | Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property) was entered [dkt 96], allowing Alliance to conduct a foreclosure sale of the Sweetzer Property.  The Sweetzer Property was sold at a foreclosure sale on December 3, 2019 by Alliance, thereby resolving Alliance's claim in the case and extinguishing the junior liens on the Sweetzer Property.  Prior to the foreclosure sale, on December 2, 2019, the Debtor filed a lawsuit against Alliance and others related to the Sweetzer Property for breach of contract; breach of implied covenant of good faith and fair dealing; negligence; fraud; cancellation of instruments; quiet title; declaratory relief; unfair business practices; accounting; and unconscionability. |
| 10/30/19 | Order Setting Bar Date: December 20, 2019 and Directing Service by Debtor [dkt 116]. |
| 11/26/19 | Status Report filed [dkt 130]. |
| 12/12/19 | Order on Application for Payment of: Interim Fees and/or Expenses entered for Michael R. Totaro, Totaro & Shanahan [dkt 134] in the total amount of $54,010.00. |
| 06/02/20 | Debtor filed her Motion in Individual Chapter 11 Case for order Approving Budget for the Use of the Debtors' Cash and Postpetition Income [dkt |
| 03/04/20 | Debtor filed her Application to employ Asset Recovery Association dba ClaimsXP as Public Adjuster Representing Debtor and Debtor in Possession on Insurance Claims Related to Damage to Her Bel Air Property [dkt 167] ("ClaimsXP Employment Application"). |
| 03/13/20 | Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property) was entered [dkt 173], allowing James Haycock to proceed with issuing a Notice of Default and take all other steps preliminary to complete foreclosure.  However, foreclosure may not be completed without further order from the Court. |
| 03/13/20 | Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property) was entered [dkt 174], allowing POL to proceed with issuing a Notice of Default and take all other steps preliminary to complete foreclosure.  However, foreclosure may not be completed without further order from the Court. |
| 03/17/20 | Debtor's Updated Status Report filed [dkt 180]. |
| 04/06/20 | Amended Schedules I & J filed [dkt 195]. |
| 05/22/20 | Substitution of Attorney filed, substituting in Shulman Bastian Friedman & Bui LLP [dkt 231] |
| 06/02/20 | Amended Schedules A/B, E/F, I and J, Statements of Financial Affairs, Master Mailing List and Summary of Assets and Liabilities (Form 106Sum) and Declaration About Schedules (Form 106Dec) filed [dkt 232]. |
| 06/02/20 | Notice of Motion and Motion in Individual Chapter 11 Case for Order Approving a Budget and the Use of the Debtor's Cash and Postpetition |
| 06/03/20 | Supplemental Proof of Service Regarding: Order Setting Bar Date [dkt 234]; sent to the parties listed on the amended Schedule E/F which had not received the Bar Date Order when prior counsel served it and have not filed claims. |
| 06/04/20 | Updated Chapter 11 Status Conference Report filed [dkt 236]. |
| 06/09/20 | Notice of Supplement and Supplement to Debtor's Application to Employ Asset Recovery Association dba ClaimsXP as Public Adjuster Representing the Debtor and Debtor in Possession on Insurance Claims Related to Damage to Her Bel Air Property [dkt 241]. |
| 06/11/20 | Order Granting Application and Authorizing Debtor to Employ Shulman Bastian Friedman & Bui LLP as General Counsel [dkt 244]. |
| 06/19/20 | Chapter 11 Plan Dated June 19, 2020 filed. |
| 06/19/20 | Chapter 11 Disclosure Statement Dated June 19, 2020 filed. |
| 06/22/20 | Amended Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property) was entered [dkt 255], granting POL full relief from stay and allowing POL to enforce its remedies to foreclose upon and obtain possession of the Bel Air Property in accordance with applicable nonbankruptcy law. |
| 07/09/20 | Application for Order Authorizing Employment of the Law Office of Mainack D'Attaray as Special Litigation Counsel [dkt 273]. |

| 07/14/20 | Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Personal Property) entered on July 14, 2020 [dkt 280], which provides that the stay remains in effect subject to the terms and conditions set forth inthe Adequate Protection Agreement to the order. |
| __/__/__ | |
| __/__/__ | |
| __/__/__ | |

**(4) Exit strategy:**  *steps taken or planned to fix the problems that led to bankruptcy (e.g., Debtor was unemployed but found a new job at comparable pay starting __/__/__, or Debtor previously underpriced goods and has now increased prices without material loss in sales volume)*

In addition to continuing to receive monthly royalties from (1) the Welk Group; (2) Noble; (3) Apache; and (4) Aimco, the Debtor began working as a legal assistant in April 2020, continues to earn income for marketing/bookkeeping, and is earning rental income from renting rooms, parking spaces and an exterior art studio on short term leases at the Bel Air Property.  The Debtor expects a significant income increase from: (1) Bel Air Property after repairs are completed and property is in full use or through additional rentals of rooms or exterior building; (2) marketing income; and (3) bonus from bookkeeping.

**(5) Principal risk factors:**  *e.g., asset sale could fall through, Debtor could lose employment/business, loss of key employees, loss of paying tenants, etc.*

If the Debtor defaults on the Modification Agreement (Exhibit J to the Disclosure Statement), the first lienholder for the Bel Air Property and the second lienholders have received relief from the automatic stay and may proceed with foreclosure of the Bel Air Property.  The COVID-19 pandemic also could affect the Debtor's monthly income should there be another shutdown.  The amounts or benefits that will be achieved from prosecution of Litigation Claims is unknown and speculative.  There is also risk inherent in any litigation and potential attorneys' fees and costs that would be incurred to pursue the Litigation Claims, all of which may impact the funds available to pay creditors.  Finally, by reason of uncertainties inherent in the predictions of future events, the actual distributions to holders of allowed claims may well be different from those projected and such difference may well be material and adverse to the interest of creditors.

**(6) Litigation - anticipated or pending:**  *e.g., claims objections, preference and fraudulent transfer claims, lawsuits against Debtor.*

| Name (Plaintiff(s) v. Defendant(s)) | Projected gross recovery (or liability) | Nature of claim(s) (e.g., § 547) and current status |
| --- | --- | --- |
| AIG Insurance Claim #1-683-647830 - Total TBD - First Supplemental Bill | $          500,000 | Claim against Debtor's insurance for water damage to Bel Air Property.<br><br>The Debtor's public adjuster has indicated that he believes that he can recover $500,000.00 for this claim.  If he is not successful, the Debtor may proceed with a bad faith lawsuit against AIG ("First Bad Faith Litigation"), but she is not there yet and has not retained counsel or discussed the valuation of such a lawsuit, if it is necessary. |
| AIG Insurance Claim #2-683-670019 - Amount to be determined, possible $250,000.00 | $          250,000 | Claim against Debtor's insurance for water damage to Bel Air Property.<br><br>The Debtor's public adjuster has indicated that he believes that he can recover $250,000.00 for this claim.  If he is not successful, the Debtor may proceed with a bad faith lawsuit against AIG ("Second Bad Faith Litigation," collectively with the First Bad Faith Claim, the "Bad Faith Litigation"), but she is not there yet and has not retained counsel or discussed the valuation of such a lawsuit, if it is necessary. |

| | | | |
|---|---|---|---|
| Homesite/Progressive - Named 3rd Party Insured Interest on former Bel Air Tenant's Insurance. | $ | 31,000 | Claim to recoup out of pocket hotel costs for former Bel Air tenant.  This claim is related to the above insurance claims and will be incorporated into and recovery in the above claims. |
| *Ashley S. Aarons, et al. vs. Alliance Portfolio Private Equity Finance, Inc., et. al.* | $ | 1,000,000 | Filed on December 2, 2019; pending in the Los Angeles Superior Court, Case No. 19STCV4247.  Claim for breach of contract; breach of the implied covenant of good faith and fair deadline; negligence; fraud; cancelation of instruments; quiet title; declaratory relief; unfair business practices; accounting; and unconscionability ("Alliance Litigation"). |
| Ashley S. Aarons v. Alexander Matros, Jonah Feingold, Luke Lenza and Max Maulitz | $ | 22,728 | Claim for property damage due from former tenants of Sweetzer Property; lawsuit has not been filed. |
| Ashley S. Aarons v. The Veggie Grill Inc. | $ | 10,000 | Small Claims Action, Los Angeles Superior Court Case No.: unknown.  Claim for personal injury and beach of contract. |
| | $ | - | |

# Exhibit I

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Alliance Portfolio, Private Equity Finance, 120 Vantis, Suite 515 Aliso Viejo, CA 92656-2679 | $1,600,000.00 | | | | | | | $1,600,000.00 | $   .00 | $   .00 |
| Employment Development Dept. Bankruptcy Group MIC 92E P.O. Box 826880 Sacramento, CA 94280-0001 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Franchise Tax Board Bankruptcy Section MS: A-340 P.O. Box 2952 Sacramento, CA 95812-2952 | $0.00 | | | | | | | $   .00 | $   .00 | $   .00 |
| Internal Revenue Service PO Box 7346 Philadelphia, PA 19101-7346 | $0.00 | | | | | | | $   .00 | $   .00 | $   .00 |
| OFFICE OF FINANCE CITY OF LOS ANGELES 200 N SPRING ST RM 101 CITY HALL LOS ANGELES CA 90012-3224 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Al Hummer 9400 Fairway View Place #1215 Rancho Cucamonga, CA 91730-0938 | $48,000.00 | | | | | | | $   .00 | $   .00 | $48,000.00 |

**Exhibit I, Page 1**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Alexander Matros Richard K Matros 14 Scenic Bluff Newport Coast, CA 92657-2103 | $3,600.00 | | X | X | 24 | 12/18/2019 | $   .00 | $   .00 | $3,025.00 | $ 575.00 |
| | | | | | | | | | | |
| American Express National Bank c/o Becket and Lee LLP PO Box 3001 Malvern  PA 19355-0701 | $6,104.28 | | | | 10 | 8/8/2019 | $6,104.28 | $   .00 | $   .00 | $6,104.28 |
| Amir Abraham Milani 8721 Santa Monica Blvd. #443 West Hollywood, CA 90069-4507 | $46,000.00 | | | X | | | | $   .00 | $   .00 | $   .00 |
| Andrea Friedlander 1167 S Hayworth Ave Los Angeles, CA 90035-2603 | $80,000.00 | | | | 15 | 9/20/2019 | $80,000.00 | $   .00 | $   .00 | $80,000.00 |
| Ashley S Aarons 2015 Trust 2029 Baltra Place Costa Mesa, CA 92626-3516 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Axcess Financial 7755 Montogomery Road Suite 400 Cincinnati, OH 45236-4197 | $4,960.00 | | | | | | | $   .00 | $   .00 | $4,960.00 |
| Axos Bank 9205 W Russell Rd Ste 400 Las Vegas, NV 89148-1468 | $25,000.00 | | | | | | | $   .00 | $   .00 | $25,000.00 |

