James C. Bastian, Jr. - Bar No. 175415
Rika M. Kido - Bar No. 273780
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:     (949) 340-3400
Facsimile:     (949) 340-3000
Email:         JBastian@shulmanbastian.com
               RKido@shulmanbastian.com

Attorneys for Ashley Susan Aarons,
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:19-bk-18316-NB |
| **ASHLEY SUSAN AARONS dba Coffee Dog Entertainment,** | Chapter 7 |
| Debtor. | **DEBTOR'S MOTION TO APPROVE NON-MATERIAL MODIFICATIONS TO CHAPTER 11 PLAN DATED AUGUST 7, 2020; MEMORANDUM OF POINTS & AUTHORITIES AND DECLARATION OF ASHLEY S. AARONS IN SUPPORT THEREOF** |

**Continued Confirmation Hearing**
Date:      February 11, 2021
Time:      10:00 a.m.
Place:     Courtroom 1545
           United States Bankruptcy Court
           255 East Temple Street
           Los Angeles, California 90012

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

1

# **TABLE OF CONTENTS**

Page

I.    SUMMARY OF ARGUMENT ...........................................................................................4

II.    FACTUAL BACKGROUND .............................................................................................5

    A.    Filing of the Bankruptcy Case ............................................................................5

    B.    Modification and Release Agreement With POL ..............................................6

    C.    CBSG's Lien Against the Bel Air Property ......................................................6

    D.    CBSG Proof of Claim and the SEC Action ......................................................7

    E.    Lamorie's Proof of Claim ................................................................................10

    F.    WSF's Fifth Lien Against the Bel Air Property ............................................11

III.    NON-MATERIAL MODIFICATIONS TO PLAN .......................................................13

    A.    Non-Material Modification to the Plan Regarding the Modification Agreement. ........................................................................................................13

    B.    Non-Material Modification to the Plan Regarding CBSG. ...........................13

    C.    Non-Material Modification to the Plan Regarding Lamorie and WSF/Forward Horizons. ...................................................................................14

    D.    The Court is Authorized to Approve the Non-Material Modifications of the Plan. .......................................................................................................................15

IV.    CONCLUSION ...............................................................................................................17

DECLARATION OF ASHLEY S. AARONS .............................................................................18

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

# TABLE OF AUTHORITIES

2
**Page**

3

## CASES

4

*Cellular Information Systems, Inc.*,
    171 B.R. 926, (Bankr. S.D.N.Y. 1994) ................................................................. 15

5

*Resolution Trust Corp. v. Best Products Co., Inc.*,
    177 B.R. 791 (S.D.N.Y. 1995) .................................................................... 15, 16

6

7

## STATUTES

8

11 U.S.C. § 1122 .............................................................................................. 16

9

11 U.S.C. § 1123 .............................................................................................. 16

10

11 U.S.C. § 1127(a) .......................................................................................... 15

11

12

## TREATISES

13

5 Collier on Bankruptcy ¶ 1127.02 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief,
    16th ed. 2014) ................................................................................................. 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

3

1   TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY

2   JUDGE, TO THE OFFICE OF THE UNITED STATES TRUSTEE, AND TO ALL PARTIES

3   IN INTEREST:

4       Ashley Susan Aarons, the debtor and debtor in possession herein ("Debtor"), hereby submits

5   her Motion to Approve Non-Material Modification to Chapter 11 Plan Dated August 7, 2020

6   ("Motion").

7                 I.    **SUMMARY OF ARGUMENT**[1]

8       By this Motion, the Debtor requests the Court approve non-material modifications to her

9   Chapter 11 Plan Dated August 7, 2020 [docket 313] ("Plan") which will (1) incorporate the Fourth

10  Addendum to the Modification Agreement, (2) memorialize the resolution reached between the

11  Debtor and the Receiver (defined below) as to the treatment of CBSG's secured claim, Class 2D,

12  and (3) modify the Plan's treatment of the Lamorie Claim (Class 2C) and/or WSF/Forward

13  Horizon's secured claim (Class 2E) so that the Debtor is able to close on any financing prior to a

14  resolution of her objections to those claims.

15      The proposed modification to incorporate the Fourth Addendum, which modified the

16  Modification Agreement to ensure certain deadlines had not lapsed, to provide for a conditional

17  discounted payoff amount and to clarify the scope of the Release, ensures that the Fourth Addendum

18  is incorporated into the Plan.  The proposed modification ill not have a material impact on creditors

19  as it only affects POL.  The proposed modification will also not impact the Debtor's financial

20  condition and will have a negligible, if any, impact on unsecured creditors, therefore, the

21  modification is unlikely to induce an unsecured creditor to change a vote to accept the Plan to a vote

22  to reject the Plan and will not adversely impact equity holders.

23  ///

24  ///

25  ///

26

27  ───────────────────────

[1] Unless otherwise noted herein, capitalized terms in this Motion have the meaning as set forth in the Plan and Disclosure

28  Statement.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

4

1    The proposed modification to memorialize the resolution of the Debtor and the Receiver as

2    to the treatment of CBSG's secured claim, Class 2D, revises the Plan to provide for a payment of

3    $75,000.00 by April 1, 2021 with additional terms as set forth below.  The modification to CBSG

4    does not affect other Creditors and memorializes the agreement between the Debtor and the

5    Receiver, which fully resolves Claim 3 and the treatment of CBSG's secured claim, Class 2D.  This

6    modification results in a lower payoff to CBSG without the incurrence of additional administrative

7    fees litigating a preference action and therefore does not have a negative impact on Creditors holding

8    General Unsecured Claims.

9    The proposed modifications to the treatment of the Lamorie Claim (Class 2C) and/or

10   WSF/Forward Horizon's secured claim (Class 2E) provide that, in the event the Debtor closes on

11   take out financing and she has not resolved her objections to the Lamorie Claim or WSF/Forward

12   Horizon's secured claim, those liens shall be reconveyed, that enough funds will be held in the

13   Claims Reserve provided for in the Plan pending a resolution of the secured claims or a court order,

14   and those liens will attach to the funds with the same force, effect, validity and priority as the liens

15   had with respect to the Bel Air Property prior to the financing, and any funds not used will be

16   released for payment to the Debtor's administrative creditors.  These modifications are not material

17   as they simply clarify how these disputed claims will be handled and funds held in the Claims

18   Reserve given the Debtor's take out financing so that the Debtor is able to close on her financing

19   while she waits for a resolution to her objections to these secured claims.  The changes will thus not

20   adversely impact interest holders.

21   Accordingly, the Debtor respectfully requests that the proposed modifications are approved.

22   ## II.    FACTUAL BACKGROUND

23   ### A.    Filing of the Bankruptcy Case

24   The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on

25   July 17, 2019 ("Petition Date").

26   On August 7, 2020, the Debtor filed her *Chapter 11 Disclosure Statement Dated August 7,*

27   *2020* [docket 311] ("Disclosure Statement") and her *Chapter 11 Plan Dated August 7, 2020* [docket

28   313] ("Plan").

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx      5

1    On August 10, 2020, the Court entered the *Order Setting Hearing on Plan Confirmation and*

2    *Related Deadlines* [docket 317] ("Scheduling Order"), which provided for the distribution of the

3    Plan, Disclosure Statement, and ballots.

4    On September 11, 2020, the Debtor filed her *Brief in Support of Entry of an Order*

5    *Confirming Debtor's Chapter 11 Plan [docket 313] with Certain Non-Material Modifications*

6    [docket 329] ("Confirmation Brief").

7    **B.      Modification and Release Agreement With POL**

8    The Plan incorporates a settlement reached with the Debtor's first priority lien holder on the

9    Bel Air Property, POL.  The settlement with POL is documented in the Modification and Release

10   Agreement ("Modification Agreement"), a draft copy of which is attached to the Disclosure

11   Statement as Exhibit K and a final copy of which is attached as Exhibit 1 to the Declaration of

12   Ashley S. Aarons, annexed to the Confirmation Brief.

13   After the Plan was filed, the Debtor and POL entered into four addendums in order to modify

14   certain deadlines in the Modification Agreement which are provided for in paragraph 5 (Conditions

15   Precedent) such that the deadlines fell after any continued hearings.  The Fourth Addendum to the

16   Modification Agreement ("Fourth Addendum") also (1) supplements paragraph 4 of the

17   Modification Agreement (Terms of Compromise and Loan Modification) to provide for a

18   conditional discounted payoff amount in the event the Debtor is able to pay off POL by a date certain

19   and (2) supplements paragraph 6 of the Modification Agreement (Release) in order to clarify and

20   expand the scope of the Release in the Modification Agreement to include any and all subsequent

21   claims raised by the Debtor after execution of the Modification Agreement, including, but not

22   limited to, claims relating to the CARES Act.  A true and correct copy of the Fourth Addendum is

23   attached as **Exhibit "1"** to the annexed Declaration of Ashley S. Aarons ("Aarons Decl.").

24   **C.      CBSG's Lien Against the Bel Air Property**

25   On January 9, 2019, the Debtor executed a Security Agreement against the Bel Air Property

26   in the amount of $481,857.75 ("Security Agreement") related to a Factoring Agreement with

27   Complete Business Solutions Group, Inc. dba Par Funding ("CBSG") of the same date, which the

28   Debtor requested be cancelled.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

1    On January 17, 2019, Debtor, as the sole proprietor for her dba Coffee Dog Entertainment

2    ("Coffee Dog") entered into a Factoring Agreement with CBSG, whereby CBSG purchased Coffee

3    Dog's accounts receivables for the amount of $312,094.30 with a Receipts Purchase Amount of

4    $405,722.59 ("Consolidated Agreement").    Concurrent with her execution of the Consolidated

5    Agreement, the Debtor executed additional loan documents and a personal guaranty.

6    On May 21, 2019, the Security Agreement was recorded against the Bel Air Property in the

7    Official Records of the County of Los Angeles, Document Number 2019-0462348 ("Bel Air DOT").

8    The Debtor asserts that, as of January 11, 2019, after accounting for the total actually funded

9    for the Consolidated Loan, balances due on the 2018 Loan Agreements as December 31, 2018, and

10    payments made totaling $38,117.41, the total owed to CBSG on the Petition Date was $269,205.81.

11    The Debtor asserts that because the Security Agreement was recorded within ninety (90)

12    days of the Petition Date, it is a preferential transfer pursuant to 11 U.S.C. § 547(b) and may be

13    avoided and recovered for the benefit of the Debtor's bankruptcy estate ("Preferential Transfer

14    Claim").

15    **D.    CBSG Proof of Claim and the SEC Action**

16    On July 26, 2019, CBSG filed a proof of claim in this bankruptcy case, asserting a secured

17    claim against the Bel Air Property in the amount of $395,594.07, which appears on the Claims

18    Register as Claim 3-1 ("Claim 3").    The face of Claim 3 asserts that the basis of the claim is:

19    "Factoring Agreement and Related Guaranty."    Claim 3 asserts that the basis for the perfection of

20    its claim is: "UCC-1 and Mortgages."

21    On July 24, 2020, the Securities and Exchange Commission filed a Complaint for Injunctive

22    and Other Relief against CBSG and related entities and individuals in the United States District

23    Court, Southern District of Florida ("Florida Court"), commencing Securities and Exchange

24    Commission v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al., Case No. 9:20-

25    cv-81205-RAR ("SEC Action").

26    ///

27    ///

28    ///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

7

On August 13, 2020, the Florida Court entered its Amended Order Appointing Receiver [SEC Action, docket 141], appointing Ryan Stumphauzer, Esq. as the receiver ("Receiver") for the estates of the Receivership Entities.  Section VIII of the Receiver Order provides that the following proceedings are stayed until further Order of the Florida District Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

Receivership Property is defined in Section II, paragraph 7 of the Receiver Order as "all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly." Accordingly, the Bel Air DOT is Receivership Property and the Debtor was stayed from pursuing the Preferential Transfer Claim and was stayed from confirming her Plan as it impacts the CBSG Claim.

The Receiver asserts that the Debtor is listed in the records of CBSG as an open Factoring Agreement account with an outstanding account receivable of $399,395.07, resulting in an unpaid cash exposure sum due to the Receivership Estate of $95,574.07.

On February 6, 2021, the Order Granting the Receiver's Combined Ninth Motion to Lift Litigation Injunction as to Certain Garnishment Proceedings, to Allow Receiver to Release or Remove Security Agreements, and to Authorize Receiver to Enter into a Settlement Agreement With Chapter 11 Debtor in Possession for Ashley Aarons d/b/a Coffee Dog Entertainment [SEC Action, docket 487] ("Florida Lift Stay Order") was entered in the SEC Action.  The Florida Lift Stay Order provides as follows:

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

8

Specifically, the litigation injunction set forth in the Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141] is hereby lifted to authorize the Receiver to enter into the proposed Settlement Agreement with the Chapter 11 Debtor, Ashley Aarons d/b/a Coffee Dog Entertainment to promote the confirmation of the Debtor's Chapter 11 Plan of Reorganization; however, nothing herein shall be deemed to authorize any third party to seek relief or otherwise avoid the Bankruptcy Plan Confirmation in an attempt to assert a right to foreclose its lien with the intent to assert a position detrimental to the Receivership's position as set forth in the proposed settlement with the Chapter 11 Debtor.

A true and correct copy of the Florida Lift Stay Order is attached as **Exhibit "2"** to the Aarons Decl.

The treatment of the Class 2D Secured Claim of CBSG is provided for in Exhibit A to the Plan and is described in further detail in Exhibit H to the Disclosure Statement, which is incorporated in the Plan by reference in Article I of the Plan.

Exhibit A to the Plan provides that the estimated claim for CBSG is $395,594.07 and that, under the Plan, CBSG will receive a monthly interest payment of $3,296.62 from October 1, 2020 to April 1, 2021, when a balloon payment will be due in the amount of $372,517.73.

The treatment of CBSG (Class 2D) in Exhibit H to the Disclosure Statement currently reads in pertinent part as follows:

| | |
|---|---|
| 2B – 2E | Pursuant to the Modification Agreement, the second, third, fourth and fifth lienholders on the Bel Air Property shall be subordinated to the first lienholder in order to ensure that POL's (defined below) first position lien on the Bel Air Property is not altered or modified in any way by the modification. |
| 2D | Commencing October 1, 2020, the fourth lienholder on the Bel Air Property, Complete Business Solutions Group, Inc. ("CBSG") will receive a monthly interest only payment at 10% per annum based on CBSG's allowed claim amount.  All outstanding principal and interest due on the allowed claim amount will be paid in only installment payment to be made on or before April 1, 2021 in an amount to be approved by CBSG or further Court order. |
| 2D | The estimated claim is the amount of Claim 3 filed by CBSG.  Claim 3 asserts a claim of $395,594.07 as of the Petition Date, however the Debtor believes that the amount owed is less.  Claim 3 includes a secured claim against the Debtor's personal property as the result of a filed UCC-1, but given that Claim 3 will be paid in full through the refinance of the Bel Air Property, Claim 3 is listed as a secured claim against the Debtor's residence for purposes of the Plan. |
| 2D | The Debtor disputes the claim amount asserted by CBSG and believes the claim is an unsecured claim based on the recording of the deed of trust within 90 days of the Petition Date, and that the total amount of this claim is overstated and that the claim may be unenforceable in the amount stated.  Further, the personal property is worth significantly less than the amount of the claim.  As such, the Debtor intends to object to this claim before the Effective Date of the Plan. |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

9

1    The Debtor and the Receiver reached a resolution[2] as to the treatment of CBSG's secured

2 claim, Class 2D, through the Plan as discussed below.  As such, a non-material modification must

3 be made to the Plan.

4    **E.    Lamorie's Proof of Claim**

5    On November 15, 2019, M. Lamorie filed a proof of claim in the amount of $248,800.00

6 based on "money loaned", appearing on the claims register as Claim 21 ("Lamorie Claim").  The

7 Lamorie Claim asserts a secured claim in the amount of $170,000.00 based on "recorded deeds" and

8 an unsecured claim in amount of $78,800.00.

9    The treatment of the Class 2C Secured Claim of Lamorie is provided for in Exhibit A to the

10 Plan and is described in further detail in Exhibit H to the Disclosure Statement, which is incorporated

11 in the Plan by reference in Article I of the Plan.

12    Exhibit A to the Plan provides that the estimated secured claim for Lamorie is $170,000.00

13 and that, under the Plan, Lamorie will receive a monthly interest payment of $2,073.33 from October

14 1, 2020 to April 1, 2021, when a balloon payment will be due in the amount of $155,486.69.

15    The treatment of Lamorie (Class 2C) in Exhibit H to the Disclosure Statement currently

16 reads in pertinent part as follows:

| | |
|---|---|
| 2C | Commencing October 1, 2020, the third lienholder on the Bel Air Property, M. Lamorie ("Lamorie"), will receive a monthly interest only payment at 10% per annum based on Lamorie's allowed claim amount. All outstanding principal and interest due on the allowed claim amount will be paid in one installment payment to be made on or before April 1, 2021 in an amount to be approved by Lamorie or further Court order. The maturity date of April 1, 2021 may be extended for up to six (6) months should the Debtor meet the conditions for an extension under the Modification Agreement. |
| 2C | The estimated claim is the amount of Claim 21 filed by Lamorie on November 15, 2019, which includes amounts related to cross-collateralized liens against the Bel Air Property and Sweetzer Property. Claim 21 asserts a secured claim in the amount of $170,000.00 and a general unsecured claim in the amount of $78,800.00. Debtor asserts that Lamorie only has a secured claim for $66,472.00. |
| 2C | The Debtor disputes the claim amount asserted by Lamorie and believes the total amount of this claim is overstated and that the claim may be unenforceable in the amount stated. As such, the Debtor intends to object to this claim before the Effective Date of the Plan. |

---

[2] Now that the Florida Lift Stay Order has been entered, the Parties will finalize and execute the *Stipulation Between Debtor and Debtor in Possession and the Receiver for Complete Business Solutions d/b/a Par Funding for Resolution of Claim 3 and Modified Treatment Under the Chapter 11 Plan* ("Stipulation").  The Debtor will file a supplemental declaration to provide a copy of the executed Stipulation prior to the hearing.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

10

1  **F.**      **WSF's Fifth Lien Against the Bel Air Property**

2          On the Petition Date, the Plaintiff, as Trustee of the Ashley S. Aarons 2015 Trust Dated May

3  15, 2015 ("Trust") entered into a Note Secured by Deed of Trust ("Note") with WSF in the amount

4  of $25,000.00 ("Loan Amount").  The Note was secured by a deed of trust recorded against the Bel

5  Air Property and the real property located at 336 N. Sweetzer Avenue, Los Angeles, CA 90048

6  ("Sweetzer Property").

7          On the Petition Date, a Short Form Deed of Trust and Assignment of Rents in the amount of

8  $25,000.00 was recorded against the Bel Air Property for the benefit of WSF in the Official Records

9  for the Recorder's Office for Los Angeles County, California, Document Number 20190690920

10  ("WSF DOT").

11          The Debtor did not receive any of the $25,000.00 she "borrowed" from WSF.  Rather, the

12  Loan Amount was to be paid directly to Debtor's counsel, The Turoci Firm ("Firm"), as its pre-

13  petition retainer.

14          On July 25, 2019, the Firm filed its Notice of Motion and Motion in an Individual Chapter

15  11 Case for Order Authorizing Debtor in Possession to Employ General Bankruptcy Counsel [11

16  U.S.C. § 327(a), LBR 2014-1]; and To File Interim Fee Applications Using Procedure in LBR 9013-

17  1(o) [docket 23] in the Bankruptcy Case ("Turoci Employ App").  The Turoci Employ App provided

18  that the Firm received $25,000.00 from the Debtor and as of the Petition Date, $15,968.00 of the

19  retainer funds remain unexhausted.

20          On August 7, 2019, the Firm filed a Supplement to Motion for Authority to Employ The

21  Turoci Firm as General Bankruptcy Counsel [docket 28] in the Bankruptcy Case ("Turoci

22  Supplement," together with the Turoci Employ App, the "Employment Application").  In the Turoci

23  Supplement, the Firm disclosed that the Firm had arranged for the loan between the Debtor and

24  WSF for the Loan Amount.  The Turoci Supplement further disclosed that Todd Turoci is the sole

25  owner of both the Firm and WSF.

26  ///

27  ///

28  ///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

11

1    On August 8, 2019, the United States Trustee ("UST") filed his objection ("UST Objection")

2    to the Employment Application [docket 30]. The UST Objection was based on: (1) the lack of

3    disinterestedness of the Firm given the clear relationship between the Firm and WSF which provided

4    the Debtor with the Loan Amount, and (2) the adverse interest held by the principal of Firm on

5    account of the Loan Amount.

6    On August 15, 2019, the Firm filed its response ("Turoci Response") to the UST Objection

7    [docket 38]. In the Turoci Response, the Firm advised that "[i]n an effort to remove any actual or

8    potential conflict WSF has sold the note to Forward Horizons, Inc., an unrelated party, for

9    $20,000.00." Attached as Exhibit 2 to the Turoci Response was a check, check number 2332, from

10    Forward Horizons, made payable to WSF in the amount of $20,000.00.

11    On August 12, 2019, an Assignment of Deed of Trust ("Assignment DOT") was recorded

12    by Western Star Financial, Inc. in favor of Forward Horizons, Inc.

13    On September 10, 2019, a hearing was held on the Employment Application. The Court

14    denied the Employment Application. The Order Denying Employment Application of the Turoci

15    Firm as General Bankruptcy Counsel Due to Indirect Lending Relationship was entered in the

16    Bankruptcy case on September 12, 2019 [docket 59].

17    The treatment of the Class 2E Secured Claim of WSF/Forward Horizons is provided for in

18    Exhibit A to the Plan and is described in further detail in Exhibit H to the Disclosure Statement,

19    which is incorporated in the Plan by reference in Article I of the Plan.

