James C. Bastian, Jr. – Bar No. 175415
Rika M. Kido – Bar No. 273780
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: JBastian@shulmanbastian.com
RKido@shulmanbastian.com

Attorneys for Ashley Susan Aarons,
Debtor and Debtor in Possession

**FILED & ENTERED**

**FEB 11 2021**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** sumlin **DEPUTY CLERK**

**CHANGES MADE BY COURT**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

In re

**ASHLEY SUSAN AARONS**
dba Coffee Dog Entertainment,

Debtor.

Case No. 2:19-bk-18316-NB

Chapter 11

**ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN DATED AUGUST 7, 2020**

**Hearing Date:**
Date: February 11, 2021
Time: 10:00 a.m.
Place: Courtroom 1545
255 East Temple Street
Los Angeles, California 90012

The hearing on confirmation of the Chapter 11 Plan Dated August 7, 2020 [docket 313] ("Plan") filed by Ashley Susan Aarons, the debtor and debtor in possession ("Debtor") took place on February 11, 2021, the Honorable Neil W. Bason, United States Bankruptcy Judge presiding. Appearances were as noted on the record.

Having considered (i) the Plan, (ii) the Debtor's Brief in Support of Entry of an Order Confirming the Debtors' Plan and the annexed Declarations of Ashley Susan Aarons and J. Michael Issa [docket ~~330~~ 329] ("Confirmation Brief"), (ii) the Declaration of Rika M. Kido re Ballot Tally [docket 330], (iii) Objection to Chapter 11 Plan Dated August 7, 2020 filed by Post Acute Care Partners, Inc. dba Care Partners at Home [docket 332] ("Care Partners' Objection"), (iv) Objections

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

6222-000 Confirmation Order

to Debtor's Chapter 11 Plan of Reorganization and Reply to Debtor's Brief in Support of an Order Confirming Chapter 11 Plan filed by Shiv Raj Gupta and Saroj Gupta ("Guptas") [docket 333], (v) Debtor's Reply to (1) Shiv Raj Gupta and Saroj Gupta's Objections to Debtor's Chapter 11 Plan of Reorganization and Reply to Debtor's Brief in Support of Entry of an Order Confirming Debtor's Chapter 11 Plan; and (2) Post Acute Care Partners, Inc. dba Care Partners at Home's Objection to Chapter 11 Plan Dated August 7, 2020 [docket 335] ("Reply"), (vi) Debtor's Statement in Support of Entry of an Order Confirming Debtor's Chapter 11 Plan [Docket 313] and the annexed Declarations of Ashley S. Aarons and Louis Napolitano [docket 369]; (vii) Response to Debtor's Statement Filed in Support of Order Confirming Debtor's Chapter 11 Plan of Reorganization filed by the Guptas [docket 372]; (viii) Response to Statement in Support of Entry of Order Confirming Debtor's Chapter 11 Plan filed by Verus Securitization Trust 2020-NPL1 et al. [docket 373]; (ix) Debtor's Reply to (1) Shiv Raj Gupta and Saroj Gupta's Response to Debtor's Statement filed in Support of Order Confirming Debtor's Chapter 11 Plan; and (2) Verus Securitization Trust 2020-NPL1 et al.'s Response to Statement in Support of Entry of Order Confirming Debtor's Chapter 11 Plan and the annexed Declarations of Janet Sexton and Ashley S. Aarons [docket 374]; (x) Debtor's Motion to Approve Non-Material Modifications to Chapter 11 Plan Dated August 7, 2020 [docket 383] ("Non-Material Modification Motion"); (xi) the records and files in this Chapter 11 case, and (xii) the statements of counsel on the record, and for the reasons set forth <u>in the tentative rulings posted prior to the hearing (docket 386), and the additional reasons set forth</u> on the record at the hearing, this Court finding that all the requirements for confirmation have been established pursuant to 11 U.S.C. § 1129, and good cause appearing, the Court finds and concludes:

1. The hearing on confirmation of the Plan was held on adequate and proper notice to parties in interest;

2. The requirements for confirmation set forth in 11 U.S.C. §§ 1129(a) and 1129(b) have been satisfied;

3. The Plan complies with the applicable provisions of Chapter 11 of the Bankruptcy Code;

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2

6222-000 Confirmation Order

4. The Debtor, as the Plan proponent, has complied with the applicable provisions of the Bankruptcy Code;

5. The Plan has been proposed in good faith and not by any means forbidden by law;

6. That any payment made or promised by the Debtor for services or for costs and expenses in, or in connection with the case or in connection with the Plan and incident to the case, have been disclosed to the Court;

7. Any such payment made before confirmation of the Plan is reasonable or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Court as reasonable;

8. While Class 4A did not vote in sufficient majorities (11 U.S.C. § 1126(c)) to accept the Plan ("Rejection Class"), and while other classes did not vote at all (*see* Kido Decl., docket 330) (collectively, with the Rejection Class, the "Non-Accepting Classes"), the ~~Rejection~~ Non-Accepting Class~~es~~ will receive or retain property of a value, as of the effective date of the Plan, that is not less than the amount that ~~such~~ the holder of each claim in each such class would receive or retain if the bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code on ~~such~~ the Effective ~~d~~Date, thus satisfying 11 U.S.C. § 1129(a)(7)(A)(ii);

9. Although 11 U.S.C. § 1129(a)(8) has not been satisfied with respect to the Rejection Class, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable, with respect to the ~~Rejecting~~ Non-Accepting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

10. That, except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that with respect to claim of a kind specified in 11 U.S.C. § 507(a)(1), on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim or has agreed to treatment otherwise, as required by 11 U.S.C. § 1129(a)(9)(A);

11. That with respect to priority tax claims (11 U.S.C. § 507(a)(8)) the Plan complies with 11 U.S.C. § 1129(a)(9)(C);

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

6222-000 Confirmation Order

12. That at least one class of claims has accepted the Plan, determined without including any acceptance of the Plan by an insider holding a claim of such class;

13. That confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan;

14. The transactions contemplated by the Plan are in compliance with and satisfy all applicable provisions of the Bankruptcy Code and the terms and conditions of the Plan are fair and reasonable;

15. That pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 9019 and under the four factors set forth by *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986) ((a) probability of success in litigation, (b) difficulties re collection, (c) complexity, expense, inconvenience, delay, (d) paramount interest of creditors and a proper deference to their reasonable views in the premises), the Final Modification Agreement[1] entered into with POL[2] that is incorporated into the Plan is in the best interests of creditors of the Estate because if the Plan is not approved, the Debtor may lose this opportunity to generate funds from the Bel Air Property and more importantly, the Debtor may lose the Bel Air Property to a foreclosure sale by POL who has been granted relief from stay as to the Bel Air Property, all to the detriment of the junior lienholders and the unsecured creditors who would then likely receive nothing in this case, and the potential litigation with POL would be complex, expensive, inconvenient, cause delay, and would entail uncertainty of success; and

---

[1] The Modification Agreement as defined in the Plan and attached to the Disclosure Statement thereto as **Exhibit "K"**, a final copy of which was attached as **Exhibit "1"** to the Declaration of Ashley S. Aarons, annexed to the Confirmation Brief, was subsequently modified pursuant to the Addendum to Modification and Release Agreement on October 14, 2020, the Second Addendum to Modification and Release Agreement on November 6, 2020, the Third Addendum to Modification and Release Agreement on December 22, 2020, and the Fourth Addendum to Modification and Release Agreement on February 3, 2021, collectively referred to as "Addenda". The Addenda, including the fully Executed Modification Agreement was signed by all parties and attached as **Exhibit "1"** to the Non-Material Modification Motion and is incorporated into the Plan in its entirety and hereafter referred to as the "Final Modification Agreement".