**Exhibit I, Page 2**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Capital One by American InfoSource as agent 4515 N Santa Fe Ave Oklahoma City, OK 73118 | $2,009.00 | | | | 8 | 7/30/2019 | $1,870.14 | $   .00 | $   .00 | $1,870.14 |
| Capital One by American InfoSource as agent 4515 N Santa Fe Ave Oklahoma City, OK 73118 | $1,066.00 | | | | 7 | 7/30//2019 | $1,041.52 | $   .00 | $   .00 | $1,041.52 |
| CashCall, Inc. C/O WEINSTEIN & RILEY, PS 2001 WESTERN AVENUE, STE 400 SEATTLE, WA 98121-3132 | $11,776.00 | | | | 14 | 9/19/2019 | $11,776.32 | $   .00 | $   .00 | $11,776.00 |
| Citibank / Sears Citibank Corp/Centralized Bankruptcy Po Box 790034 St Louis, MO 63179-0034 | $7,886.00 | | | | | | | $   .00 | $   .00 | $7,886.00 |
| Coffee Dog Entertainment 984 Bel Air Road Los Angeles, CA 90077-3010 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Community Choice Financial Attn: Bankruptcy 6785 Bobcat Way Dublin, OH 43016-1443 | $4,867.00 | | | | | | | $   .00 | $   .00 | $4,867.00 |

**Exhibit I, Page 3**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Complete Business Solutions Group, Inc. c/o Joe Cole 20 N. 3rd Street Philadelphia, PA 19106-2118 | $300,000.00 | | | | 3 | 7/26/2019 | $395,594.07 | $395,594.07 | $ .00 | $ .00 |
| Complete Business Solutions Grp 35453-B, Dumbarton Ct. Newark, CA 94560-1100 | $0.00 | | | X | | | | $ .00 | $ .00 | $ .00 |
| Continental Currency Service Inc Attn Cathy 1108 E 17th St Santa Ana CA 92701-2600 | | | | | 23 | 11/25/2019 | $ 191.47 | $ .00 | $ .00 | $ 191.47 |
| Credit One Bank Attn: Bankruptcy Department Po Box 98873 Las Vegas, NV 89193-8873 | $1,560.00 | | | | | | | $ .00 | $ .00 | $1,560.00 |
| Credit One Bank | $648.00 | | | | | | | $ .00 | $ .00 | $ 648.00 |
| Deanna D Egidio 5502 Wellesley Drive Calabasas, CA 91302-3110 | $36,000.00 | | | | 31 | 2/12/2020 | $44,500.00 | $ .00 | $ .00 | $44,500.00 |
| Directv, LLC by American InfoSource as agent PO Box 5008 Carol Stream, IL 60197-5008 | $241.57 | | | | 18 | 10/7/2019 | $ 241.57 | $ .00 | $ .00 | $ 241.57 |
| Directv, LLC by American InfoSource as agent 4515 N Santa Fe Ave Oklahoma City, OK 73118 | | | | | | | | $ .00 | $ .00 | $ .00 |

**Exhibit I, Page 4**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Discover Bank<br>Discover Products Inc<br>PO Box 3025<br>New Albany, OH 43054-3025 | $12,275.00 | | | | 4 | 7/26/2019 | $12,746.88 | $   .00 | $   .00 | $12,746.88 |
| DISCOVER FINANCIAL SERVICES LLC<br>PO BOX 3025<br>NEW ALBANY OH 43054-3025 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Discover Personal Loan<br>Attn: Bankruptcy<br>Po Box 30954<br>Salt Lake City, UT 84130-0954 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Discover Personal Loans<br>PO Box 30954<br>Salt Lake City, UT 84130-0954 | $22,599.00 | | | | 6 | 7/30/2020 | $23,132.34 | $   .00 | $   .00 | $23,132.34 |
| First National Bank of Omaha<br>1620 Dodge St., Stop Code 3105<br>Omaha, NE 68197 | | | | | 1 | 7/18/2019 | $1,090.55 | $   .00 | $   .00 | $1,090.55 |
| FRANCHISE TAX BOARD<br>BANKRUPTCY SECTION MS A340<br>PO BOX 2952<br>SACRAMENTO CA 95812-2952 | | | | | 12 | 8/15/2019 | $   .00 | $   .00 | $   .00 | $   .00 |
| Farmers New World Life Insurance Co<br>3120 139th Ave SE Ste. 300<br>Bellevue, WA 98005-4491 | $1,714.71 | | | | | | | $1,714.71 | $   .00 | $   .00 |

**Exhibit I, Page 5**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| PERI GARITE ATTN CARD WORKS 101 CROSSWAYS PARK DR W WOODBURY NY 11797-2020 | | | | | | | | $    .00 | $    .00 | $    .00 |
| | | | | | | | | | | |
| Funding Zone 75 Maiden Lane, Ste 203 New York, NY 10038-4810 | $7,180.00 | | | | | | | $    .00 | $    .00 | $7,180.00 |
| Internal Revenue Service Official Noticing Address for BK POB 7346 Philadelphia, PA 19101-7346 | $0.00 | | | | 2 | 7/26/2019 | $ 419.67 | $    .00 | $ 210.57 | $ 209.10 |
| James Haycock, Individually and as Trustee of a Separate Trust 11301 Taylor Draper Lane #2 Austin, TX 78759-3929 | $170,000.00 | | | | 14 | 8/29/2019 | $    .00 | $173,367.36 | $    .00 | $    .00 |
| Jonah Feingold 180 East End New York, NY 10128-7763 | $3,600.00 | | X | X | 25 | 12/18/2019 | $3,600.00 | $    .00 | $3,025.00 | $ 575.00 |
| Justin Bonesteel 267 Wesley Ave Ventura, CA 93003-3424 | $62,000.00 | | X | X | | | | $    .00 | $    .00 | $    .00 |

**Exhibit I, Page 6**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR ATTN BANKRUPTCY UNIT PO BOX 54110 LOS ANGELES CA 90054-0110 | $19,690.47 | | | | 9 | 11/12/2019 but was withdrawn on 4/21/2020, docket 219 | $39,055.77 | $   .00 | $   .00 | $   .00 |
| LENDMARK FINANCIAL SERVICES 2118 USHER ST COVINGTON GA 30014-2434 | | | | | 11 | 8/12/2019 | $12,506.54 | $   .00 | $   .00 | $12,506.54 |
| LoanMe, Inc. Attn: Bankruptcy 1900 S State College Blvd Ste 300 Anaheim, CA 92806-0101 | $10,176.00 | | | | 22 | 11/21/2019 | $10,317.55 | $   .00 | $   .00 | $10,317.55 |
| Luke Lenza Andrew Lenza 83 Carriage Hill Drive Colts Neck, NJ 07722-1620 | $3,600.00 | | X | X | 26 | 12/18/2019 | $3,600.00 | $   .00 | $3,025.00 | $ 575.00 |
| M Lamorie PO Box 66738 Los Angeles, CA 90066-0738 | $170,000.00 | | | X | 21 | 11/15/2019 | $248,800.00 | $248,800.00 | $   .00 | $   .00 |
| Max Maulitz Robert Maulitz 1040 N. Spaulding Avenue Unit 3 West Hollywood, CA 90046-6284 | $3,600.00 | | X | X | 27 | 12/18/2019 | $3,600.00 | $   .00 | $3,025.00 | $ 575.00 |

**Exhibit I, Page 7**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Oportun<br>Attn: Bankruptcy<br>Po Box 4085<br>Menlo Park, CA 94026-4085 | $4,165.00 | | | | | | | $    .00 | $    .00 | $4,165.00 |
| Patch of Land Lending LLC<br>Headquarters<br>15000 Ventura Blvd., Ste 300<br>Sherman Oaks, CA 91403-2443 | $3,361,996.00 | | | | 28 | 12/20/2019 | $3,354,858.00 | $3,354,858.00 | $    .00 | $    .00 |
| Prompt Capital Funding LLC<br>3041 Ave U 1st Floor<br>Brooklyn, NY 11229 | $45,000.00 | | | X | | | | $    .00 | $    .00 | $    .00 |
| RISE Credit<br>Attn: Bankruptcy<br>Po Box 101808<br>Fort Worth, TX 76185-1808 | $1,838.00 | | | | | | | $    .00 | $    .00 | $1,838.00 |
| Raul Santana Rodriguez<br>c/o Law Offices of Eric Ridley<br>567 W. Channel Islands Blvd. #210<br>Port Hueneme, CA 93041-2133 | $162,000.00 | | | | 16 | 9/20/2019 | $162,000.00 | $    .00 | $    .00 | $162,000.00 |
| Regal Capital Inc<br>125 Ave T<br>Brooklyn, NY 11223 | $12,000.00 | | | | | | | $    .00 | $    .00 | $12,000.00 |
| Saman Alishahi<br>500 Warner Ave<br>Los Angeles CA 90024-2565 | $7,500.00 | | | | 20 | 11/12/2019 | $7,500.00 | $    .00 | $    .00 | $7,500.00 |

**Exhibit I, Page 8**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Shiv Raj Gupta<br>Merit One Lending Inc<br>1443 E Washington Blvd #182<br>Pasadena, CA 91104-2650 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Shiv Raj Gupta and Saroj Gupta<br>530 S. LAKE AVE. #943<br>PASADENA, CA 91101-3515 | $250,000.00 | | | | 29 | 2/3/2020 | $284,664.66 | $   .00 | $   .00 | $284,664.66 |
| Sprint Corp<br>ATTN BANKRUPTCY DEPT<br>PO BOX 7949<br>OVERLAND PARK KS 66207-0949 | $12,850.52 | | | | 5 | 7/29/2019 | $12,850.52 | $   .00 | $   .00 | $12,850.52 |
| Synchrony Bank (PayPal or GEMB or GECRB)<br>c/o PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk VA 23541-1021 | $3,769.01 | | | | 13 | 9/19/2019 | $3,769.01 | $   .00 | $   .00 | $3,769.01 |
| Western Star Financial<br>3845 10th Street<br>Riverside, CA 92501-3519 | $25,000.00 | | | | | | $25,000.00 | $   .00 | $   .00 | $   .00 |
| Westlake Financial Services<br>4751 Wilshire Blvd Suite 100<br>Los Angeles, CA 90010 | $17,000.00 | | | | 19 | 11/19/2019 | $17,418.24 | $17,418.24 | $   .00 | $   .00 |
| Yellowstone Capital West, LLC<br>116 Nassau Street, Ste 804<br>New York, NY 10038-2481 | $42,063.00 | | | | | | | $   .00 | $   .00 | $42,063.00 |