20    Exhibit A to the Plan provides that the estimated claim for WSF/Forward Horizons is $0.00.

21    The treatment of WSF/Forward Horizons (Class 2E) in Exhibit H to the Disclosure Statement

22    currently reads in pertinent part as follows:

| 2E | The Debtor disputes the claim of the fifth lienholder on the Bel Air Property, Western Star Financial ("WSF"), which was assigned Post-Petition on August 12, 2019 to Forward Horizons, Inc. ("Forward Horizons"). No proof of claim was filed by WSF. The Debtor understands and believes that this claim represents a loan by WSF for a "retainer" for legal services to be rendered by her original bankruptcy counsel, Todd Turoci (President of WSF), whose employment was not approved by the Court. As such, the Debtor intends to object to this secured claim, which should be disallowed in its entirety, any deed of trust or other encumbrance of any property, including the Bel Air Property shall be revoked, reconveyed and rescinded and claimant shall receive no distribution under the Plan. |
|---|---|

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

12

6222-000/73/Non-Material Modification to Plan Mtn.docx

# III.    NON-MATERIAL MODIFICATIONS TO PLAN

**A.      Non-Material Modification to the Plan Regarding the Modification Agreement.**

In order to ensure that the Plan incorporates the Fourth Addendum, the Debtor requests a non-material modification to the Plan to reference the Fourth Addendum.  The second sentence of the first paragraph of page 5 of the Plan shall be modified to reference the Fourth Addendum as follows:

> The settlement with POL is documented in the Modification and Release Agreement ("Modification Agreement"), a draft copy of which is attached to the Disclosure Statement as Exhibit K and a final copy of which is attached as Exhibit "1" to the Declaration of Ashley S. Aarons, annexed to the Confirmation Brief, and the Fourth Addendum to the Modification Agreement ("Fourth Addendum"), a copy of which is attached as Exhibit "1" to the Declaration of Ashley S. Aarons, annexed to the Non-Material Modification Motion.

The proposed modification will not have a material impact on creditors as it only affects POL.  The proposed modification will not impact the Debtor's financial condition and will have a negligible, if any, impact on unsecured creditors, therefore, the modification is unlikely to induce an unsecured creditor to change a vote to accept the Plan to a vote to reject the Plan and will not adversely impact equity holders.  As such, the proposed modification should be approved.

**B.      Non-Material Modification to the Plan Regarding CBSG.**

The Debtor and the Receiver reached a resolution[3] as to the treatment of CBSG's secured claim, Class 2D.  The Debtor requests a non-material modification to the Plan in order to memorialize this agreement.  The treatment of CBSG, Class 2D shall be revised as follows:

Exhibit A to the Plan will be revised and restated to provide for a payment of $75,000.00 on April 1, 2021 to Class 2D and otherwise be subject to additional terms as set forth below.  Exhibit H to the Disclosure Statement will be modified such that the third, fourth and fifth rows on page 23

---

[3] Now that the Florida Lift Stay Order has been entered, the Parties will finalize and execute the *Stipulation Between Debtor and Debtor in Possession and the Receiver for Complete Business Solutions d/b/a Par Funding for Resolution of Claim 3 and Modified Treatment Under the Chapter 11 Plan* ("Stipulation").  The modification provided reflects the content of the draft Stipulation.  The Debtor will file a supplemental declaration to provide a copy of the final executed Stipulation prior to the hearing.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx                    13

of the Disclosure Statement (Exhibit H) discussing Class 2D shall be replaced with the following

two rows:

| | |
|---|---|
| 2D | Complete Business Solutions Group ("CBSG") shall retain a lien in the fourth priority position on the Bel Air Property. CBSG has agreed to fully resolve Claim 3 filed by CBSG for $75,000.00 ("Reduced Lien"). If the amount is not paid within 90 days of the Effective Date, interest on the Reduced Lien will accrue at a rate of 10% interest per annum. The Reduced Lien will be paid no later than the same maturity as POL under the Plan whether that maturity is April 1, 2021 or is extended to October 1, 2021. |
| 2D | Claim 3 includes a secured claim against the Debtor's personal property as a result of a filed UCC-1. Upon receipt of the Reduced Lien, in addition to reconveying the fourth priority lien against the Bel Air Property, CBSG will terminate the UCC Financing Statement against the Debtor's personal property. |

**C.    Non-Material Modification to the Plan Regarding Lamorie and WSF/Forward Horizons.**

The Plan, which is funded as explained in the exhibits to the Disclosure Statement, provides under Article II of the Plan that the Plan would be primarily funded through restructuring of secured debt and/or new financing. In order to take out the Class 2 Secured Creditor claims, pay her administrative claims, pay for the necessary repairs and improvements to the Bel Air Property, and ensure the Debtor can make her payments to unsecured creditors under the Plan, the Debtor has arranged for a construction loan. The Debtor intends to file an objection to the Lamorie Claim and file a complaint against WSF/Forward Horizons before the Effective Date.

Article I, Section D (Distributions) of the Plan provides for a disputed claims reserve as follows:

> A separate, interest bearing bank account (Claims Reserve) will hold distributions for any claims that cannot be paid until they are allowed by court order, such as professional fees or Disputed claims (Reserved Claims). The Disbursing Agent (defined below) is required to reserve enough funds/assets to pay the distributions that each Reserved Claim will be entitled to receive if it is allowed in full (unless the court approves a different amount).

In order to ensure that the Debtor is able to close on her construction loan in the event that the Lamorie Claim (Class 2C) and/or WSF/Forward Horizon's secured claim (Class 2E) is not resolved, the treatment of Class 2C and 2E on page 23 of the Disclosure Statement shall be modified to provide

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

14

for enough funds to be held in the Claims Reserve through closing on the financing by adding the

following rows after the last row for 2C and 2E:

| 2C | In the event that the claim asserted by Lamorie is not resolved prior to closing on financing, Lamorie's lien shall be reconveyed, enough funds will be held in the Claims Reserve provided for in the Plan pending a resolution of the secured claims or a court order, and Lamorie's lien will attach to the funds with the same force, effect, validity and priority as the liens had with respect to the Bel Air Property prior to the financing, with any funds not used to be released for payment to the Debtor's administrative creditors. |
|----|---|
| 2E | In the event that the WSF/Forward Horizon's secured claim is not resolved prior to closing on financing, Forward Horizons' lien shall be reconveyed, enough funds will be held in the Claims Reserve provided for in the Plan pending a resolution of the secured claims or a court order, and Forward Horizons' lien will attach to the funds with the same force, effect, validity and priority as the liens had with respect to the Bel Air Property prior to the financing, with any funds not used to be released for payment to the Debtor's administrative creditors. |

## D.     The Court is Authorized to Approve the Non-Material Modifications of the Plan.

Bankruptcy Code Section 1127(a) provides:

> (a) the proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plans as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

"Subsection (a) of section 1127 recognizes and implements the negotiation process, which is the essence of the formulation of any plan of reorganization. This section allows a proponent of a plan, and only the proponent, without leave of court, to modify its plan before confirmation." 5 Collier on Bankruptcy ¶ 1127.02 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2014).

Immaterial modifications to a plan do not require resolicitation of votes on a plan. *Cellular Information Systems, Inc.*, 171 B.R. 926, 929 n.6 (Bankr. S.D.N.Y. 1994) ("I find that such changes are nonmaterial modifications which do not require resolicitation of the respective impaired classes of creditors and equity security holders"). Rather, resolicitation is only triggered when the proposed modification materially and adversely impacts a claimant's treatment. *See Resolution Trust Corp. v. Best Products Co., Inc.*, 177 B.R. 791, 802 (S.D.N.Y. 1995) (noting that the key inquiry was whether the modification materially altered the plan so that a claimant's treatment was adversely

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx                15

1   affected). A proposed modification is deemed material "if it so affects a creditor or interest holder

2   who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider

3   its acceptance." *Id.* at 824.

4        In this case, the Plan, as modified herein, meets the requirements of 11 U.S.C. §§ 1122 and

5   1123.  The proposed modifications to the Plan are immaterial as the basic provisions of the Plan

6   regarding disbursements to Creditors holding General Unsecured Claims will remain the same.

7        The proposed modifications will not have a material impact on creditors because the

8   treatment only affects Class 2 Secured Claims.   The proposed modification regarding the

9   Modification Agreement ensures that the Fourth Addendum is incorporated into the Plan.  None of

10  modifications provided in the Fourth Addendum impact any Creditors and in the event the Debtor

11  is able to pay off POL at the conditional discounted payoff amount provided for in the Fourth

12  Addendum, there will be additional funds available to pay administrative creditors.  Therefore, the

13  modification is unlikely to induce an unsecured creditor to change a vote to accept the Plan to a vote

14  to reject the Plan and will not adversely impact equity holders.

15       The modification to CBSG does not affect other Creditors and memorializes the agreement

16  between the Debtor and the Receiver, which fully resolves Claim 3 and the treatment of CBSG's

17  secured claim, Class 2D.   This modification results in a lower payoff to CBSG without the

18  incurrence of additional administrative fees litigating a preference action and therefore does not

19  have a negative impact on Creditors holding General Unsecured Claims.

20       The modifications to Lamorie and WSF/Forward Horizons will not affect Creditors holding

21  General Unsecured Claims, but are necessary to allow the Debtor to close on her financing while

22  she waits for a resolution to her objections to their secured claims.  These modifications are not

23  material as they simply clarify how these disputed claims will be handled and funds held in the

24  Claims Reserve given the Debtor's take out financing so that the Debtor is able to close on her

25  financing while she waits for a resolution to her objections to these secured claims.  The changes

26  will thus not adversely impact interest holders.

27  ///

28  ///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

16

As the proposed modifications (i) do not change the treatment of Claims, (ii) do not impact the Debtor's financial condition, and (iii) do not have a negative impact on Creditors holding General Unsecured Claims, the modifications should be approved at the confirmation hearing without additional disclosure, solicitations, or voting.

## IV.    **CONCLUSION**

Based on all of the above, the Debtor respectfully requests the Court approve the proposed non-material modifications set forth herein and thereby approve this Motion.

Respectfully submitted,

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

DATED:  February 8, 2021            By:    _/s/ Rika M. Kido_
                                                    James C. Bastian, Jr.
                                                    Rika M. Kido
                                                    Attorneys for Ashley Susan Aarons, Debtor and
                                                    Debtor in Possession

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx                    17

# DECLARATION

## DECLARATION OF ASHLEY S. AARONS

I, Ashley S. Aarons, declare as follows:

1.      The matters stated herein are true and correct and within my personal knowledge.  If called as a witness, I could and would competently testify thereto.

2.      I make this supplemental declaration in support of my *Motion to Approve Non-Material Modifications to Chapter 11 Plan Dated August 7, 2020* ("Motion").  Unless otherwise noted, capitalized terms in this Declaration have the meaning set forth in the Motion.

3.      After the Plan was filed, POL and I entered into four (4) addendums in order to modify certain deadlines in the Modification Agreement which are provided for in paragraph 5 (Conditions Precedent) such that the deadlines fell after any continued hearings.  The Fourth Addendum to the Modification Agreement ("Fourth Addendum") also (1) supplements paragraph 4 of the Modification Agreement (Terms of Compromise and Loan Modification) to provide for a conditional discounted payoff amount in the event the Debtor is able to pay off POL by a date certain and (2) supplements paragraph 6 of the Modification Agreement (Release) in order to clarify and expand the scope of the Release in the Modification Agreement to include any and all subsequent claims raised by the Debtor after execution of the Modification Agreement, including, but not limited to, claims relating to the CARES Act.  A true and correct copy of the Fourth Addendum is attached hereto as **Exhibit "1"**.

4.      On January 9, 2019, I executed a Security Agreement against the Bel Air Property in the amount of $481,857.75 ("Security Agreement") related to a Factoring Agreement with Complete Business Solutions Group, Inc. dba Par Funding ("CBSG") of the same date, which the Debtor requested be cancelled.

5.      On January 17, 2019, I, as the sole proprietor for my dba Coffee Dog Entertainment ("Coffee Dog"), entered into a Factoring Agreement with CBSG, whereby CBSG purchased Coffee Dog's accounts receivables for the amount of $312,094.30 with a Receipts Purchase Amount of $405,722.59 ("Consolidated Agreement").  Concurrent with my execution of the Consolidated Agreement, I executed additional loan documents and a personal guaranty.

///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

18

6.      On May 21, 2019, the Security Agreement was recorded against the Bel Air Property in the Official Records of the County of Los Angeles, Document Number 2019-0462348 ("Bel Air DOT").

7.      As of January 11, 2019, after accounting for the total amount that was actually funded for the Consolidated Loan, the balances due on the previous factoring agreements I had entered into with CBSG as December 31, 2018, and payments I made totaling $38,117.41, the total owed to CBSG on the Petition Date was $269,205.81.

8.      On February 6, 2021, the Order Granting the Receiver's Combined Ninth Motion to Lift Litigation Injunction as to Certain Garnishment Proceedings, to Allow Receiver to Release or Remove Security Agreements, and to Authorize Receiver to Enter into a Settlement Agreement With Chapter 11 Debtor in Possession for Ashley Aarons d/b/a Coffee Dog Entertainment [SEC Action, docket 487] ("Florida Lift Stay Order") was entered in the SEC Action.  A true and correct copy of the Florida Lift Stay Order is hereto attached as **Exhibit "2"**.

9.      On the Petition Date, I, as Trustee of the Ashley S. Aarons 2015 Trust Dated May 15, 2015 ("Trust") entered into a Note Secured by Deed of Trust ("Note") with WSF in the amount of $25,000.00 ("Loan Amount").  The Note was secured by a deed of trust recorded against the Bel Air Property and the real property located at 336 N. Sweetzer Avenue, Los Angeles, CA 90048 ("Sweetzer Property").

10.      On the Petition Date, a Short Form Deed of Trust and Assignment of Rents in the amount of $25,000.00 was recorded against the Bel Air Property for the benefit of WSF in the Official Records for the Recorder's Office for Los Angeles County, California, Document Number 20190690920 ("WSF DOT").

///

///

///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000/73/Non-Material Modification to Plan Mtn.docx

19

11.    I did not receive any of the $25,000.00 that I "borrowed" from WSF.  Rather, the Loan Amount was to be paid directly to my counsel, The Turoci Firm ("Firm"), as its pre-petition retainer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 8, 2021, at Costa Mesa, California.

_____
Ashley S. Aarons

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

20

6222-000/73/Non-Material Modification to Plan Mtn.docx

# EXHIBIT 1

## FOURTH ADDENDUM TO MODIFICATION AND RELEASE AGREEMENT

This **FOURTH ADDENDUM** ("**Fourth Addendum**") is made and entered into as of the date of its full execution by and between Ashley S. Aarons, individually and on behalf of her heirs, agents, employees and successors and assigns ("**Debtor**") and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("**Trust**" or "**Borrower**") and its respective trustees, heirs, agents, employees, successors and assigns[1], on the one hand, and Patch of Land Lending, Inc. ("**POL**"), FCI Lender Services, Inc. ("**FCI**") and Verus Securitization Trust 2020-NPL1, as successor in interest to Invictus Residential Pooler Trust 3A ("**Lender**"), and POL, FCI, and Lender's respective trustees, officers, agents, managers, employees, attorneys, successor and assigns, on the other hand.  Debtor and Borrower/Trust shall collectively hereafter be referred to as the "**Debtor Parties**".  POL, FCI, and Lender shall collectively be referred to as "**Creditor**".  Debtor Parties and Creditor are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**".

## I.    RECITALS

A.  The applicable Parties entered into a Modification and Release Agreement on September 10, 2020 ("**Agreement**").  The applicable Parties subsequently entered into an Addendum to the Agreement on October 14, 2020 ("**First Addendum**") whereby the Parties agreed solely to modify certain deadlines in the Agreement which had not passed and which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for approximately fourteen (14) days.  The applicable Parties subsequently entered into a Second Addendum to the Agreement on November 6, 2020 ("**Second Addendum**") whereby the Parties agreed solely to modify certain deadlines in the Agreement which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for an additional three (3) weeks.  The applicable Parties subsequently entered into a Third Addendum to the Agreement on December 22, 2020 ("**Third Addendum**") whereby the Parties agreed solely to modify certain deadlines in the Agreement which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines would be extended until early January 2021.  A true and correct copy of the fully executed Third Addendum which includes copies of (1) the fully executed Second Addendum, (2) the fully executed First Addendum and (3) the fully executed Agreement is attached hereto as **Exhibit "1" and incorporated herein by reference.**  The purpose of this Fourth Addendum is to 1) again further modify certain deadlines in the Agreement which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended to agreed upon dates in February 2021, 2) to supplement paragraph 4 of the Agreement (Terms of Compromise and Loan Modification) to provide for a conditional discounted payoff amount in the event the Debtor Parties are able to pay off the Creditor by a date certain, as set forth in more detail below, 3) to supplement paragraph 6 of the Agreement (Release) in order to clarify and expand the scope of the Release in the Agreement to include any and all subsequent claims raised by the Debtor Parties after execution of the Agreement, including, but not limited

---

[1] Without limiting the forgoing description of the Trust or Borrower, the term "Trust" and "Borrower" also includes any interest of the estate of Borrower or the Trust, resulting from the filing of the Bankruptcy described in Paragraph H of the Agreement.

308045556 v2

EXHIBIT 1

to, claims relating to the CARES Act, and 4) to clarify other items from the Agreement, as set forth more fully below.  Except as specifically set forth herein, all other terms and conditions of the Agreement remain unchanged.

B.  Subsequent to the execution of the Agreement by the applicable Parties, the subject loan and all rights thereto, including, but not limited to any rights and obligations pursuant to the Agreement, were assigned to the current Lender, Verus Securitization Trust 2020-NPL1 as specified above.  Verus Securitization Trust 2020-NPL1 is the current Lender and assignee/successor to Invictus Residential Pooler Trust 3A.  Wilmington Savings Fund Society, FSB ("**WSFS**"), is the owner trustee (the "**Owner Trustee**") of Verus Securitization Trust 2020-NPL1 and is executing this Fourth Addendum on its behalf.  Notwithstanding anything in this Fourth Addendum, the Agreement, the First Addendum, the Second Addendum, the Third Addendum, or any other document to the contrary, it is expressly understood and agreed by the Parties that insofar as this Fourth Addendum is executed by WSFS, as Owner Trustee of Verus Securitization Trust 2020-NPL1 that (i) this Fourth Addendum is executed and delivered by the Owner Trustee not in its individual capacity but solely as Owner Trustee on behalf of Verus Securitization Trust 2020-NPL1, in the exercise of the powers and authority conferred upon and vested in it as Owner Trustee under the amended and restated trust agreement of Verus Securitization Trust 2020-NPL1, subject to the protections, indemnities and limitations from liability afforded to the Owner Trustee thereunder, (ii) each of the undertakings and agreements herein made on behalf of Verus Securitization Trust 2020-NPL1 is made and intended not as a personal undertaking or agreement of or by WSFS but is made and intended for purposes of binding only Verus Securitization Trust 2020-NPL1, (iii) nothing herein contained shall be construed as creating any duty, obligation or liability on the part of WSFS, individually or personally, to perform any covenant, duty or obligation of Verus Securitization Trust 2020-NPL1, either express or implied in this Fourth Addendum or related document, all such liability, if any, being expressly waived by the Parties and by any person claiming by, through or under the Parties, (iv) WSFS has not verified and has made no investigation as to the accuracy or completeness of the representations or warranties of Verus Securitization Trust 2020-NPL1 and (v) under no circumstances shall WSFS in its individual capacity or in its capacity as Owner Trustee be personally liable for the payment of any indebtedness, amounts or expenses owed by the Owner Trustee or Verus Securitization Trust 2020-NPL1 (such indebtedness, expenses and other amounts being payable solely from and to the extent of assets of Verus Securitization Trust 2020-NPL1) or be personally liable for the breach or failure of any obligation, representation, warranty or covenant made under this Fourth Addendum or any other related documents.

## II.    AGREEMENT

4.    **Terms of Compromise and Loan Modification.**

h.    <u>**Conditional Discounted Payoff.**</u>  Subject to satisfaction of all of the Conditions for Effectiveness of Modification set forth in paragraph 5 of the Agreement, as modified by this Fourth Addendum pursuant to the Amended Conditions for Effectiveness of

EXHIBIT 1

Modification set forth below, Creditor agrees to accept a reduced payoff of **$3,409,249.00** ("**Conditional Discounted Payoff**") in full and complete satisfaction of all obligations of Debtor Parties to Creditor under the Loan Documents and the Agreement, if, and only if, Creditor receives  such Conditional Discounted Payoff amount on or before March 31, 2021 ("**Conditional Discounted Payoff Deadline**").  This Conditional Discounted Payoff consists of the amounts that are currently owing on the Note (assuming satisfaction of all Amended Conditions for Effectiveness of Modification) through February 26, 2021 of $3,559,249.00 (which is the amount owing after application of the Reserve Funds as specified in Paragraph 4(d) of the Agreement), but with a discount of $150,000.00.   In the event that the Conditional Discounted Payoff is not timely received by the Conditional Discounted Payoff Deadline, the Debtor shall be required to make payments in accordance with the terms of the Agreement, including, but not limited to any interest or default interest that has accrued, and Creditor shall have no obligation to accept a reduced or discounted payoff after the Conditional Discounted Payoff Deadline.[2]

5.    **Conditions Precedent.**  The agreement to modify the Loan by Creditor is subject to the timely occurrence of all of the following conditions ("**Amended Conditions for Effectiveness of Modification**"):

a.  **Approval of Agreement by Bankruptcy Court.**  That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Approval Order must be entered on or before **February 12, 2021 and be a Final Order by February 26, 2021** ("**Approval Deadline**") in order for this Agreement to be effective.  In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms and the MFR shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective.  In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  The Approval Order, or a separate order submitted therewith, or the Plan terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents, as modified by this Agreement, without further hearing or order of the Court. Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these

---

2 *For example purposes only*, and for the avoidance of any doubt, if the Agreement is approved and all Amended Conditions for Effectiveness of Modification are timely satisfied, but the Borrower fails to make the Conditional Discounted Payoff by the Conditional Discounted Payoff Deadline, then Creditor would be entitled to demand all missed payments under the Agreement that had accrued as of that date and could also immediately begin to accrue default interest in accordance with the Agreement, retroactive to the date of default, if the Borrower is not otherwise current on the Agreement.  Meaning, the agreement in this Fourth Addendum to accept the Conditional Discounted Payoff Amount by the Conditional Discounted Payoff Deadline does not obviate Borrower's obligation to otherwise timely perform on the Agreement prior to the Conditional Discounted Payoff Deadline, as all other deadlines and requirements of the Agreement remain the same except as specifically modified herein.

3

EXHIBIT 1

Proceedings shall confirm to the Agreement.  The Approval Order shall override any conflicting provision in the Plan, including any default provision.