[2] POL is defined below in paragraph 27 and includes *all* related parties, their successors and/or assignees. Capitalized terms are defined below or, if not otherwise defined, are defined in the Plan and/or Confirmation Brief

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4

6222-000 Confirmation Order

16. That all fees payable under 28 U.S.C. § 1930 have been paid or will be paid as of the effective date of the Plan.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

17. The Plan is confirmed pursuant to 11 U.S.C. §§ 1129(a) and (b), with the modifications described in the Confirmation Brief, Care Partners' Objection, Reply and Non-Material Modification Motion as follows:

    a. The monthly interest payment to POL provided for in Exhibit A to the Plan is increased to $21,455.73 and the final estimated balloon payment due to POL on April 1, 2021 (if the Debtor does not obtain the six month extension) provided for in Exhibit A to the Plan is increased to $3,432,916.07, plus any additional fees and costs owing at that time pursuant to the terms of the Modification Agreement.

    b. Article IV, subpart D of the Plan shall be modified to state as follows:

> Creditors, interest holders and other parties in interest may not take any action to enforce preconfirmation obligations against the Debtor, or any obligations due under this Plan, so long as Debtor is not in material default under this Plan (as defined below).

    c. The second sentence of the first paragraph of page 5 of the Plan shall be modified to reference the Fourth Addendum as follows:

> The settlement with POL is documented in the Final Modification Agreement.[3]

    d. Exhibit A to the Plan will be revised and restated to provide for a payment of $75,000.00 on April 1, 2021 to Class 2D and otherwise be subject to additional terms as set forth below. Exhibit H to the Disclosure Statement will be modified such that the third, fourth and fifth rows on page 23 of the Disclosure Statement (Exhibit H) discussing Class 2D shall be replaced with the following two rows:

---

[3] The Modification Agreement as defined in the Plan and attached to the Disclosure Statement as Exhibit "K", a final copy of which was attached as Exhibit "1" to the Declaration of Ashley S. Aarons, annexed to the Confirmation Brief, was subsequently modified pursuant to the Addendum to Modification and Release Agreement on October 14, 2020, the Second Addendum to Modification and Release Agreement on November 6, 2020, the Third Addendum to Modification and Release Agreement on December 22, 2020, and the Fourth Addendum to Modification and Release Agreement on February 3, 2021, collectively referred to as "Addenda". The Addenda, including the fully Executed Modification Agreement was signed by all parties and attached as **Exhibit "1"** to the Non-Material Modification Motion and is incorporated into the Plan in its entirety and hereafter referred to as the "Final Modification Agreement".

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5

6222-000 Confirmation Order

| | |
|---|---|
| 2D | Complete Business Solutions Group ("CBSG") shall retain a lien in the fourth priority position on the Bel Air Property. CBSG has agreed to fully resolve Claim 3 filed by CBSG in the Plan for payment by the Debtor or her bankruptcy estate in the total sum of $75,000.00 ("Stipulated Payment"). If the Stipulated Payment is not paid within 90 days of the Effective Date, interest on the Stipulated Payment will accrue at a rate of 10% interest per annum. The Stipulated Payment will be paid no later than the same maturity as POL under the Plan whether that maturity is April 1, 2021 or is extended to October 1, 2021. In the event the Debtor fails to pay the Stipulated Payment as provided here, CBSG shall retain its full lien indebtedness in any State Court or Deed of Trust proceedings against the Debtor's real property. |
| 2D | Claim 3 includes a secured claim against the Debtor's personal property as a result of a filed UCC-1. Upon receipt of the Stipulated Payment, in addition to reconveying the fourth priority lien against the Bel Air Property, CBSG will terminate the UCC Financing Statement against the Debtor's personal property. |

e.    The treatment of Class 2C and 2E on page 23 of the Disclosure Statement shall be modified to provide for enough funds to be held in the Claims Reserve through closing on the financing by adding the following rows after the last row for 2C and 2E:

| | |
|---|---|
| 2C | In the event that the claim asserted by Lamorie is not resolved prior to closing on financing, Lamorie's lien shall be reconveyed, enough funds will be held in the Claims Reserve provided for in the Plan pending a resolution of the secured claims or a court order, and Lamorie's lien will attach to the funds with the same force, effect, validity and priority as the liens had with respect to the Bel Air Property prior to the financing, with any funds not used to be released for payment to the Debtor's administrative creditors. |
| 2E | In the event that the WSF/Forward Horizon's secured claim is not resolved prior to closing on financing, Forward Horizons' lien shall be reconveyed, enough funds will be held in the Claims Reserve provided for in the Plan pending a resolution of the secured claims or a court order, and Forward Horizons' lien will attach to the funds with the same force, effect, validity and priority as the liens had with respect to the Bel Air Property prior to the financing, with any funds not used to be released for payment to the Debtor's administrative creditors. |