**Exhibit I, Page 9**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Yes Funding Services, LLC E Advance Services, LLC 122 E 42nd Street #2112 New York, NY 10168-2100 | $6,500.00 | | | | | | | $   .00 | $   .00 | $6,500.00 |
| Pacific Asset Group LLC Attn Managing Member 1850 Greenfield Ave Suite 14 Los Angeles, CA 90025 | $0.00 | | | | | | | $   .00 | $   .00 | $   .00 |
| Dan S Maccabee 2049 Century Park Est Ste 2525 Los Angeles, CA 90067-3225 | $0.00 | | | | | | | $   .00 | $   .00 | $   .00 |
| Wayne Lieser 885 Tennyson Ventura, CA 93003 | $0.00 | | | | | | | $   .00 | $   .00 | $   .00 |
| Amanda Kuri 25885 Blascos Mission Viejo, CA 92691 | $6,000.00 | | | | | | | $   .00 | $   .00 | $6,000.00 |
| Kornel Horvath dba Triple AAA Carpet and Tile Cleaning Services 175 Tulip Lane Costa Mesa, CA 92627 | $11,700.00 | | X | X | | | | $   .00 | $   .00 | $   .00 |
| Progressive Leasing NPRTO Californai LLC Attn President or Manager Agent 256 West Data Drive Draper, UT 84020 | $2,021.18 | | | | | | | $   .00 | $   .00 | $2,021.18 |

**Exhibit I, Page 10**

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| AT&T Mobility<br>Attn President or Manager Agent<br>PO Box 6463<br>Carol Stream, IL 60197-6463 | $67,838.92 | | | | | | | $    .00 | $    .00 | $67,838.92 |
| Anand Law PC<br>Attn President or Manager Agent<br>5455 Wilshire Boulevard Suite 1812<br>Los Angeles, CA 90036 | $10,040.84 | | | | 30 | 2/10/2020 | $10,892.88 | $    .00 | $    .00 | $10,892.88 |
| Hoag Memorial Hospital Presbyterian<br>Attn President or Manager Agent<br>2975 Red Hill Ave Suite 200<br>Costa Mesa, CA 92626-1206 | $2,343.00 | | X | X | | | | $    .00 | $    .00 | $    .00 |
| Premier Nationwide Security Services Inc<br>Attn President or Manager Agent<br>6047 Tampa Ave Suite 208<br>Tarzana, CA 91356 | $3,794.00 | | | X | | | | $    .00 | $    .00 | $    .00 |
| Care Partners at Home<br>Attn President or Manager Agent<br>2 Executive Circle Suite 100<br>Irvine, CA 92614 | $27,851.49 | | | | | | | $    .00 | $    .00 | $27,351.49 |
| | | | | | | | TOTALS | $5,791,752.38 | $12,310.57 | $959,583.60 |

**Exhibit I, Page 11**

# Exhibit J

Ashley Susan Aarons
Case No. 2:19-bk-18316-NB
Exhibit 2

## EXHIBIT J
## SUMMARY OF KEY PROVISIONS OF MODIFICATION AGREEMENT

Debtor and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("Trust" or "Borrower," collectively with the Debtor, the "Debtor Parties"), for which the Debtor is the Trustee have reached a settlement with the first priority lien holder on the Bel Air Property, Patch of Land Lending LLC, as servicing agent for the current beneficiary, Wilmington Savings Fund Society, FSB, Not in its Individual Capacity But Solely as Trustee for Invictus Residential Pooler Trust 3A, it successors and/or assigns (collectively "POL"), which reinstates the POL loan and gives the Debtor a year to pay POL off. The settlement with POL is documented in a certain Modification and Release Agreement ("Modification Agreement"), a copy of which is attached to the Disclosure Statement as **Exhibit K**. The principal terms of the Modification Agreement provide for the following:

a. **New Principal Balance.** The new principal balance of the Loan shall be $3,428,582.53 ("**New Principal Balance**"). The New Principal Balance is comprised of the Indebtedness described in the Modification Agreement of $4,001,957.53, plus a reserve of $73,200.00 (**"Reserve"**), with a reduction of $646,575.00, which represents amounts owing for default interest, late fees and other charges voluntarily waived by Creditor as part of the resolution. The New Principal Balance shall accrue interest at **the Note rate of 7.5%, with a default rate of 18%,** in accordance with the terms of the Note, which shall remain valid and enforceable;

b. **New Maturity Date.** All payments of interest and principal shall be due and payable upon the new maturity date of April 1, 2021 ("**New Maturity Date**").

c. **New Monthly Interest Payments.** Interest only payments on the New Principal Balance shall be due and payable in consecutive monthly installments of $21,428.64 ("**New Monthly Payments**") on the first day of each month beginning on July 1, 2020 and continuing each month thereafter. Such payments shall continue until the entire Indebtedness evidenced by the Note, as modified, and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest, fees, and costs, due and payable on the New Maturity Date.

d. **Reserve Funds.** The funds currently held by Creditor totaling $73,200 shall be credited to the Loan and applied:

   i. first: to the first three (3) months of New Monthly Payments, estimated to be $64,223.61 in total;
   ii. second: to taxes owed relating to the Property, estimated in the amount of $4,579.04;
   iii. third: to reduce the prior outstanding legal fees.

e. **Late Fees.** The late fee shall be reduced from a charge of 18 cents ($0.18) for each dollar ($1.00) that is not paid when due, to a charge of 10 cents ($0.10) for each dollar that is not paid when due ("**Reduced Late Fee**"). All other terms of the Late Fee provision of the Note (section 3) remain unchanged except for as specified herein.

f. **Extension Fee.** In accordance with the Addendum to Promissory Note (Conditional right to Extension Addendum) ("**Extension Addendum**"), included in the attachment to **Exhibit "A"** attached to the Modification Agreement, which terms are incorporated herein by reference as if set forth fully herein, Borrower can only obtain an extension of the Maturity Date for up to six (6) months, if the eleven (11) conditions specified in the Extension Addendum ("**Extension Conditions**") are satisfied, and in Lender's sole and absolute discretion. However, as part of the resolution herein, and without prejudice to any of Lender's rights, Lender has agreed to waive the Extension Conditions for purposes of the Modification Agreement only. Accordingly, the Maturity Date is extended until the New Maturity Date in consideration of a reduced fee of 2% of the original principal balance (i.e., $60,000) ("**Extension Fee**") charged to the

**Exhibit J, Page 1**

Ashley Susan Aarons
Case No. 2:19-bk-18316-NB
Exhibit 2

Loan.  The extension offered herein is approved by Lender notwithstanding the failure of Borrower to satisfy the Extension Conditions, but without prejudice to any of Lender's rights, including, but not limited to, its right to enforce the requirement of Borrower compliance with the Extension Conditions in the event Borrower requests a further extension upon the Extended Maturity Date, as specified below.  The Extension Fee shall not accrue interest and shall be deferred until the New Maturity Date at which time it will be fully due and payable.  However, in the event that the Borrower 1) remains current on the Loan, 2) does not default on the Loan or this Agreement, and 3) timely pays off the Loan in full, immediately upon the Extended Maturity Date, and 4) an Additional Extension Request is not made as specified below (collectively "**Conditions for Waiver of Extension Fee**"), the Extension Fee shall be waived by Lender.  However, in the event any of the Conditions for Waiver of Extension fee are not fully and timely satisfied, the Extension Fee shall be due and owing upon payoff or foreclosure.  Borrower shall have the right to request **one** extension ("**Additional Extension Request**") of the New Maturity Date in accordance with the Extension and Fee Schedule in Exhibit A to the Extension Addendum, if and only if, Creditor, consents to such extension, all of the Extension Conditions specified therein are satisfied, and the Debtor pays any associated extension fee.[1]

g.  **Insurance Claims Additional Creditor Protections:**  The Parties acknowledge that Creditor has independent rights relating to any insurance proceeds ("**Proceeds**") relating to the Insurance Claims, as a loss payee or additional insured on the policy.  Without prejudice or waiver  to any of Creditor's rights, including, but not limited to, its rights to pursue the Proceeds independently or through its own adjuster, the Debtor Parties have agreed to include the following protections to ensure that the Proceeds are sufficient to complete the repairs on the Property and protect Creditor's interest.

   i.  **Progress Deadline – Response to Insurer Regarding the Insurance Claims.**  On or before July 28, 2020, the Borrower must respond to all requests for information on the Insurance Claims that have been requested by her insurer on the Property, American International Group, Inc. ("**AIG**"). Borrower shall provide Creditor with evidence of her satisfaction of this progress deadline by no later than August 17, 2020.

   ii.  **Progress Deadline - Written Demand for Insurance Claims to be Submitted to an Appraisal Process.**  If by August 31, 2020, the Borrower and AIG have not come to an agreement on the actual cash value, amount of loss or cost of repair replacement of the Property under the Insurance Claims, then the Borrower shall immediately invoke its right for and make a written demand to AIG for the Insurance Claims to be submitted to the appraisal process under the applicable insurance policies. The Borrower shall provide Creditor with evidence of her satisfaction of this progress deadline by no later than September 10, 2020.

   iii.  **Updates/Inspection.**  The Debtor Parties shall, at all times, cooperate with Creditor and provide Creditor with updates as to the progress on the construction/repairs to the Property and shall also, upon twenty-four (24) hours notice, allow Creditor access to the Property so that Creditor may monitor the progress of construction/repairs to the Property, obtain a valuation of the Property, and otherwise protect their interests in the Property.  The Debtor Parties shall cooperate with Creditor in all reasonable respects regarding any inquiry by Creditor into progress of construction/repairs to the

---

[1] For example and clarification purposes, in the event an Additional Extension Request is timely made, Creditor consents to such extension, all of the Extension Conditions specified therein are satisfied, and Borrower pays any associated *additional* extension fee, the Borrower shall be entitled to extend the Loan up to six (6) months pursuant to the Fee Schedule attached to Exhibit A of the Note.  Also, in this scenario, the $60,000 Extension Fee owing for the extension of the Maturity Date described in this Agreement until the New Maturity Date, would not be waived, and would be due and owing upon payoff or foreclosure.