>     **(1) Lift of Stay in CBSG Action.**  Subsequent to the execution of the Agreement, the Parties learned of a pending action, *Securities and Exchange Commission v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*, Case No. 20-cv-81205-RAR ("**CBSG Action**") that purports to stay actions taken in the Bankruptcy proceedings, including the underlying Bankruptcy Plan in Debtor's Bankruptcy.  As a condition for the effectiveness of this Agreement, on or before February 12, 2021, an order ("**Stay Order**") must be entered in the CBSG Action in order for the Approval Order to be a Final Order by the Approval Deadline.  In the event that the Stay Order is not timely entered in the CBSG Action, the condition in Paragraph 5(a) will not be satisfied and the Agreement will have no effect.

b.  **Executed Agreement.**  On or before **September 4, 2020**, the Debtor Parties must sign the Agreement.  On or before **February 3, 2021**, the Debtor Parties must sign and return this Fourth Addendum.

c.  **Taxes and Insurance.**  On or before **February 26, 2021**, all taxes and must be brought current on the Property.  On or before **February 12, 2021**, the Debtor Parties must provide proof of insurance with Lender listed as a loss payee on the insurance policy.

d.  **Title Insurance/Lien Priority.**  On or before **February 26, 2021**, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this Fourth Addendum does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as allowed pursuant to the Loan Documents as modified by this Agreement.  The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above.  *In the event that Lawyers Title Company ("**Title Company**"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.*  The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy.  Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the February 12, 2021 deadline) or 2) timely obtain confirmation of a Plan which provides for such subordinations.  The Debtor Parties also understand and acknowledge that the Title Company may also decide not to issue an endorsement for other reasons, such as the inability of the court to issue a Final Order and/or timely entry of the Stay Order in the Florida Action, and that the issuance of the policy/endorsement is a condition to the effectiveness of the Agreement.

e.  **Recorded Modification and Cooperation of Debtor Parties.**  That, if requested by Creditor or the Title Company, on or before **February 26, 2021**, Debtor and Borrower sign

308045556 v2

EXHIBIT 1

a separate document to be recorded in the County and thereafter, cooperate in signing any other documents required by Creditor and/or the Title Company to insure Creditor's first lien position on the Property.

f.  **No Additional Liens or Encumbrances.**  Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated construction and repairs on the Property so long as such new liens and encumbrances are provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

In the event that the aforesaid Amended Conditions for Effectiveness of Modification are not fully and timely satisfied, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law, as if the Agreement had not been signed, including but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR. *Alternatively*, if the aforesaid Amended Conditions for Effectiveness of Modification are fully and timely satisfied, the Agreement and Modification shall be deemed valid and enforceable by any Party and Creditor's Claim shall be deemed amended as set forth above ("**Modified Claim**").  The Modified Claim shall be deemed valid and allowed as a fully secured claim and shall not be objected to by Debtor and shall not be subject to reduction in these Bankruptcy proceedings or any other Bankruptcy proceedings and may not be modified by any state or federal court or regulatory body and Creditor may record the Order approving the Agreement as evidence of this.  The Debtor Parties acknowledge that the Modified Claim specified above shall be due and owing by the Debtor Parties without offset, deduction, counterclaim, or defense of any kind or nature to the payoff thereof.

6.  **Release**.

(d)  Subsequent to the execution of the Agreement, the First Addendum, Second, Addendum, and Third Addendum, Debtor asserted that she may be entitled to COVID related relief, including forbearance, pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("**CARES Act**"), which was extended by an Executive Order executed by  President Biden on January 20, 2021, such that no fees, penalties or interest may be charged beyond the amounts calculated as if she had made all contractual payments in a timely fashion.  Creditor asserts the Debtor does not qualify for forbearance or the protections under the CARES Act for various reasons, including, but not limited to, the subject loan not being a "Federally Backed" loan as defined by the CARES Act.  For the avoidance of doubt, the Parties want to clarify and confirm that Debtor is not entitled to such relief under the CARES Act, and any claim or allegation to the contrary, or any claim relating to the Loan and/or Foreclosure is and has been released pursuant to this paragraph 6 of the Agreement.  The Agreement resolves any such allegations or claims by the Debtor, including, but not limited to, any allegations that she is entitled to forbearance under the CARES Act, before or after the approval of the Agreement.

[SIGNATURE PAGE FOLLOWS]

308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Fourth Addendum on the dates indicated below.

**DEBTOR PARTIES:**

_[signature]_

Ashley S. Aarons

Date: 2/3/2021

Ashley S. Aarons 2015 Trust
Dated May 15, 2015

Date: 2/3/2021

_[signature]_, Trustee

By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC

Date: _____

By:
Name:
Its:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

6

308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Fourth Addendum on the dates indicated below.

**DEBTOR PARTIES:**

_____                                    Date: _____

Ashley S. Aarons

Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                         Date: _____

_____

By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC                                 Date: 2/3/21

_____

By:
Name: _____
Its: President

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

6

308045556 v2

EXHIBIT 1

FCI Lenders Services, Inc.                                    Date:  2/3/2021

By:
Name: TR Hansen
Its:  Director


Verus Securitization Trust 2020-NPL1                         Date: _____

By:  Wilmington Savings Fund Society, FSB,
not in its individual capacity but solely as owner trustee


_____
By:
Name:
Its:

7

308045556 v2

EXHIBIT 1

FCI Lenders Services, Inc.                                                          Date: _____

_____
By:
Name:
Its:


Verus Securitization Trust 2020-NPL1                                               Date: 02/03/2021
                                                                                         _____

By:  Wilmington Savings Fund Society, FSB,
not in its individual capacity but solely as owner trustee

_____
By:
Name:    Mary Emily Pagano
Its:       Assistant Vice President


7

EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1

## THIRD ADDENDUM TO MODIFICATION AND RELEASE AGREEMENT

This **THIRD ADDENDUM** ("**Third Addendum**") is made and entered into as of the date of its full execution by and between Ashley S. Aarons, individually and on behalf of her heirs, agents, employees and successors and assigns ("**Debtor**") and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("**Trust**" or "**Borrower**") and its respective trustees, heirs, agents, employees, successors and assigns[1], on the one hand, and Patch of Land Lending, Inc. ("**POL**"), FCI Lender Services, Inc. ("**FCI**") and Verus Securitization Trust 2020-NPL1, as successor in interest to Invictus Residential Pooler Trust 3A ("**Lender**"), and POL and Lender's respective trustees, officers, agents, managers, employees, attorneys, successor and assigns, on the other hand. Debtor and Borrower/Trust shall collectively hereafter be referred to as the "**Debtor Parties**". POL, FCI, and Lender shall collectively be referred to as "**Creditor**". Debtor Parties and Creditor are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**".

## I.    RECITALS

A.  The applicable Parties entered into a Modification and Release Agreement on September 10, 2020 ("**Agreement**"). The applicable Parties subsequently entered into an Addendum to the Agreement on October 14, 2020 ("**First Addendum**") whereby the Parties agreed solely to modify certain deadlines in the Agreement which had not passed and which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for approximately fourteen (14) days. The applicable Parties subsequently entered into a Second Addendum to the Agreement on November 6, 2020 ("**Second Addendum**") whereby the Parties agreed solely to modify certain deadlines in the Agreement which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for an additional three (3) weeks. A true and correct copy of the fully executed Second Addendum which includes a copy of the fully executed First Addendum and a copy of the fully executed Agreement is attached hereto as **Exhibit "1"**. The purpose of this Third Addendum is solely to further modify certain deadlines in the Agreement which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended to early January 2021, as set forth in more detail below. Except as specifically set forth herein, all other terms and conditions of the Agreement remain unchanged.

B.  Subsequent to the execution of the Agreement by the applicable Parties, the subject loan and all rights thereto, including, but not limited to any rights and obligations pursuant to the Agreement, were assigned to the current Lender, Verus Securitization Trust 2020-NPL1 as specified above. Verus Securitization Trust 2020-NPL1 is the current Lender and assignee/successor to Invictus Residential Pooler Trust 3A. Wilmington Savings Fund Society, FSB ("**WSFS**"), is the owner trustee (the "**Owner Trustee**") of Verus Securitization Trust 2020-NPL1 and is executing this Third Addendum on its behalf. Notwithstanding anything in this Third Addendum, the Agreement, the First Addendum, the Second

---

[1] Without limiting the forgoing description of the Trust or Borrower, the term "Trust" and "Borrower" also includes any interest of the estate of Borrower or the Trust, resulting from the filing of the Bankruptcy described in Paragraph H of the Agreement.

1

EXHIBIT 1

Addendum, or any other document to the contrary, it is expressly understood and agreed by the Parties that insofar as this Third Addendum is executed by WSFS, as Owner Trustee of Verus Securitization Trust 2020-NPL1 that (i) this Third Addendum is executed and delivered by the Owner Trustee not in its individual capacity but solely as Owner Trustee on behalf of Verus Securitization Trust 2020-NPL1, in the exercise of the powers and authority conferred upon and vested in it as Owner Trustee under the amended and restated trust agreement of Verus Securitization Trust 2020-NPL1, subject to the protections, indemnities and limitations from liability afforded to the Owner Trustee thereunder, (ii) each of the undertakings and agreements herein made on behalf of Verus Securitization Trust 2020-NPL1 is made and intended not as a personal undertaking or agreement of or by WSFS but is made and intended for purposes of binding only Verus Securitization Trust 2020-NPL1, (iii) nothing herein contained shall be construed as creating any duty, obligation or liability on the part of WSFS, individually or personally, to perform any covenant, duty or obligation of Verus Securitization Trust 2020-NPL1, either express or implied in this Third Addendum or related document, all such liability, if any, being expressly waived by the Parties and by any person claiming by, through or under the Parties, (iv) WSFS has not verified and has made no investigation as to the accuracy or completeness of the representations or warranties of Verus Securitization Trust 2020-NPL1 and (v) under no circumstances shall WSFS in its individual capacity or in its capacity as Owner Trustee be personally liable for the payment of any indebtedness, amounts or expenses owed by the Owner Trustee or Verus Securitization Trust 2020-NPL1 (such indebtedness, expenses and other amounts being payable solely from and to the extent of assets of Verus Securitization Trust 2020-NPL1) or be personally liable for the breach or failure of any obligation, representation, warranty or covenant made under this Third Addendum or any other related documents.

## II.    AGREEMENT

5.    **Conditions Precedent.**  The agreement to modify the Loan by Creditor is subject to the timely occurrence of all of the following conditions ("**Amended Conditions for Effectiveness of Modification**"):

a.    **Approval of Agreement by Bankruptcy Court.**  That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Approval Order must be entered on or before **January 6, 2021 and be a Final Order by January 20, 2021** ("**Approval Deadline**") in order for this Agreement to be effective.  In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms and the MFR shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective.  In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  The Approval Order, or a separate order submitted therewith, or the Plan

2

EXHIBIT 1

terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents, as modified by this Agreement, without further hearing or order of the Court. Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these Proceedings shall confirm to the Agreement. The Approval Order shall override any conflicting provision in the Plan, including any default provision.

b. **Executed Agreement.** On or before **September 4, 2020**, the Debtor Parties must sign the Agreement. On or before **December 15, 2020,** the Debtor Parties must sign and return this Third Addendum.

c. **Taxes and Insurance.** On or before **January 6, 2021**, all taxes and insurance must be brought current on the Property with Lender listed as a loss payee on the insurance policy and Debtor Parties must provide proof of same.

d. **Title Insurance/Lien Priority.** On or before **January 20, 2021**, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this modification does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as allowed pursuant to the Loan Documents as modified by this Agreement. The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above. *In the event that Lawyers Title Company ("**Title Company**"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.* The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy. Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the January 21, 2021 deadline) or 2) timely obtain confirmation of a Plan which provides for such subordinations. The Debtor Parties also understand and acknowledge that the Title Company may also decide not to issue an endorsement for other reasons, such as the inability of the court to issue a Final Order, and that the issuance of the policy/endorsement is a condition to the effectiveness of the Agreement.

e. **Recorded Modification and Cooperation of Debtor Parties.** That, if requested by Creditor or the Title Company, on or before **January 20, 2021**, Debtor and Borrower sign a separate document to be recorded in the County and thereafter, cooperate in signing any other documents required by Creditor and/or the Title Company to insure Creditor's first lien position on the Property.

f. **No Additional Liens or Encumbrances.** Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated

308045556 v2

EXHIBIT 1

construction and repairs on the Property so long as such new liens and encumbrances are provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

In the event that the aforesaid Amended Conditions for Effectiveness of Modification are not fully and timely satisfied, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law, as if the Agreement had not been signed, including but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR. *Alternatively*, if the aforesaid Amended Conditions for Effectiveness of Modification are fully and timely satisfied, the Agreement and Modification shall be deemed valid and enforceable by any Party and Creditor's Claim shall be deemed amended as set forth above ("**Modified Claim**"). The Modified Claim shall be deemed valid and allowed as a fully secured claim and shall not be objected to by Debtor and shall not be subject to reduction in these Bankruptcy proceedings or any other Bankruptcy proceedings and may not be modified by any state or federal court or regulatory body and Creditor may record the Order approving this Agreement as evidence of this. The Debtor Parties acknowledge that the Modified Claim specified above shall be due and owing by the Debtor Parties without offset, deduction, counterclaim, or defense of any kind or nature to the payoff thereof.

[SIGNATURE PAGE FOLLOWS]

4

308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Third Addendum on the dates indicated below.

**DEBTOR PARTIES:**

Ashley S. Aarons

Date: 12/15/2020

Ashley S. Aarons 2015 Trust
Dated May 15, 2015

Date: 12/15/2020

By _____
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC

Date: _____

By: _____
Name:
Its:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

5

308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Third Addendum on the dates indicated below.

**DEBTOR PARTIES:**

_____                          Date: _____

Ashley S. Aarons

Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                 Date: _____

_____

By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC                         Date: 12/00/20

_____

By:
Name:
Its:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

5

EXHIBIT 1

FCI Lenders Services, Inc.                                              Date: 12/22/2020

*TR Hansen* (signature)
Digitally signed by TR Hansen
DN: cn=TR Hansen, o, ou,
email=thansen@trustfci.com, c=US
Date: 2020.12.22 17:55:43 -08'00'

By:
Name: TR Hansen
Its: Director


Verus Securitization Trust 2020-NPL1                                    Date: _____

By:  Wilmington Savings Fund Society, FSB,
not in its individual capacity but solely as owner trustee


_____
By:
Name:
Its:

EXHIBIT 1

FCI Lenders Services, Inc.                                    Date: _____

_____
By:
Name:
Its:


Verus Securitization Trust 2020-NPL1                    Date: 12/18/2020
                                                              _____

By:  Wilmington Savings Fund Society, FSB,
not in its individual capacity but solely as owner trustee


_____
By:
Name:    Jason B. Hill
Its:    Assistant Vice President

6

EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1

## SECOND ADDENDUM TO MODIFICATION AND RELEASE AGREEMENT

This **SECOND ADDENDUM** ("**Second Addendum**") is made and entered into as of the date of its full execution by and between Ashley S. Aarons, individually and on behalf of her heirs, agents, employees and successors and assigns ("**Debtor**") and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("**Trust**" or "**Borrower**") and its respective trustees, heirs, agents, employees, successors and assigns[1], on the one hand, and Patch of Land Lending, Inc. ("**POL**"), FCI Lender Services, Inc. ("**FCI**") and Verus Securitization Trust 2020-NPL1, as successor in interest to Invictus Residential Pooler Trust 3A ("**Lender**"), and POL and Lender's respective trustees, officers, agents, managers, employees, attorneys, successor and assigns, on the other hand. Debtor and Borrower/Trust shall collectively hereafter be referred to as the "**Debtor Parties**". POL, FCI, and Lender shall collectively be referred to as "**Creditor**". Debtor Parties and Creditor are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**".

## I.    RECITALS

A. The applicable Parties entered into a Modification and Release Agreement on September 10, 2020 ("**Agreement**"). The applicable Parties subsequently entered into an Addendum to the Agreement on October 14, 2020 ("**First Addendum**") whereby the Parties agreed solely to modify certain deadlines in the Agreement which had not passed and which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for approximately fourteen (14) days. A true and correct copy of the fully executed First Addendum which includes a copy of the fully executed Agreement is attached hereto as **Exhibit "A".** The purpose of this Second Addendum is solely to further modify certain deadlines in the Agreement which have not passed and which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for an additional three (3) weeks, as set forth in more detail below. Except as specifically set forth herein, all other terms and conditions of the Agreement remain unchanged.

B. Subsequent to the execution of the Agreement by the applicable Parties, the subject loan and all rights thereto, including, but not limited to any rights and obligations pursuant to the Agreement, were assigned to the current Lender, Verus Securitization Trust 2020-NPL1 as specified above. Verus Securitization Trust 2020-NPL 1 is the current Lender and assignee/successor to Invictus Residential Pooler Trust 3A. Wilmington Savings Fund Society, FSB ("**WSFS**"), is the owner trustee (the "**Owner Trustee**") of Verus Securitization Trust 2020-NPL1 and is executing this Second Addendum on its behalf. Notwithstanding anything in this Second Addendum, the Agreement, the First Addendum, or any other document to the contrary, it is expressly understood and agreed by the Parties that insofar as this Second Addendum is executed by WSFS, as Owner Trustee of Verus Securitization Trust 2020-NPL1 that (i) this Second Addendum is executed and delivered by the Owner Trustee not in its individual capacity but solely as Owner Trustee on behalf of Verus

---

[1] Without limiting the forgoing description of the Trust or Borrower, the term "Trust" and "Borrower" also includes any interest of the estate of Borrower or the Trust, resulting from the filing of the Bankruptcy described in Paragraph H of the Agreement.

308045556 v2

EXHIBIT 1

Securitization Trust 2020-NPL1, in the exercise of the powers and authority conferred upon and vested in it as Owner Trustee under the amended and restated trust agreement of Verus Securitization Trust 2020-NPL1, subject to the protections, indemnities and limitations from liability afforded to the Owner Trustee thereunder, (ii) each of the undertakings and agreements herein made on behalf of Verus Securitization Trust 2020-NPL1 is made and intended not as a personal undertaking or agreement of or by WSFS but is made and intended for purposes of binding only Verus Securitization Trust 2020-NPL1, (iii) nothing herein contained shall be construed as creating any duty, obligation or liability on the part of WSFS, individually or personally, to perform any covenant, duty or obligation of Verus Securitization Trust 2020-NPL1, either express or implied in this Second Addendum or related document, all such liability, if any, being expressly waived by the Parties and by any person claiming by, through or under the Parties, (iv) WSFS has not verified and has made no investigation as to the accuracy or completeness of the representations or warranties of Verus Securitization Trust 2020-NPL1 and (v) under no circumstances shall WSFS in its individual capacity or in its capacity as Owner Trustee be personally liable for the payment of any indebtedness, amounts or expenses owed by the Owner Trustee or Verus Securitization Trust 2020-NPL1 (such indebtedness, expenses and other amounts being payable solely from and to the extent of assets of Verus Securitization Trust 2020-NPL1) or be personally liable for the breach or failure of any obligation, representation, warranty or covenant made under this Second Addendum or any other related documents.

## II.    AGREEMENT

5.    **Conditions Precedent.**  The agreement to modify the Loan by Creditor is subject to the timely occurrence of all of the following conditions ("**Amended Conditions for Effectiveness of Modification**"):

a.  **Approval of Agreement by Bankruptcy Court.**  That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Approval Order must be entered on or before **November 16, 2020 and be a Final Order by November 30, 2020** ("**Approval Deadline**") in order for this Agreement to be effective.  In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms and the MFR shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective.  In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  The Approval Order, or a separate order submitted therewith, or the Plan terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents, as modified by this Agreement, without further hearing or order of the Court. Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these

2

EXHIBIT 1

Proceedings shall confirm to the Agreement.  The Approval Order shall override any conflicting provision in the Plan, including any default provision.

b.  **Executed Agreement.**  On or before **September 4, 2020**, the Debtor Parties must sign the Agreement.  On or before **October 30, 2020**, the Debtor Parties must sign and return this Second Addendum.

c.  **Taxes and Insurance.**  On or before **November 16, 2020**, all taxes and insurance must be brought current on the Property with Lender listed as a loss payee on the insurance policy and Debtor Parties must provide proof of same.

d.  **Title Insurance/Lien Priority.**  On or before **November 30, 2020**, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this modification does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as allowed pursuant to the Loan Documents as modified by this Agreement.  The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above.  *In the event that Lawyers Title Company ("Title Company"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.*  The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy.  Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the November 30, 2020 deadline) or 2) timely obtain confirmation of a Plan which provides for such subordinations.  The Debtor Parties also understand and acknowledge that the Title Company may also decide not to issue an endorsement for other reasons, such as the inability of the court to issue a Final Order, and that the issuance of the policy/endorsement is a condition to the effectiveness of the Agreement.

e.  **Recorded Modification and Cooperation of Debtor Parties.**  That, if requested by Creditor or the Title Company, on or before **November 30, 2020**, Debtor and Borrower sign a separate document to be recorded in the County and thereafter, cooperate in signing any other documents required by Creditor and/or the Title Company to insure Creditor's first lien position on the Property.

f.  **No Additional Liens or Encumbrances.**  Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated construction and repairs on the Property so long as such new liens and encumbrances are provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

3

EXHIBIT 1

In the event that the aforesaid Amended Conditions for Effectiveness of Modification are not fully and timely satisfied, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law, as if the Agreement had not been signed, including but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  *Alternatively*, if the aforesaid Amended Conditions for Effectiveness of Modification are fully and timely satisfied, the Agreement and Modification shall be deemed valid and enforceable by any Party and Creditor's Claim shall be deemed amended as set forth above ("**Modified Claim**").  The Modified Claim shall be deemed valid and allowed as a fully secured claim and shall not be objected to by Debtor and shall not be subject to reduction in these Bankruptcy proceedings or any other Bankruptcy proceedings and may not be modified by any state or federal court or regulatory body and Creditor may record the Order approving this Agreement as evidence of this.  The Debtor Parties acknowledge that the Modified Claim specified above shall be due and owing by the Debtor Parties without offset, deduction, counterclaim, or defense of any kind or nature to the payoff thereof.

[SIGNATURE PAGE FOLLOWS]

308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Addendum on the dates indicated below.

**DEBTOR PARTIES:**

_[signature]_                                                    Date: 10/29/2020
Ashley S. Aarons

Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                              Date: 10/29/2020
_[signature]_, Trustee
By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC                                     Date: _____

_____
By:
Name:
Its:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

5

308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Addendum on the dates indicated below.