18.    The foregoing Plan modifications are hereby approved pursuant to 11 U.S.C. § 1127(a), without the need for any additional disclosure or re-solicitation under Rule 3019. Such modifications shall be deemed to be accepted by all Creditors.

19.    The Plan, with the foregoing modifications, is hereby approved and confirmed in its entirety under 11 U.S.C. §§ 1129(a) and 1129(b). The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on this Court's approval and authorization of, or the validity, binding effect and enforceability of, such provision, and each provision of the Plan, as modified by this Confirmation Order, is hereby expressly authorized and

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

6222-000 Confirmation Order

approved and shall have the same validity, binding effect and enforceability as every other provision of the Plan.

20.     This Plan shall become effective ("Effective Date") on the 15th day following the entry of a non-stayed and non-appealed confirmation order on the docket, or, if that is not a business day, then the next business day.

21.     Upon the Effective Date, the Plan will be deemed substantially consummated under 11 U.S.C. §§ 1101 and 1127(b).

22.     Costs owing by the Debtor to the Court Clerk, if any, shall be immediately paid if not already paid.  Fees owing to the United States Trustee, if any, will be paid as they may come due until the issuance of the final decree.

23.     On the Effective Date, the Debtor and/or the Disbursing Agent is authorized, empowered and directed to carry out the provisions of the Plan, distribute all property to be distributed pursuant to the terms of the Plan, and perform such other acts and execute documents as are necessary or appropriate in connection with the Plan and this Order, without the necessity of further Court order, and all such actions shall be deemed to be authorized.  If the Debtor proceeds with take-out financing as her option to implement the Plan, the Disbursing Agent will not be engaged, and the Debtor, and not J. Michael Issa, shall serve as Disbursing Agent as provided for and with all duties and authority set forth in Article I, Section D of the Plan.  If, for some reason, the Debtor does not proceed with such take-out financing, the Disbursing Agent shall be J. Michal Issa as provided for in Article III of the Plan.  Within fourteen days of the entry of this Order and prior to the Effective Date, the Debtor shall file a declaration with the Court regarding her election to proceed with the take-out financing option for implementation of the Plan.

24.     On the Effective Date, without the necessity of further Court order, the Debtor may employ or contract with other entities including attorneys or other professionals to assist in or to perform the distribution of all property to be distributed under the Plan, pursuant to the terms of the Plan.  After the Effective Date, costs and fees incurred by or to be paid by the Debtor's estate, including the costs and fees of professionals employed by the Debtor, shall be paid in the ordinary course of business without this Court's review and approval, with the exception of any costs and

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

6222-000 Confirmation Order

fees of professionals seeking reimbursement for services rendered prior to the date of entry of this Order.

25. On the Effective Date, the Debtor shall have the exclusive right to investigate and prosecute any and all claims of the bankruptcy estate, including any claims arising under any of §§ 542, 543, 544, 545, 546, 547, 548, 549 and 550 of the Bankruptcy Code, any actions based on applicable nonbankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the bankruptcy estate or to avoid a lien or transfer, and or any disputed claims against the bankruptcy estate (collectively the "Litigation Actions"). Without further notice, hearing or Court order the Debtor shall have sole and absolute discretion over whether to prosecute, settle or take action with respect to any Litigation Actions. The Debtor may compromise or settle any Litigation Actions of the estate without further notice, hearing or Court order.

26. Upon entry of this Order, all property of the bankruptcy estate, tangible and intangible, including licenses, furniture, fixtures and equipment, will vest pursuant to 11 U.S.C. § 1141(b) and (c), free and clear of all claims and equitable interests, except as provided by the Plan, to the Debtor. From and after the Effective Date, the Debtor may acquire, and dispose of property and settle and compromise claims without supervision by the court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan, this Order, and any document, agreement, or instrument delivered in connection with the Plan.