Ashley Susan Aarons
Case No. 2:19-bk-18316-NB
Exhibit 2

Property and shall hold any Proceeds received relating to the Insurance Claims, in a blocked account, subject to approval of Creditor regarding use of same.

h.  **Title Insurance/Lien Priority.**  On or before August 24, 2020, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this modification does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as allowed pursuant to the Loan Documents as modified by this Agreement.  The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above.  In the event that Lawyers Title Company ("**Title Company**"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.  The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy.  Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the August 24, 2020 deadline) or 2) obtain confirmation of a Plan which provides for such subordinations.

i.  **No Additional Liens or Encumbrances.**  Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens. except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated construction and repairs on the Property so long as such new liens and encumbrances are provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

j.  **Approval of Agreement by Bankruptcy Court.**  That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Approval Order must be entered on or before **August 10, 2020** ("**Approval Deadline**") in order for this Agreement to be effective.  In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms[2] and the MFR[3] shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective.  In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  The Approval Order, or a separate order submitted therewith, or the Plan terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents[4], as modified by this Agreement, without further hearing or order of the Court. Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these Proceedings

---

[2] On November 13, 2019, Debtor filed a Motion to Determine the Validity of Provisions of Promissory Note and Deed of Trust Held by Secured Creditor Patch of Land ("**Motion Regarding Note Terms**").

[3] On February 14, 2020 Invictus filed a Motion for Relief from Stay ("**MFR**") requesting authority to foreclose the Property pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2) based upon the failure of Debtor to comply with the Stay Continuance Order, the failure to make ongoing payments, lack of adequate protection, lack of progress in the Bankruptcy, and allegations that there was limited equity and the Property was not necessary for a reorganization.

[4] As defined in the Modification Agreement.

**Exhibit J, Page 3**

Ashley Susan Aarons
Case No. 2:19-bk-18316-NB
Exhibit 2

shall confirm to the Agreement.  The Approval Order shall also provide that the Order is a final order and that there are no further rights to stay or appeal the Order and that this Agreement overrides any conflicting provision in the Plan, including any default provision.

# Exhibit K

## MODIFICATION AND RELEASE AGREEMENT

**THIS SETTLEMENT AND MODIFICATION AGREEMENT** ("**Agreement**") is made and entered into as of the date of its full execution by and between Ashley S. Aarons, individually and on behalf of her heirs, agents, employees and successors and assigns ("**Debtor**") and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("**Trust**" or "**Borrower**") and its respective  trustees, heirs, agents, employees, successors and assigns[1], on the one hand, and Patch of Land Lending, Inc. ("**POL**"), FCI Lender Services, Inc. ("**FCI**") and Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Trustee for Invictus Residential Pooler Trust 3A ("**Invictus**" or "**Lender**"), and POL and Lender's respective trustees, officers, agents, managers, employees, attorneys, successor and assigns,  on the other hand.  Debtor and Borrower/Trust shall collectively hereafter be referred to as the "**Debtor Parties**".  POL, FCI, and Invictus/Lender shall collectively be referred to as "**Creditor**".  Debtor Parties and Creditor are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**".

## RECITALS

A.      Debtor and the Trust sought a loan through Chris Martin, Jr, a loan broker ("**Broker**") as early as February 2, 2018.  Broker is licensed by the California Department of Real Estate.  Broker represented the Trust and Debtor and sought a loan from a variety of lenders or investors, including POL, and eventually obtained a Loan ("**Loan**") with POL. The Loan is evidenced by a Promissory Note dated March 22, 2018 in the principal amount of $3,000,000.00 (the "**Note**") and secured by a First Deed of Trust of same date (the "**Secured Instrument**") executed and recorded in Los Angeles County and which encumbers the real property located at 984 Bel Air Road, Los Angeles, CA 90077, (the "**Property**").  The Note, Security Instrument and all documents signed in connection with the arrangement and finalization of the Loan, including all addendums and exhibits arising out of or related to the Loan, as evidenced by the Note and Security Agreement, are collectively referred to herein as the "**Loan Documents**".

B.      Creditor asserts that at all times, Borrower represented to Broker and to POL, and the Loan Documents provided, that the Loan was a business or investment purpose loan and the Loan was extended for business or investment purposes only.  In accordance with the terms of the Note, monthly interest payments were required to be paid on the Loan until the maturity date of April 1, 2020 ("**Maturity Date**"), at which time all amounts owing on the Loan would become fully due and payable.  A true and correct copy of the Note and Security Instrument, including all assignments, are attached hereto as **Exhibit "A".**

C.      POL is a licensed California Finance Lender.  POL does not finance consumer mortgages for personal, household or consumer purposes.  After POL originates loans it sells them to investors, but in most cases retains servicing rights on loans it funds.

D.      Debtor is an individual and the guarantor of the Loan, pursuant to the Guaranty Agreement ("**Guaranty**") executed with the Loan Documents.

---

[1] Without limiting the forgoing description of the Trust or Borrower, the term "Trust" and "Borrower" also includes any interest of the estate of Borrower or the Trust, resulting from the filing of the Bankruptcy described in Paragraph G of this Agreement.

E.      Debtor and Trust previously represented to POL, and continue to represent, that the Trust is a revocable trust, organized under the laws of the State of California, and that the Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this Agreement or the Loan Documents to be incorrect or to allow the Trust any right to challenge or dispute the Loan or the Agreement.  At all times, including up to the time of the execution of this Agreement, Debtor is the only Trustee of the Trust, duly appointed, authorized and qualified to act under the Trust agreement and is authorized to act on behalf of the Trust.  A true and correct copy of a certification of trust ("**Trust Certificate**")  provided by the Trust is attached hereto as **Exhibit "B"**, which confirms Debtor's authorization to act on behalf of the Trust in entering into this Agreement and making the representations contained herein.

F.      After the origination of the Loan, the Loan was sold to Invictus, however POL maintained, and continues to maintain, servicing rights under the Loan.  An assignment of deed of trust was recorded on February 10, 2020 as instrument number 20200163705.  FCI is a sub-servicer that was hired for the limited purpose of providing payoff information, accepting and processing payments, and sending payment statements for the subject Loan.

G.      Although not asserted at the time she obtained the Loan from POL, Debtor now asserts that although the Property is an income property it is also her personal residence. Debtor represented to Broker and POL that the Property had fallen into disrepair due to significant water damage in January 2017.  The Property was insured, but Debtor alleges that the insurer would not agree to pay Debtor the required amounts to fully repair the Property.  Debtor is currently in a dispute with her insurance company relating to the Property and payment of two insurance claims ("**Insurance Claims**").  Debtor has alleged that in February 2018, she applied for a cash out refinance with "several mortgage brokers" in order to obtain additional funds to make repairs to the Property so it could be re-rented and produce income for Debtor and the Trust.  Pursuant to the Loan Documents, Lender has a secured interest in any insurance proceeds relating to the Property and use of any proceeds is not allowed without its consent.

H.      On June 11, 2019, the Debtor filed a Chapter 13 Bankruptcy, case number 2:19-bk-16825-NB ("**Prior Bankruptcy**").  The Prior Bankruptcy was dismissed on July 3, 2019 because Debtor was over the debt limit for a Chapter 13 case.  Thereafter, on July 17, 2019, the Debtor filed a Chapter 11 Bankruptcy, case number 2:19-bk-18316-NB ("**Bankruptcy**" or "**Proceeding**").  In the Bankruptcy, on July 18, 2019, the Debtor filed a Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay ("**Motion to Continue Stay**"), Docket #11 in the Bankruptcy.  Creditor, along with another unrelated creditor of the Debtor, opposed the Motion to Continue Stay.  The Motion to Continue Stay was granted (Docket #31 in the Bankruptcy), but the order ("**Stay Continuance Order**") required that on or before September 24, 2019, that Debtor file a Motion to Refinance the Property, or a realistic plan of reorganization, or otherwise file an appropriate motion or complaint  to support her challenge to the accrual of post-petition default interest owed to Creditor under the Note. The Stay Continuance Order  further provided that if any such treatment as to Creditor had not been accomplished by November 12, 2019, that Debtor must, at a minimum, pay Creditor all accrued post-petition interest owing on the Loan, at the non-default interest rate, and thereafter remain current. (Docket #31 in the Bankruptcy).

I.      As of the date of this Agreement, the Loan has not been refinanced, a Chapter 11

Plan has not been confirmed, Debtor has not timely filed an appropriate motion or complaint to support her challenge to the imposition of default interest on the Loan, and post-petition interest has not been paid to Creditor as required by the Stay Continuance Order.[2]

   J.  However, on November 13, 2019, Debtor filed a Motion to Determine the Validity of Provisions of Promissory Note and Deed of Trust Held by Secured Creditor Patch of Land ("**Motion Regarding Note Terms**").[3]  The Motion Regarding Note Terms challenges the validity of the Loan, including the validity of the 18% default rate of interest ("**Default Interest Rate**") on the Loan and the imposition of an 18% late charges ("**Late Charges**") on the Loan. In addition, Debtor has alleged that Debtor or the Trust may have the right to assert that the Loan was a consumer loan and not a business or investment purpose loan, and that the terms and conditions contained in the Loan and the servicing of the Loan, and the foreclosure of the Security Instrument, including but not limited to, enforcement of Default Interest and Late Charge provisions under the Loan, violate applicable consumer protection laws,  regulations, and statutes under state and federal law ("**Applicable Laws**"),  including but not limited to, protections allowed to consumer borrowers, under TILA and RESPA, California Financial Code 4970 et.seq, the Fair Debt Collection Practices Act, the Homeowners Bill of Rights ("**HBOR**") and the United States Bankruptcy Code ("**Code**").  Debtor also contends that the Loan may be usurious and that Creditor prevented and/or interfered with junior lien financing relating to the Property and/or subsequent refinancing of the Property.  Debtor also contends that the accounting on the Loan is inaccurate and that payments she made on the Loan in the amount of $73,200, currently held in a suspense account by Creditor, should have been applied to interest owing on the Loan in 2019 and/or used to bring the Loan current at the time the funds were placed in the suspense account.  Each and every claim or challenge to the Loan that Debtor has raised in the Motion Regarding Note Terms, or which Debtor could have raised in the Motion Regarding Note Terms, or in any objection to Creditor's claim filed in the Bankruptcy,  or in the MFR, or in an adversary proceeding related to the origination of the Loan or the exercise of any default remedies under the Loan as well as any other actions or claims which the Debtor Parties could have raised under any Applicable Laws related to the Loan, servicing of the Loan, or foreclosure of the Security Instrument, are hereafter referred to as the "**Claims**."