**DEBTOR PARTIES:**

_____                                 Date: _____
Ashley S. Aarons

Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                       Date: _____

_____
By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC                               Date: _11-6-2020_

_____
By:
Name: Ana Domaoni
Its: C.O.O.

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

5

EXHIBIT 1

FCI Lenders Services, Inc.                                    Date: 11/5/2020

By: _TR Hansen (Digitally signed by TR Hansen, DN: cn=TR Hansen, o, ou, email=rhansen@trustfci.com, c=US, Date: 2020.11.05 13:23:57 -08'00')_

Name:  TR Hansen
Its:  Director


Verus Securitization Trust 2020-NPL1                         Date: 10/28/2020

By:  Wilmington Savings Fund Society, FSB,
not in its individual capacity but solely as owner trustee


By: _Jason B. Hill_

Name:  Jason B. Hill
Its:  Assistant Vice President

308045556 v2

EXHIBIT 1

# Exhibit A

EXHIBIT 1

## ADDENDUM TO MODIFICATION AND RELEASE AGREEMENT

This **ADDENDUM** ("**Addendum**") is made and entered into as of the date of its full execution by and between Ashley S. Aarons, individually and on behalf of her heirs, agents, employees and successors and assigns ("**Debtor**") and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("**Trust**" or "**Borrower**") and its respective trustees, heirs, agents, employees, successors and assigns[1], on the one hand, and Patch of Land Lending, Inc. ("**POL**"), FCI Lender Services, Inc. ("**FCI**") and Verus Securitization Trust 2020-NPL1, as successor in interest to Invictus Residential Pooler Trust 3A ("**Lender**"), and POL and Lender's respective trustees, officers, agents, managers, employees, attorneys, successor and assigns, on the other hand.  Debtor and Borrower/Trust shall collectively hereafter be referred to as the "**Debtor Parties**".  POL, FCI, and Lender shall collectively be referred to as "**Creditor**".  Debtor Parties and Creditor are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**".

## I.    Recitals

A. The applicable Parties entered into a Modification and Release Agreement on September 10, 2020 ("**Agreement**").  A true and correct copy of the fully executed Agreement is attached hereto as **Exhibit "1".**  The purpose of this Addendum is solely to modify certain deadlines in the Agreement which have not passed and which are provided for in paragraph 5 (Conditions Precedent) of the Agreement so that said deadlines will be extended for approximately fourteen (14) days, as set forth in more detail below.  Except as specifically set forth herein, all other terms and conditions of the Agreement remain unchanged.

B. Subsequent to the execution of the Agreement by the applicable Parties, the subject loan and all rights thereto, including, but not limited to any rights and obligations pursuant to the Agreement, were assigned to the current Lender, Verus Securitization Trust 2020-NPL1 as specified above.  Verus Securitization Trust 2020-NPL 1 is the current Lender and assignee/successor to Invictus Residential Pooler Trust 3A.  Wilmington Savings Fund Society, FSB ("**WSFS**"), is the owner trustee (the "**Owner Trustee**") of Verus Securitization Trust 2020-NPL1 and is executing this Addendum on its behalf.  Notwithstanding anything in this Addendum, the Agreement or any other document to the contrary, it is expressly understood and agreed by the Parties that insofar as this Addendum is executed by WSFS, as Owner Trustee of Verus Securitization Trust 2020-NPL1 that (i) this Addendum is executed and delivered by the Owner Trustee not in its individual capacity but solely as Owner Trustee on behalf of Verus Securitization Trust 2020-NPL1, in the exercise of the powers and authority conferred upon and vested in it as Owner Trustee under the amended and restated trust agreement of Verus Securitization Trust 2020-NPL1, subject to the protections, indemnities and limitations from liability afforded to the Owner Trustee thereunder, (ii) each of the undertakings and agreements herein made on behalf of Verus Securitization Trust 2020-NPL1 is made and intended not as a personal undertaking or agreement of or by WSFS but is made and intended for purposes of binding only Verus Securitization Trust 2020-NPL1, (iii) nothing herein contained shall be construed as creating any duty, obligation or

---

[1] Without limiting the forgoing description of the Trust or Borrower, the term "Trust" and "Borrower" also includes any interest of the estate of Borrower or the Trust, resulting from the filing of the Bankruptcy described in Paragraph H of the Agreement.

**EXHIBIT 1**

liability on the part of WSFS, individually or personally, to perform any covenant, duty or obligation of Verus Securitization Trust 2020-NPL1, either express or implied in this Addendum or related document, all such liability, if any, being expressly waived by the Parties and by any person claiming by, through or under the Parties, (iv) WSFS has not verified and has made no investigation as to the accuracy or completeness of the representations or warranties of Verus Securitization Trust 2020-NPL1 and (v) under no circumstances shall WSFS in its individual capacity or in its capacity as Owner Trustee be personally liable for the payment of any indebtedness, amounts or expenses owed by the Owner Trustee or Verus Securitization Trust 2020-NPL1 (such indebtedness, expenses and other amounts being payable solely from and to the extent of assets of Verus Securitization Trust 2020-NPL1) or be personally liable for the breach or failure of any obligation, representation, warranty or covenant made under this Addendum or any other related documents.

## II. Agreement

5.      **Conditions Precedent.**  The agreement to modify the Loan by Creditor is subject to the timely occurrence of all of the following conditions ("**Amended Conditions for Effectiveness of Modification**"):

a.  **Approval of Agreement by Bankruptcy Court.**  That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Approval Order must be entered on or before **October 26, 2020 and be a Final Order by November 9, 2020** ("**Approval Deadline**") in order for this Agreement to be effective.  In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms and the MFR shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective.  In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  The Approval Order, or a separate order submitted therewith, or the Plan terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents, as modified by this Agreement, without further hearing or order of the Court.  Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these Proceedings shall confirm to the Agreement.  The Approval Order shall override any conflicting provision in the Plan, including any default provision.

b.  **Executed Agreement.**  On or before **September 4, 2020**, the Debtor Parties must sign the Agreement.  On or before **October 14, 2020**, the Debtor Parties must sign and return this Addendum.

2

EXHIBIT 1

c. **Taxes and Insurance.** On or before **October 26, 2020**, all taxes and insurance must be brought current on the Property with Lender listed as a loss payee on the insurance policy and Debtor Parties must provide proof of same.

d. **Title Insurance/Lien Priority.** On or before **November 9, 2020**, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this modification does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as allowed pursuant to the Loan Documents as modified by this Agreement. The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above. *In the event that Lawyers Title Company ("**Title Company**"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.* The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy. Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the November 9, 2020 deadline) or 2) timely obtain confirmation of a Plan which provides for such subordinations. The Debtor Parties also understand and acknowledge that the Title Company may also decide not to issue an endorsement for other reasons, such as the inability of the court to issue a Final Order, and that the issuance of the policy/endorsement is a condition to the effectiveness of the Agreement.

e. **Recorded Modification and Cooperation of Debtor Parties.** That, if requested by Creditor or the Title Company, on or before **November 9, 2020**, Debtor and Borrower sign a separate document to be recorded in the County and thereafter, cooperate in signing any other documents required by Creditor and/or the Title Company to insure Creditor's first lien position on the Property.

f. **No Additional Liens or Encumbrances.** Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated construction and repairs on the Property so long as such new liens and encumbrances are provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

In the event that the aforesaid Amended Conditions for Effectiveness of Modification are not fully and timely satisfied, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law, as if the Agreement had not been signed, including but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR. *Alternatively*,

6222-000
308045556 v2

EXHIBIT 1

if the aforesaid Amended Conditions for Effectiveness of Modification are fully and timely satisfied, the Agreement and Modification shall be deemed valid and enforceable by any Party and Creditor's Claim shall be deemed amended as set forth above ("**Modified Claim**").  The Modified Claim shall be deemed valid and allowed as a fully secured claim and shall not be objected to by Debtor and shall not be subject to reduction in these Bankruptcy proceedings or any other Bankruptcy proceedings and may not be modified by any state or federal court or regulatory body and Creditor may record the Order approving this Agreement as evidence of this.  The Debtor Parties acknowledge that the Modified Claim specified above shall be due and owing by the Debtor Parties without offset, deduction, counterclaim, or defense of any kind or nature to the payoff thereof.

[SIGNATURE PAGE FOLLOWS]

4

6222-000
308045556 v2

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have executed this Addendum on the dates indicated below.

**DEBTOR PARTIES:**

_____
Ashley S. Aarons                                      Date: _10/14/2020_

Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                  Date: _10/14/2020_

By _____
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC                      Date: _10/14/20_

By: _____
Name:
Its: _CEO_

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE.]

EXHIBIT 1

FCI Lenders Services, Inc.                                    Date: 10/13/20

By: _TR Hansen (signature)_
Name: TR Hansen
Its:  Director


Verus Securitization Trust 2020-NPL1                          Date: 10/13/2020

By: Wilmington Savings Fund Society, FSB,
not in its individual capacity but solely as owner trustee

By: _(signature)_
Name:   Jason B. Hill, AVP
Its:

EXHIBIT 1

# Exhibit 1

EXHIBIT 1

## MODIFICATION AND RELEASE AGREEMENT

**THIS SETTLEMENT AND MODIFICATION AGREEMENT** ("**Agreement**") is made and entered into as of the date of its full execution by and between Ashley S. Aarons, individually and on behalf of her heirs, agents, employees and successors and assigns ("**Debtor**") and Ashley S. Aarons, 2015 Trust Dated May 15, 2015 ("**Trust**" or "**Borrower**") and its respective  trustees, heirs, agents, employees, successors and assigns[1], on the one hand, and Patch of Land Lending, Inc. ("**POL**"), FCI Lender Services, Inc. ("**FCI**") and Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Trustee for Invictus Residential Pooler Trust 3A ("**Invictus**" or "**Lender**"), and POL and Lender's respective trustees, officers, agents, managers, employees, attorneys, successor and assigns,  on the other hand.  Debtor and Borrower/Trust shall collectively hereafter be referred to as the "**Debtor Parties**".  POL, FCI, and Invictus/Lender shall collectively be referred to as "**Creditor**".  Debtor Parties and Creditor are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**".

### RECITALS

A.    Debtor and the Trust sought a loan through Chris Martin, Jr, a loan broker ("**Broker**") as early as February 2, 2018.  Broker is licensed by the California Department of Real Estate.  Broker represented the Trust and Debtor and sought a loan from a variety of lenders or investors, including POL, and eventually obtained a Loan ("**Loan**") with POL. The Loan is evidenced by a Promissory Note dated March 22, 2018 in the principal amount of $3,000,000.00 (the "**Note**") and secured by a First Deed of Trust of same date (the "**Secured Instrument**") executed and recorded in Los Angeles County and which encumbers the real property located at 984 Bel Air Road, Los Angeles, CA 90077, (the "**Property**").  The Note, Security Instrument and all documents signed in connection with the arrangement and finalization of the Loan, including all addendums and exhibits arising out of or related to the Loan, as evidenced by the Note and Security Agreement, are collectively referred to herein as the "**Loan Documents**".

B.    Creditor asserts that at all times, Borrower represented to Broker and to POL, and the Loan Documents provided, that the Loan was a business or investment purpose loan and the Loan was extended for business or investment purposes only.  In accordance with the terms of the Note, monthly interest payments were required to be paid on the Loan until the maturity date of April 1, 2020 ("**Maturity Date**"), at which time all amounts owing on the Loan would become fully due and payable.  A true and correct copy of the Note and Security Instrument, including all assignments, are attached hereto as **Exhibit "A".**

C.    POL is a licensed California Finance Lender.  POL does not finance consumer mortgages for personal, household or consumer purposes.  After POL originates loans it sells them to investors, but in most cases retains servicing rights on loans it funds.

D.    Debtor is an individual and the guarantor of the Loan, pursuant to the Guaranty Agreement ("**Guaranty**") executed with the Loan Documents.

---

[1] Without limiting the forgoing description of the Trust or Borrower, the term "Trust" and "Borrower" also includes any interest of the estate of Borrower or the Trust, resulting from the filing of the Bankruptcy described in Paragraph H of this Agreement.

EXHIBIT 1

E.    Debtor and Trust previously represented to POL, and continue to represent, that the Trust is a revocable trust, organized under the laws of the State of California, and that the Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this Agreement or the Loan Documents to be incorrect or to allow the Trust any right to challenge or dispute the Loan or the Agreement.  At all times, including up to the time of the execution of this Agreement, Debtor is the only Trustee of the Trust, duly appointed, authorized and qualified to act under the Trust agreement and is authorized to act on behalf of the Trust.  A true and correct copy of a certification of trust ("**Trust Certificate**")  provided by the Trust is attached hereto as **Exhibit "B"**, which confirms Debtor's authorization to act on behalf of the Trust in entering into this Agreement and making the representations contained herein.

F.    After the origination of the Loan, the Loan was sold to Invictus, however POL maintained, and continues to maintain, servicing rights under the Loan.  An assignment of deed of trust was recorded on February 10, 2020 as instrument number 20200163705.  FCI is a sub-servicer that was hired for the limited purpose of providing payoff information, accepting and processing payments, and sending payment statements for the subject Loan.

G.    Although not reflected in the representations and warranties included in the Loan Documents, Debtor asserts that although the Property is an income property it is also her personal residence. Debtor represented to Broker and POL that the Property had fallen into disrepair due to significant water damage in January 2017.  The Property was insured, but Debtor alleges that the insurer would not agree to pay Debtor the required amounts to fully repair the Property.  Debtor is currently in a dispute with her insurance company relating to the Property and payment of two insurance claims ("**Insurance Claims**").  Debtor has alleged that in February 2018, she applied for a cash out refinance with "several mortgage brokers" in order to obtain additional funds to make repairs to the Property so it could be re-rented and produce income for Debtor and the Trust. Pursuant to the Loan Documents, Lender has a secured interest in any insurance proceeds relating to the Property and use of any proceeds is not allowed without its consent.

H.    On June 11, 2019, the Debtor filed a Chapter 13 Bankruptcy, case number 2:19-bk-16825-NB ("**Prior Bankruptcy**").  The Prior Bankruptcy was dismissed on July 3, 2019 because Debtor was over the debt limit for a Chapter 13 case.  Thereafter, on July 17, 2019, the Debtor filed a Chapter 11 Bankruptcy, case number 2:19-bk-18316-NB ("**Bankruptcy**" or "**Proceeding**").  In the Bankruptcy, on July 18, 2019, the Debtor filed a Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay ("**Motion to Continue Stay**"), Docket #11 in the Bankruptcy.  Creditor, along with another unrelated creditor of the Debtor, opposed the Motion to Continue Stay.  The Motion to Continue Stay was granted (Docket #31 in the Bankruptcy), but the order ("**Stay Continuance Order**") required that on or before September 24, 2019, that Debtor file a Motion to Refinance the Property, or a realistic plan of reorganization, or otherwise file an appropriate motion or complaint to support her challenge to the accrual of post-petition default interest owed to Creditor under the Note. The Stay Continuance Order  further provided that if any such treatment as to Creditor had not been accomplished by November 12, 2019, that Debtor must, at a minimum, pay Creditor all accrued post-petition interest owing on the Loan, at the non-default interest rate, and thereafter remain current. (Docket #31 in the Bankruptcy).

I.    As of the date of this Agreement, the Loan has not been refinanced, a Chapter 11

EXHIBIT 1

Plan has not been confirmed, Debtor has not timely filed an appropriate motion or complaint to support her challenge to the imposition of default interest on the Loan, and post-petition interest has not been paid to Creditor as required by the Stay Continuance Order.[2]

J.    However, on November 13, 2019, Debtor filed a Motion to Determine the Validity of Provisions of Promissory Note and Deed of Trust Held by Secured Creditor Patch of Land ("**Motion Regarding Note Terms**").[3]  The Motion Regarding Note Terms challenges the validity of the Loan, including the validity of the 18% default rate of interest ("**Default Interest Rate**") on the Loan and the imposition of an 18% late charges ("**Late Charges**") on the Loan. In addition, Debtor has alleged that Debtor or the Trust may have the right to assert that the Loan was a consumer loan and not a business or investment purpose loan, and that the terms and conditions contained in the Loan and the servicing of the Loan, and the foreclosure of the Security Instrument, including but not limited to, enforcement of Default Interest and Late Charge provisions under the Loan, violate applicable consumer protection laws,  regulations, and statutes under state and federal law ("**Applicable Laws**"),  including but not limited to, protections allowed to consumer borrowers, under TILA and RESPA, California Financial Code 4970 et.seq, the Fair Debt Collection Practices Act, the Homeowners Bill of Rights ("**HBOR**") and the United States Bankruptcy Code ("**Code**").  Debtor also contends that the Loan may be usurious and that Creditor prevented and/or interfered with junior lien financing relating to the Property and/or subsequent refinancing of the Property.  Debtor also contends that the accounting on the Loan is inaccurate and that payments she made on the Loan in the amount of $73,200, currently held in a suspense account by Creditor, should have been applied to interest owing on the Loan in 2019 and/or used to bring the Loan current at the time the funds were placed in the suspense account and/or that she should have received certain tax forms relating to the payment of the $73,200.  Each and every claim or challenge to the Loan that Debtor has raised in the Motion Regarding Note Terms, or which Debtor could have raised in the Motion Regarding Note Terms, or in any objection to Creditor's claim filed in the Bankruptcy,  or in the MFR, or in an adversary proceeding related to the origination of the Loan or the exercise of any default remedies under the Loan as well as any other actions or claims which the Debtor Parties could have raised under any Applicable Laws related to the Loan, servicing of the Loan, or foreclosure of the Security Instrument, are hereafter referred to as the "**Claims**."

K.    Creditor denies any and all allegations described in the Motion Regarding Note Terms, and denies that Debtor has the right to maintain any Claims. Without limiting the foregoing in any manner, Creditor asserts that Debtor represented to the Broker and to Creditor that the Loan was a business purpose or investment purpose loan needed to maintain her investment in the Property, that the Property was used by Debtor as an investment property at the time of the Loan, and that the funds from the Loan would be used to repay prior loans on the Property and for maintenance and upkeep and repair of the Property and so that Debtor and the Trust would receive

---

[2] While Debtor did file "**Motion Regarding Note Terms**" as specified in Recital J, the motion was not timely, was continued multiple times while the Parties attempted this resolution, and post-petition payments have not been made to Creditor.
[3] The Motion Regarding Note Terms was originally filed on November 12, 2019, but was refiled as "corrected" in order to change the hearing date.  The Motion Regarding Note Terms was intended to be filed as an objection to Creditor's claim, however, at the time, Creditor's claim had not yet been filed as the deadline had not passed.  For purposes of this Agreement and resolution, the Motion Regarding Note Terms is treated as an objection to Creditor's claim #28-1.

Settlement Agreement Page 3 of 16.

EXHIBIT 1

the benefit of the income generated by the Property. Creditor further alleges that Debtor had previously represented these facts regarding the use of the Property to her Broker and to other lenders or investors when seeking loans secured by the Property. Creditor also asserts that the Motion Regarding Note Terms is procedurally and substantively improper, that it is an over-secured creditor pursuant to 11 U.S.C. § 506(b), that in accordance with the facts surrounding the origination of the Loan and applicable case law and authority, the Default Interest and Late Charge provisions and charges are valid and enforceable provisions of the Loan and should be allowed and enforced in full, and that Borrower is in default on the Loan.  Creditor also asserts that the servicing of the Loan was at all times proper and performed in accordance and in compliance with Applicable laws and that it has the ability to proceed with foreclosure of the Property without a further waiting period.  Accordingly, the resolution of the Claims in this Agreement is a resolution of disputed claims and to avoid the uncertainty, delay, and fees and costs of litigation on the Motion Regarding Note Terms, the MFR, or on any other Claims that have been raised or could have been raised concerning the Loan, whether in state or federal Court, including in this Proceeding.

L.    The proof of claim bar date was set for December 20, 2019 and Creditor timely filed a proof of claim.  No payments have been made to Creditor since the filing of the Bankruptcy and Creditor alleges that the following amounts remain due and owing in order to pay off the Loan in full *as of June 1, 2020:*

| | |
|---|---|
| Principal Balance: | $3,000,000.00 |
| Interest at the non-default rate  from 11/1/18 through 6/1/20 | $356,250.00 |
| Default Interest from 11/1/18 through 6/1/20 | $498,750.00 |
| Late Charges: | $147,825.00 |
| Attorneys' Fees and Foreclosure Fees as of May 26, 2020[4]: | $75,495.07 |
| Unpaid Loan Charges | $1,171.00 |
| Credit Due from Suspense Account: | ($73,200.00) |
| **Grand Total Owing good through June 1, 2020:** | $4,006,291.07 |

Pending resolution of the Motion Regarding Note Terms, Creditor asserts that interest continues to accrue at the Default Interest Rate of 18% after June 1, 2020 in accordance with the terms of the Note. The grand total owing of $ 4,006,291.07, plus any accruing interest, fees, and costs shall be referred to as the "**Indebtedness**".

M.    On February 14, 2020 Invictus filed a Motion for Relief from Stay ("**MFR**")

---

[4] This payoff amount is good through **June 1, 2020**, but only includes attorneys' fees incurred through May 26, 2020. Creditor asserts that it is, and continues to be, entitled to reimbursement for all attorneys' fees incurred prior to any payoff, including, but not limited to fees associated with the drafting of this Agreement and appearing at any hearings relating to the Agreement.  Said amounts may be added to the Loan as allowed by law and pursuant to 11 U.S.C. § 506(b) and **any amounts not specifically included in this Agreement shall be added to the Loan balance, as modified herein, and shall be paid due and owing upon default of this Agreement, payoff, or the New Maturity Date**, whichever occurs first.

EXHIBIT 1

requesting authority to foreclose the Property pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2) based upon the failure of Debtor to comply with the Stay Continuance Order, the failure to make ongoing payments, lack of adequate protection, lack of progress in the Bankruptcy, and allegations that there was limited equity and the Property was not necessary for a reorganization. Debtor opposed the MFR on various grounds, including, but not limited to, asserting that there was equity in the Property and that Debtor would be obtaining insurance proceeds to affect repairs that would eventually increase the value of the Property and  allow the Property to be rented, thereby generating funds sufficient to pay Creditor adequate protection payments.