27. As a result of confirmation of the Plan, the Debtor's previous obligations to creditors are modified and the terms of repayment of the claims shall be controlled by the Plan which incorporates that certain Modification and Release Agreement and Addenda ("Final Modification Agreement"), entered into by and between the Debtor, FCI Lender Services, Inc. and Patch of Land Lending LLC, as servicing agents for the current beneficiary, Wilmington Savings Fund Society, FSB, Not in its Individual Capacity But Solely as Trustee for Verus Securitization Trust 2020-NPL1, assignee/successor to Invictus Residential Pooler Trust 3A, its successors and/or assigns (collectively "POL"). The Final Modification Agreement is the final agreement in effect as of the date of this Order, a copy of which is attached as **Exhibit "1"** to the Non-Material Modification

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

8

6222-000 Confirmation Order

Motion and is incorporated into the Plan in its entirety. To the extent there is a discrepancy between the Final Modification Agreement and the Plan, the Final Modification Agreement shall control. On and after the Effective Date, notwithstanding the Final Modification Agreement, the first priority lien against the real property located at 984 Bel Air Road, Los Angeles, CA 90077 ("Bel Air Property") held by POL as of the date of commencement of the Debtor's bankruptcy case, shall not be altered or modified in any way by the Final Modification Agreement and any and all liens against the Bel Air Property that were junior to the lien of POL as of the date of commencement of the Debtor's bankruptcy case, including but not limited to the following liens, shall remain junior to and subordinated to the lien of POL.

    a.    $170,000 deed of trust in favor of beneficiary, James Haycock as Trustee of a Separate Trust, recorded on February 19, 2019, with Los Angeles County Recorder's Office as Instrument Number 20190144545;

    b.    $90,000 deed of trust in favor of beneficiary, M. Lamorie, recorded February 20,2019, with Los Angeles County Recorder's Office as Instrument Number 20190149730;

    c.    $481,857.75 Security Agreement in favor of Complete Business Solutions Group, Inc., recorded May 21, 2019, with Los Angeles County Recorder's Office as Instrument Number 20190462348; and

    d.    $25,000 deed of trust initially in favor of beneficiary, Western Star Financial, Inc., recorded July 16, 2019, with Los Angeles County Recorder's Office as Instrument Number 20190690920, and assigned to Forward Horizons, Inc. by assignment recorded August 12, 2019, as Instrument Number 20190802805.

28. The Final Modification Agreement, a final copy of which is attached as **Exhibit "1"** to the Non-Material Modification Motion, has been properly notice and served, and is hereby approved pursuant to Rule 9019. The Debtor is authorized to execute any and all documents to carry out the provisions contemplated in the Final Modification Agreement. After hearing evidence presented and argument of counsel, the Court has determined that it is in the best interest of the estate that said controversy be settled by compromise as set forth more fully in the Final Modification Agreement. Upon entry of this Order, POL has full relief from stay to enforce the

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

9

6222-000 Confirmation Order

Loan Documents, as modified by the Final Modification Agreement, without further hearing or order of the Court to exercise its rights in the event of a default post-confirmation. POL shall not be required to return to court to obtain a further order for relief in the event of a future default by Debtor of the Final Modification Agreement. This paragraph of the Order shall override any conflicting provisions in the Plan, including, but not limited to any default notice provisions. As set forth in the Final Modification Agreement, upon timely fulfilment of the Amended Conditions for Effectiveness of Modification, POL's claim shall be deemed amended as set forth more fully in the Final Modification Agreement, shall be valid and allowed as a fully secured claim, shall not be objected to by Debtor, shall not be subject to reduction in these bankruptcy proceedings or any other bankruptcy proceedings, and may not be modified by any state or federal court or regulatory body. The intent of this Order which approves the Final Modification Agreement as a full and final compromise of controversy, is that, upon timely fulfilment of the Amended Conditions for Effectiveness of Modification, the POL claim shall be modified as set forth therein and all claims of the Debtor and Debtor Parties (as defined in the Final Modification Agreement), known or unknown, shall be released as detailed more fully in Paragraph 6 of the Final Modification Agreement which is incorporated herein by reference. Without any requirement to do so, POL may record this Order as evidence of Court approval of the Final Modification Agreement. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this Order for indexing and recording.