   K.  Creditor denies any and all allegations described in the Motion Regarding Note Terms, and denies that Debtor has the right to maintain any Claims. Without limiting the foregoing in any manner, Creditor asserts that Debtor represented to the Broker and to Creditor that the Loan was a business purpose or investment purpose loan needed to maintain her investment in the Property, that the Property was used by Debtor as an investment property at the time of the Loan, and that the funds from the Loan would be used to repay prior loans on the Property and for maintenance and upkeep and repair of the Property and so that Debtor and the Trust would receive the benefit of the income generated by the Property. Creditor further alleges that Debtor had

---

[2] While Debtor did file "**Motion Regarding Note Terms**" as specified in Recital J, the motion was not timely, was continued multiple times while the Parties attempted this  resolution, and post-petition payments have not been made to Creditor.

[3] The Motion Regarding Note Terms was originally filed on November 12, 2019, but was refiled as "corrected" in order to change the hearing date.  The Motion Regarding Note Terms was intended to be filed as an objection to Creditor's claim, however, at the time, Creditor's claim had not yet been filed as the deadline had not passed.  For purposes of this Agreement and resolution, the Motion Regarding Note Terms is treated as an objection to Creditor's claim #28-1.

previously represented these facts regarding the use of the Property to her Broker and to other lenders or investors when seeking loans secured by the Property. Creditor also asserts that the Motion Regarding Note Terms is procedurally and substantively improper, that it is an over-secured creditor pursuant to 11 U.S.C. § 506(b), that in accordance with the facts surrounding the origination of the Loan and applicable case law and authority, the Default Interest and Late Charge provisions and charges are valid and enforceable provisions of the Loan and should be allowed and enforced in full, and that Borrower is in default on the Loan. Creditor also asserts that the servicing of the Loan was at all times proper and performed in accordance and in compliance with Applicable laws and that it has the ability to proceed with foreclosure of the Property without a further waiting period. Accordingly, the resolution of the Claims in this Agreement is a resolution of disputed claims and to avoid the uncertainty, delay, and fees and costs of litigation on the Motion Regarding Note Terms, the MFR, or on any other Claims that have been raised or could have been raised concerning the Loan, whether in state or federal Court, including in this Proceeding.

L.    The proof of claim bar date was set for December 20, 2019 and Creditor timely filed a proof of claim. No payments have been made to Creditor since the filing of the Bankruptcy and Creditor alleges that the following amounts remain due and owing in order to pay off the Loan in full *as of June 1, 2020:*

| | |
|---|---|
| Principal Balance: | $3,000,000.00 |
| Interest at the non-default rate from 11/1/18 through 6/1/20 | $356,250.00 |
| Default Interest from 11/1/18 through 6/1/20 | $498,750.00 |
| Late Charges: | $147,825.00 |
| Attorneys' Fees and Foreclosure Fees as of May 26, 2020[4]: | $71,161.53 |
| Unpaid Loan Charges | $1,171.00 |
| Credit Due from Suspense Account: | ($73,200.00) |
| **Grand Total Owing good through June 1, 2020:** | $4,001,957.53 |

Pending resolution of the Motion Regarding Note Terms, Creditor asserts that interest continues to accrue at the Default Interest Rate of 18% after June 1, 2020 in accordance with the terms of the Note. The grand total owing of $ 4,001,957.53, plus any accruing interest, fees, and costs shall be referred to as the "**Indebtedness**".

M.    On February 14, 2020 Invictus filed a Motion for Relief from Stay ("**MFR**") requesting authority to foreclose the Property pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. §

---

[4] This payoff amount is good through April 1, 2020, but only includes attorneys' fees incurred through April 13, 2020. Creditor asserts that it is, and continues to be, entitled to reimbursement for all attorneys' fees incurred prior to any payoff, including, but not limited to fees associated with the drafting of this Agreement and appearing at any hearings relating to the Agreement. Said amounts may be added to the Loan as allowed by law and pursuant to 11 U.S.C. § 506(b) and any amounts not specifically included in this Agreement shall be added to the Loan balance, as modified herein, and shall be paid due and owing upon default of this Agreement or the New Maturity Date, whichever occurs first

362(d)(2) based upon the failure of Debtor to comply with the Stay Continuance Order, the failure to make ongoing payments, lack of adequate protection, lack of progress in the Bankruptcy, and allegations that there was limited equity and the Property was not necessary for a reorganization. Debtor opposed the MFR on various grounds, including, but not limited to, asserting that there was equity in the Property and that Debtor would be obtaining insurance proceeds to affect repairs that would eventually increase the value of the Property and  allow the Property to be rented, thereby generating funds sufficient to pay Creditor adequate protection payments.

N.      On March 10, 2020, the Bankruptcy Court granted the MFR *in part*, allowing Invictus to proceed with issuing a Notice of Default ("**NOD**") on the Property and to take all other steps preliminary to completing its foreclosure sale, including but not limited to, proceeding with its Notice of Trustee's Sale ("**NOTS**") and setting a sale date.  However, the sale cannot be completed without further order from the court, unless the Automatic Stay is otherwise terminated by operation of law.  The hearing on the MFR was continued until May 19, 2020[5] ("**Continued MFR**").  The MFR order ("**Initial MFR Order**") was entered on March 13, 2020 and became effective on March 28, 2020, after the expiration of the 14 day stay of Bankruptcy Rule 4001(a)(3). The Continued MFR hearing was held and full relief from stay was granted, providing that the Automatic Stay is terminated in its entirety as to Lender.  An amended order for relief from stay ("**Amended MFR Order**") was entered on June 22, 2020 and Lender now has full relief from stay.

O.      Since the entry of the Initial MFR Order, national and local authorities have issued restrictions on foreclosures and evictions given the worldwide pandemic relating to COVID-19. While the restrictions do not prohibit Creditor from proceeding pursuant to the Initial MFR Order and Amended MFR Order, and affecting an NOD (which has been recorded) and subsequent NOTS, Creditor has agreed to refrain from completing its foreclosure and to rescind any NOD currently in place, at Debtor and the Trust's request, in order to allow Debtor one final opportunity to make required payments under this Agreement and to pay Creditor in full as specifically set forth herein.  No provision of this Agreement shall waive or modify or diminish 1) Creditor's rights to proceed with all default remedies specified in the Amended MFR Order in the event that any of the Conditions for Effectiveness of Modification are not timely satisfied, including, but not limited to the requirement that this Agreement be timely approved by Debtor and the Trust and confirmed by a further order of this Court, as specified hereafter or 2) its right to proceed with all default remedies pursuant to the Loan Documents, as modified by this Modification, in the event of a future default of this Modification.

P.      The intent of this Agreement is to resolve the Motion Regarding Note Terms, the MFR, and all Claims, known or unknown, which have been raised, or could have been raised by Debtor Parties as of the Date of this Agreement and to modify the Loan and Security Instrument as specified herein, subject to Court approval and issuance of title insurance, insuring Creditor's *first* position lien on the Property.

Q.      The Parties desire to settle and resolve all of the disputes between or among them concerning the Motion Regarding Note Terms, the MFR, the Loan, the Indebtedness, the Property and the Claims. As set forth more fully below, and without limiting the conditions specified

---

5 The MFR was further continued until June 16, 2020 to be held concurrently with other pending motions in these Proceedings.

hereafter in Paragraph 5 below, Creditor has agreed to modify the Loan and Security Instrument in order to extend the Maturity Date one year, on the same terms, with the addition of contractual non-default interest, attorneys' fees, and costs added to the principal balance, if and only if, this Agreement is approved by an order of the Bankruptcy Court (either through a 9019 order or Plan confirmation with specific approval of this Agreement), Creditor obtains title insurance confirming its first position lien on the Property is not altered or modified in any way by the modification, and all other Conditions for Effectiveness of Modification specified herein below are satisfied.

 R. In the event the Agreement is not approved by the Bankruptcy Court, or any of the Conditions for Effectiveness of Modification specified in Paragraph 5 below, are not satisfied, all Parties shall retain their rights allowed by law, including but not limited to the rights of Creditor to proceed with its default remedies as specified in the Amended MFR Order.

 S. If the Agreement is approved by the Bankruptcy Court, and all Conditions for Effectiveness of Modification are timely and fully satisfied, as specified hereafter in Paragraph 5 below, the Agreement, including the Release, shall be effective, upon entry of the Order approving this Agreement by the Bankruptcy Court as a full compromise and resolution of any and all disputes between the Parties relating to Creditor's Claim, and Creditor's Modified Claim shall be deemed a valid and enforceable secured claim against the Property and enforceable both in these Proceedings and until the Loan is paid off, whether or not this Proceedings are dismissed or converted to any other Chapter.

 T. If the Agreement is approved by the Bankruptcy Court neither Debtor, nor Borrower, nor any successor or assigns of Debtor or Borrower shall modify or challenge the rights of Creditor and this Agreement may not be modified by any plan of reorganization ("**Plan**") or by any other means, and that the Approval Order approving this Agreement shall be conclusive evidence of the foregoing. Any Plan filed by Debtor in these Proceedings shall incorporate the terms of this Agreement in its entirety and to the extent there is a discrepancy between the Plan and this Agreement, including, but not limited to, any default provision, the Agreement shall control.

 U. By entering into this Agreement, Debtor Parties are also acknowledging and confirming again that the Loan (and any modifications herein) were related to her business purpose Loan and the funds obtained from Creditor pursuant to the Loan were used for that purpose and that any consumer protection foreclosure statutes, including but not limited to HBOR do not, and shall not, apply to the Loan in the event of a future default and subsequent exercise of default remedies by Creditor.

 V. The Debtor Parties acknowledge that this Agreement has been reviewed and explained in full by Debtor's counsel and that they understand the obligations under the Agreement and the conditions that must occur in order for the Agreement to become effective, and that the Agreement, if approved by the Bankruptcy Court, is being entered into as a full and final resolution of all Claims that the Debtor Parties may have against Creditor, known or unknown, relating to the Loan or the Property.

 W. **TIME IS OF THE ESSENCE AS TO ALL PAYMENTS AND THE PARTIES' PERFORMANCE UNDER THIS AGREEMENT.**

## AGREEMENT

**FOR AND IN CONSIDERATION** of the foregoing Recitals, which are incorporated herein, the mutual covenants contained herein and other valuable consideration, receipt, and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     **Recitals**. The Parties acknowledge the truth and accuracy of the Recitals above and the terms and conditions contained in the Recitals, are incorporated herein by reference.