N.      On March 10, 2020, the Bankruptcy Court granted the MFR *in part*, allowing Invictus to proceed with issuing a Notice of Default ("**NOD**") on the Property and to take all other steps preliminary to completing its foreclosure sale, including but not limited to, proceeding with its Notice of Trustee's Sale ("**NOTS**") and setting a sale date.  However, the sale cannot be completed without further order from the court, unless the Automatic Stay is otherwise terminated by operation of law.  The hearing on the MFR was continued until May 19, 2020₅ ("**Continued MFR**").  The MFR order ("**Initial MFR Order**") was entered on March 13, 2020 and became effective on March 28, 2020, after the expiration of the 14 day stay of Bankruptcy Rule 4001(a)(3). The Continued MFR hearing was held and full relief from stay was granted, providing that the Automatic Stay is terminated in its entirety as to Lender.  An amended order for relief from stay ("**Amended MFR Order**") was entered on June 22, 2020 and Lender now has full relief from stay.

O.      Since the entry of the Initial MFR Order, national and local authorities have issued restrictions on foreclosures and evictions given the worldwide pandemic relating to COVID-19. While the restrictions do not prohibit Creditor from proceeding pursuant to the Initial MFR Order and Amended MFR Order, and affecting an NOD (which has been recorded) and subsequent NOTS, Creditor has agreed to refrain from completing its foreclosure and to rescind any NOD currently in place, at Debtor and the Trust's request, in order to allow Debtor one final opportunity to make required payments under this Agreement and to pay Creditor in full as specifically set forth herein.  No provision of this Agreement shall waive or modify or diminish 1) Creditor's rights to proceed with all default remedies specified in the Amended MFR Order in the event that any of the Conditions for Effectiveness of Modification are not timely satisfied, including, but not limited to the requirement that this Agreement be timely approved by Debtor and the Trust and confirmed by a further order of this Court, as specified hereafter or 2) its right to proceed with all default remedies pursuant to the Loan Documents, as modified by this Modification, in the event of a future default of this Modification.

P.      The intent of this Agreement is to resolve the Motion Regarding Note Terms, the MFR, and all Claims, known or unknown, which have been raised, or could have been raised by Debtor Parties as of the Date of this Agreement and to modify the Loan and Security Instrument as specified herein, subject to Court approval and issuance of title insurance, insuring Creditor's *first* position lien on the Property for the entire New Principal Balance, plus accruing interest, fees, and costs.

---

5 The MFR was further continued until June 16, 2020 to be held concurrently with other pending motions in these Proceedings.

EXHIBIT 1

Q.     The Parties desire to settle and resolve all of the disputes between or among them concerning the Motion Regarding Note Terms, the MFR, the Loan, the Indebtedness, the Property and the Claims. As set forth more fully below, and without limiting the conditions specified hereafter in Paragraph 5 below, Creditor has agreed to modify the Loan and Security Instrument in order to extend the Maturity Date one year, on the same terms, with the addition of contractual non-default interest, attorneys' fees, and costs added to the principal balance, if and only if, this Agreement is approved by an order of the Bankruptcy Court (either through a 9019 order or Plan confirmation with specific approval of this Agreement), Creditor obtains title insurance confirming its first position lien on the Property for the entire modified loan amount, is not altered or modified in any way by the modification, and all other Conditions for Effectiveness of Modification specified herein below are satisfied.

R.     In the event the Agreement is not approved by the Bankruptcy Court, or any of the Conditions for Effectiveness of Modification specified in Paragraph 5 below, are not satisfied, all Parties shall retain their rights allowed by law, including but not limited to the rights of Creditor to proceed with its default remedies as specified in the Amended MFR Order.

S.     If the Agreement is approved by the Bankruptcy Court, and all Conditions for Effectiveness of Modification are timely and fully satisfied, as specified hereafter in Paragraph 5 below, the Agreement, including the Release, shall be effective, upon entry of the Order approving this Agreement by the Bankruptcy Court as a full compromise and resolution of any and all disputes between the Parties relating to Creditor's Claim,  and Creditor's Modified Claim shall be deemed a valid and enforceable secured  claim against the Property and enforceable both in these Proceedings and until the Loan is paid off, whether or not this Proceedings are dismissed or converted to any other Chapter.

T.     If the Agreement is approved by the Bankruptcy Court neither Debtor, nor Borrower, nor any successor or assigns of Debtor or Borrower shall modify or challenge the rights of Creditor and this Agreement may not be modified by any plan of reorganization ("**Plan**") or by any other means, and that the Approval Order approving this Agreement shall be conclusive evidence of the foregoing. Any Plan filed by Debtor in these Proceedings shall incorporate the terms of this Agreement in its entirety and to the extent there is a discrepancy between the Plan and this Agreement, including, but not limited to, any default provision, the Agreement shall control.

U.     By entering into this Agreement, Debtor Parties are also acknowledging and confirming again that the Loan (and any modifications herein) were related to her business purpose Loan and the funds obtained from Creditor pursuant to the Loan were used for that purpose and that any consumer protection foreclosure statutes, including but not limited to HBOR do not, and shall not, apply to the Loan in the event of a future default and subsequent exercise of default remedies by Creditor.

V.     The Debtor Parties acknowledge that this Agreement has been reviewed and explained in full by Debtor's counsel and that they understand the obligations under the Agreement and the conditions that must occur in order for the Agreement to become effective, and that the Agreement, if approved by the Bankruptcy Court, is being entered into as a full and final resolution of all Claims that the Debtor Parties may have against Creditor, known or unknown, relating to the Loan or the Property.

EXHIBIT 1

W.      **TIME IS OF THE ESSENCE AS TO ALL PAYMENTS AND THE PARTIES' PERFORMANCE UNDER THIS AGREEMENT.**

**AGREEMENT**

**FOR AND IN CONSIDERATION** of the foregoing Recitals, which are incorporated herein, the mutual covenants contained herein and other valuable consideration, receipt, and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Recitals**. The Parties acknowledge the truth and accuracy of the Recitals above and the terms and conditions contained in the Recitals, are incorporated herein by reference.

2.      **Effective Date.**  This Agreement and the terms and conditions set forth herein shall become effective when the Approval Order is a "**Final Order**" and upon timely satisfaction of all of the Conditions for Effectiveness of Modification described in Paragraph 5, below.   A Final Order means an order or judgment of the Bankruptcy Court, which has not been reversed, stayed, modified or amended, and (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Parties, or (c) any appeal, petition for certiorari, reargument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or form which certiorari, reargument, or rehearing was sought.

3.      **Reaffirmation of Obligations.** Borrower promises to pay the Indebtedness evidenced by the Note, as hereby amended, and to perform each and all of the conditions and covenants required to be performed by Borrower pursuant to the Loan Documents and that the New Principal Balance and all obligations thereto is owing without offset, deduction, counterclaim or defense of any kind or nature to the payment thereto. Borrower further represents and warrants based on the terms and conditions of the Agreement that Borrower has no defenses or claims against Lender or Creditor that would or might affect the enforceability of the Loan, including this Agreement, and that the Loan and documents that were executed in connection therewith, remain in full force and effect, unless specifically modified herein. Borrower and Debtor understand and acknowledge that they are entering into the Agreement voluntarily and are being represented by their own legal counsel to assist in the review of the Agreement.

4.      **Terms of Compromise and Loan Modification.** Creditor's claim and the Loan Documents are modified as follows and as detailed in the modification term sheet attached hereto as **Exhibit "C"** and incorporated herein by reference. Borrower has requested that Lender agree to modify the Note and Security Instrument.  Lender is willing to do so on the terms set forth herein.  The Loan Documents, as modified, amended or supplemented by this Agreement, shall remain in full force and effect, including but not limited to any default provision or remedy allowed to Creditor under the Loan Documents.

        a.     <u>**New Principal Balance.**</u> The new principal balance of the Loan shall be $3,432,916.07 ("**New Principal Balance**").  The New Principal Balance is comprised of the Indebtedness described above, plus a reserve of $73,200.00

Settlement Agreement Page 7 of 16.

EXHIBIT 1

("**Reserve**"), with a reduction of $646,575.00, which represents amounts owing for default interest, late fees and other charges voluntarily waived by Creditor as part of the resolution herein. The New Principal Balance shall accrue interest at **the Note rate of 7.5%, with a default rate of 18%,** in accordance with the terms of the Note, which shall remain valid and enforceable;

BORROWER'S INITIALS 

b. **New Maturity Date.** All payments of interest and principal shall be due and payable upon the new maturity date of April 1, 2021 ("**New Maturity Date**").

c. **New Monthly Interest Payments.** Interest only payments on the New Principal Balance shall be due and payable in consecutive monthly installments of $21,455.73 ("**New Monthly Payments**") on the first day of each month beginning on July 1, 2020 and continuing each month thereafter. Such payments shall continue until the entire Indebtedness evidenced by the Note, as modified, and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest, fees, and costs, due and payable on the New Maturity Date.

d. **Reserve Funds.** The funds currently held by Creditor totaling $73,200 shall be credited to the Loan and applied:

  i. first: to the first three (3) months of New Monthly Payments, estimated to be $64,223.61 in total;
  ii. second: to taxes owed relating to the Property, *estimated* in the amount of $4,579.04[6];
  iii. third: to reduce the amount owing for the October 2020 New Monthly Payment. Said amount shall be held in suspense and not applied unless and until the Borrower makes the full October 2020 New Monthly Payment.

e. **Late Fees.** The late fee shall be reduced from a charge of 18 cents ($0.18) for each dollar ($1.00) that is not paid when due, to a charge of 10 cents ($0.10) for each dollar that is not paid when due ("**Reduced Late Fee**"). All other terms of the Late Fee provision of the Note (section 3) remain unchanged except for as specified herein.

---

6 This amount is an *estimate only* and is included in the Agreement (and the attached Exhibit "C") as it was the amount owing per the County Tax Collector *as of June 1, 2020*. The amount may be higher as of the signing of this Agreement.as a result of penalties for nonpayment. In the event it is higher, the amount applied towards the October 2020 New Monthly Payment would be lower as a result. The intent of the Parties is to pay from the Reserve, the amount owing for 2019-H2 taxes and 2020 H1 taxes, plus accrued penalties, to be paid by Lender from the Reserve within 10 business days of the Effective Date of this Agreement. The Borrower is responsible for 2020 H2 taxes, and all tax payments owing thereafter in accordance with the Loan Documents.

EXHIBIT 1

f. **Extension Fee.** In accordance with the Addendum to Promissory Note (Conditional right to Extension Addendum) ("**Extension Addendum**"), included in the attachment to **Exhibit "A"** attached hereto, which terms are incorporated herein by reference as if set forth fully herein, Borrower can only obtain an extension of the Maturity Date for up to six (6) months, if the eleven (11) conditions specified in the Extension Addendum ("**Extension Conditions**") are satisfied, and in Lender's sole and absolute discretion. However, as part of the resolution herein, and without prejudice to any of Lender's rights, Lender has agreed to waive the Extension Conditions for purposes of this Agreement only. Accordingly, the Maturity Date is extended until the New Maturity Date in consideration of a reduced fee of 2% of the original principal balance (i.e., $60,000) ("**Extension Fee**") charged to the Loan. The extension offered herein is approved by Lender notwithstanding the failure of Debtor to satisfy the Extension Conditions, but without prejudice to any of Lender's rights, including, but not limited to, its right to enforce the requirement of Borrower compliance with the Extension Conditions in the event Borrower requests a further extension upon the Extended Maturity Date, as specified below. The Extension Fee shall not accrue interest and shall be deferred until the New Maturity Date at which time it will be fully due and payable. However, in the event that the Borrower 1) remains current on the Loan, 2) does not default on the Loan or this Agreement, 3) timely pays off the Loan in full, immediately upon the Extended Maturity Date, and 4) an Additional Extension Request is not made as specified below (collectively "**Conditions for Waiver of Extension Fee**"), the Extension Fee shall be waived by Lender. However, in the event any of the Conditions for Waiver of Extension fee are not fully and timely satisfied, the Extension Fee shall be due and owing upon payoff or foreclosure. Borrower shall have the right to request **one** extension ("**Additional Extension Request**") of the New Maturity Date in accordance with the Extension and Fee Schedule in Exhibit A to the Extension Addendum, if and only if, Creditor consents to such extension, all of the Extension Conditions specified therein are satisfied, and Borrower pays any associated extension fee.[7]

g. **Insurance Claims Additional Creditor Protections:** The Parties acknowledge that Creditor has independent rights relating to any insurance proceeds ("**Proceeds**") relating to the Insurance Claims, as a loss payee or additional insured on the policy. Without prejudice or waiver to any of Creditor's rights, including, but not limited to, its rights to pursue the Proceeds independently or through its own adjuster, the Debtor Parties have agreed to include the following protections to ensure that the Proceeds are sufficient to complete the repairs on the Property and protect Creditor's interest.

---

[7] For example and clarification purposes, in the event an Additional Extension Request is timely made, Creditor consents to such extension, all of the Extension Conditions specified therein are satisfied, and Borrower pays any associated *additional* extension fee, the Borrower shall be entitled to extend the Loan up to six (6) months pursuant to the Fee Schedule attached to Exhibit A of the Note. Also, in this scenario, the $60,000 Extension Fee owing for the extension of the Maturity Date described in this Agreement until the New Maturity Date, would not be waived, and would be due and owing upon payoff or foreclosure.

EXHIBIT 1

i. **Progress Deadline – Response to Insurer Regarding the Insurance Claims.** On or before July 28, 2020, the Borrower must respond to all requests for information on the Insurance Claims that have been requested by her insurer on the Property, American International Group, Inc. ("**AIG**"). Borrower shall provide Creditor with evidence of her satisfaction of this progress deadline by no later than August 17, 2020.

ii. **Progress Deadline - Written Demand for Insurance Claims to be Submitted to an Appraisal Process.** If by August 31, 2020, the Borrower and AIG have not come to an agreement on the actual cash value, amount of loss or cost of repair replacement of the Property under the Insurance Claims, then the Borrower shall immediately invoke her right for and make a written demand to AIG for the Insurance Claims to be submitted to the appraisal process under the applicable insurance policies. The Borrower shall provide Creditor with evidence of her satisfaction of this progress deadline by no later than September 10, 2020.

iii. **Updates/Inspection**. The Debtor Parties shall, at all times, cooperate with Creditor and provide Creditor with updates as to the progress on the construction/repairs to the Property and shall also, upon twenty-four (24) hours notice, allow Creditor access to the Property so that Creditor may monitor the progress of construction/repairs to the Property, obtain a valuation of the Property, and otherwise protect their interests in the Property. The Debtor Parties shall cooperate with Creditor in all reasonable respects regarding any inquiry by Creditor into progress of construction/repairs to the Property and shall hold any Proceeds received relating to the Insurance Claims, in a blocked account, subject to approval of Creditor regarding use.

5. **Conditions Precedent.** The agreement to modify the Loan by Creditor is subject to the timely occurrence of all of the following conditions ("**Conditions for Effectiveness of Modification**"):

a. **Approval of Agreement by Bankruptcy Court.** That the Bankruptcy Court enter an order approving this Agreement ("**Approval Order**"), following a noticed motion to compromise in the Bankruptcy Case or through confirmation of a Plan, under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Approval Order must be entered on or before **October 10, 2020 and be a Final Order by October 24, 2020** ("**Approval Deadline**") in order for this Agreement to be effective. In the event that the Approval Order is entered by the Approval Deadline, the Motion Regarding Note Terms and the MFR shall be deemed resolved pursuant to the terms of this Agreement and all terms and conditions contained in this Agreement shall be deemed effective. In the event that the Approval Order is not entered by the Approval Deadline or the Court denies the Debtor's request for approval of the Agreement, the Agreement shall be of no effect and the Parties shall retain their rights allowed by law as if the Agreement had not been signed, including,

EXHIBIT 1

but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR. The Approval Order, or a separate order submitted therewith, or the Plan terms, shall also specify that upon approval, Creditor has full relief from stay to enforce the Loan Documents, as modified by this Agreement, without further hearing or order of the Court. Creditor shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Agreement and any Plan filed in these Proceedings shall confirm to the Agreement. The Approval Order shall override any conflicting provision in the Plan, including any default provision.

b. **Executed Agreement.** On or before **September 4, 2020**, the Debtor Parties must sign the Agreement.

c. **Taxes and Insurance.** On or before **October 10, 2020** all taxes and insurance must be brought current on the Property with Invictus listed as a loss payee on the insurance policy and Debtor Parties must provide proof of same.

d. **Title Insurance/Lien Priority.** On or before **October 24, 2020**, that Creditor obtain an endorsement to its Title Policy confirming that the Agreement and this modification does not affect its lien position or priority and that Creditor maintains its first position lien on the Property for the entire New Principal Balance, plus accruing interest, fees and costs as allowed pursuant to the Loan Documents as modified by this Agreement. The costs relating to issuance of the endorsement will be added to the New Principal Balance as set forth above. *In the event that Lawyers Title Company ("**Title Company**"), the title company that issued the initial Title Policy relating to the Loan and transaction, will not agree to issue an endorsement or policy insuring Creditor in first position, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law.* The Debtor Parties understand and acknowledge that the Title Company has required that all junior lienholders on the Property sign a subordination agreement prior to the issuance of the requested endorsement to Creditor's Title Policy. Accordingly, this Agreement shall be of no effect unless the Debtor is able to either 1) timely obtain the required subordinations (i.e., before the October 24, 2020 deadline) or 2) timely obtain confirmation of a Plan which provides for such subordinations. The Debtor Parties also understand and acknowledge that the Title Company may also decide not to issue an endorsement for other reasons, such as the inability of the court to issue a Final Order, and that the issuance of the policy/endorsement is a condition to the effectiveness of the Agreement.

e. **Recorded Modification and Cooperation of Debtor Parties.** That, if requested by Creditor or the Title Company, on or before **October 24, 2020**, Debtor and Borrower sign a separate document to be recorded in the County and thereafter, cooperate in signing any other documents required by Creditor and/or the Title Company to insure Creditor's first lien position on the Property.

f. **No Additional Liens or Encumbrances.** Until such time as the New Principal Balance has been paid in full, the Debtor shall not place or record, or allow to be placed or recorded any liens or encumbrances on the Property, including any mechanic's liens except as necessary to satisfy the claims of junior lienholders and/or complete the contemplated construction and repairs on the Property so long as such new liens and encumbrances are

EXHIBIT 1

provided in a manner consistent with a confirmed Plan, and subject to review and approval of Lender.

In the event that the aforesaid Conditions for Effectiveness of Modification are not fully and timely satisfied, this Agreement shall be of no effect and the Parties shall retain their rights allowed by law, as if the Agreement had not been signed, including, but not limited to, their respective rights with regards to the Motion Regarding Note Terms and the MFR.  *Alternatively*, if the aforesaid Conditions for Acceptance of Reduced Payoff are fully and timely satisfied, the Agreement and Modification shall be deemed valid and enforceable by either Party and Creditor's Claim shall be deemed amended as set forth above ("**Modified Claim**").  The Modified Claim shall be deemed valid and allowed as a fully secured claim and shall not be objected to by Debtor and shall not be subject to reduction in these Bankruptcy proceedings or any other bankruptcy proceedings and may not be modified by any state or federal court or regulatory body and Creditor may record the Order approving this Agreement as evidence of this.  The Debtor Parties acknowledge that the Modified Claim specified above shall be due and owing by the Debtor Parties without offset, deduction, counterclaim, or defense of any kind or nature to the payoff thereof.

  6.  **Release**.

    (a)  In consideration of the promises and agreements set forth above, effective immediately upon the signature of this Agreement by all Parties and  upon entry of the Approval Order in the Bankruptcy, Debtor and Borrower (collectively "**Debtor Releasors**"), on behalf of themselves and their respective, representatives, trustees, beneficiaries, employees, agents, attorneys, heirs, relatives, administrators, partners, successors and assigns, and anyone acting at Debtor Releasors' direction or on Debtor Releasors' behalf, does hereby relieve, release, discharge and forever hold harmless Creditor (and each of them) and any of their respective agents, trustees, principals, employees, representatives, related corporate entities, investors, servicers, sub-servicers, foreclosure trustees, successors, predecessors, partners, members, joint venturers, officers, shareholders, directors, employees, attorneys, assigns, parent corporations, subsidiary corporations, affiliate companies, sureties, guarantors, general and limited partners, assigns, and insurers (collectively referred to as "**Creditor Released Parties**"[8]), of and from the Claims and any and all demands, obligations, actions, liabilities, defenses or damages of every kind and nature whatsoever, in law or in equity whether known or unknown, from the beginning of time to the date of this Agreement, including, but not limited to, the allowance of Default Interest and/or Late Charges, the advertising, negotiation, disclosure, underwriting, processing, making, settlement, servicing or any other aspects of the relationship between the Debtor Releasors and the Creditor Released Parties concerning the Loan, the Property or foreclosure, known or unknown, suspected or unsuspected, arising since the Loan was applied for to the present, including, but not limited to, claims under the Truth-in-Lending Act, Real Estate Settlement Procedures Act, Homeowners Bill of Rights, State Real Estate Law and all state and federal statutory, regulatory or case law, and claims alleged or that could have been alleged in the Motion Regarding Loan Terms, in the Bankruptcy, in opposition to the MFR, or in State or Federal Court, relating to the enforceability of Loan terms and/or Creditor's claim. Debtor Releasors acknowledge that such release includes a waiver of the right to make claims based upon the discovery of new facts and circumstances, and waive the application of any state or

---

[8] Creditor Released Parties includes, but is not limited to, FCI, Invictus, and POL.

EXHIBIT 1

federal laws providing for relief from general releases.

(b)    Debtor Releasors recognize that they may have some claim, demand, or cause of action against the Creditor Released Parties of which they are totally unaware and unsuspecting, and which Debtor Releasors will give up by execution of this Agreement.  In executing this instrument, Debtor Releasors waive any such claims or rights. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters, notwithstanding the discovery or existence of any such matters, notwithstanding the discovery or existence of any such additional or different claims or facts related thereto by the Parties hereto.  In entering into this Agreement, the Parties herein do not rely on any statement, representation or promise of any other Party, except as expressly stated in this Agreement.