29. On or before the Effective Date, the Debtor may will pay all Class 2 Secured Creditor claims in amounts that holders of such claims may agree. If the Debtor is unable to pay all Class 2 Secured Creditor claims on or before the Effective Date, the Debtor may elect instead to otherwise perform under the terms of the Plan

30. The terms and provisions of this Order and the Plan are binding in all respects upon the Debtor, the bankruptcy estate, and each creditor whether or not the claim of such creditor is impaired under the Plan, and whether or not such creditor has accepted the Plan and all others holding or asserting claims.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

10

6222-000 Confirmation Order

31.    With the exceptions noted below, any holder of an Administration Claim is required to file a request for payment of Administrative Claims. The last day to file a request for payment of Administrative Claims is 28 days after the Effective Date. Allowed Administrative Claims will be paid on or before the seventh business day after the order allowing such Administrative Claims becomes a final order, or on such date as the Debtor and the holder of such Administrative Claims may agree. The failure of a holder of an Administrative Claim to file a request for payment of Administrative Claims within 28 days after the Effective Date will forever bar such holder of an administrative Claim from asserting its administrative Claim against the Debtor's bankruptcy estate. The exceptions are (i) any governmental unit holding an administrative claim for post-petition taxes and/or interest and penalties related to such taxes that are of the kind described in Bankruptcy Code Sections 503(b)(1)(B) and 503(b)(1)(C), shall not be required to file an administrative claim as a condition of its being an allowed administrative claim, and (ii) professionals employed by the Debtor who must instead file and serve a properly noticed fee application and the Court must rule on the fee application in accordance with the law.

32.    After confirmation, the Court retains and may exercise jurisdiction over proceedings concerning: (1) whether Debtor is in material default under the Plan, (2) whether the time for performing any Plan obligation should be extended, (3) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan or in the Disclosure Statement to be filed with the Court, (4) whether the case should be dismissed or converted to one under chapter 7, (5) any proceedings to allow or disallow claims or administrative expenses (the court will not review professional fees incurred after the Effective Date, unless otherwise stated in attached exhibits to the Plan or Disclosure Statement), (6) settlements or compromises under Rule 9019, (7) any proceedings under 11 U.S.C. §§ 110, 329, or 362, or regarding sanctions, and (8) any other proceedings, whether or not commenced or contemplated as of the Effective Date, regarding the implementation, interpretation, or enforcement of this Plan or the administration of the bankruptcy case or estate. This retention of jurisdiction, however, will end on the later of (a) two (2) years after the Effective Date, (b) as to any then-pending adversary proceeding or contested

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

11

6222-000 Confirmation Order

matter, when it is finally resolved by a judgment or order, or (c) as to an individual Debtor's discharge, when that discharge is granted or denied by final order.

33. If the Debtor's bankruptcy case is converted to one under chapter 7, the property of the reorganized debtor, or of any liquidation or litigation trust, or of any other successor to the estate under the plan, that has not been distributed under the plan shall be vested in the chapter 7 estate, except for property that would have been excluded from the estate if this case had always been one under chapter 7.

34. As soon as practicable under Rule 3022, the Debtor shall file a motion with the court to obtain a final decree to close this bankruptcy case, unless good cause is shown to keep this case open. As long as the case is not closed, the Debtor must file status reports every 120 days explaining what progress has been made towards substantial consummation of the confirmed plan. The status report must be served on the United States Trustee, the twenty largest general unsecured creditors, and those parties who have requested special notice. The post confirmation status report must comply with the provisions of Local Bankruptcy Rule 3020-1(b).

35. A Post Confirmation Status Conference will take place on April 27, 2021 at 2:00 p.m.

### 

Date: February 11, 2021

Neil W. Bason
United States Bankruptcy Judge

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6222-000 Confirmation Order

12