2.     **Effective Date.**  This Agreement and the terms and conditions set forth herein shall become effective upon the Bankruptcy Court's entry of the Approval Order in these proceedings.

3.     **Reaffirmation of Obligations.** Borrower promises to pay the Indebtedness evidenced by the Note, as hereby amended, and to perform each and all of the conditions and covenants required to be performed by Borrower pursuant to the Loan Documents and that the New Principal Balance and all obligations thereto is owing without offset, deduction, counterclaim or defense of any kind or nature to the payment thereto. Borrower further represents and warrants based on the terms and conditions of the Agreement that Borrower has no defenses or claims against Lender or Creditor that would or might affect the enforceability of the Loan, including this Agreement, and that the Loan and documents that were executed in connection therewith, remain in full force and effect, unless specifically modified herein. Borrower and Debtor understand and acknowledge that they are entering into the Agreement voluntarily and are being represented by their own legal counsel to assist in the review of the Agreement.

4.     **Terms of Compromise and Loan Modification.** Creditor's claim and the Loan Documents are modified as follows and as detailed in the modification term sheet attached hereto as **Exhibit "C"** and incorporated herein by reference. Borrower has requested that Lender agree to modify the Note and Security Instrument.  Lender is willing to do so on the terms set forth herein.  The Loan Documents, as modified, amended or supplemented by this Agreement, shall remain in full force and effect, including but not limited to any default provision or remedy allowed to Creditor under the Loan Documents.

   a.    **New Principal Balance.** The new principal balance of the Loan shall be $3,428,582.53 ("**New Principal Balance**").  The New Principal Balance is comprised of the Indebtedness described above, plus a reserve of $73,200.00 ("**Reserve**"), with a reduction of $646,575.00, which represents amounts owing for default interest, late fees and other charges voluntarily waived by Creditor as part of the resolution herein.  The New Principal Balance shall accrue interest at **the Note rate of 7.5%, with a default rate of 18%,** in accordance with the terms of the Note, which shall remain valid and enforceable;

   BORROWER'S INITIALS      _____

   b.    **New Maturity Date.** All payments of interest and principal shall be due and payable upon the new maturity date of April 1, 2021 ("**New Maturity Date**").

c. **New Monthly Interest Payments.** Interest only payments on the New Principal Balance shall be due and payable in consecutive monthly installments of $21,428.64 ("**New Monthly Payments**") on the first day of each month beginning on July 1, 2020 and continuing each month thereafter. Such payments shall continue until the entire Indebtedness evidenced by the Note, as modified, and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest, fees, and costs, due and payable on the New Maturity Date.

d. **Reserve Funds.** The funds currently held by Creditor totaling $73,200 shall be credited to the Loan and applied:

   i. first: to the first three (3) months of New Monthly Payments, estimated to be $64,223.61 in total;
   ii. second: to taxes owed relating to the Property, estimated in the amount of $4,579.04;
   iii. third: to reduce the prior outstanding legal fees currently owing on the Loan.

e. **Late Fees.** The late fee shall be reduced from a charge of 18 cents ($0.18) for each dollar ($1.00) that is not paid when due, to a charge of 10 cents ($0.10) for each dollar that is not paid when due ("**Reduced Late Fee**"). All other terms of the Late Fee provision of the Note (section 3) remain unchanged except for as specified herein.

f. **Extension Fee.** In accordance with the Addendum to Promissory Note (Conditional right to Extension Addendum) ("**Extension Addendum**"), included in the attachment to **Exhibit "A"** attached hereto, which terms are incorporated herein by reference as if set forth fully herein, Borrower can only obtain an extension of the Maturity Date for up to six (6) months, if the eleven (11) conditions specified in the Extension Addendum ("**Extension Conditions**") are satisfied, and in Lender's sole and absolute discretion. However, as part of the resolution herein, and without prejudice to any of Lender's rights, Lender has agreed to waive the Extension Conditions for purposes of this Agreement only. Accordingly, the Maturity Date is extended until the New Maturity Date in consideration of a reduced fee of 2% of the original principal balance (i.e., $60,000) ("**Extension Fee**") charged to the Loan. The extension offered herein is approved by Lender notwithstanding the failure of Debtor to satisfy the Extension Conditions, but without prejudice to any of Lender's rights, including, but not limited to, its right to enforce the requirement of Borrower compliance with the Extension Conditions in the event Borrower requests a further extension upon the Extended Maturity Date, as specified below. The Extension Fee shall not accrue interest and shall be deferred until the New Maturity Date at which time it will be fully due and payable. However, in the event that the Borrower 1) remains current on the Loan, 2) does not default on the Loan or this Agreement, 3) timely pays off the Loan in full, immediately upon the Extended Maturity Date, and 4) an

Additional Extension Request is not made as specified below (collectively "**Conditions for Waiver of Extension Fee**"), the Extension Fee shall be waived by Lender.  However, in the event any of the Conditions for Waiver of Extension fee are not fully and timely satisfied, the Extension Fee shall be due and owing upon payoff or foreclosure.  Borrower shall have the right to request **one** extension ("**Additional Extension Request**") of the New Maturity Date in accordance with the Extension and Fee Schedule in Exhibit A to the Extension Addendum, if and only if, Creditor consents to such extension, all of the Extension Conditions specified therein are satisfied, and Borrower pays any associated extension fee.6

g.  **Insurance Claims Additional Creditor Protections:**  The Parties acknowledge that Creditor has independent rights relating to any insurance proceeds ("**Proceeds**") relating to the Insurance Claims, as a loss payee or additional insured on the policy.  Without prejudice or waiver  to any of Creditor's rights, including, but not limited to, its rights to pursue the Proceeds independently or through its own adjuster, the Debtor Parties have agreed to include the following protections to ensure that the Proceeds are sufficient to complete the repairs on the Property and protect Creditor's interest.

i.  **Progress Deadline – Response to Insurer Regarding the Insurance Claims.**  On or before July 28, 2020, the Borrower must respond to all requests for information on the Insurance Claims that have been requested by her insurer on the Property, American International Group, Inc. ("**AIG**").  Borrower shall provide Creditor with evidence of her satisfaction of this progress deadline by no later than August 17, 2020.

ii.  **Progress Deadline - Written Demand for Insurance Claims to be Submitted to an Appraisal Process.**  If by August 31, 2020, the Borrower and AIG have not come to an agreement on the actual cash value, amount of loss or cost of repair replacement of the Property under the Insurance Claims, then the Borrower shall immediately invoke her right for and make a written demand to AIG for the Insurance Claims to be submitted to the appraisal process  under the applicable insurance policies.  The Borrower shall provide Creditor with evidence of her satisfaction of this progress deadline by no later than September 10, 2020.

iii.  **Updates/Inspection**.  The Debtor Parties shall, at all times, cooperate with Creditor and provide Creditor with updates as to the progress on the construction/repairs to the Property and shall also, upon twenty-four

---

6 For example and clarification purposes, in the event an Additional Extension Request is timely made, Creditor consents to such extension, all of the Extension Conditions specified therein are satisfied, and Borrower pays any associated *additional* extension fee, the Borrower shall be entitled to extend the Loan up to six (6) months pursuant to the Fee Schedule attached to Exhibit A of the Note.  Also, in this scenario, the $60,000 Extension Fee owing for the extension of the Maturity Date described in this Agreement until the New Maturity Date, would not be waived, and would be due and owing upon payoff or foreclosure.

(24) hours notice, allow Creditor access to the Property so that Creditor may monitor the progress of construction/repairs to the Property, obtain a valuation of the Property, and otherwise protect their interests in the Property. The Debtor Parties shall cooperate with Creditor in all reasonable respects regarding any inquiry by Creditor into progress of construction/repairs to the Property and shall hold any Proceeds received relating to the Insurance Claims, in a blocked account, subject to approval of Creditor regarding use.

5. **Conditions Precedent.** The agreement to modify the Loan by Creditor is subject to the timely occurrence of all of the following conditions ("**Conditions for Effectiveness of Modification**"):

a. <u>**Approval of Agreement by Bankruptcy Court.**</u> That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Approval Order must be entered on or before **August 10, 2020** ("**Approval Deadline**") in order for this Agreement to be effective. In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms and the MFR shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective. In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR. The Approval Order, or a separate order submitted therewith, or the Plan terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents, as modified by this Agreement, without further hearing or order of the Court. Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these Proceedings shall confirm to the Agreement. The Approval Order shall also provide that the Order is a final order and that there are no further rights to stay or appeal the Order and that this Agreement overrides any conflicting provision in the Plan, including any default provision.

b. <u>**Executed Agreement.**</u> On or before **August 24, 2020**, the Debtor Parties must sign and notarize the Agreement.

c. <u>**Taxes and Insurance.**</u> On or before **August 24, 2020** all taxes and insurance must be brought current on the Property with Invictus listed as a loss payee on the insurance policy and Debtor Parties must provide proof of same.

d. <u>**Title Insurance/Lien Priority.**</u> On or before **August 24, 2020**, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this modification does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as

allowed pursuant to the Loan Documents as modified by this Agreement.  The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above.  In the event that Lawyers Title Company ("**Title Company**"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.  The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy.  Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the August 24, 2020 deadline) or 2) timely obtain confirmation of a Plan which provides for such subordinations.

e. **Recorded Modification and Cooperation of Debtor Parties**.  That Debtor and Borrower sign a separate document to be recorded in the County and cooperate in signing any other documents required by Creditor and/or the Title Company to insure Creditor's first lien position on the Property.

f. **No Additional Liens or Encumbrances**.  Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens. except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated construction and repairs on the Property so long as such new liens and encumbrances are provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

In the event that the aforesaid Conditions for Effectiveness of Modification are not fully and timely satisfied, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law, as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  *Alternatively*, if the aforesaid Conditions for Acceptance of Reduced Payoff are fully and timely satisfied, the Agreement and Modification shall be deemed valid and enforceable by either Party and Creditor's Claim shall be deemed amended  as set forth above ("**Modified Claim**").  The Modified Claim shall be deemed valid and allowed as a fully secured claim and shall not be objected to by Debtor and shall not be subject to reduction in these Bankruptcy proceedings or any other bankruptcy proceedings and may not be modified by any state or federal court or regulatory body and Creditor may record the Order approving this Agreement as evidence of this.  The Debtor Parties acknowledge that the Modified Claim specified above shall be due and owing by the Debtor Parties without offset, deduction, counterclaim, or defense of any kind or nature to the payoff thereof.

6. **Release**.