(c)    Debtor Releasors hereby waive any provisions of state or federal law which explicitly or implicitly would prevent the application of this Agreement to claims which Debtor Releasors do not know or suspect to exist in their favor any time on or prior to the date of executing this Agreement which, if known by Debtor Releasors, would have materially affected Debtor Releasors' decision to execute this Agreement.  Debtor Releasors expressly waive all rights afforded by any statute with respect to unknown claims, including, but not limited to, Section 1542 of the California Civil Code which limits the effect of a release with respect to unknown claims.  Debtor Releasors understand the significance of the release of unknown claims and the waiver of statutory protection against a release of unknown claims (such as under Section 1542).  Section 1542 of the California Civil Code reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Notwithstanding the above-stated provisions of Section 1542 and for purposes of implementing a full and complete release and discharge, Debtor Releasors expressly acknowledge that this Agreement is specifically intended to include in its effect, without limitation, all claims which Debtor Releasors have, but do not or may not, know or suspect to exist in their favor at any time on or prior to the date of execution of this Agreement, and that this Agreement extinguishes any and all such claim(s) and Debtor Releasors indicate that fact by signing their initials here:

Debtor Initials: _____    _____

Borrower Initials: _____    _____

Without limiting or diminishing the foregoing release in any manner, the release shall never be deemed to waive or modify or diminish Debtor and Borrower's ongoing obligations to Creditor under the Loan, as modified by this Agreement.

7.    **Creditor Released Parties Third Party Beneficiary Status.**  The Parties agree and acknowledge that any Creditor Released Parties that are not Parties to this Agreement are

EXHIBIT 1

intended third party beneficiaries of this Agreement and may enforce the provisions of this Agreement.

8.      **Non-Admission.**  The Parties have entered into this Agreement solely in settlement of a contested matter.  Nothing in this Agreement shall be construed as an admission.

9.      **Insurance Proceeds and Authority.**  Debtor Parties acknowledge and understand Creditor's secured interest in any insurance proceeds generated by and from the Property and will allow for complete oversight and control by Creditor as to any and all use of funds distributed by any insurance company relating to the Property. Any such use of funds must be approved by Creditor in writing and any failure by Debtor Parties to obtain written consent for use of said funds shall be deemed a breach of this Agreement.

10.      **Non-Exclusive Remedies.**  In the event of a breach of any provision of this Agreement, the Parties, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

11.      **Advice from Financial Advisor.** The Parties understand that this is a legally binding agreement that may affect such Party's rights. Each Party represents to the other that it had the opportunity to receive financial and/or legal advice from the advisor and/or counsel of its choice regarding the meaning and legal significance of this Agreement and that it is satisfied with any advice received from such advisor and/or legal counsel.  The Debtor Parties have been represented by their legal counsel, who has reviewed this Agreement with the Debtor Parties.

12.      **Presumption of Drafting.**  This Agreement was drafted with the cooperation of the Parties, all of whom were represented by their respective counsel, and in the event that there is any ambiguity in any provision thereof, said ambiguity shall not be construed against one Party over the other.

13.      **Enforcement of the Terms of this Agreement.**  Without diminishing any of the rights allowed to Creditor under this Agreement, should any Party or third party challenge any portion of this Agreement after it is made a final order of this Court, pursuant to the entry of the Approval Order, jurisdiction to resolve any such dispute or challenge shall be brought in the Bankruptcy and this Court reserves jurisdiction to determine any such dispute.  Should any party breach any provision of this Agreement, the party who is not in breach shall be entitled to its attorney's fees incurred.  The foregoing provisions in this Paragraph shall not limit or diminish the right of Creditor to obtain any attorneys' fees incurred  as a result of a default by Debtor under the Loan as provided in this Agreement and as allowed under the Loan Documents.

14.      **No Representations.**  The Parties acknowledge that no other person or entity, nor any attorney of any other person or entity, has made any promise, representation, or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter hereof, to induce the Parties to execute or authorize the execution of this Agreement.  The Parties further acknowledge that they have not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein.  No Party relies upon any statement of any other Party in executing this Agreement, except as expressly stated in this Agreement.

Settlement Agreement Page 14 of 16.

EXHIBIT 1

15.      **Miscellaneous**. This Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings related to the subject matter hereof.  The Parties agree that, in entering into this Agreement, they are relying upon their own judgment, belief, and knowledge as to all phases of any claims and further acknowledge that no promise, inducement or agreement or any representations and warranties not expressed herein have been made to procure their agreement hereto.  The Parties further acknowledge that they have read, understand, and fully agree to the terms of this Agreement.  In the event it is necessary for any Party hereto or its authorized representative, successor or assign to institute litigation and/or arbitration in connection with this Agreement or the breach thereof, the prevailing party in such litigation or arbitration shall be entitled to reimbursement of its reasonable attorney's fees, legal costs and other related costs.

16.      **Modification of Agreement.**  This Agreement may be modified or amended only by a writing signed by all Parties to this Agreement.

17.      **Severability.**  Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

18.      **Further Assurances**. Debtor and Borrower shall execute such further documents and do any and all such further things as may be necessary to implement and carry out the intent of this Agreement.

19.      **Binding on Successors and Related Entities.**  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective agents, employees, independent contractors, spouses, family members, representatives, officers, directors, divisions, subsidiaries, assigns, heirs, successors in interest, and shareholders.

20.      **Governing Law.**  This Agreement shall be construed and interpreted in accordance with the laws of the State of California, and federal Bankruptcy law, to the extent applicable.

21.      **Headings**.  The headings of the sections of this Agreement are included for purposes of convenience only and shall not affect the construction of interpretation of any of its provisions.

22.      **Signatures in Counterpart.**  This Agreement may be signed in two or more counterpart copies with the same effect as if the signature to each counterpart copy were on a single instrument.  Each counterpart shall be deemed an original as to any Party whose signature it bears and all such counterparts shall constitute one document.  Electronically scanned copies shall be deemed originals.

EXHIBIT 1

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be made effective as of the Effective Date.

**DEBTOR PARTIES:**

_(signature)_                                          Date: __9/4/2020__

Ashley S. Aarons

Ashley S. Aarons 2015 Trust
Dated May 15, 2015                                     Date: __9/4/2020__

_(signature)_, Trustee

By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC                             Date: _____

_____
By:
Name:
Its:

FCI Lenders Services, Inc.                             Date: _____

_____
By:
Name:
Its:

Invictus Residential Pooler Trust 3A                   Date: _____

_____
By:
Name:
Its:

Settlement Agreement Page 16 of 16.

EXHIBIT 1

DocuSign Envelope ID: E0C36007-E3F2-48E9-AFD5-0B3ECE1A5986

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be made effective as of the Effective Date.

**DEBTOR PARTIES:**

Ashley S. Aarons

Date: 9/4/2020

Ashley S. Aarons 2015 Trust
Dated May 15, 2015

Date: 9/4/2020

By _____, Trustee
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC

Date: 9/10/2020

By: _____
Name:
Its:

FCI Lenders Services, Inc.

Date: _____

By: _____
Name:
Its:

Invictus Residential Pooler Trust 3A

Date: 9/9/2020

By: _____
Name: Robert Konigsberg
Its:    Authorized Person

Settlement Agreement Page 16 of 16.

EXHIBIT 1

DocuSign Envelope ID: E0C36007-E3F2-48E9-AFD5-0B3ECE1A9966

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be made effective as of the Effective Date.

**DEBTOR PARTIES:**

Ashley S. Aarons

Date: 9/4/2020

Ashley S. Aarons 2015 Trust
Dated May 15, 2015

Date: 9/4/2020

By _____, Trustee
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC

Date: _____

By: _____
Name:
Its:

FCI Lenders Services, Inc.

Date: 9/10/20

By: _____
Name: TR Hansen
Its:  Director

Invictus Residential Pooler Trust 3A

Date: 9/9/2020

By: _____
Name: Robert Konigsberg
Its:  Authorized Person

Settlement Agreement Page 16 of 16.

**EXHIBIT 1**

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be made effective as of the Effective Date.

**DEBTOR PARTIES:**

Date: 9/4/2020

Ashley S. Aarons

Ashley S. Aarons 2015 Trust
Dated May 15, 2015

Date: 9/4/2020

By
Name: Ashley S. Aarons
Its: Trustee

**CREDITOR PARTIES:**

Patch of Land Lending, LLC

Date: _____

By: _____
Name:
Its:

FCI Lenders Services, Inc.

Date: _____

By: _____
Name:
Its:

Invictus Residential Pooler Trust 3A

Date: 9/9/2020
_____

By: _____
Name: Robert Konigsberg
Its:    Authorized Person

Settlement Agreement Page 16 of 16.

EXHIBIT 1

# EXHIBIT "A"

EXHIBIT 1

## PROMISSORY NOTE SECURED BY DEED OF TRUST
*(24 Month Term / Interest Only Payments / Balloon Payment)*

$3,000,000.00

Date: March 22, 2018
Los Angeles County, California

*Property Address:*      *984 Bel Air Road, Los Angeles, California 90077*

FOR VALUE RECEIVED, the undersigned, Ashley S. Aarons, Trustee of The Ashley S. Aarons 2015 Trust dated May 15, 2015 ("Borrower"), hereby promises to pay to Patch of Land Lending, LLC, a Delaware limited liability company (CFL License No. 60DBO-45420), ISAOA/ATIMA, or order ("Lender"), the principal sum of Three Million and 00/100 Dollars ($3,000,000.00), together with interest on the unpaid principal balance of this Note, as follows:

1.     **Interest.** Interest on the unpaid principal balance will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to Seven and 50/100 Percent (7.5%). Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

2.     **Payment Obligations.**

      2.1     **Payments.** Interest-only payments shall be due and payable in consecutive monthly installments of Eighteen Thousand Seven Hundred Fifty and 00/100 Dollars ($18,750.00) on the 1st day of each month beginning on May 1, 2018. Such payments shall continue until the entire indebtedness evidenced by this Note and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest due and payable on April 1, 2020 (the "Maturity Date").

      Payments due under the Note shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or the Security Instrument (as defined herein) is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

      2.2     **Balloon Payment.** The payment schedule contained in this loan requires that Borrower make a balloon payment of Three Million and 00/100 Dollars ($3,000,000.00), the unpaid principal balance, on the Maturity Date, plus any unpaid interest, costs and fees. This balloon payment is more than double the amount of the regular payments.

      2.3     **Delivery of Payments.** Payments shall be made to Lender's loan servicer, FCI Lender Services, Inc., at:

      FCI Lender Services, Inc.
      P.O. Box 27370
      Anaheim, California 92809
      1-800-931-2424

1

© 2007 Geraci Law Firm; All Rights Reserved.
Note

*[signature]* Borrowers Initials

Rev. 01/16

EXHIBIT 1

**2.4    Partial Payments.** Payments are deemed received by Lender when received at the location designated in paragraph 11, or at such other location as may be designated by Lender in accordance with the notice provisions in paragraph 11. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. Lender may hold such unapplied funds in a non-interest bearing account until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under this Note and the Mortgage/Deed of Trust or performing the covenants and agreements secured by the Mortgage/ Deed of Trust.

**2.5    Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**3.    Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within ten (10) days when due, a charge of 18 cents ($0.18) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4.    Default.** On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Security Instrument, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**5.    Prepayment.** Borrower may prepay this Note in whole or in part at any time without penalty. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

**6.    Interest on Default.** If Borrower is in default under this Note, as that event is contemplated under Section 4 of this Note, or defaults under any other clause of the Security Instrument, or all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Note (collectively, along with the Note, the "Loan Documents), then the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Section 1) equal to the lesser of (a) Eighteen and 00/100 Percent (18%) or (b) the maximum interest rate allowed by law (the "Default Rate"). If the Maturity Date is accelerated pursuant to Section 4, the unpaid principal shall accrue interest at the Default Rate only until the default is cured and the Security Instrument is reinstated. Borrower acknowledges and agrees that it would be extremely difficult or impractical to fix

2

© 2007 Geraci Law Firm; All Rights Reserved
Note

_____Borrowers Initials

Rev. 01/16

EXHIBIT 1

the actual damages resulting from Borrower's failure to pay the principal, accrued interest and other sums due on the Maturity Date, and therefore Borrower shall pay interest at the Default Rate not as a penalty, but for purposes of defraying the expenses incident to handling the past due principal, accrued interest and other sums due under this Promissory Note. Interest at the Default Rate represents the reasonable estimate of the loss that may be sustained by Lender due to the failure of Borrower to pay the principal, accrued interest and other sums due on the Maturity Date. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Promissory Note (including, without limitation, late charges pursuant to Section 3, above) or the Security Instrument.

7. **Interest on Interest**. If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

8. **Due-on-Sale**. If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument), or alienates the Property, or any interest in it, or suffers its title to, or any interest in, the Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Security Instrument, including those in Section 21 of the Security Instrument.

9. **Attorney Fees**. Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

10. **Waiver**. Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

11. **Notice**. Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the following addresses:

---

© 2007 Geraci Law Firm, All Rights Reserved
Note

_____ Borrowers Initials                    Rev. 01/16

EXHIBIT 1

| Lender: | Patch of Land Lending, LLC |
|---|---|
| | 15000 Ventura Boulevard, Suite 202 |
| | Sherman Oaks, California 91403 |
| | |
| | With a copy to: |
| | |
| | FCI Lender Services, Inc. |
| | P.O. Box 27370 |
| | Anaheim, California 92809 |
| | 1-800-931-2424 |
| | |
| Borrower: | The Ashley S. Aarons 2015 Trust |
| | 2029 Baltra Place |
| | Costa Mesa, California 92626-3516. |

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

12.    **Secured by Security Instrument.** This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument") of even date herewith made by Borrower, as trustor, for the benefit of Lender, as beneficiary.

13.    **Forbearance Not a Waiver.** If Lender delays in exercising or fails to exercise any of its rights under this Note, such delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

14.    **Assignment.** This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

15.    **Governing Law; Consent to Jurisdiction and Venue.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, the Security Instrument will be governed by the laws of the state in which the Property is located. In all other respects, the Security Instrument, the Note and all other documents related to the transaction are by agreement of the parties governed by the State of California, unless expressly provided otherwise. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Property, shall be the County in which notice shall be sent to Lender pursuant this Note, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _____

4

© 2007 Geraci Law Firm; All Rights Reserved.
Note

Borrowers Initials                                Rev. 01/16

EXHIBIT 1

16.    <u>Made or Arranged by a California Finance Lender</u>.  Borrower acknowledges that this Note was made or arranged by a licensed California Finance Lender and that the licensee's participation was a material factor in consummating this loan.

17.    <u>Usury</u>.  All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Security Instrument securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

18.    <u>Time Is of the Essence</u>.  Time is of the essence with respect to all obligations of Borrower under this Note.

19.    <u>Cross-Default</u>.  Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note.  The following definitions shall apply to this Section:

"**Affiliate**" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

"**Control**" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

BORROWER'S INITIALS: _____

20.    <u>Dispute Resolution; Waiver of Right to Jury Trial</u>
    20.1    <u>ARBITRATION</u>.  CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

© 2007 Geraci Law Firm; All Rights Reserved.
Note                                                            Borrowers Initials                Rev: 01/16

EXHIBIT 1

20.2    **WAIVER OF RIGHT TO JURY TRIAL.**  TO THE EXTENT PERMITTED BY SAID APPLICABLE LAW, BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS NOTE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS NOTE, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS NOTE OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS NOTE.

BORROWER'S INITIALS: _____

21.    **Representation on Use of Proceeds.** Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

22.    **No Modifications or Amendments; No Waiver.** Except as specified herein, this Note may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

23.    **Severability.**  Any provision of this Note which shall be held by a court of competent jurisdiction to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision or term hereof, and such other provisions or terms shall remain in full force and effect.

24.    **Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

25.    **Cooperation.**  Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Security Instrument, this Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by the Security Instrument to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Security Instrument, this Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Note or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by

---

6

_____ Borrowers Initials    Rev 01/16

EXHIBIT 1

the participants involved in any Secondary Market Transaction (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Note, modifications to any documents evidencing or securing the Note, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Note that would modify (i) the interest rate payable under this Note, (ii) the stated maturity of this Note, (iii) the amortization of principal of this Note, or (iv) any other material terms or covenants of the Note. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Note and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

26.    **Obligations of Borrower Joint and Several**.  If more than one Person is named as Borrower, each obligation of Borrower under this Note shall be the joint and several obligations of each such Person.

27.    **Capitalized Terms**.  Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Security Instrument executed of even date herewith.

28.    **Addendums**.  Any Addendum checked below and executed by Borrower shall be incorporated herein as through fully set forth in this Note:

      [X]    Conditional Right to Extension Addendum


BORROWER:

ASHLEY S. AARONS, TRUSTEE OF THE
ASHLEY S. AARONS 2015 TRUST
DATED MAY 15, 2015

_____
Ashley S. Aarons, Trustee

© 2007 Geraci Law Firm; All Rights Reserved.
Note

Borrowers Initials                              Rev. 01/16

EXHIBIT 1

## ADDENDUM TO PROMISSORY NOTE
### (Conditional right to Extension Addendum)

THIS ADDENDUM TO PROMISSORY NOTE is made March 22, 2018, and is incorporated into and shall be deemed to amend and supplement the Promissory Note made by the undersigned ("Borrower") to Patch of Land Lending, LLC, a Delaware limited liability company (CFL License No. 60DBO-45420) ("Lender") and dated the same date as this Addendum (the "Note").

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

### Conditional Right to Extension of Maturity Date.

A.      Borrower shall have the right to request one extension of the Maturity Date of the Note in accordance with the Extension and Fee Schedule in this Exhibit A, if and only if Lender, in its sole and absolute discretion, consents to such extension and all of the following conditions are met:

1.      Borrower delivers to Lender a written request for an extension no later than forty-five (45) days prior to the Maturity Date specified in the Note;

2.      Borrower has made all of the payments due under the Note on or before the date they were due;

3.      Borrower has complied with all of the covenants of the Note, the Mortgage/Deed of Trust and all other documents executed by Borrower in connection with the Loan;

4.      Borrower delivers to Lender written confirmation that any and all property taxes and assessments due and owing on the Property have been paid;

5.      Borrower delivers to Lender documentation confirming that all insurance policies required by Lender, inclusive of but not limited to, hazard and general liability insurance policies are in effect for the time period covered by the extension; and that Lender is named as mortgagee and additional loss payee on all polices;

6.      Borrower and any guarantor's credit rating has not materially changed since the execution of the Note;

7.      If requested, Borrower provides to Lender updated financial statements that indicate that there is no material change in the financial condition of Borrower or any guarantor;

8.      Lender determines, in its sole and absolute discretion, that there has not been a material negative change to the physical condition or value of the Property;

9.      Borrower has agreed to pay the costs associated with the loan extension, inclusive of the fees charged for the drafting of the recordable extension agreement, an extension endorsement to the Lender's Policy of Title Insurance; the fees charged by the County Recorder to record

---

8

© 2007 Geraci Law Firm. All Rights Reserved
Note

Borrowers Initials

Rev. 01/16

EXHIBIT 1

the extension agreement; notary fees; and all escrow and title related fees inclusive of messenger and handling fees;

10.    Lender confirms that Borrower has not permitted any further encumbrances or liens to be recorded against the Property; and,

11.    Any construction contemplated on the Property is completed in a timely manner and in accordance with the construction schedule, and all contractors, subcontractors, materialmen and others who perform work on the Property are paid in accordance with the terms of the agreements.

B.    **Time of Extension**.  If Borrower satisfies each condition set forth above, and Lender consents to such extension, Borrower shall have the right to one extension of the Maturity Date selected from the Extension and Fee Schedule in this Exhibit A, not to exceed six (6) months (the "Extension").

C.    **Extension Fee**.  As consideration to Lender for granting the Extension, Borrower shall pay to Lender in good U.S. funds a percentage of the outstanding principal balance of the Note as an extension fee (the "Extension Fee"). The Extension Fee shall be calculated in accordance with the Extension and Fee Schedule in this Exhibit A and is due and payable either with the written request for extension described in Subsection A.1 above.

BORROWER:

ASHLEY S. AARONS, TRUSTEE OF THE
ASHLEY S. AARONS 2015 TRUST
DATED MAY 15, 2015

_____
Ashley S. Aarons, Trustee

© 2007 Geraci Law Firm; All Rights Reserved.
Note

Borrowers Initials    Rev. 01/16

EXHIBIT 1

Exhibit A

**General Extension and Fee Schedule**

The following table outlines Lender's general Extension Fees. The Extension Fees based on Borrower's ability to satisfy all conditions listed in this Section A of the addendum and are calculated on a per-month basis for month-to-month requests and a total fee amount for three (3) and six (6) month requests. A discount is provided for all extensions that are paid in full at the time of approval.

| Extension Period | | If Paid @ Extension | If Paid @ Payoff |
|---|---|---|---|
| Month to Month per month | < 3 months | 0.50% | 1.00% |
| Month to Month per month | > 3 months | 1.00% | 2.00% |
| Initial 3 months | | 1.00% | 2.00% |
| Additional 3 months | | 1.50% | 3.00% |
| 6 Months | | 2.00% | 4.00% |

Borrower understands that upon Lender's approval of an extension request prior to the expiration of the original maturity date and immediately upon the expiration of each additional month that the principal amount remains outstanding, an Extension Fee in accordance with the Extension Period selected will automatically be added to Borrower's total amount of outstanding debt. Borrower further understands that no credit will be applied to its account where Borrower repays all amounts owed and outstanding under the Loan Documents prior to the expiration of the Extension Period.

By signing this Conditional Right to Extension addendum to the Promissory Note, Borrower agrees to pay all additional fees incurred with any extension until the loan and all associated costs and fees are repaid in full.

---

10

© 2007 Geraci Law Firm; All Rights Reserved
Note

_____ Borrowers Initials

Rev. 01/16

EXHIBIT 1

**ALLONGE**

**ALLONGE TO NOTE**

Pay to the order of _____, without recourse or warranty except as set forth in that Mortgage Loan Purchase Agreement dated as of December 28, 2015, by and between Patch of Land Lending, LLC and Invictus Residential Pooler Trust 1A.

DATED: March 28, 2018

**PATCH OF LAND LENDING, LLC**

By _____

Name Jason Fritton

Its     Authorized Signatory

This Allonge is to be attached to and form a part of that certain Promissory Note, dated as of March 22, 2018 executed by Ashley S Aaron 2015 Trust in favor of Patch of Land Lending, LLC, in the original principal amount of $3,000,000.00.