(a)    In consideration of the promises and agreements set forth above, effective immediately upon the signature of this Agreement by all Parties and  upon entry of the Approval Order in the Bankruptcy, Debtor and Borrower (collectively "**Debtor Releasors**"), on behalf of themselves and their respective, representatives, trustees, beneficiaries, employees, agents, attorneys, heirs, relatives, administrators, partners, successors and assigns, and anyone acting at

Debtor Releasors' direction or on Debtor Releasors' behalf, does hereby relieve, release, discharge and forever hold harmless Creditor (and each of them) and any of their respective agents, trustees, principals, employees, representatives, related corporate entities, investors, servicers, sub-servicers, foreclosure trustees, successors, predecessors, partners, members, joint venturers, officers, shareholders, directors, employees, attorneys, assigns, parent corporations, subsidiary corporations, affiliate companies, sureties, guarantors, general and limited partners, assigns, and insurers (collectively referred to as "**Creditor Released Parties**"[7]), of and from the Claims and any and all demands, obligations, actions, liabilities, defenses or damages of every kind and nature whatsoever, in law or in equity whether known or unknown, from the beginning of time to the date of this Agreement, including, but not limited to, the allowance of Default Interest and/or Late Charges, the advertising, negotiation, disclosure, underwriting, processing, making, settlement, servicing or any other aspects of the relationship between the Debtor Releasors and the Creditor Released Parties concerning the Loan, the Property or foreclosure, known or unknown, suspected or unsuspected, arising since the Loan was applied for to the present, including, but not limited to, claims under the Truth-in-Lending Act, Real Estate Settlement Procedures Act, Homeowners Bill of Rights, State Real Estate Law and all state and federal statutory, regulatory or case law, and claims alleged or that could have been alleged in the Motion Regarding Loan Terms, in the Bankruptcy, in opposition to the MFR, or in State or Federal Court, relating to the enforceability of Loan terms and/or Creditor's claim. Debtor Releasors acknowledge that such release includes a waiver of the right to make claims based upon the discovery of new facts and circumstances, and waive the application of any state or federal laws providing for relief from general releases.

(b)    Debtor Releasors recognize that they may have some claim, demand, or cause of action against the Creditor Released Parties of which they are totally unaware and unsuspecting, and which Debtor Releasors will give up by execution of this Agreement.  In executing this instrument, Debtor Releasors waive any such claims or rights. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters, notwithstanding the discovery or existence of any such matters, notwithstanding the discovery or existence of any such additional or different claims or facts related thereto by the Parties hereto.  In entering into this Agreement, the Parties herein do not rely on any statement, representation or promise of any other Party, except as expressly stated in this Agreement.

(c)    Debtor Releasors hereby waive any provisions of state or federal law which explicitly or implicitly would prevent the application of this Agreement to claims which Debtor Releasors do not know or suspect to exist in their favor any time on or prior to the date of executing this Agreement which, if known by Debtor Releasors, would have materially affected Debtor Releasors' decision to execute this Agreement.  Debtor Releasors expressly waive all rights afforded by any statute with respect to unknown claims, including, but not limited to, Section 1542 of the California Civil Code which limits the effect of a release with respect to unknown claims.  Debtor Releasors understand the significance of the release of unknown claims and the waiver of statutory protection against a release of unknown claims (such as under Section 1542).  Section 1542 of the California Civil Code reads as follows:

---

[7] Creditor Released Parties includes, but is not limited to, FCI, Invictus, and POL.

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Notwithstanding the above-stated provisions of Section 1542 and for purposes of implementing a full and complete release and discharge, Debtor Releasors expressly acknowledge that this Agreement is specifically intended to include in its effect, without limitation, all claims which Debtor Releasors have, but do not or may not, know or suspect to exist in their favor at any time on or prior to the date of execution of this Agreement, and that this Agreement extinguishes any and all such claim(s) and Debtor Releasors indicate that fact by signing their initials here:

Debtor Initials: _____  _____

Borrower Initials:  _____  _____

Without limiting or diminishing the foregoing release in any manner, the release shall never be deemed to waive or modify or diminish Debtor and Borrower's ongoing obligations to Creditor under the Loan, as modified by this Agreement.

7.      **Creditor Released Parties Third Party Beneficiary Status.**  The Parties agree and acknowledge that any Creditor Released Parties that are not Parties to this Agreement are intended third party beneficiaries of this Agreement and may enforce the provisions of this Agreement.

8.      **Non-Admission.**  The Parties have entered into this Agreement solely in settlement of a contested matter.  Nothing in this Agreement shall be construed as an admission.

9.      **Insurance Proceeds and Authority.**  Debtor Parties acknowledge and understand Creditor's secured interest in any insurance proceeds generated by and from the Property and will allow for complete oversight and control by Creditor as to any and all use of funds distributed by any insurance company relating to the Property. Any such use of funds must be approved by Creditor in writing and any failure by Debtor Parties to obtain written consent for use of said funds shall be deemed a breach of this Agreement.

10.      **Non-Exclusive Remedies.**  In the event of a breach of any provision of this Agreement, the Parties, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

11.      **Advice from Financial Advisor.** The Parties understand that this is a legally binding agreement that may affect such Party's rights. Each Party represents to the other that it had the opportunity to receive financial and/or legal advice from the advisor and/or counsel of its choice regarding the meaning and legal significance of this Agreement and that it is satisfied with any advice received from such advisor and/or legal counsel.  The Debtor Parties have been represented by their legal counsel, who has reviewed this Agreement with the Debtor Parties.

12.     **Presumption of Drafting.**  This Agreement was drafted with the cooperation of the Parties, all of whom were represented by their respective counsel, and in the event that there is any ambiguity in any provision thereof, said ambiguity shall not be construed against one Party over the other.

13.     **Enforcement of the Terms of this Agreement.**  Without diminishing any of the rights allowed to Creditor under this Agreement, should any Party or third party challenge any portion of this Agreement after it is made a final order of this Court, pursuant to the entry of the Approval Order, jurisdiction to resolve any such dispute or challenge shall be brought in the Bankruptcy and this Court reserves jurisdiction to determine any such dispute.  Should any party breach any provision of this Agreement, the party who is not in breach shall be entitled to its attorney's fees incurred.  The foregoing provisions in this Paragraph shall not limit or diminish the right of Creditor to obtain any attorneys' fees incurred as a result of a default by Debtor under the Loan as provided in this Agreement and as allowed under the Loan Documents.

14.     **No Representations.**  The Parties acknowledge that no other person or entity, nor any attorney of any other person or entity, has made any promise, representation, or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter hereof, to induce the Parties to execute or authorize the execution of this Agreement.  The Parties further acknowledge that they have not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein.  No Party relies upon any statement of any other Party in executing this Agreement, except as expressly stated in this Agreement.

15.     **Miscellaneous**.  This Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings related to the subject matter hereof.  The Parties agree that, in entering into this Agreement, they are relying upon their own judgment, belief, and knowledge as to all phases of any claims and further acknowledge that no promise, inducement or agreement or any representations and warranties not expressed herein have been made to procure their agreement hereto.  The Parties further acknowledge that they have read, understand, and fully agree to the terms of this Agreement.  In the event it is necessary for any Party hereto or its authorized representative, successor or assign to institute litigation and/or arbitration in connection with this Agreement or the breach thereof, the prevailing party in such litigation or arbitration shall be entitled to reimbursement of its reasonable attorney's fees, legal costs and other related costs.

16.     **Modification of Agreement.**  This Agreement may be modified or amended only by a writing signed by all Parties to this Agreement.

17.     **Severability.**  Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

18.     **Further Assurances**. Debtor and Borrower shall execute such further documents and do any and all such further things as may be necessary to implement and carry out the intent of this Agreement.

19.    **Binding on Successors and Related Entities.**  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective agents, employees, independent contractors, spouses, family members, representatives, officers, directors, divisions, subsidiaries, assigns, heirs, successors in interest, and shareholders.

20.    **Governing Law.**  This Agreement shall be construed and interpreted in accordance with the laws of the State of California, and federal Bankruptcy law, to the extent applicable.

21.    **Headings**.  The headings of the sections of this Agreement are included for purposes of convenience only and shall not affect the construction of interpretation of any of its provisions.

22.    **Signatures in Counterpart.**  This Agreement may be signed in two or more counterpart copies with the same effect as if the signature to each counterpart copy were on a single instrument.  Each counterpart shall be deemed an original as to any Party whose signature it bears and all such counterparts shall constitute one document.  Electronically scanned copies shall be deemed originals.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be made effective as of the Effective Date.

**DEBTOR PARTIES:**

_____                                      Date: _____
Ashley S. Aarons


Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                          Date: _____

_____
By
Name: Ashley S. Aarons
Its: Trustee


**CREDITOR PARTIES:**


Patch of Land Lending, LLC                                  Date: _____

_____
By:
Name:
Its:

FCI Lenders Services, Inc.                                  Date: _____

_____
By:
Name:
Its:

Invictus Residential Pooler Trust 3A                    Date: _____

_____
By:
Name:
Its:

DRAFT

# Exhibit L



## J. MICHAEL ISSA

**GlassRatner Advisory & Capital Group LLC**
19800 MacArthur Suite 820
Irvine, CA 92612
949 862-1595

*EXPERIENCE*
**GlassRatner Advisory & Capital Group LLC**
*California Managing Principal*
GlassRatner is a national advisory firm with offices in a number of major cities. The firm received the award for Middle Market Turnaround Firm of the Year in 2013. Mr. Issa is the principal in charge of the firm's California practice. The firm and its principals have provided significant benefits to clients in many industries including automotive, manufacturing, distribution, healthcare, retailing, restaurants, professional practices, services, real estate, oil and gas, and construction. The firm has an extensive real estate consulting and capital raising operation as part of its practice. The firm's services to its clients have been diverse, and have included the following:

- Mr. Issa is a well-known authority on real estate companies. His clients have included real estate developers, real estate owners, contractors, and lenders to clients in those industries. Services provided to his clients have included debt restructuring including CRO, bankruptcy advisory, capital raising, M&A and financial and operational turnaround. He has served as a board member and interim CFO for a major real estate syndicator.
- Mr. Issa and his team have raised various types of equity financing and joint venture participations on behalf of their clients. One of Mr. Issa's 2012 transactions received a major category award in 2013 at the Atlas Turnaround Event. Mr. Issa also won the M&A Advisors Award for Middle Market Retailing Deal of the Year in 2005.
- Mr. Issa has advised a number of investors on acquisitions of assets including portfolios of distressed assets from banks.
- As a part of crisis management for their clients, the firm frequently engages in debt restructuring. Mr. Issa has personally managed several billion dollars of debt restructuring on behalf of his clients and has been Chief Restructuring Officer for many of California's residential, office and retail developers, including some of the largest restructurings and bankruptcies in the last two real estate cycles. He has served as a Chapter 11 Bankruptcy Trustee in the Central District of California as well as in other Court appointed fiduciary capacities.
- Mr. Issa has also been a court-appointed liquidating trustee of portfolios of real property and of operating companies. He chaired the strategic disposition committee of a public hotel company when the company's assets were sold off in a nine-digit transaction. He has served in a number of fiduciary capacities, including court-appointed receiver over operating businesses.
- Mr. Issa and other GlassRatner professionals frequently appear as expert witnesses in litigation matters. These matters frequently involve testimony in the context of corporate, partnership, or individual bankruptcies. Examples of such testimonies include Plan Feasibility at Bankruptcy Confirmation Hearings, testimony in Use of Cash Collateral

ATLANTA | CHICAGO | IRVINE | MIAMI | NEW YORK | TAMPA

19800 MacArthur Blvd. Suite 820 | Irvine, CA 92612 | Tel:949-429-4288 | Fax: 949-743-0333 | www.glassratner.com

Hearings, company and asset liquidation analysis, adequacy of New Value, and a variety of financing and recapitalization issues. Mr. Issa and the firm also appear as expert witnesses in a variety of other non-bankruptcy litigation matters.