EXHIBIT 1

FOR REFERENCE ONLY: 20180291459

RECORDING REQUESTED BY
LAWYERS TITLE

WHEN RECORDED, RETURN TO:

Patch of Land Lending, LLC
15000 Ventura Boulevard, Suite 202
Sherman Oaks, California 91403

2175318077
APN: 4370-027-008

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Note Amount:**        $3,000,000.00
**Property Address:**   984 Bel Air Road, Los Angeles, California 90077

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of March 22, 2018, among Ashley S. Aarons, Trustee of The Ashley S. Aarons 2015 Trust dated May 15, 2015, as trustor ("Borrower"), whose address is 2029 Baltra Place, Costa Mesa, California 92626-3516; Lawyers Title Company, as trustee ("Trustee"); and, Patch of Land Lending, LLC, a Delaware limited liability company (CFL License No. 60DBO-45420), ISAOA/ATIMA, as beneficiary ("Lender"), whose address is 15000 Ventura Boulevard, Suite 202, Sherman Oaks, California 91403.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

---

1

© 2007 Geraci Law Firm; All Rights Reserved.                                    Rev. 01/16
                                                                              Borrowers Initials

EXHIBIT 1

This page is part of your document - DO NOT DISCARD

# 20180291459





**Pages:
0035**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/27/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 182.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 407.00 |



LEADSHEET



201803270280051

00015041006



008982502

**SEQ:
01**

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

E08_180327_6210857

EXHIBIT 1

RECORDING REQUESTED BY
LAWYERS TITLE

WHEN RECORDED, RETURN TO:

Patch of Land Lending, LLC
15000 Ventura Boulevard, Suite 202
Sherman Oaks, California 91403

*2175318O7*

APN: 4370-027-008

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Note Amount:**     **$3,000,000.00**
**Property Address:**     **984 Bel Air Road, Los Angeles, California 90077**

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of March 22, 2018, among Ashley S. Aarons, Trustee of The Ashley S. Aarons 2015 Trust dated May 15, 2015, as trustor ("Borrower"), whose address is 2029 Baltra Place, Costa Mesa, California 92626-3516; Lawyers Title Company, as trustee ("Trustee"); and, Patch of Land Lending, LLC, a Delaware limited liability company (CFL License No. 60DBO-45420), ISAOA/ATIMA, as beneficiary ("Lender"), whose address is 15000 Ventura Boulevard, Suite 202, Sherman Oaks, California 91403.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

1

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

1. **Definitions.**  For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

    **1.1.** **"Attorney Fees."**  Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Deed of Trust.

    **1.2.** **"Borrower."**  The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to Section 19 and Section 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

    **1.3.** **"Default Rate."**  The Default Rate as defined in the Note.

    **1.4.** **"Event of Default."** An Event of Default as defined in Section 19 of this Deed of Trust.

    **1.5.** **"Environmental Laws."**  Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (California Health and Safety Code §§ 25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (California Health and Safety Code §§ 25396-25399.2); and the Porter-Cologne Water Quality Control Act (California Water Code §§ 13000-14076).

    **1.6.** **"Fixtures."**  All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

    **1.7.** **"Governmental Authority."** Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

    **1.8.** **"Governmental Requirements."** Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**1.9.** **"Hazardous Substance."** Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code section 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

**1.10.** **"Impositions."** All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.11.** **"Improvements."** Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

**1.12.** **"Indebtedness."** The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1.  The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.12.2.  This Deed of Trust and all other Loan Documents;

1.12.3.  All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.12.4.  Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.12.5.  Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.13.** **"Land."** The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

---

3

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
_____ Borrowers Initials

**EXHIBIT 1**

**1.14.** "**Leases.**" Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.15.** "**Legal Requirements.**" Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

**1.16.** "**Lender.**" The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

**1.17.** "**Loan.**" The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.18.** "**Loan Documents.**" Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.19.** "**Mortgaged Property.**" The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as    **984 Bel Air Road, Los Angeles, California 90077,**
                      **APN: 4370-027-008**

together with:

**1.19.1.** All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

**1.19.2.** All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans,

---

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.19.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.19.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.19.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.19.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.19.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.19.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.19.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.19.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

---

5

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

1.19.11.  All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.19.12.  All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.19.13.  All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.19.14.  All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.19.15.  All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.20.**    "**Note**." The Promissory Note payable by Borrower to the order of Lender in the principal amount of **Three Million and 00/100 Dollars ($3,000,000.00), which matures on April 1, 2020,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

**1.21.**    "**Obligations**." Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

**1.22.**    "**Permitted Encumbrances**." At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

**1.23.**    "**Person**." Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.24.**    "**Personalty**." All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

in the California Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the California Uniform Commercial Code.

    **1.25.** **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

    **1.26.** **"Security Instrument."** This Deed of Trust.

    **1.27.** **"Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

    Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**2.**     **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under Section 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

**3.**    **Use of Mortgaged Property.**  Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Deed of Trust. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.**    **Insurance.**

     **4.1.**    **Casualty Insurance.**  Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

         **4.1.1.**  Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in Section 4.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

         **4.1.2.**  Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

         **4.1.3.**  Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

         **4.1.4.**  Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

         **4.1.5.**  During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in Section 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

         **4.1.6.**  Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Mortgaged Property is located.

     **4.2.**    **Liability Insurance.**  Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

     **4.3.**    **Other Insurance.**  Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by

© 2007 Geraci Law Firm; All Rights Reserved



Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**4.4.    Form of Policies.**  All insurance required under this Section 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this Section 4 contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5.    Duplicate Originals or Certificates.**  Duplicate original policies evidencing the insurance required under this Section 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this Section 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this Section.

**4.6.    Increased Coverage.**  If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.    No Separate Insurance.**  Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this Section 4 unless endorsed in favor of Trustee and Lender as required by this Section and otherwise approved by Lender in all respects.

**4.8.    Transfer of Title.**  In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations or the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this Section 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.    Replacement Cost.**  For purposes of this Section 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.    Approval Not Warranty.**  No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency, and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**4.11.** **Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.** **Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.** **Condemnation and Insurance Proceeds.**

**5.1.** **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**5.2.** **Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

**5.2.1.** Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

5.2.2. If fewer than all conditions (a) through (i) in Section 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this Section 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in Section 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

5.3.   **Material Loss Not Covered.**  If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

5.4.   **Total Condemnation Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

5.5.   **Partial Condemnation Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued

11

© 2007 Geraci Law Firm; All Rights Reserved

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**5.6.** **No Cure or Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**6.** **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section 6, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Deed of Trust to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**7.** **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

12

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.13 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

**8.    Right to Collect and Receive Rents.**  Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in Section 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

---

13

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

**9.    Funds for Taxes and Insurance.**  If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due.  The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion.  These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section 9 shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust.  Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section 9 is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this section.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this Section 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under thisSection 9 to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**10.    Assignment of Causes of Action, Awards, and Damages.**  All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this Section 10, Lender may apply or release the balance of any funds received by it under this section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this

14

© 2007 Geraci Law Firm, All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

11.    **Defense of Deed of Trust; Litigation.**  Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Deed of Trust, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if neither Lender nor Trustee elects to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

12.    **Borrower's Failure to Comply With Deed of Trust.**  If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

13.    **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.**  At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

14. **Inspection of Mortgaged Property.** In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

15. **Financial Statements; Estoppel Certificates.**

    15.1. **Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, development, and operations of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

    15.2. **Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

    15.3. **Guarantors' Financial Statements.** Except to the extent already required by Section 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by the principal of the Borrower or an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of the principal of the Borrower or such accountant as to their accuracy. Throughout the term of this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared using reasonably accepted accounting practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

    15.4. **Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate from the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

    **15.5.**    **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by Section 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

    **15.6.**    **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under Section 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

    **15.7.**    **No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this Section 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

**16.**    **Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the California Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of California, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

    On any Event of Default, Lender shall have the remedies of a secured party under the California Uniform Commercial Code and, at Lender's option, may also invoke the remedies in Section 21 of this

© 2007 Geraci Law Firm; All Rights Reserved.



Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the California Uniform Commercial Code or of the remedies in Section 21 of this Deed of Trust.

17.  **Fixture Filing.**  This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

18.  **Waiver of Statute of Limitations.**  Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

19.  **Events of Default.**  The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

19.1.  **Payment of Indebtedness.**  Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

19.2.  **Performance of Obligations.**  The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

19.3.  **Judgment.**  If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4.  **Voluntary Bankruptcy.**  If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5.  **Involuntary Bankruptcy.**  If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

19.6.  **Foreclosure of Other Liens.**  If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

19.7.  **Sale, Lease, Encumbrance, or Other Transfer.**  Any sale, lease, exchange, assignment, conveyance, encumbrance (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust) (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

19.8.  **Title and Lien Priority.**  If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a first position lien and security interest on the Mortgaged Property is

18

© 2007 Geraci Law Firm; All Rights Reserved.



Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this section if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

19.9.    **Other Defaults.**  The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

19.10.    **Levy on Assets.**  A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

19.11.    **Breach of Representations.**  The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

19.12.    **Default Under Prior Deed of Trust, Security Instrument, or Lien.**  The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

19.13    **Violation of Governmental Requirements.**  The failure of Borrower, any tenant, or any other occupant of the Mortgaged Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

20.    **Acceleration on Transfer or Encumbrance.**

20.1.    **Acceleration on Transfer or Encumbrance of Mortgaged Property.**  If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust), or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

20.2.    **Replacement Personalty.**  Despite the provisions of Section 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Deed of Trust in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Deed of Trust constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements, including §9334 of the California Commercial Code.

20.3.    **Permitted Encumbrances.**  If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in Section 20.1 shall not apply to a

19



Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note) as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

21.    **Acceleration and Sale on Default.**  If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows:  (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

22.    **Borrower's Obligation to Notify Lender.**
    22.1    **Bankruptcy, Insolvency, Transfer, or Encumbrance.**  Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in Section 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

20

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**22.2    Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**23.    Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

**24.    Environmental Matters.**

**24.1.    Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

24.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

24.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

24.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

---

21

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
_____ Borrowers Initials

**EXHIBIT 1**

**24.2.    Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

**24.3.    Notice to Lender.** Borrower shall give prompt written notice to Lender of:

24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

24.3.3. Any notice given to Borrower under California Civil Code §851(b); and

24.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**24.4.    Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**24.5.    Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25.    Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**26.    Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**27.    Duty to Reconvey.**  On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

**28.    Substitution of Trustee.**  Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this section for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

**29.    No Waiver by Lender.**  No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

**30.    Consents and Modifications; Borrower and Lien Not Released.**  Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with

23

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

31.    **Waiver of Right of Offset.** No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

32.    **Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Deed of Trust when evidenced by promissory notes reciting that such note(s) are secured by this Deed of Trust.

33.    **Prepayment.** If the Note secured by this Deed of Trust provides for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of Sections 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

34.    **Additional Borrower Representations.** To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

24

© 2007 Geraci Law Firm; All Rights Reserved

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**34.1.    Capacity.**  Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

**34.2.    Authority and Enforceability.**  Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

**34.3.    Compliance With Other Instruments.**  The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

**34.4.    Compliance With Law.**  The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

**34.5.    Material Adverse Events.**  Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

**34.6.    Litigation.**  There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

**34.7.    No Untrue Statements.**  All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

**34.8.    Policies of Insurance.**  Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this Section 34.8 and (b) has

25

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

**34.9.**   **Financial Statements.**  All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

**34.10.**   **Water Rights.**  (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances except as set forth in the title report described in Section 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**34.11.**   **Taxes.**  Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**34.12.**   **Leases.**  If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**34.13.**   **Further Acts.**  Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14.**   **Filing Fees.**  Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15.**   **Entity Compliance.**  As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**35.    Governing Law; Consent to Jurisdiction and Venue.**  With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Mortgaged Property, this Deed of Trust will be governed by the laws of the state in which the Mortgaged Property is located. In all other respects, the Deed of Trust, the Note and all other documents related to the transaction are by agreement of the parties governed by the State of California, unless expressly provided otherwise. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be the County in which notice shall be sent to Lender pursuant this Deed of Trust, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes.  Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _____

**36.    Taxation of Deeds of Trust.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37.    Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**38.    Brokerage.**  Borrower represents and warrants to Lender that Borrower has not dealt with any Person, other than the parties identified in the final settlement statement, who are or may be entitled to any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Deed of Trust, the consummation of the transactions contemplated by this Deed of Trust, or the making of the Loan secured by this Deed of Trust by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

**39.    Liability for Acts or Omissions.**  Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**40.    Notices.**  Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate

27

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

| Lender: | Patch of Land Lending, LLC |
| | At the address provided above |

| Borrower: | The Ashley S. Aarons 2015 Trust |
| | At the address provided above |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

**41.    Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

**42.    Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**43.    Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**44.    Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

**45.    Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**46.    Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**47.    General Provisions.**

**47.1.    Successors and Assigns.** Subject to Sections 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

**47.2.    Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

28

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

**47.3.** **Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**47.4.** **Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**47.5.** **Captions.** Captions and section headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

**47.6.** **Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

**48.** **Improper Financial Transactions.**

**48.1** Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

**48.2** Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

**48.3** Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

**48.4** Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

**48.5** Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

**48.6** As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

**49.** **Dispute Resolution: Waiver of Right to Jury Trial**

**49.1** **ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY

---

29

© 2007 Geraci Law Firm; All Rights Reserved.



Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**49.2    WAIVER OF RIGHT TO JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

BORROWER'S INITIALS: _____

**49.3    PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in Section 49.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 49.2, above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 49.2, above.

**50.    Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**51.    California Business & Professions Code § 10238 Notice.** If there are multiple beneficiaries to this Deed of Trust, the provisions of California Business & Professions Code Section 10238(i) and California Civil Code Section 2941.9 may control the actions to be taken by the beneficiaries. Section 10238(i) provides "[t]he holders of more than 50 percent of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Section 2941.9 of the Civil Code in the event of default or foreclosure for matters that require direction or approval of the

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**EXHIBIT 1**

holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure."

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date first written above.

BORROWER:

ASHLEY S. AARONS, TRUSTEE OF THE
ASHLEY S. AARONS 2015 TRUST
DATED MAY 15, 2015

Ashley S. Aarons, Trustee

31

Rev. 01/16
Borrowers Initials

EXHIBIT 1

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California           )

County of _Orange_           )

On _March 24, 2018_ before me, _A. G. JACOBS_ , Notary Public
    *Date*                               *Here Insert Name of the Officer*

Personally Appeared _ASHLEY S. AARONS_
                                 *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

A. G. JACOBS
COMM. # 2060473
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires April 5, 2018

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                      *Signature of Notary Public*

© 2007 Geraci Law Firm; All Rights Reserved.
Rev. 01/16
Borrowers Initials

EXHIBIT 1

EXHIBIT "A"
LEGAL PROPERTY DESCRIPTION

© 2007 Geraci Law Firm; All Rights Reserved.

33

Rev. 01/16
Borrowers Initials

EXHIBIT 1

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A OF PARCEL MAP NO. 3707, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 98, PAGES 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 4370-027-008

EXHIBIT 1

This page is part of your document - DO NOT DISCARD



# 20200163705



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/10/20 AT 12:04PM**

Pages:
0007

| | |
|---|---|
| FEES: | 95.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 320.00 |



**L E A D S H E E T**



202002103290022

**00017861549**



010509201

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT 1

RECORDING REQUESTED BY

NAME: PATCH OF LAND LENDING, LLC

**WHEN RECORDED MAIL TO:**

NAME: WELLS FARGO Attn: INVC- WAREHOUSE

ADDRESS: 1055 10TH AVE SE

CITY / STATE / ZIP: MINNEAPOLIS, MN 55414

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

02/10/2020

*20200163705*

(SPACE ABOVE FOR RECORDER'S USE)

## ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

EXHIBIT 1

Recording requested by,
Patch of Land Lending, LLC.

and when recorded mail to:
Wells Fargo
Attn: INVC- WAREHOUSE
1055 10th Ave SE
Minneapolis, MS, 55414
APN: 4370-027-0088

---

**Document Title**: ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND
RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Grantor/Assignor**:  Patch of Land Lending, LLC
**Grantee/Assignee**:  Wilmington Savings Fund Society, FSB, not in its individual capacity but
solely as trustee for Invictus Residential Pooler Trust 3A
**Trustor**:  Ashley S Aarons
**Trustee**:  Lawyers Title Company
**Property address**:  984 BEL AIR ROAD LOS ANGELES CA 90077
**Legal Description**:  See Exhibit A
**Recording Document, No:** 20180291459
**Recorded Date**:  03/27/2018

  **KNOW THAT** PATCH OF LAND LENDING, LLC, a Delaware limited liability
company, having an office at 15000 Ventura Blvd. Ste. 300, Sherman Oaks, CA 91403
("Assignor") in consideration of Ten ($10.00) or more Dollars, hereby grants, assigns, sells,
transfers and delivers to  Wilmington Savings Fund Society, FSB, not in its individual capacity
but solely as trustee for Invictus Residential Pooler Trust 3A, having an office at ("Assignee"),
all of Assignor's right, title and interest in and to that Mortgage or Deed of Trust covering the
premises commonly known as 984 BEL AIR ROAD LOS ANGELES CA 90077, Situated in
County of Los Angeles, and more particularly described on **Exhibit A** attached hereto and made
a part hereof (the "Premises").

EXHIBIT 1

**TOGETHER** with the bonds, notes or other obligations described in said mortgages, and the monies due and to grow thereon with interest;

**TO HAVE AND TO HOLD** the same unto the Assignee and to the successors, legal representatives and assigns forever.

The Mortgage(s) assigned hereby has not been further assigned except as set forth herein.

[Balance of Page is Intentionally Left Blank]

EXHIBIT 1

**IN WITNESS WHEREOF**, the Assignor has duly executed this assignment as of the 6th day of February, 2019.

ASSIGNOR:

PATCH OF LAND LENDING, LLC
BY:  PATCH OF LAND, INC.

BY: _____
Name: Gina Donatoni
Title: Chief Operations Officer
Its: Authorized Signatory

STATE OF                          ) ss:
COUNTY OF                         )

On the ___ day of _____, 201__, before me, the undersigned, a Notary Public in and for the State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

See attached

EXHIBIT 1

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ___Los Angeles___

On __Feb. 6, 2020__ before me, __Rica Amy Iwai, Notary Public__
     *Date*                       *Here insert Name and Title of the Officer*
personally appeared __Gina Donatoni__
                         *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

RICA AMY IWAI
Notary Public - California
Los Angeles County
Commission # 2252066
My Comm. Expires Aug 2, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

─────────────────── **OPTIONAL** ───────────────────
*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian of Conservator | ☐ Trustee ☐ Guardian of Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2017 National Notary Association

EXHIBIT 1

## EXHIBIT A
### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A OF PARCEL MAP NO. 3707, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 98, PAGES 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 4370-027-008

EXHIBIT 1

# EXHIBIT "B"

EXHIBIT 1

## ASHLEY S. AARONS 2015 TRUST

TO: ALL BANKS, SAVINGS AND LOAN ASSOCIATIONS, MUTUAL FUNDS BROKERS, TITLE INSURERS, TRANSFER AGENTS, AND OTHER PERSONS AND INSTITUTIONS:

I, ASHLEY S. AARONS, as trustee of the ASHLEY S. AARONS 2015 TRUST, certify as follows:

1.    Creation of Trust

The trust was created on May 15 , 2015, by ASHLEY S. AARONS, as settlor, under a declaration executed on that date.

2.    Name of Trust

The name of the trust is the ASHLEY S. AARONS 2015 TRUST.

3.    Trustee

The currently acting trustee of the trust is .

The trust provides for successor trustees as follows:

(a)    Successor Trustees

If the office of trustee becomes vacant, by reason of death, incapacity, or any other reason, and no successor trustee has been designated under any other provision of this trust instrument, the following, in the order of priority indicated, shall be trustee:

First:    VILMA M. AARONS, the settlor's mother;

Second:    JULIUS AARONS, the settlor's father;

Third:    ALLISON STRIDH, the settlor's sister; or

Fourth:    MARC S. AARONS, the settlor's brother.

If all those named above are or become unable (by reason of death, incapacity, or any other reason) or unwilling to serve or continue to serve as successor trustee, a new trustee or set of cotrustees shall be appointed by majority vote of the adult beneficiaries of the trust who are then entitled to receive income under the trust, or who would be entitled to receive a

EXHIBIT 1

distribution of principal from the trust if the trust were then terminating, and who then have the legal capacity to give such a vote. If a majority of the beneficiaries are unable to agree on a new trustee or cotrustees, a new trustee or cotrustees may be appointed by the court.

(b)  Settlors Power to Designate Successor Trustees

At any time, the settlor may designate any suitable entity or person to act as successor trustee in the event that the trustee (including the settlor-trustee), for any reason, ceases to act as trustee. Any designation under this section shall be made by a signed writing delivered to the person or entity designated as successor trustee or cotrustee. The settlor may revoke, amend, or replace the written instrument designating the successor trustee at any time before a particular vacancy is filled. If more than one designation is made under this section, only the most recent designation shall be valid.

4.    Trust Property

The trustee is now holding as trustee of the trust one or more items of property, which constitute the trust property.

5.    Revocability of Trust

The trust is revocable. The person holding the power to revoke the trust is ASHLEY S. AARONS.

6.    Powers of Trustee

The trustee has the following powers for managing the trust and the trust property:

(a)  General Powers of Trustee

Under the "General Powers of Trustee" subsection of this trust, the trustee has all of the powers given to trustees under California law (see Probate Code Sections 16200 and following) plus any other powers, discussed below, given by the trust.

2

EXHIBIT 1

(b)   Financial Powers of the Trustee

Under the California Probate Code, the trustee has certain powers to conduct any financial transactions for the trust. These powers include the power to open and maintain checking accounts and savings accounts in any insured banks, savings and loans, or other financial institutions (see Probate Code Section 16225); the power to invest trust property (see Probate Code Section 16047(e)); the power to borrow money (see Probate Code Section 16241); and the power to lend money to any beneficiary of the trust or to guarantee loans, using trust property, to any beneficiary of the trust (see Probate Code Section 16244). The trustee also has the power to execute all papers that are necessary to carry out these powers (see Probate Code Section 16248).

Under the "General Powers of Trustee" subsection of this trust, sub-subsection (x), settlor has also specifically given the trustee the power to borrow money for any trust purpose from any entity and to obligate the trust for repayment; the power, in order to secure repayment of any loan, to encumber any trust property by mortgage, deed of trust, pledge, or other method; the power to renew, extend, or replace any loan; and the power to pay any obligations of the trust.

Under the "Trustee's Power to Invest Property" subsection, settlor has also specifically given the trustee the power to invest trust property.