**Ballenger Cleveland & Issa, LLC** with offices in Los Angeles and Irvine
*Executive Managing Director and Cofounder*
Mr. Issa's Orange County practice of Ballenger Cleveland & Issa, LLC merged with GlassRatner in November 2010. The array of services outlined above was substantially the same at both BCI and GlassRatner.

**KIBEL GREEN ISSA, Inc**. with offices in Santa Monica and Irvine, Ca
*Vice Chairman, Managing Director of Orange County Practice*
Mr. Issa was the principal in charge of the firm's Orange County practice since the office opened in 1993. In this capacity, he oversaw all consulting activities in Orange County and also oversaw the firm-wide real estate and merchant banking activities. KGI was named one of the "12 Outstanding Turnaround Firms Nationally" by a nationwide industry publication during Mr. Issa's tenure.

*PREVIOUS WORK EXPERIENCE*
Prior to his employment with KGI, Mr. Issa was the head of a group of companies, which were privately owned by several high net-worth, individual investors whose primary business was to acquire and turnaround problem assets including both operating companies and real property. After completing graduate school, Mr. Issa worked as a commercial banker with a regional bank and a money center bank for a total of five years. Subsequent to his banking career, Mr. Issa was the chief financial officer for a privately held company with diverse investments in operating companies, oil and gas assets and real estate.

*OTHER QUALIFICATIONS*
**Education:**
Mr. Issa is a Beta Gamma Sigma Master of Business Administration from the University of Texas at Austin. He also received a Bachelor of Business Administration from the same institution. Mr. Issa has also taught in the business schools at two different four-year universities.

**Boards:**
Mr. Issa has served on the boards of both public and private companies as well as various non-profit organizations. He has also served on or chaired a number of strategic, financial and operating committees for these companies.

**Licenses and Professional Designations:**
Mr. Issa is a Certified Public Accountant; an off-panel Chapter 11 Bankruptcy Trustee in the Central District of California; and holds FINRA Series 79, 63 and 65 licenses. He is a member of the following professional organizations: Orange County Bankruptcy Forum, Turnaround Management Association, and Urban Land Institute. He has also been included in the Nationwide Register's Who's Who in Executives and Businesses and speaks frequently at industry conferences on a variety of topics. He is also a Pulitzer nominee and award-winning writer.

# J. Michael Issa Terms of Engagement



Date:          July 9, 2020

To:            Ashley Aarons
               c/o Jim Bastian
               Shulman Bastian Friedman &Bui LLP
               100 Spectrum Center Drive Suite 600
               Irvine CA 92618

From:          Mike Issa, Principal

**Re:**           **Bankruptcy Disbursing Agent**

## Introduction

This memo confirms that the bankruptcy estate of Ashley Aarons., ("Client" or "Company"), is engaging GlassRatner Advisory & Capital Group, LLC ("GlassRatner") to provide financial services as set out below.

## Scope of Work

The Client is in bankruptcy and has requested that GlassRatner serve as the disbursing agent as more fully described in Client's Plan of Reorganization, which is incorporated herein by reference. We agree to serve in that capacity and to perform such other tasks as may be requested, and as we may agree, by the Court, the Office of the United States Trustee, or Client's bankruptcy counsel, Mr. Bastian.

## Compensation

Our professional fees for the work performed on this matter will be based on the number of hours worked at our standard hourly billing rates. All out-of-pocket costs are billed in addition at actual cost incurred.  Our firm's current standard hourly rates range from $250 to $575 per hour. J. Michael Issa will lead this engagement and report directly to you.  Mr. Issa will manage our day-to-day activities and will assign staff as appropriate.  Rates for the professional that might be involved in this matter are set out below.

    J. Michael Issa                    $550

    Other Staff                        $250 to $450

In matters where travel is required, we tend to bill 50% of the required travel time.  We will provide detailed billing no later than 5 days after the end of the month, or at other logical points in the engagement.  Our fees are due upon receipt of an invoice.  Our fees are not contingent on the outcome of the matter or the results of our findings or opinions.  It is the policy of the firm

 

that all billings be paid in full.  The parties agree that GlassRatner may pay their own invoices out of the cash that is deposited into the disbursement accounts.   The parties agree that Client's bankruptcy counsel will prepare and submit to the court our application to be employed at Client's expense.

## Limitations

GlassRatner is not a public accounting firm.  Our procedures and consulting services will not constitute an "Audit" or "Review" in accordance with the generally accepted auditing standards in the United States.  Accordingly, we will not be expressing an Audit Opinion on any of the financial or other data received in this engagement.

## Hold Harmless

Clients agree to hold harmless GlassRatner (including any employees or affiliated persons) from and against all claims, liabilities, losses and damages arising out of our services performed upon the Clients' behalf except to the extent caused by gross negligence or willful misconduct by GlassRatner.  Further, the Clients agree to reimburse GlassRatner for any legal or other expenses reasonably incurred by GlassRatner in connection with the defense of such claims; provided, however, that they shall be excluded from such hold harmless agreement and reimbursement of any such loss, damage, liability, claim or expense which arises out of or is based upon any action or failure to act by GlassRatner pursuant to this agreement or which constitutes gross negligence, other acts of misconduct or bad faith in performance under this agreement on the part of GlassRatner.  Such hold harmless clause shall survive the completion of the engagement.

## Governing Law; Dispute Resolution

The laws of the state of California shall govern this agreement and any controversy arising under it.  Any disputes arising hereunder shall be resolved by binding arbitration.  The prevailing party in any dispute arising hereunder shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs and the costs of experts, in any proceedings, including but not limited to arbitration, litigation, bankruptcy, and in any appellate proceedings as well.

## Conclusion

We look forward to working with you on this matter.  All correspondence should be directed to:

>**Mike Issa**
>**GlassRatner Advisory & Capital Group, LLC**
>**19800 MacArthur Blvd.**
>**Ste 820**
>**Irvine, CA 92612**
>**949.407.6620**
>**missa@glassratner.com**

If you agree with the terms of this agreement, please sign and return one copy to us.

_____ _____
Signature                              Date


_____
Ashley Aarons

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **100 Spectrum Center Drive, Suite 600, Irvine, California  92618**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 11 DISCLOSURE STATEMENT DATED AUGUST 7, 2020**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 7, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2**. **SERVED BY UNITED STATES MAIL**:
On (*date*) **August 7, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3**. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)    **Not Applicable**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 7, 2020 | Lorre Clapp | /s/ Lorre Clapp |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                        **F 9013-3.1.PROOF.SERVICE**

## NEF SERVICE LIST

- **Brandon J Anand** on behalf of Anand Law PC brandon@anandlaw.com, r52959@notify.bestcase.com,info@anandlaw.com

- **Julian K Bach** on behalf of Deanna D'Egidio, Shiv Raj Gupta and Saroj Gupta Julian@Jbachlaw.com, julianbach@sbcglobal.net

- **James C Bastian** on behalf of Debtor jbastian@shulmanbastian.com

- **Oscar Estrada** on behalf of Los Angeles County Treasurer and Tax Collector oestrada@ttc.lacounty.gov

- **John-Patrick McGinnis Fritz (TR)** jpftrustee@lnbyb.com, jpf@trustesolutions.net

- **Robert P Goe** on behalf of Alliance Portfolio Private Equity Finance Inc kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

- **Marjorie M Johnson**    on behalf of Westlake Financial Services mmjesq@yahoo.com, ca.ecf@aislaw.com

- **Rika Kido**    rkido@shulmanbastian.com, avernon@shulmanbastian.com

- **Dare Law** on behalf of United States Trustee dare.law@usdoj.gov

- **Alvin Mar** on behalf of United States Trustee alvin.mar@usdoj.gov, dare.law@usdoj.gov

- **Ron Maroko** on behalf of United States Trustee ron.maroko@usdoj.gov

- **Susan I Montgomery** on behalf of Andrea Friedlander susan@simontgomerylaw.com, assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com;montgomerysr71631@notify. bestcase.com

- **Donna T Parkinson** on behalf of James Haycock donna@parkinsonphinney.com

- **Eric Ridley** on behalf of Raul Rodriguez ridley.eric@gmail.com, r41626@notify.bestcase.com

- **Karel G Rocha** on behalf of Complete Business Solutions Group Inc krocha@pnbd.com, srichards@pnbd.com

- **Joshua L Scheer** on behalf of Patch of Land Lending LLC, Wilmington Savings Funds Society FSB et al,jscheer@scheerlawgroup.com

- **Valerie Smith** on behalf of Interested Party claims@recoverycorp.com

- **Todd L Turoci** on behalf of Interested Party mail@theturocifirm.com

- **United States Trustee (LA)** United States Trustee ustpregion16.la.ecf@usdoj.gov

- **Larry D Webb** on behalf of Interested Party Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

- **Reilly D Wilkinson** on behalf of Patch of Land Lending LLC rwilkinson@scheerlawgroup.com

## US MAIL SERVICE LIST

**United States Trustee (LA)**
**915 Wilshire Blvd, Suite 1850**
**Los Angeles, CA 90017-3560**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                                **F 9013-3.1.PROOF.SERVICE**