(c)   Powers of the Trustee for Management and Control of Real Property

Under the "General Powers of Trustee" subsection of this trust, sub-subsection (iii), settlor has specifically given the trustee the power to manage, control, improve, and maintain all real property of the trust. Under sub-subsection (i), the trustee has the power to sell, convey, exchange, partition, and divide trust property; the power to grant options for the sale or exchange; and the power to lease trust property for any purpose, regardless of the length of the lease.

Under sub-subsection (iv), the trustee has the power to subdivide or develop land belonging to the

3

EXHIBIT 1

trust. Under sub-subsection (v), the trustee may make
any repairs or alterations in any building or other
property belonging to the trust. Under sub-subsection
(xi), the trustee has the power to purchase insurance,
paid by the trust, to cover any trust property.

Further, under California Probate Code Sections
16226 through 16233, the trustee has the powers to
acquire or dispose of trust property, to manage trust
property, to mortgage or encumber trust property, to
repair or alter trust property (including to demolish
or to build any improvements on trust property), to
develop, subdivide, and dedicate to public use any
trust property land, to lease any trust property, to
obtain property by lease, and to lease any mineral
rights of any trust property or obtain mineral rights
to property for the trust.

(d)   Powers of the Trustee for Management and Control
of Securities and Investments

Under the "General Powers of Trustee" subsection
of this trust, sub-subsection (vii), settlor has
specifically given the trustee the powers to exercise
for any security belonging to the trust all the rights,
powers, and privileges of an owner, including the power
to vote, give proxies, and pay any assessments or other
sums deemed by the trustee necessary for the protection
of the trust property. The trustee also has the power
to participate in voting trusts, pooling agreements,
foreclosures, reorganizations, consolidations, mergers,
and liquidations and to deposit securities with or
transfer title to any protective or other committee.
The trustee also has the power to exercise or sell
stock subscription or conversion rights and to accept
and retain as investments of the trust any securities
or other property received through the exercise of any
of the powers given to the trustee.

Further, under sub-subsection (viii), the trustee
has the power to hold securities or other trust
property in the trustee's own name or in the name of a
nominee, with or without disclosure of the trust, or in
unregistered form. Under sub-subsection (ix), the
trustee has the power to deposit securities in a
securities depository that is either licensed or exempt
from licensing.

4

EXHIBIT 1

(e)  Powers of the Trustee for Operation and Control of Business Entities

Under California Probate Code Section 16222, the trustee has the power to continue or participate in the operation of any business, including a farm or ranch, belonging to the trust and to change the form of the business. However, the trustee may continue the operation of the business only for a reasonable period of time pending the sale of the business or a court order.

7.    Taxpayer Identification Number

United States Treasury Regulations Sections 1.671-4, 1.6012-3(a)(9), and 301.6109-1(a)(2) provide that the settlor's Social Security Number may be used in lieu of a separate taxpayer identification number for the trust. The Taxpayer Identification Number of this trust is the settlor's Social Security number. That number will be provided separately upon request.

8.    Manner in Which Title to Trust Assets Should Be Taken

Title to trust assets should be taken in the following form: ", as trustee of the ASHLEY S. AARONS 2015 TRUST."

9.    No Revocations, Modifications, or Amendments

The trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this certification of trust to be incorrect.

10.    Copies

Any copy of this Certification of Trust shall be deemed an original for all purposes.

11.    Signed by Sole Currently Acting Trustee

5

EXHIBIT 1

This certification is being signed by the sole currently acting trustee of the trust.

12.   Accuracy

This certification of trust is a true and accurate statement of the matters referred to herein.

13.   Reliance on this Certification

This certification is made in accordance with California Probate Code Section 18100.5, a copy of which is attached to this instrument. Any transaction entered into by a person acting in reliance on this certification shall be enforceable against the trust assets. PROBATE CODE SECTION 18100.5(h) PROVIDES THAT ANY PERSON WHO REFUSES TO ACCEPT THIS CERTIFICATION IN LIEU OF THE ORIGINAL TRUST DOCUMENT WILL BE LIABLE FOR DAMAGES, INCLUDING ATTORNEYS' FEES, INCURRED AS A RESULT OF THAT REFUSAL, IF THE COURT DETERMINES THAT THE PERSON ACTED IN BAD FAITH IN REQUESTING THE TRUST DOCUMENT.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 15, 2015, at Laguna Hills, California.

TRUSTEE

ASHLEY S. AARONS

6

EXHIBIT 1

## ACKNOWLEDGMENT

State of California         )
                                    )
County of Orange           )

On May 15, 2015, before me, _Genevieve Wall_, notary public, personally appeared ASHLEY S. AARONS, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____  (Seal)



EXHIBIT 1

## TEXT OF CALIFORNIA PROBATE CODE SECTION 18100.5

Section 18100.5

(a)  The trustee may present a certification of trust to any person in lieu of providing a copy of the trust instrument to establish the existence or terms of the trust. A certification of trust may be executed by the trustee voluntarily or at the request of the person with whom the trustee is dealing.

(b)  The certification of trust may confirm the following facts or contain the following information:

(1)  The existence of the trust and date of execution of the trust instrument.

(2)  The identity of the settlor or settlors and the currently acting trustee or trustees of the trust.

(3)  The powers of the trustee.

(4)  The revocability or irrevocability of the trust and the identity of any person holding any power to revoke the trust.

(5)  When there are multiple trustees, the signature authority of the trustees, indicating whether all or less than all of the currently acting trustees are required to sign in order to exercise various powers of the trustee.

(6)  The trust identification number, whether a social security number or an employer identification number.

(7)  The manner in which title to trust assets should be taken.

(8)  The legal description of any interest in real property held in the trust.

(c)  The certification shall contain a statement that the trust has not been revoked, modified, or amended in any manner which would cause the representations

8

EXHIBIT 1

contained in the certification of trust to be incorrect
and shall contain a statement that it is being signed
by all of the currently acting trustees of the trust.
The certification shall be in the form of an
acknowledged declaration signed by all currently acting
trustees of the trust. The certification signed by the
currently acting trustee may be recorded in the office
of the county recorder in the county where all or a
portion of the real property is located.

(d)   The certification of trust may, but is not
required to, include excerpts from the original trust
documents, any amendments thereto, and any other
documents evidencing or pertaining to the succession of
successor trustees. The certification of trust shall
not be required to contain the dispositive provisions
of the trust which set forth the distribution of the
trust estate.

(e)   A person whose interest is, or may be, affected by
the certification of trust may require that the trustee
offering or recording the certification of trust
provide copies of those excerpts from the original
trust documents, any amendments thereto, and any other
documents which designate, evidence, or pertain to the
succession of the trustee or confer upon the trustee
the power to act in the pending transaction, or both.
Nothing in this section is intended to require or imply
an obligation to provide the dispositive provisions of
the trust or the entire trust and amendments thereto.

(f)   A person who acts in reliance upon a certification
of trust without actual knowledge that the
representations contained therein are incorrect is not
liable to any person for so acting. A person who does
not have actual knowledge that the facts contained in
the certification of trust are incorrect may assume
without inquiry the existence of the facts contained in
the certification of trust. Actual knowledge shall not
be inferred solely from the fact that a copy of all or
part of the trust instrument is held by the person
relying upon the trust certification. Any transaction,
and any lien created thereby, entered into by the
trustee and a person acting in reliance upon a
certification of trust shall be enforceable against the
trust assets. However, if the person has actual
knowledge that the trustee is acting outside the scope

9

EXHIBIT 1

of the trust, then the transaction is not enforceable against the trust assets. Nothing contained herein shall limit the rights of the beneficiaries of the trust against the trustee.

(g)  A person's failure to demand a certification of trust does not affect the protection provided that person by Section 18100, and no inference as to whether that person has acted in good faith may be drawn from the failure to demand a certification of trust. Nothing in this section is intended to create an implication that a person is liable for acting in reliance upon a certification of trust under circumstances where the requirements of this section are not satisfied.

(h)  Except when requested by a beneficiary or in the context of litigation concerning a trust and subject to the provisions of subdivision (e), any person making a demand for the trust documents in addition to a certification of trust to prove facts set forth in the certification of trust acceptable to the third party shall be liable for damages, including attorney's fees, incurred as a result of the refusal to accept the certification of trust in lieu of the requested documents if the court determines that the person acted in bad faith in requesting the trust documents.

(i)  Any person may record a certification of trust that relates to an interest in real property in the office of the county recorder in any county in which all or a portion of the real property is located. The county recorder shall impose any fee prescribed by law for recording that document sufficient to cover all costs incurred by the county in recording the document. The recorded certification of trust shall be a public record of the real property involved. This subdivision does not create a requirement to record a certification of trust in conjunction with the recordation of a transfer of title of real property involving a trust.

10

EXHIBIT 1

# ASHLEY S. AARONS 2015 TRUST

## ARTICLE ONE. CREATION OF TRUST

### 1.1 <u>Declaration</u>

ASHLEY S. AARONS of Los Angeles County, California, who is herein referred to as "the settlor" or "the trustee," depending on the context, hereby declares that she holds certain property (the "trust estate"), in trust, to be held, administered, and distributed as provided in this instrument.

### 1.2 <u>Name of Trust</u>

The name of the trust created by this instrument shall be the ASHLEY S. AARONS 2015 TRUST.

### 1.3 <u>Effective Date</u>

This declaration shall be effective immediately on execution by the settlor-trustee.

### 1.4 <u>Marital Status</u>

The settlor is a Widow.  She was previously married to JAMES HOBSON who died on April 26, 2013.

### 1.5 <u>No Living or Deceased Children</u>

The settlor has no living or deceased children.

## ARTICLE TWO. TRUST ESTATE

### 2.1 <u>Definition of Trust Estate</u>

All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument. The

EXHIBIT 1

ARTICLE EIGHT. SIGNATURE AND EXECUTION

8.1 <u>Execution</u>

I certify that I have read the foregoing declaration of trust and that it correctly states the terms and conditions under which the trust estate is to be held, administered, and distributed. As settlor of the trust created by this declaration of trust, I approve this declaration of trust in all particulars, and agree to be bound by its terms and conditions. As trustee of the trust created by this declaration of trust, I approve this declaration of trust in all particulars, and agree to be bound by its terms and conditions.

Executed on May 15 , 2015, at Laguna Hills, California.

SETTLOR-TRUSTEE

ASHLEY S. AARONS

Page 22

EXHIBIT 1

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

```
State of California      )
                         )  ss
County of Orange         )
```

On May 15, 2015, before me, GENEVIEVE WALL, a notary public,
personally appeared ASHLEY S. AARONS, who proved to me on the
basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
she executed the same in her authorized capacity and that by her
signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

(Seal)



GENEVIEVE WALL
COMM. # 1942153
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. JUNE 29, 2015

Page 23

EXHIBIT 1

# EXHIBIT "C"

EXHIBIT 1

## 984 Bel Air Road Extension Summary

**Amounts shown are as of June 1, 2020.**

**Any outstanding bankruptcy, legal, or foreclosure fees incurred after June 1, 2020 will be due and owing upon the Extended Maturity Date, payoff, or upon Default, whichever occurs first.**

| Timeline | | Calculation |
|---|---|---|
| Paid to Date | 11/1/2018 | A |
| Original Maturity Date | 4/1/2020 | B |
| Payoff Date for Calculations | 6/1/2020 | C |

| Accrual Rates and Days | | Calculation |
|---|---|---|
| Note Rate | 7.50% | D |
| Default Rate | 18.00% | E |
| Default Rate Spread | 10.50% | F = E - D |
| Interest Accrual Days | 570 | G = Days Between A and C |

| Balances Due Pre-Extension | | Manner Applied in Extension | Calculation |
|---|---|---|---|
| Principal Balance | 3,000,000.00 | Capitalized | H |
| Accrued Regular Interest | 356,250.00 | Capitalized | J = H * (G/30) * (D/12) |
| Accrued Default Interest | 498,750.00 | Waived | K = H * (G/30) * (F/12) |
| Late Charges Due from Paid-to-Date | 137,700.00 | Waived | M |
| Other Late Charges Due | 10,125.00 | Waived | N |
| Unpaid Loan Charges | 543.00 | Waived | P |
| Servicer Payoff Charges | 628.00 | Capitalized | Q |
| Outstanding Bankruptcy / Legal Fees /NOD | 75,495.07 | Capitalized | R |
| Suspense Account Balance (Credit) | (73,200.00) | Taxes / Insurance / Interest Payments | S |
| **Total Balance Due Pre-Extension** | **4,006,291.07** | | **T = H + J + K +M + N + P + Q + R + S** |

| Extension Terms | | Calculation |
|---|---|---|
| Extended Maturity Date | 4/1/2021 | |
| Waived Default and Late Charges | 646,575.00 | K + M |
| **Extended Principal Balance** | **3,432,916.07** | U = H + J + N + P + Q + R |
| **Extended Monthly Payment Amount** | **21,455.73** | V = U * (D/12) |
| | | |
| Extension Fee: 2% of Principal Balance (1) | 60,000.00 | |

| Application of Suspense Balance | | Calculation |
|---|---|---|
| Suspense Balance | 73,200.00 | S |
| First 3 Months Interest of Extended Period (2) | (64,367.18) | W |
| 2019 - H2 Taxes Due | (2,398.55) | X |
| 2020 - H1 Taxes Due | (2,180.49) | Y |
| **October 2020 Monthly Payment Application (3)** | **4,253.78** | **S + W + X + Y** |

(1) Extension fee will be waived if borrower makes timely payments and pays extended loan off by the Extended Maturity Date and complies with all the Conditions for Waiver of the Extension Fee as specified in the Agreement.

(2) First 3 months of interest are applied to July, August, and September 2020.

(3) This amount will reduce the amount owing for the October 2020 New Monthly Payment. Said amount shall be held in suspense and not applied unless and until the Borrower makes the full October 2020 New Monthly Payment.

EXHIBIT 1

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, *et al.*,

     Defendants.

_____/

### ORDER GRANTING THE RECEIVER'S COMBINED NINTH MOTION TO LIFT LITIGATION INJUNCTION AS TO CERTAIN GARNISHMENT PROCEEDINGS, TO ALLOW RECEIVER TO RELEASE OR REMOVE SECURITY AGREEMENTS, AND TO AUTHORIZE RECEIVER TO ENTER INTO A SETTLEMENT AGREEMENT WITH CHAPTER 11 DEBTOR IN POSSESSION FOR ASHLEY AARONS d/b/a COFFEE DOG ENTERTAINMENT

**THIS CAUSE** comes before the Court upon the Receiver's Combined Ninth Motion to Lift Litigation Injunction as to Certain Garnishment Proceedings, to Allow Receiver to Release or Remove Security Agreements, and to Authorize Receiver to Enter into a Settlement Agreement with Chapter 11 Debtor, Ashley Aarons d/b/a Coffee Dog Entertainment [ECF No. 485] (the "Motion"), filed on February 4, 2021.

In Section I of the Motion, the Receiver seeks to modify the Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141], so as to lift the litigation injunction provided for in that Order for certain garnishment matters currently pending in the Court of Common Pleas of Philadelphia County, Pennsylvania to be opened for the limited purpose to allow the Receiver, in his discretion, to dissolve current writs of garnishment, to mark judgments satisfied, and/or to reopen confessed judgments, where the counterparty merchant either has

EXHIBIT 2

resolved, filed for bankruptcy protection, or has agreed to resolve prior defaults in certain cases in

the Court of Common Pleas of Philadelphia County, Pennsylvania.

   The Receiver has made a sufficient and proper showing in support of the relief requested.

Accordingly, it is hereby

   **ORDERED AND ADJUDGED** that the Receiver's Motion is **GRANTED** with respect

to the relief requested in Section I thereof.  Specifically, the litigation injunction set forth in the

Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141] is hereby

lifted in the following matters in the Court of Common Pleas of Philadelphia County,

Pennsylvania, and solely for the purpose as described in the Motion:

  a. *Complete Business Solutions Group, Inc. v. Wyldewood Cellars d/b/a Wyldewood Cellars and John Brewer*, Docket No. 200203204.

  b. *Complete Business Solutions Group, Inc. v. Mountainville Dental PLLC d/b/a Mountainville Dental and David Burt*, Docket No. 200501032.

  c. *Complete Business Solutions Group, Inc. v. APC Maintenance LLC and Kelen Cristine Davis*, Docket No. 191204469.

  d. *Complete Business Solutions Group, Inc. v. Wallace Enterprises Inc. d/b/a Peak Performance Training Center d/b/a Tiger Academy Martial Arts d/b/a Peak Performance Training Center and John P. Wallace*, Docket No. 190400072.

  e. *Complete Business Solutions Group, Inc. v. Istanbul, LLC d/b/a Advanced Granite Solutions and Ibrahan Kucuk and Zekeriya Serner*, Docket No. 200100882.

  f. *Complete Business Solutions Group, Inc. v. New Vegetarian Palate, Inc. and Richard Wong*, Docket No. 200200029.

  g. *Fast Advance Funding, Inc. v. Coastal Computer Consulting LLC d/b/a Coastal Computer Consulting d/b/a Coastal Computer and Adam Casgar*, Docket No. 190901823.

  h. *Complete Business Solutions Group, Inc. v. Greensboro City Roofing LLC d/b/a Greensboro City Roofing and Bleu Siu*, Docket No. 200300686.

  i. *Complete Business Solutions Group, Inc. v. Park Transportation Inc., Christin Kim, and Eric Seo*, Docket No. 200101510.

  j. *Complete Business Solutions Group, Inc. v. Simplified Software Development LLC and Stephen Bennett*, Docket No. 171003666.

EXHIBIT 2

k. *Complete Business Solutions Group, Inc. v. Hoffman Funeral Home and Christopher Hoffman*, Docket No. 190301833.

l. *Complete Business Solutions Group, Inc. v. South Trails RV Center, LLC and Michael Schriver*, Docket No. 200100901.

m. *Complete Business Solutions Group, Inc. v. Richman Restaurants LLC d/b/a The Varsity Sports Bar and Grill, and Erik T. Richman*, Docket No. 1911000465.

n. *Complete Business Solutions Group, Inc. v. James R. Chumley Sole Proprietor, Chumley Trucking d/b/a Chumley Trucking d/b/a Chumley Trucking and Excavating LLC d/b/a Chumley Trucking and Excavating and James R. Chumley*, Docket No. 200202282.

In Part II of the Motion, the Receiver seeks to modify the Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141], so as to lift the litigation injunction provided for in that Order to allow the Receiver to release or remove security agreements for merchants that have paid off or otherwise resolved their account balances under merchant cash agreements they entered into with Par Funding.

The Receiver has made a sufficient and proper showing in support of the relief requested. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Receiver's Motion is **GRANTED** with respect to the relief requested in Section II thereof.  Specifically, the litigation injunction set forth in the Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141] is hereby lifted so as to allow the Receiver to release the following Security Agreements:

o. The December 27, 2018, Security Agreement between Wallace Enterprises Inc. d/b/a Peak Performance Training Center d/b/a Tiger Academy Martial Arts d/b/a Peak Performance Training Center and Par Funding.

p. The November 1, 2018, Security Agreement between James Strawbridge and Joy Strawbridge and Par Funding.

q. The November 2, 2018, Security Agreement between Earl Sampson and Daryl Sampson and Par Funding.

r. The February 11, 2019, Security Agreement between William E. Hoffman, Gretchen H. Hoffman, Christopher H. Hoffman, and Becky P. Hoffman and Par Funding, and to dismiss the foreclosure action relating to the Security Agreement

EXHIBIT 2

in the Court of Common Plea of Cumberland County, Pennsylvania at Docket No. 2019-6380.

In Section III of the Motion, the Receiver seeks to modify the Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141], for the limited purpose of lifting the litigation injunction provided for in that Order to permit the Receiver to enter into a settlement agreement in order to resolve portions of a bankruptcy claim and to avoid a costly bankruptcy adversary proceeding which the Receiver believes would result in a detrimental avoidance of the lien held against the Debtor's real property as a preferential transfer and a material reduction of the potential recovery by the Receivership Estate for the Debtor's Bankruptcy.

The Receiver has made a sufficient and proper showing in support of the relief requested. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Receiver's Motion is **GRANTED** with respect to the relief requested in Section III thereof.  Specifically, the litigation injunction set forth in the Court's Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141] is hereby lifted to authorize the Receiver to enter into the proposed Settlement Agreement with the Chapter 11 Debtor, Ashley Aarons d/b/a Coffee Dog Entertainment to promote the confirmation of the Debtor's Chapter 11 Plan of Reorganization; however, nothing herein shall be deemed to authorize any third party to seek relief or otherwise avoid the Bankruptcy Plan Confirmation in an attempt to assert a right to foreclose its lien with the intent to assert a position detrimental to the Receivership's position as set forth in the proposed settlement with the Chapter 11 Debtor.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of February, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Copies to:    Counsel of record

EXHIBIT 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION TO APPROVE NON-MATERIAL MODIFICATIONS TO CHAPTER 11 PLAN DATED AUGUST 7, 2020; MEMORANDUM OF POINTS & AUTHORITIES AND DECLARATION OF ASHLEY S. AARONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 8, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **February 8, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Interested Party**
United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 8, 2021 | Anne Marie Vernon | */s/ Anne Marie Vernon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

### NEF SERVICE LIST

- **Brandon J Anand**    brandon@anandlaw.com, r52959@notify.bestcase.com,info@anandlaw.com
- **Julian K Bach**    Julian@Jbachlaw.com, julianbach@sbcglobal.net
- **James C Bastian**    jbastian@shulmanbastian.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **John-Patrick McGinnis Fritz (TR)**    jpftrustee@lnbyb.com, jpf@trustesolutions.net
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Marjorie M Johnson**    mmjesq@yahoo.com, ca.ecf@aislegaltrac.com
- **Rika Kido**    rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **Dare Law**    dare.law@usdoj.gov
- **Alvin Mar**    alvin.mar@usdoj.gov, dare.law@usdoj.gov
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Susan I Montgomery**    susan@simontgomerylaw.com,
  assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com;montgomerysr71631@notify.bestcase.com
- **Donna T Parkinson**    donna@parkinsonphinney.com
- **Eric Ridley**    ridley.eric@gmail.com, r41626@notify.bestcase.com
- **Karel G Rocha**    krocha@pnbd.com, srichards@pnbd.com
- **Joshua L Scheer**    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Valerie Smith**    claims@recoverycorp.com
- **Patricia N Syverson**    , tdinardo@bffb.com
- **Todd L Turoci**    mail@theturocifirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com
- **Reilly D Wilkinson**    rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**